SOMACH SIMMONS & DUNN
MICHAEL W. DAUGHERTY, ESQ. (Co. Bar No. 49074)
Pro Hac Vice Forthcoming.
RAMSEY L. KROPF, ESQ. (Co. Bar No. 21528)
Pro Hac Vice Forthcoming.
1155 Canyon Blvd., Suite 110
Boulder, CO 80302
Telephone (916) 446-7979
Facsimile: (916) 446-8199
mdaugherty@somachlaw.com
rkropf@somachlaw.com

LAW OFFICE OF FRANK LAWRENCE
FRANK LAWRENCE, ESQ. (Ca. Bar No.147531)
ZEHAVA ZEVIT, ESQ. (Ca. Bar No. 230600)
111 Bank St. No. 175
Grass Valley, CA 95945
Telephone: (530) 362-8434
frank@franklawrence.com
zehava@franklawrence.com

Attorneys for [PROPOSED] Defendant-Intervenor
YUHAAVIATAM OF SAN MANUEL NATION,
a federally recognized Indian tribe, also federally recognized as
SAN MANUEL BAND OF MISSION INDIANS

# UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

## EASTERN DIVISION – RIVERSIDE

| | |
|---|---|
| SAVE OUR FOREST ASSOCIATION,<br><br>Plaintiff,<br><br>v.<br><br>UNITED STATES FOREST SERVICE,<br>RANDY MOORE, in his official capacity as Chief of the U.S. Forest Service, | Case No.: 5:24-cv-01336-JGB-DTB<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF YUHAAVIATAM OF SAN MANUEL NATION'S MOTION TO INTERVENE FOR LIMITED** |

| | |
|---|---|
| 1 | CHRISTOPHER FRENCH, in his official capacity as Deputy Chief for the National Forest System of the U.S. Forest Service, | **PURPOSE OF MOTION TO DISMISS** |
| 2 | | |
| 3 | | |
| 4 | JENNIFER EBERLEIN, in her official capacity as Regional Forester for the Pacific Southwest Region of the U.S. Forest Service, | Hearing Date: June 9, 2025 Hearing Time: 9:00 a.m. |
| 5 | | Courtroom: 1 |
| 6 | | Judge: Hon. Jesus G. Bernal |
| 7 | DANELLE HARRISON, in her official capacity as Forest Supervisor of the San Bernardino National Forest of the U.S. Forest Service, | Action Filed: June 25, 2024 |

1

CHRISTOPHER FRENCH, in his
official capacity as Deputy Chief for the
National Forest System of the
U.S. Forest Service,

JENNIFER EBERLEIN, in her official
capacity as Regional Forester for the
Pacific Southwest Region of the
U.S. Forest Service,

DANELLE HARRISON, in her official
capacity as Forest Supervisor of the San
Bernardino National Forest of the
U.S. Forest Service,

MICHAEL NOBLES, in his official
capacity as Front Country District
Ranger of the U.S. Forest Service,

                  Defendants.

YUHAAVIATAM OF SAN MANUEL
NATION, a federally recognized Indian
tribe,

        [PROPOSED] Defendant-Intervenor.

**PURPOSE OF MOTION TO DISMISS**

Hearing Date: June 9, 2025
Hearing Time: 9:00 a.m.
Courtroom: 1
Judge: Hon. Jesus G. Bernal

Action Filed:  June 25, 2024

# TABLE OF CONTENTS

Page

I.    INTRODUCTION ................................................................................. 8

II.   STATEMENT OF FACTS .................................................................. 10

      A.    The Nation Has Ancestral Ties, Legal Rights, and Sovereign
            Interests at Arrowhead Springs ........................................... 10

      B.    The Instant Suit ................................................................... 15

III.  ARGUMENT ...................................................................................... 16

      A.    Intervention as of Right Is Warranted ................................. 16

            1.    This Motion Is Timely ............................................... 17

            2.    The Nation Has a Significant Protectable Interest
                  Relating to Plaintiff's Claims ................................... 21

            3.    Disposition of the Action May as a Practical Matter
                  Impair or Impede the Nation's Ability to Protect
                  Its Interests ............................................................... 25

            4.    The Nation's Interests Are Not Adequately Represented
                  by the Existing Parties .............................................. 26

      B.    Alternatively, Permissive Intervention Should Be Granted
            Pursuant to FRCP 24(b)(1)(B) ............................................. 29

IV.   CONCLUSION ................................................................................... 31

# TABLE OF AUTHORITIES

Page(s)

Cases

*Alainz v. Tillie Lewis Foods,*
    572 F.2d 657 (9th Cir. 1978) ............................................................. 11

*Arakaki v. Cayetano,*
    324 F.3d 1078 (9th Cir. 2003) ........................................................... 19

*Brumback v. Ferguson,*

343 F.R.D. 335 (E.D. Wash. 2022) ..................................................... 23

*California ex. rel. Lockyer v. U.S.,*
    450 F.3d 436 (9th Cir. 2006) ............................................................. 10

*Callahan v. Brookdale Senior Living Communities, Inc.,*
    42 F.4th 1013 (9th Cir. 2022) ........................................................... 19

*Citizens for Balanced Use v. Montana Wilderness Ass'n,*
    647 F.3d 893 (9th Cir. 2011) ............................................................. 19

*Day v. Apoliona,*
    505 F.3d 963 (9th Cir. 2007) ............................................................. 11

*Dine Citizens Against Ruining Our Env't v. B.I.A.,*
    932 F.3d 831 (9th Cir. 2019) ................................................ 1, 3, 17,18

*Donnely v. Glickman,*
    159 F.3d 405 (9th Cir. 1998) ............................................................. 15

*E.E.O.C. v. Peabody W. Coal Co.,*
    610 F.3rd 1070 (9th Cir. 2010) ......................................................... 17

*Elliott v. White Mountain Apache Tribal Ct.,*
    566 F.3d 842 (9th Cir. 2009) ............................................................. 16

*Forest Conservation Council v. USFS,*
    66 F.3d 1489 (9th Cir. 1995) ....................................................... 19, 20

*Foundation Auto Holdings, LLC v. Weber Motors, Fresno, Inc.,*
    2021 WL 5822933, at *4 (E.D. Cal. Dec. 8, 2021),
    *report and recommendation adopted,*
    2022 WL 229857 (E.D. Cal. Jan. 26, 2022) ...................................... 11

*Freedom from Religion Found., Inc. v. Geithner,*
    644 F.3d 836 (9th Cir. 2011) ............................................................. 23

*Greene v. U.S.,*
    996 F.2d 973 (9th Cir. 1993) ............................................................. 23

*Idaho Farm Bureau Fed'n v. Babbitt,*
    58 F.3d 1392 (9th Cir. 1995) ............................................................ 10

*Kalbers v. U.S. D.O.J.,*
    22 F.4th 816 (9th Cir. 2021) ....................................................... 14, 15

*Kescoli v. Babbitt,*
    101 F.3d 1304 (9th Cir. 1996) .......................................................... 17

*Klamath Irrig. Dist. v. U.S.,*
    48 F.4th 934 (9th Cir. 2022) .............................................................. 3

*Kootenai Tribe of Idaho v. Veneman,*
    313 F.3d 1094 (9th Cir. 2002) ......................................................... 24

*Maverick Gaming v. U.S.,*
    123 F.4th 960 (9th Cir. 2024) ......................................................... 1, 3

*Metlakatla Indian Cmty. v. Dunleavy,*
    58 F.4th 1034 (9th Cir. 2023) ............................................................ 8

*NAACP v. New York,*
    413 U.S. 345 (1973).................................................................... 11, 12

*NW Forest Res. Council v. Glickman,*
    82 F.3d 825 (9th Cir. 1996) ............................................................. 11

*Pit River Home & Agric. Coop. Ass'n v. U.S.,*
    30 F.3d 1088, 1101 (9th Cir. 1994).................................................. 20

*Puget Soundkeeper All. v. United States Env't Prot. Agency,*
    314 F.R.D. 516 (W.D. Wash. 2016) ................................................. 23

*Sagebrush Rebellion, Inc. v. Watt,*
    713 F.2d 525 (9th Cir. 1983) ............................................................. 1

*Silver v. Babbitt,*
    166 F.R.D. 418 (D. Az. 1994)........................................................... 23

*Smith v. L.A. Unified Sch. Dist,*
    830 F.3d 843 (9th Cir. 2016) ............................................... 10, 11, 12

*Smith v. Marsh,*
    194 F.3d 1045 (9th Cir. 1999) .......................................................... 12

*Stallworth v. Monsanto Co.,*
    558 F.2d 257 (5th Cir. 1977) ............................................................ 23

*SW Ctr. for Biological Diversity v. Berg,*
    268 F.3d 810 (9th Cir. 2001) ............................................................ 10

*U.S. v. City of Los Angeles,*
    288 F.3d 391 (9th Cir. 2002) ........................................... 10, 18, 21, 22

*United States v. Oregon,*
   913 F.2d 576 (9th Cir.1990) ............................................................ 11

*United States v. State of Oregon*,
   745 F.2d 550 (9th Cir. 1984) ........................................................... 10

*Western Watersheds Project v. Haaland,*
   22 F.4th 828 (9th Cir. 2022)....................................................... 10, 12

*Wilderness Soc. v. U.S. Forest Serv.,*
   630 F.3d 1173 (9th Cir. 2011) .................................................... 19, 24

Other Authorities

89 Fed. Reg. 99899, 99902 (Dec. 11, 2024) ........................................ 1

Federal Rules of Civil Procedure, rule
   12(b)(7) ...................................................................... 1, *passim*
   19 ............................................................................... 1, *passim*
   24 ........................................................................................ 1, 2
   24(a) .................................................................................... 14
   24(a)(2) ....................................................................... 3, *passim*
   24(b)(1)(B) .......................................................................... 3, 21
   24(b)(3) .................................................................................. 23

7C Wright, Miller & Kane, *Federal Practice and Procedure*, § 1913 at 379 (2d. ed. 1986)

# I.    INTRODUCTION

Yuhaaviatam of San Manuel Nation ("Nation") moves to intervene for the sole purpose of moving to dismiss for failure and inability to join the Nation as a required party.  *See* Fed.R.Civ.P. 24; *see also* Fed.R.Civ.P. 12(b)(7) and 19.[1]  The Nation has substantial sovereign, historical, contractual, and other rights at issue here, but it cannot be joined because of its sovereign immunity.  This case may not proceed in equity and good conscience without the Nation.  Thus, this Court should dismiss.

The Nation is a federally recognized Indian tribe with sovereignty over its lands and citizens.  *See* 89 Fed. Reg. 99899, 99902 (Dec. 11, 2024).  Since time immemorial, the Nation has occupied and stewarded the lands that now comprise the San Bernardino National Forest, including the Strawberry Canyon watershed.

Plaintiff Save Our Forest Association, Inc. ("SOFA") seeks injunctive and declaratory relief against the United States Forest Service ("USFS") that would significantly and adversely impact the Nation's sovereignty, improperly render useless its water rights, cut off the Nation's water delivery, undermine its fundamental interests, and endanger its people and surrounding communities.  Specifically, SOFA seeks to enjoin a special use permit ("SUP") that allows water delivery to the Nation on its 2,000+-acre property known as Arrowhead Springs ("Property" or "Arrowhead Springs") that has relied upon such water for over 100 years.  The Nation has legal rights to Arrowhead Springs' water, which serves the

---

[1] The Ninth Circuit has recognized that "the district court must have some discretion to limit the issues on which . . . a party may intervene," *Sagebrush Rebellion, Inc. v. Watt,* 713 F.2d 525, 531 (9th Cir. 1983), and courts have permitted tribes to intervene to dismiss pursuant to Fed. R. Civ. P. 12(b)(7) without waiving their sovereign immunity.  *See Maverick Gaming v. U.S.*, 123 F.4th 960 (9th Cir. 2024); *Dine Citizens Against Ruining Our Env't v. B.I.A.*, 932 F.3d 831 (9th Cir. 2019).  The Nation expressly reserves its sovereign immunity.  By intervening for the limited purpose of dismissal, the Nation does not waive its sovereign immunity.

Nation's governmental, cultural, recreational and community facilities located on the Property that are used daily by the Nation and its citizens, employees, and guests.  It also supplies the Nation's fire station and fire hydrants on the Property, which are used by local and regional firefighters to extinguish regional wildfires.

SOFA also seeks to force the removal of a pipeline and associated infrastructure that deliver the Nation's much-needed water to the Property.  Such removal would force the Nation to incur losses and costs totaling millions of dollars.

SOFA's action threatens several of the Nation's fundamental interests including sovereign, historic, cultural, property, and contractual rights.  If successful, this action would undermine the Nation's ability to conduct governmental operations, harm its property and facilities, hinder its cultural activities and economic development efforts, effectively vitiate its legal rights, and deprive the Nation (and non-tribal firefighting agencies) of the ability to combat wildfire that threatens the Property and neighboring lands.

Despite the significant dangers this lawsuit poses to the Nation, the Nation cannot be joined because it is immune from suit absent a clear waiver or congressional abrogation of its sovereign immunity, neither of which have occurred here.  Accordingly, given the breadth and scope of its interests at stake here, the Nation has a right to intervene in this legal action.

The Nation appears for the limited purpose of moving to intervene, and then to dismiss, under Rules 24 and then 12(b)(7) and 19.  It expressly reserves its sovereign immunity and does not consent to be sued or subject itself to the Court's authority for any purposes other than adjudication of this motion for limited intervention and the accompanying motion for dismissal.[2]

---

[2] "[T]ribes may intervene for the limited purpose of asserting they are required parties without waiving their sovereign immunity."  *Maverick Gaming*, 658 F. Supp. 3d 966, 974 (W.D. Wash. 2023), *aff'd,* 123 F.4th 960 (9th Cir. 2024). "[W]here, as here, a tribe intervenes for the limited purpose of a motion to dismiss

The Nation is entitled to intervene as a matter of right pursuant to Rule 24(a)(2) because this motion is timely, the Nation has protectable interests relating to the subject matter of this action, the Nation is so situated that the disposition of this action may, as a practical matter, impair or impede its ability to protect those interests, and the existing parties do not adequately represent the Nation's interests.

Alternatively, the Nation should be granted permissive intervention pursuant to Rule 24(b)(1)(B) because this motion is timely, the Nation raises questions of law and fact that are common with those in the main action, and the Nation's intervention will not unduly delay or prejudice the original parties' rights.

## II.    STATEMENT OF FACTS

### A. The Nation Has Ancestral Ties, Legal Rights, and Sovereign Interests at Arrowhead Springs

The Property holds significant historical, spiritual, and cultural value to the Nation.  Since time immemorial, the Nation, its people, and their ancestors have used, lived among, and shared an intimate connection to this land.  The ancient village known as Apuiv'at was located in the area of what is today known as Arrowhead Springs.  The Arrowhead landmark, natural hot mineral springs, and surrounding areas are sacred sites, as defined in Executive Order 13007.  *See* Declaration of A. McCleary ¶¶2-3, 5-8, 10, filed in the related case *BlueTriton Brands v. United States Forest Service*, Case No. 2:24-cv-09720 ("*BlueTriton v.*

the action because it is a required party that cannot be joined due to its sovereign immunity, the court's jurisdiction is 'limited to the issues necessary to decide' that controversy, only."  *Id.*, 123 F.4th at 979 (internal quotation omitted).  *See Klamath Irrig. Dist. v. U.S.*, 48 F.4th 934, 942 (9th Cir. 2022); *Dine Citizens*, 932 F.3d at 850.

*USFS*") and attached as Exhibit 1 to the Nation's Request for Judicial Notice ("RJN") submitted herewith.[3]

In addition to the Nation's water use at Arrowhead Springs prior to colonization, the Property's owners have diverted water on and around Arrowhead Springs for its beneficial uses since at least 1864, when the Property first housed a hotel and resort. *See* State Water Resources Control Board Order WR 2023-0042 pp. 12-13 (April 23, 2021) (RJN Ex. 2) ("Water Board Order"). The Nation purchased the Property in 2016. *See* McCleary Dec. ¶7 (RJN Ex. 1); Hickey Dec. ¶3 (RJN Ex. 3).

Between 1929 and 1930, the previous Property owners contracted with BlueTriton's predecessor, the last of which contracts, dated September 26, 1931 ("1931 Contract"), provided that BlueTriton's predecessor has the right to develop water in "Strawberry Canyon" and is obliged to deliver 20 percent of that water to Arrowhead Springs. *See* 1931 Contract ¶2, R. Garton Dec. Ex. 6, p. 2 (RJN Ex. 4 p. 184). To transport the water, BlueTriton and its predecessors constructed, accessed and operated the infrastructure in Strawberry Canyon, primarily located on San Bernardino National Forest lands. While water use at Arrowhead Springs clearly began in the 1880s, "since 1930" BlueTriton and its predecessors sought and received special use permits issued by the Forest Service. Water Board Order at RJN Ex. 2 p. 35. This infrastructure is used to this day to deliver water to the Nation. *Id.* pp. 34-35.

Following the 1931 Contract, downstream users sued, alleging that upstream diversions and uses injured their water rights. On October 19, 1931, the San Bernardino County Superior Court rejected the challenge, entering a stipulated

---

[3] Citations to documents in the related case *BlueTriton v. USFS* and included as exhibits to the Nation's RJN here, are cited as: "__ Dec. ¶__ (RJN Ex. __)" or "__ Dec. Ex. __ at RJN Ex. __ pp. __-__". Page numbers refer to the RJN's sequentially numbered pages in the lower right corner rather than the document's original pagination or the *BlueTriton v. USFS* ECF pagination.

judgment confirming BlueTriton's predecessor's rights to divert water, and the Nation's predecessor's right to use water, from Strawberry Canyon at Arrowhead Springs. *See* Water Board Order at RJN Ex. 2 pp. 26-27; D. Little Dec. ¶19 and Ex. 5 thereto at RJN pp. 280-281 (*Del Rosa Mutual Water Company v. Carpenter*, No. 31798, Judgment at 7-8 (S.B. Sup. Ct. 1931)) (describing the Property's previous owner's water uses since circa 1880 and decreeing its right to divert and use water).

When the Nation purchased Arrowhead Springs in 2016, it acquired all related real property, water and other rights from the previous Property owners, including the right to receive water under the 1931 Contract. *See* McCleary Dec. ¶7 (RJN Ex. 1); Hickey Dec. ¶3 (RJN Ex. 3).

On December 11, 2023, the Nation and BlueTriton entered a Letter Agreement ("Letter Agreement") that amended and clarified BlueTriton's water delivery obligations under the 1931 Contract. *See* R. Garton Dec. Ex. 4 at RJN Ex. 4 p. 190-193. The Letter Agreement requires BlueTriton to cooperate with the Nation's efforts to obtain water from Strawberry Canyon, including to support any application the Nation might file for its own SUP from the USFS, and to negotiate an agreement so the Nation can use the existing infrastructure pursuant to that potential SUP. *See id.*

The Nation continues to use water supplied under BlueTriton's prior SUPs and pursuant to the State Water Board's stayed order[4] for governmental uses, including:

- Government administrative offices located at Arrowhead Springs;[5]

---

[4] The State Water Board's Order at RJN Ex. 2 p. 89 carves out authority for BlueTriton to divert and deliver water through its facilities in the Strawberry Creek watershed from Tunnels 2 & 3, and Boreholes 1, 1A, 7, 7A, 7B, 7C, and 8.

[5] *See* D. Little Dec. ¶12 (RJN Ex. 5); *id.* Ex. 5 at RJN Ex. 5 pp. 255-56.

- Tribal cultural purposes, including cultural facilities and grounds;[6]
- Event spaces used both for the Nation's meetings and special events and, as a governmental economic development project, for meetings and events hosted by third parties;[7]
- Native plant propagation;[8]
- A tribal fire station and fire hydrants that serve both Nation and non-Nation lands;[9]
- Domestic irrigation of fire-defensible green space surrounding important facilities;[10]
- Fire suppression training, including tribal, local, State, and federal firefighting agencies' training and firefighting;[11] and

---

[6] *See* R. Garton Dec. ¶6 (RJN Ex. 4); A. McCleary Dec. ¶10 (RJN Ex. 1); D. Little Dec. Ex 5 at RJN Ex. 5 pp. 255-56.

[7] "In 2024, over 60 events have occurred in the event spaces. This does not include the daily use by the Nation and its employees and the training events, where fire fighters and other first responders from more than 20 city, state, federal and other agencies receive training." D. Little Dec. Ex. 5 at RJN Ex. 5 p. 256.

[8] "The Nation's Cultural Resource Management and Environmental Departments manage this work, and the Nation employs a full-time ethno-botanist and other experts to assist." D. Little Dec. Ex. 5 at RJN Ex. 5 p. 270; R. Garton Dec. ¶6 (RJN Ex. 4).

[9] *See* D. Little Dec. Ex. 5 at RJN Ex. 5 p. 256; R. Garton Dec. ¶6 (RJN Ex. 4).

[10] *See* R. Garton Dec. ¶7 (RJN Ex.4). After reacquiring the property, the Nation instituted water conservation measures, resulting a reduction in irrigation uses by approximately 40% over prior owners' use. *See id.*

[11] "[F]ire fighters and other first responders from more than 20 city, state, federal and other agencies have attended training events in the property's other facilities in 2024, including, but not limited to, Cal-Fire, San Bernardino County, City of San Bernardino, City of Ontario, City of Rancho Cucamonga, City of Chino, Fontana Police Department, City of Barstow, City of Big Bear, City of Apple Valley, City of Rialto, City of Colton, City of Redlands, City of Loma Linda, San Bernardino County Sheriffs, Riverside County Sheriffs, LA County Sheriffs, California State Park Rangers, US Marshalls…." D. Little Dec. Ex. 5 at RJN Ex. 5 p. 270.

- ▪ Recreational purposes.[12]

The Nation has broad riparian, appropriative, contractual, groundwater, and aboriginal water rights for Arrowhead Springs and the surrounding area, including Strawberry Canyon. The Nation has "State riparian water rights, as Strawberry Creek and East Twin Creek flow across the Arrowhead property owned by the Nation." D. Little Dec. Ex. 5[13] at RJN Ex. 5 p. 266. The Nation's riparian rights "were acknowledged by the State Water Resources Control Board …." *Id.* (*citing* Water Board Order at RJN Ex. 2 pp. 89-90).

In addition to those water rights, the Nation also has historic "State pre-1914 appropriative water rights," based on the "Arrowhead property's diversions of water from Strawberry Canyon for use at the hotel and other facilities on such land prior to 1914, which were recorded with the County of San Bernardino." D. Little Dec. Ex. 5 at RJN Ex. 5 p. 267. "[T]he Nation [also has historic] appropriative rights in East Twin Creek, which the Nation may divert further upstream, including from Strawberry Canyon, pursuant to state law, including California Water Code Section 1706 …." *Id.* p. 14. "This right predates all other state water rights, and the USFS lacks authority to modify the priority and administration of a recognized state water right. The Nation also possesses other pre-1914 rights in East Twin Creek and its tributaries by virtue of being the sole shareholder of the Del Rosa Mutual Water Company." *Id.*

---

Arrowhead Springs also has the only "dipping pond" available for firefighting between Hwy. 18 and Hwy. 330. *See* R. Garton Dec. ¶10 (RJN Ex. 4).

[12] *See* R. Garton Dec. ¶6 (RJN Ex. 4).

[13] Exhibit 5 to the Declaration of D. Little includes a document, found at RJN Ex. 5 at page 266, which is the Nation's expert's report "Summary of Information on The Critical Need For Continued Delivery Of Water To The Yuhaaviatam Of San Manuel Nation's Arrowhead Property." (November 15, 2024). *See* Hickey Dec. ¶8 ("the Nation hired consultants and outside water law counsel and produced a 49-page letter and attachments dated November 15, 2024, that provided all the information the USFS requested") (RJN Ex. 3).

In addition to those riparian and historic appropriative water rights, the Nation has a contractual right to water under the 1931 Contract as a successor in interest to receive water from BlueTriton. *See* Water Board Order at RJN Ex. 2 p. 30; R. Garton Dec. Ex. 7 at RJN Ex. 4 pp. 189-192 ("Letter Agreement").

Finally, as the Nation explained to the USFS in November 2024, it also claims "aboriginal water rights, rooted in the fact that Strawberry Canyon lies in the Nation's aboriginal territory.  In fact, as discussed above, the Nation's ancestors had a village on and around the Arrowhead property."  D. Little Dec. Ex. 5 at RJN Ex. 5 at p. 267.  *See Metlakatla Indian Cmty. v. Dunleavy*, 58 F.4th 1034, 1042 (9th Cir. 2023).[14]

## B.  The Instant Suit

The first amended complaint ("Complaint") would prevent Defendants from continuing to allow BlueTriton's occupancy and water diversion from Strawberry Canyon to Arrowhead Springs.  *See* Complaint, Prayer for Relief ¶¶4-5, 7.  The Complaint directly attacks the USFS's grant to BlueTriton of the permit that allows water delivery to the Nation.  *See id*.  Moreover, Plaintiff seeks to not only prevent BlueTriton from holding such a permit but also to prevent the Nation from itself securing a permit allowing it to obtain water using BlueTriton's infrastructure.  *See id.* Prayer for Relief ¶5.  The Complaint also directly alleges that the Nation "has not demonstrated water rights."  *See id.*, ¶110.  Finally, Plaintiff seeks to permanently cut off water delivery to the Nation by forcing removal of the water-

---

[14] The Nation also possesses groundwater rights at Arrowhead Springs which are not at issue here.  The groundwater supply is insufficient to meet the needs at Arrowhead Springs, in part due to low and unreliable production and temperature, high levels of contaminants in the water, and a lack of infrastructure.  Several wells contain elevated levels of arsenic and fluoride and are not suitable for potable uses or irrigation.  Hamai Dec. ¶10 (RJN Ex. 8).

delivery pipeline and infrastructure, which will cost millions of dollars and which is essential to delivering water to the Property. *See id.* ¶¶69, 94, Prayer for Relief ¶7.

SOFA's requested relief would indefinitely terminate the Nation's primary water supply for Arrowhead Springs and would remove the infrastructure necessary to deliver such water to Arrowhead Springs before the Nation could assume its operation. That outcome would prevent the Nation from exercising its water rights, including its right to apply for its own permit to operate the infrastructure. Despite the Nation's indisputable sovereign interests and legal rights, including riparian, appropriative, contractual, and aboriginal water rights, at issue here, SOFA did not name the Nation as a defendant. The Nation now moves to intervene for the limited purpose of seeking dismissal under Rules 12(b)(7) and 19.

## III.    ARGUMENT

### A. Intervention as of Right Is Warranted

On timely motion, a court must permit any party to intervene who claims an interest relating to the property or transaction that is the subject of the action and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest. FRCP 24(a)(2). The proposed intervenor must demonstrate the following to intervene as of right under Rule 24(a)(2):

> (1) [T]he [applicant's] motion must be timely; (2) the applicant must have a "significantly protectable" interest relating to the property or transaction which is the subject of the action; (3) the applicant must be so situated that the disposition of the action may as a practical matter impair or impede its ability to protect that interest; and (4) the applicant's interest must be inadequately represented by the parties to the action.

*California ex. rel. Lockyer v. U.S.,* 450 F.3d 436, 440 (9th Cir. 2006) (*citations omitted*).  "In evaluating whether these requirements are met, courts 'are guided primarily by practical and equitable considerations …  [and] courts generally 'contstrue [] [the Rule] broadly in favor of proposed intervenors.'"  *U.S. v. City of Los Angeles,* 288 F.3d 391, 397 (9th Cir. 2002) (*citations omitted*).  "A district court is required to accept as true the non-conclusory allegations made in support of an intervention motion."  *SW Ctr. for Biological Diversity v. Berg*, 268 F.3d 810, 820 (9th Cir. 2001).

The Nation satisfies each requirement for intervention as of right.

## 1.    This Motion Is Timely

Three factors determine the timeliness of intervention: (1) the stage of the proceedings at which an applicant seeks to intervene; (2) whether the existing parties would be prejudiced; and (3) the reason for any delay in moving to intervene.  *See Smith v. L.A. Unified Sch. Dist*, 830 F.3d 843, 854 (9th Cir. 2016).  Courts look at the totality of the circumstances in determining timeliness.  *Id*.

First, in analyzing the "stage of the proceedings" factor, a motion is timely if it is filed "before any hearings or rulings on substantive matters."  *Idaho Farm Bureau Fed'n v. Babbitt*, 58 F.3d 1392, 1397 (9th Cir. 1995).  "In analyzing the 'stage of the proceedings' factor, the 'mere lapse of time alone is not determinative.'"  *Smith*, 830 F.3d at 854 (*citing United States v. State of Oregon*, 745 F.2d 550, 552 (9th Cir. 1984)).  Rather, courts look at the "totality of circumstances" surrounding the delay.  *Western Watersheds Project v. Haaland,* 22 F.4th 828, 836 (9th Cir. 2022).

Thus, courts have deemed motions to intervene to be timely even when filed at the appellate stage and/or years after commencement of litigation, because circumstances justified filing at the particular stage reached in the proceedings.  *See Smith,* 830 F.3d at 855 (intervention on appeal twenty years after proceedings

had commenced); *Day v. Apoliona*, 505 F.3d 963, 966 (9th Cir. 2007) (motion timely despite the case being two years old and on appeal, because, among other things, it would not "broaden the scope of the case going forward").

Here, the Nation filed its Motion before any substantive hearings or rulings, less than nine months after the lawsuit commenced, and less than seven months after Plaintiff filed its First Amended Complaint.  Further, the Nation will not "broaden the scope of the case going forward." *Day*, 505 F.3d at 966.  Rather, the Nation seeks to intervene for the limited purpose of dismissing the action under Rules 12(b)(7) and 19.  The Nation's request to intervene at this stage of the proceedings is timely.

Second, in evaluating the prejudice factor, courts generally find no prejudice when intervention is sought before any substantive rulings have been made.  *See NW Forest Res. Council v. Glickman*, 82 F.3d 825, 837 (9th Cir. 1996).  Where "the motion was filed at an early stage of the proceedings before the Court substantively engaged in the issues presented, it appears no party would be prejudiced."  *Foundation Auto Holdings, LLC v. Weber Motors, Fresno, Inc.*, 2021 WL 5822933, at *4 (E.D. Cal. Dec. 8, 2021), *report and recommendation adopted,* 2022 WL 229857 (E.D. Cal. Jan. 26, 2022).

Prejudice is typically found only where intervention would cause serious disruption or serious prejudice.  *See, e.g., NAACP v. New York,* 413 U.S. 345, 368 (1973) (serious disruption); *United States v. Oregon,* 913 F.2d 576, 588–89 (9th Cir. 1990) (delicately balanced, multi-party settlement involving fishing rights, where "the possibility of this settlement unraveling is so prejudicial that to allow [intervention] at this late date would be tantamount to disaster"); *Alainz v. Tillie Lewis Foods,* 572 F.2d 657, 659 (9th Cir. 1978) (serious prejudice when motion was filed 17 days after a consent decree had become effective and was adjudicated after the decree was modified).  The Ninth Circuit has "observed that the second timeliness factor, prejudice to existing parties, is 'the most important consideration

in deciding whether a motion for intervention is untimely.'"  *Western Watersheds Project,* 22 F.4th at 838 (*citing Smith,* 830 F.3d at 857).

Here, the existing parties will not be prejudiced because the Nation seeks intervention before the court has made any substantive rulings.  Furthermore, intervention will not cause serious disruption, unravel previously-reached settlements, or otherwise prejudice any party.

The last timeliness factor requires that courts consider "'the length of, and explanation for, any delay in seeking intervention.'"  *Western Watersheds Project*, 22 F.4th at 839 (*citing Smith v. Marsh,* 194 F.3d 1045, 1051-52 (9th Cir. 1999)). "In evaluating this factor, courts are to measure the length of an intervenor's delay by reference to the point at which the intervenor knew, or reasonably should have known, that is interests were not being adequately represented by existing parties." *Id.* (*citing Smith v. L.A. Unified,* 830 F.3d at 859).

Furthermore, the delay factor, like the other timeliness factors, is to be determined in light of the circumstances surrounding and leading up to intervention.  In *NAACP*, for example, the court suggested that, to be timely, an intervenor did not necessarily have to move to intervene immediately, but rather could work in other ways to try to protect its interests.  *NAACP,* 413 U.S. at 367. Moreover, where, as here, "both the first and second timeliness factors weigh in favor of intervention," courts have found motions to be timely even in the face of long delays.  *Smith*, 830 F.3d at 861.

Here, the Nation had good cause for waiting to intervene.  The initial complaint in this action was filed on June 25, 2024, and the First Amended Complaint was filed on August 27, 2024.  While the original complaint *does not mention the Nation*, see ECF 1, the FAC explicitly targets the Nation's water rights, expressly alleging for the first time that "San Manuel … has not demonstrated water rights …." ECF 1 ¶ 110.   The FAC also targets BlueTriton's

continued water deliveries to the Nation.  *Compare* Complaint, ECF 1 ¶ 57 to ECF 24 ¶ 66; ECF 1 ¶ 75 to ECF 24 ¶ ¶ 96-97.

In the six months between the Complaint's filing and the filing of this Motion, the Nation has worked diligently and tirelessly to resolve the issues underlying this dispute.  When SOFA was filing its original and amended complaints in the summer of 2024 the Nation was attempting to resolve the impending shutoff of its water at Arrowhead Springs and to protect the interests at stake in this lawsuit.  The Nation contacted its Congressional Representatives and Senators on or around July 29, 2024.  Binney Dec. ¶¶2-4 (RJN Ex. 7).  It held conversations and meetings with SBNF staff during August, including a meeting with USFS officials on August 21, 2024.  *Id.* ¶¶8-11.  On August 29, 2024, SBNF officials toured Arrowhead Springs.  *Id.* ¶19.  Subsequent meetings between the Nation's leaders and USFS officials occurred in September, October, and November 2024.  *Id.* ¶20.  In November 2024 the Nation's representatives met with USDA staff members and Under Secretary Wilkes.  *Id.* ¶30.  In December 2024, and January 2025, the Nation's representatives again spoke with USDA officials, seeking to resolve the Nation's water issues.  *Id.* ¶¶36-37, 39-42.  The Nation also sought to resolve the concerns SOFA raised in this lawsuit, as the USFS had advised the Nation that the SOFA lawsuit complicated the agency's ability to help the Nation find a solution, suggesting the Nation work to remove the obstacle posed by this litigation.  Declaration of Eric Ustation in Support of Motion to Intervene, ¶¶ 6-7.  The Nation did precisely that, throughout the fall and winter of 2024, meeting with SOFA representatives on several occasions, and ultimately landing on a solution proposed to USFS, only to then be told by USFS officials that the Nation should not be communicating with SOFA.  *Id.* ¶¶ 8-13.

In short, until a few weeks ago the Nation was working diligently to protect the interests threatened in this lawsuit.  The Nation's decision to pursue other courses of action before filing this Motion was aimed at protecting tribal interests

and resolving the matters at issue here outside the courtroom thereby conserving judicial (and the Parties') resources.  *See also* Hickey Dec. ¶¶ 5-12 (RJN Ex. 3); Garton Dec. ¶ 5 (RJN Ex. 4); Little Dec. ¶¶ 16, 17, 19, 21 (RJN Ex. 5).  Having failed to secure its water supply through alternative means, given that this litigation is scheduled to proceed despite the stay issued in *BlueTriton v. USFS*, and because the Nation wants to intervene before any substantive hearings or rulings occur, the Nation now seeks to intervene to protect its interests.

The Nation's attempt to try to resolve its water situation on its own prior to filing for intervention is supported by the Ninth Circuit's admonition in *Kalbers v. U.S. D.O.J.,* 22 F.4th 816 (9th Cir. 2021).  The court there explained that "[i]n analyzing timeliness, we are also mindful of the balance of policies underlying intervention." *Id.* at 823.  On the one hand, the court discourages premature intervention that unnecessarily wastes judicial resources and increases litigation costs, and on the other hand it favors intervention which serves efficient resolution of disputes and broadens access to the courts.  *Id.* "Accordingly, while we construe the intervention motions that we receive liberally, we do not require hasty intervention." *Id.* (citations omitted).  Here, the Nation worked hard to resolve its issues outside of court, and thus to avoid premature intervention.  Permitting intervention now, after those efforts have been expended but before any substantive proceedings have occurred in this legal action, supports – and is supported by – the Ninth Circuit's balance of policies.  Thus, the Nation's delay, if any, is justified and its filing its timely.

### 2.   The Nation Has a Significant Protectable Interest Relating to Plaintiff's Claims

Rule 24 requires intervention when a proposed intervenor shows that the disposition of a case in its absence may "impair or impede [its] ability to protect its interest…." *See* Rule 24(a).  "[A] proposed intervenor 'has a significant protectable

interest in an action if (1) it asserts an interest that is protected under some law, and (2) there is a relationship between its legally protected interest and the plaintiff's claims.'" *Kalbers,* 22 F.4th at 827 (*citing Donnely v. Glickman,* 159 F.3d 405, 409 (9th Cir. 1998)).

The claims SOFA makes in its Complaint and the relief it seeks would, if accepted and granted respectively, significantly harm the Nation's interests. SOFA seeks to order the US Forest Service to vacate and set aside the permit that allows BlueTriton to divert and deliver water to the Nation (Complaint, Prayer for Relief ¶ 4); enjoin the USFS from issuing a SUP to the Nation until a new or supplemental environmental analysis has been performed, which could take years, *see* Complaint, Prayer for Relief ¶ 5; and order the USFS to remove, or require BlueTriton to remove, all of the physical infrastructure that enables water delivery to the Nation. Complaint, Prayer for Relief ¶ 7. Disposition of this case in the Nation's absence would thus significantly impair and impede its ability to protect numerous fundamental interests.

First, it would impede the Nation's ability to exercise its water rights, including riparian, pre-1914 appropriative, contractual, and aboriginal water rights. *See* D. Little Dec. Ex. 5 at RJN Ex. 5 pp. 266-267. The Complaint threatens these rights explicitly: "[The Nation] has not demonstrated water rights." Complaint, ECF 24 ¶110. It also threatens them implicitly because the relief sought would, *de facto*, eviscerate those rights by removing the infrastructure and voiding the permit necessary to exercise them. This lawsuit would alter the conditions that allow the Nation to receive its water, thereby impairing the Nation's water rights that the State Water Board acknowledged.

Second, the Nation's contractual right to receive water from BlueTriton is at stake here. *See* 1931 Contract, R. Garton Dec. Ex. 6 at RJN Ex. 4 p. 183; Letter Agreement, R. Garton Dec. Ex. 7 at RJN Ex. 4 pp. 189-192; Water Board Order at RJN Ex. 2 p. 30. The link between this lawsuit and the Nation's contractual rights

is direct: If the lawsuit succeeds, it will remove BlueTriton's water delivery infrastructure, revoke the USFS permit authorizing the Nation's water delivery, and nullify the Nation's contractual right to water.  *See* Complaint, Prayer for Relief ¶¶1-7.

Third, the Nation's tribal governmental operations, policies, and practices will be negatively impacted.  The Tribal governmental offices located at Arrowhead Springs will shut down if the action succeeds, Tribal governmental employees will not be able to work there, and the work of Tribal government will be directly impacted in the most immediate sense.  *See* D. Little Dec. ¶12(c) (RJN Ex. 5).  The Nation's provision of fire protection services through the fire station and fire hydrants located at Arrowhead Springs will be cut off.  *See* Garton Dec. ¶ 10 (RJN Ex. 4); D. Little Dec. ¶12(a), (c) (RJN Ex. 5); *see also Elliott v. White Mountain Apache Tribal Ct.*, 566 F.3d 842, 850 (9th Cir. 2009) (noting "the tribe's strong interest in ... prevention of forest fires, and preservation of its natural resources").  The Nation will no longer be able to facilitate firefighter training for Federal, State, Tribal and local firefighters on its property.  *See* Garton Dec. ¶10 (RJN Ex. 4); K. Alexander Dec. ¶4 (RJN Ex. 6); D. Little Dec. ¶12(e) (RJN Ex. 5).  The Nation will no longer be able to irrigate fire-defensible green spaces surrounding important facilities.  *See* Garton Dec. ¶6 (RJN Ex. 4); D. Little Dec. ¶12(d) (RJN Ex. 5).  The Nation also will be unable to use its Property for Tribal cultural purposes, recreation, meetings or events, nor will it be able to rent out facilities to third parties.  *See* D. Little Dec. ¶12(a)-(c) (RJN Ex. 5).  Consequently, the Nation will lose not only a meeting place that serves important Tribal cultural and governmental purposes, but also a source of revenue that funds Tribal operations and contributes to the Nation's economic development.  The Nation's native plant propagation program will wither due to a lack of water, and the cultural benefits that result from that program will be lost.  *See* Garton Dec. ¶6 (RJN Ex. 4).  In short, many important Tribal governmental practices and policies

will be impaired if this action succeeds.  Under *E.E.O.C. v. Peabody W. Coal Co.*, 610 F.3rd 1070, 1081-82 (9th Cir. 2010), that negative impact alone renders the Nation a required party.

Fourth, this action stands to directly affect the Nation's citizens' and other people's lives and property.  "The Arrowhead [Springs] property maintains a strategically located fire station and a system of fire hydrants…. The Nation provides water through its fire hydrants to local, state, and federal firefighters. Every firefighting agency in the region connects to the hydrants to fight fires in the area."  D. Little Dec. Ex. 5 at RJN Ex. 5 p. 271.  The risk of fire at Arrowhead Springs is real, and indeed, the current conditions at and around the Property are particularly susceptible to wildfire.  *See* K. Alexander Dec. ¶5 (RJN Ex. 6). Curtailing or ceasing water deliveries to Arrowhead Springs will interfere with local and regional firefighting efforts, putting people's lives and property at peril. *See* K. Alexander Dec. ¶3,4 (RJN Ex. 6); R. Garton Dec. ¶¶6, 8, 9, 10 (RJN Ex. 4).

In addition to all the above, the action threatens the Nation's sovereignty.  A tribe's sovereign claim of an interest in existing rights is precisely the type of interest that Rule 19 is intended to protect.  *See, e.g., Dine Citizens,* 932 F.3d at 852 (holding that a tribe had a legally-protected interest in procedural claims where the effect of a plaintiff's successful suit would be to impair an existing right that benefited the tribe); *Kescoli v. Babbitt*, 101 F.3d 1304, 1311 (9th Cir. 1996) (finding that "the Navajo Nation and the Hopi Tribe, by virtue of their sovereign capacity, have an interest in determining what is in their best interests" and holding that the tribes were "necessary" parties under Rule 19).

Here, the Nation's sovereignty is directly implicated by SOFA's Complaint in numerous ways.  An outcome favoring SOFA and halting water supplies for Arrowhead Springs would threaten the Property itself, thereby threatening the Nation's sovereign right to control and protect numerous important tribal resources including the Property, the facilities it houses, and the activities conducted on it, all

of which rely on water.  *See* K. Alexander Dec. ¶¶3, 4 (RJN Ex. 6); R. Garton Dec. ¶10 (RJN Ex. 4).  Such an outcome would also threaten the Nation's sovereign right to protect its cultural values like those implicated in the native plant propagation program currently operating at Arrowhead Springs, and the cultural activities that occur at the event center.  *See* D. Little Dec. Ex. 5 at RJN Ex. 5 p. 270.  It would also directly impact Tribal government operations by shutting down some of the Nation's administrative government offices and one of its economic development projects.  D. Little Dec. Ex. 5 at RJN Ex. 5 p. 256.  Here, as in *Dine Citizens,* "[t]he [Nation]'s interest is tied to" its self-governance, economic development, and control over "its own natural resources."  *Dine Citizens*, 932 F.3d at 856.  The Nation is a required party because several of its fundamental interests are at stake here.

In short, permitting disposition of this action without the Nation would impair and impede the Nation's ability to protect some of its most fundamental rights and interests, all of which are legally protected.

### 3.    Disposition of the Action May as a Practical Matter Impair or Impede the Nation's Ability to Protect Its Interests

Rule 24(a)(2) requires that the lawsuit's disposition may adversely affect an applicant's interest if intervention is not granted.  "The relevant inquiry is whether the consent decree 'may' impair rights 'as a practical matter' rather than whether the decree will 'necessarily' impair them."  *Los Angeles*, 288 F.3d at 401 (*quoting* Rule 24(a)(2)).  This third element follows from the second element, and the Nation's burden is minimal – a proposed intervenor need only show that impairment of its legal interest is *possible* if intervention is denied.  *See id.* at 401.

Here, the Nation's water, contract, governmental, property, and sovereign rights may, as a practical matter, be negatively impacted by this litigation in the myriad ways described above.  This litigation threatens the Nation's interests

directly and significantly, and the Nation cannot protect itself unless it is permitted to intervene.  Disposition of this action may adversely affect the Nation's interest if intervention is not granted.

### 4.    The Nation's Interests Are Not Adequately Represented by the Existing Parties

The fourth and final element necessary for intervention as of right is inadequate representation by the existing parties. In determining the adequacy of representation, the Ninth Circuit considers "(1) whether the interest of a present party is such that it will undoubtedly make all of a proposed intervenor's arguments; (2) whether the present party is capable and willing to make such arguments; and (3) whether a proposed intervenor would offer any necessary elements to the proceedings that other parties would neglect." *Callahan v. Brookdale Senior Living Communities, Inc.,* 42 F.4th 1013, 1020 (9th Cir. 2022) (*citing Arakaki v. Cayetano,* 324 F.3d 1078, 1086 (9th Cir. 2003)).

"The burden of showing inadequacy of representation is 'minimal' and satisfied if the applicant can demonstrate that representation of its interests 'may be' inadequate." *Citizens for Balanced Use v. Montana Wilderness Ass'n*, 647 F.3d 893, 898 (9th Cir. 2011) (reversing district court's denial of intervention) (*quoting Arakaki*, 324 F.3d at 1086).  *See Forest Conservation Council v. USFS,* 66 F.3d 1489, 1498 (9th Cir. 1995) ("it is sufficient to show that representation *may* be inadequate") (*citations omitted*), *abrogated on other grounds*, *Wilderness Soc. v. U.S. Forest Serv.*, 630 F.3d 1173, 1178 (9th Cir. 2011).  In determining adequacy of representation courts consider "whether the interest of a present party is such that it will undoubtedly make all the [proposed] intervenor's arguments; whether the present party is capable and willing to make such arguments; and whether the [proposed] intervenor would offer any necessary elements to the proceedings that other parties would neglect." *Forest Conservation Council,* 66

F.3d at 1498-1499. *Forest Conservation Council* acknowledged that where, as here, the USFS's interests in a lawsuit focus on whether it has met the procedural requirements of NEPA and NFMA, but the proposed intervenor has different, narrower, and/or more specific interests, the USFS cannot represent the proposed intervenor's interests. *Id.*

Here, too, the federal Defendants cannot adequately represent the Nation's interests. First, the federal government's interest is in defending its interpretation and application of the environmental laws Plaintiff cites, and on demonstrating that it met the Administrative Procedure Act's standards. *See* Complaint ¶5. That interest differs from the Nation's sovereign interest in ensuring that water delivery to tribal lands continues and that the water delivery infrastructure currently in place remains for the Nation's beneficial use. As in *U.S. Forest Service*, the federal defendants have no vested interest in the outcome and practical implications of this lawsuit; they have no interest in water delivery to Arrowhead Springs. The Nation, on the other hand, has a fundamental interest in the immediate and continuing delivery of water because its governmental operations, cultural practices, economic well-being, property, and personal safety of its officials, members, employees, and neighbors are at stake. Here, the Nation's interest is tied to its very ability to govern itself, sustain itself financially, and make decisions about its own natural resources. The federal defendants do not share these interests.

Defendants cannot adequately represent the Nation's interests in this matter not only because their interests differ from the Nation's, but also because they will not make all of the Nation's arguments, nor are they capable of doing so. Indeed, the USFS and SBNF asserted several times in the last year that they lack an adequate understanding of the Nation's use of water on the Arrowhead Springs property despite being told in detail, numerous times over the last year, how the Nation uses its property and water. *See* A. Binney Dec. ¶¶13, 22, 24, 37, 39, 42 (RJN Ex. 7); D. Little Dec. ¶¶10-13 (RJN Ex. 5).

Furthermore, when USFS officials did purport to discuss the Nation's need for water, they got it wrong. The USFS "mischaracterized and misstated the Nation's need for water at Arrowhead Springs" when it alleged that there were "no irrigated agricultural uses on the [Nation's] property." D. Little Dec. ¶11 (RJN Ex. 5). In fact, the Nation operates a Native plant propagation project there, *id.* ¶12(d), and uses some of the subject water to irrigate fire-defensible green space surrounding important facilities. *See* R. Garton Dec. ¶6 (RJN Ex. 4).

The USFS wrote that the "hotel and conference facility is not currently being operated," D. Little Dec. ¶11 (RJN Ex. 5), when in fact the Nation uses Arrowhead Springs daily, including, for example, "by the government departments housed in the administration building, the firefighters at the fire station, and the employees who operate the events that are held throughout the property." *Id.* ¶ 12(c). Defendants have demonstrated their inability to comprehend, retain, and articulate the information necessary to protect the Nation's interests and thus cannot adequately represent these interests.

Moreover, in the last few months the federal defendants have acted in ways that run directly counter to the Nation's interests, and there is no reason to believe they will suddenly alter that practice. For example, although the federal government has fiduciary obligations to protect tribal interests, the federal agencies involved in this dispute never notified the Nation that it was in danger of losing its water source at Arrowhead Springs. *See* D. Little Dec. ¶7 (RJN Ex. 5) ("The USFS never notified the Nation of its Notice of Denial, before or after the notice issued"). This omission was patently adverse to the Nation's interests given that "agency officials knew the Nation relied upon the water … and used it for a variety of purposes." *Id.* ¶8 (RJN Ex. 5). Similarly, the federal defendants failed to meet with the Nation or consult with its officials prior to issuing the Notice of Denial despite federal law and policy requiring them to do so, and even while knowing the

Notice of Denial "would leave the Nation without water for Arrowhead Springs." A. Binney Dec. ¶¶7, 10 (RJN Ex. 7).

Finally, the United States cannot adequately represent the Nation when it has competing interests. *See Pit River Home & Agric. Coop. Ass'n v. U.S.*, 30 F.3d 1088, 1101 (9th Cir. 1994). Here, the Nation seeks to ensure continued water delivery to Arrowhead Springs. However, in the related *BlueTriton v. USFS* action pending in this Court, the USFS is defending its denial of BlueTriton's and the Nation's access to the very infrastructure the Nation is seeking to safeguard in this case. In their answer in *BlueTriton v. USFS*, the federal defendants, including the USFS, "deny the allegation … that BlueTriton has any water rights sources on the San Bernardino National Forest." *See BlueTriton Brands LLC v. USFS*, ECF 33, p. 5, ¶¶11, 14. In so doing, the USFS denies the Nation's water rights as well. A federal agency that presents a position that is adverse to the Nation's interests in one lawsuit cannot adequately represent and defend those same interests in this related lawsuit.

Clearly, the Nation brings a point of view to the litigation not presented by either the plaintiff or the defendants. The parties to this litigation cannot and will not raise the Nation's arguments or protect its interests.

**B. Alternatively, Permissive Intervention Should Be Granted Pursuant to FRCP 24(b)(1)(B)**

Alternatively, the Court should grant permissive intervention pursuant to FRCP 24(b)(1)(B). Permissive intervention requires a showing of "(1) independent grounds for jurisdiction; (2) the motion is timely; and (3) the applicant's claim or defense, and the main action, have a question of law or a question of fact in common." *Los Angeles*, 288 F.3d at 403. Like intervention as of right, motions for permissive intervention are construed liberally in favor of the

moving party; neither the inadequacy of representation nor a direct interest in the subject matter of the action need be shown. *See id.* "In exercising its discretion," a court also considers "whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." FRCP 24(b)(3).

As to the first element, "the independent jurisdictional grounds requirement does not apply to proposed intervenors in federal-question cases when the proposed intervenor is not raising new claims." *Freedom from Religion Found., Inc. v. Geithner,* 644 F.3d 836, 844 (9th Cir. 2011). The Nation seeks intervention for the limited purpose of seeking dismissal. It does not assert any new claims. Thus, the "independent grounds for jurisdiction" element does not apply. *Los Angeles*, 288 F.3d at 403; *see* Complaint ¶6.

Second, as discussed extensively above at section III(A)(1) of this brief, this motion is timely and will not unduly delay or prejudice adjudication of the existing parties' claims. The issue of undue delay or prejudice are principal considerations in the Court's assessment of a motion for permission to intervene. *See Puget Soundkeeper All. v. United States Env't Prot. Agency*, 314 F.R.D. 516, 521 (W.D. Wash. 2016) ("Undue delay and unfair prejudice to the existing parties are among the relevant considerations when exercising this discretion"); 7C Wright, Miller & Kane, *Federal Practice and Procedure*, § 1913 at 379 (2d. ed. 1986).

Third, "[a] common question of law and fact between an intervenor's claim or defense and the main action arises when the intervenor's claim or defense 'relate[s] to the subject matter of the action … before the district court ….'" *Brumback v. Ferguson*, 343 F.R.D. 335, 346 (E.D. Wash. 2022) (*quoting Greene v. U.S.,* 996 F.2d 973, 978 (9th Cir. 1993)). Courts liberally construe whether an applicant's proposed pleading raises questions of law or fact in common with the main action in the movant's favor. *Silver v. Babbitt*, 166 F.R.D. 418, 433 (D. Az. 1994) (*citing Stallworth v. Monsanto Co.*, 558 F.2d 257, 269 (5th Cir. 1977)). Here, the Nation's arguments for dismissal focus on the very claims (and the very

same matters) that SOFA raises in its complaint. Indeed, the facts alleged in the Complaint are an essential component of the Nation's claims for dismissal.

Further, Rule 24(b) commonality is established when an intervening defendant's defense is "directly responsive" to a plaintiff's claim. *Kootenai Tribe of Idaho v. Veneman*, 313 F.3d 1094, 1110 (9th Cir. 2002) (abrogated on other grounds by *Wilderness Soc. v. U.S. Forest Serv.*, 630 F.3d 1173 (9th Cir. 2011)). Here, the Nation's response to the Complaint – a motion to dismiss – is "directly responsive" to SOFA's Complaint.

## IV.    CONCLUSION

For all the above reasons, the Nation satisfies the requirements for intervention as of right. Alternatively, the Court should exercise its discretion to allow the Nation's permissive intervention.

DATED: March 6, 2025                    Respectfully submitted,

                                        LAW OFFICE OF FRANK LAWRENCE

                                        By /S_____
                                            Frank Lawrence, Esq.
                                            Attorneys for Specially Appearing
                                            (Proposed) Intervenor Yuhaaviatam of San
                                            Manuel Nation

## <u>CERTIFICATION OF COMPLIANCE.  LR11-6.2</u>

The undersigned, counsel of record for proposed Intervenor, certifies that the Memorandum of Points and Authorities contains 6899 words, which complies with the word limit of L.R. 11-6.1.


DATED: March 6, 2025                    Respectfully submitted,

                                        LAW OFFICE OF FRANK LAWRENCE


                                        By /S_____
                                            Frank Lawrence, Esq.
                                            Attorneys for Specially Appearing
                                            (Proposed) Intervenor Yuhaaviatam of San
                                            Manuel Nation