# Exhibit 4

SOMACH SIMMONS & DUNN
A Professional Corporation
STUART L. SOMACH, ESQ. (SBN 90959)
MAXIMILIAN C. BRICKER, ESQ. (SBN 350150)
500 Capitol Mall, Suite 1000
Sacramento, CA 95814
Telephone: (916) 446-7979
Facsimile:  (916) 446-8199
ssomach@somachlaw.com
mbricker@somachlaw.com

MICHAEL W. DAUGHERTY, ESQ. (Co. Bar 49074)
*Pro Hac Vice* Forthcoming
RAMSEY L. KROPF, ESQ. (Co. Bar 21528)
*Pro Hac Vice* Forthcoming
1155 Canyon Blvd., Suite 110
Boulder, CO 80302
Telephone: (916) 446-7979
Facsimile: (916) 446-8199
mdaugherty@somachlaw.com
rkropf@somachlaw.com

Attorneys for [PROPOSED] Plaintiff-Intervenor
YUHAAVIATAM OF SAN MANUEL NATION,
a federally recognized Indian tribe, also federally
recognized as SAN MANUEL BAND OF MISSION INDIANS

# UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

### EASTERN DIVISION – RIVERSIDE

| | |
|---|---|
| BLUETRITON BRANDS, INC.,<br><br>           Plaintiff,<br><br>v.<br><br>UNITED STATES FOREST SERVICE,<br><br>RANDY MOORE, in his official capacity as Chief of the U.S. Forest Service,<br><br>CHRISTOPHER FRENCH, in his official capacity as Deputy Chief for the National Forest System of the U.S. Forest Service,<br><br>JENNIFER EBERLEIN, in her official capacity as Regional Forester for the Pacific Southwest Region of the U.S. Forest Service, | Case No.: 2:24-cv-09720-JGB-DTB<br><br>**DECLARATION OF RODNEY GARTON IN SUPPORT OF MOTION TO INTERVENE AND MOTION FOR PRELIMINARY INJUNCTION**<br><br>Hearing Date:   February 3, 2025<br>Hearing Time:  9:00 AM<br>Courtroom:      1<br>Judge: Hon. Jesus G. Bernal<br><br>Action Filed:  August 6, 2024 |

1  DANELLE HARRISON, in her official
   capacity as Forest Supervisor of the San
2  Bernardino National Forest of the
   U.S. Forest Service,
3
   MICHAEL NOBLES, in his official
4  capacity as Front Country District Ranger
   of the U. S. Forest Service,
5
                        Defendants.
6  ───────────────────────────────────
   YUHAAVIATAM OF SAN MANUEL
7  NATION, a federally recognized Indian
   tribe, also federally recognized as SAN
8  MANUEL BAND OF MISSION
   INDIANS,
9
             [Proposed] Plaintiff-Intervenor.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

───────────────────────────────────────────────
DECLARATION OF RODNEY GARTON IN SUPPORT OF MOTION TO
INTERVENE AND MOTION FOR PRELIMINARY INJUNCTION    Page 176    -2-

I, Rodney Garton, declare as follows:

1.     I am the Director of Operations for Arrowhead Springs for the Yuhaaviatam of San Manuel Nation, a federally recognized Indian tribe, also federally recognized as the San Manuel Band of Mission Indians (the Nation) and on whose behalf I submit this declaration. The facts set forth herein are based on my personal knowledge, and if called as a witness, I could and would testify competently thereto.

2.     I began working for the Nation in the position of Director of Operations for the Arrowhead Springs property (Arrowhead Springs), soon after the Nation reacquired the property as part of its ancestral land reclamation in or about May 2016. Prior to my employment by the Nation, I worked as the General Manager, Director of Operations of Arrowhead Springs under its previous owner, Campus Crusade for Christ. I have worked in various roles in facilities management for Arrowhead Springs for nearly 50 years, since April 1977.

3.     In my managerial role over the Arrowhead Springs property since 1977, I have become familiar with and have knowledge of the water resources upon which Arrowhead Springs and surrounding properties rely. I am also aware of the contracts entered and permits issued that relate to water deliveries to the property. I am aware that BlueTriton Brands, Inc. (BlueTriton) and its predecessors have diverted water from Strawberry Canyon through facilities that are partially located within the San Bernardino National Forest (SBNF) through a series of special use permits issued by the United States Forest Service (USFS). It is my understanding that BlueTriton and its predecessors have used the diverted water for commercial bottling purposes. BlueTriton and its predecessors also have delivered water to Arrowhead Springs.

4.     Indeed, the Nation and its predecessors have relied and continue to rely on the water supplies delivered by BlueTriton and its predecessors through its water conveyance facilities for nearly a century, based on a contract dated

September 26, 1931, a true and correct copy of which is attached hereto as **Exhibit 6**.  Due to ongoing legal controversies, the Nation and BlueTriton entered into a Letter Agreement on December 11, 2023, to amend BlueTriton's obligation to deliver water to Arrowhead Springs on an interim basis.  A true and correct copy of the Letter Agreement is attached hereto as **Exhibit 7**.  I participated on behalf of the Nation in the Negotiations of the Letter Agreement with BlueTriton.

5.      I am aware that the USFS has taken action that would effectively cut off the continued delivery of water to Arrowhead Springs.  I have reviewed the USFS' July 26, 2024 Notice of Denial and written demand for BlueTriton to cease operation of its water conveyance facilities within seven days, by August 2, 2024.  If implemented, this would have terminated BlueTriton's special use permit and all of BlueTriton's longstanding water deliveries to Arrowhead Springs.  After learning of the Notice of Denial (from BlueTriton, not the USFS), the Nation immediately engaged the federal agency and implored it to allow the water to continue to flow to Arrowhead Springs.  The effort was successful for a period, in that on August 2, 2024, the USFS granted a temporary authorization to BlueTriton until September 2, 2024, to allow BlueTriton to continue diverting water to the Nation.  On August 26, 2024, the USFS extended the temporary authorization for BlueTriton to divert water to the Nation until January 15, 2025.

6.      The Nation uses the water BlueTriton delivers to Arrowhead Springs for domestic irrigation of fire-defensive space, fire suppression, recreational, and cultural purposes.  The Nation also conducts native plant propagation on the property.  The water diversion facilities BlueTriton operates provide a safe and reliable water supply that meets these various needs.  The defensible green spaces constitute approximately 1% of the entire 2,000-acre property and are concentrated next to important facilities.

7.      The Nation has employed conservation practices designed to limit the use of water to the extent possible.  In a marked departure from the previous

DECLARATION OF RODNEY GARTON IN SUPPORT OF MOTION TO INTERVENE AND MOTION FOR PRELIMINARY INJUNCTION    Page 178    -4-

Exhibit 4

owner's practices, the Nation instituted water conservation measures after it purchased Arrowhead Springs in 2016. Specifically, the Nation ceased watering planted areas by approximately 40%. In addition, the Nation replenishes the watershed with water that is not used. Specifically, the Nation returns any unused water received from BlueTriton to the watershed through a tributary that flows into East Twin Creek. Strawberry Creek is also a tributary to East Twin Creek.

8.      The water supply delivered to Arrowhead Springs benefits not only the Nation, but the surrounding community, as the Nation and local, state, and federal firefighting agencies collaborate to protect the region from wildfires, and the water delivered to Arrowhead Springs is essential to this purpose.

9.      Fire risk at and around Arrowhead Springs is not merely theoretical, but real. In my position overseeing the operation of Arrowhead Springs, I am charged with knowing and teaching the history of the property, and I am aware of the fires that have plagued the area over time. The hotel facilities on the property were destroyed by fire three times prior to the 1940s, requiring the hotel facilities to be rebuilt. In addition to these fires, during the time that I worked at Arrowhead Springs, there were the 1980 Panorama Fire, 2002 Arrowhead Fire, and the 2003 Old Fire, which burned Strawberry Canyon and portions of the Arrowhead Springs property, including buildings and facilities. Additional notable fires around the Arrowhead property include the 1986 Glenwood, 1994 Highway 18, 1996 Waterman 3, 1996 Badger, 2017 Mile, and 2019 Hillside Fires. The preceding list does not include the smaller fires over the years within the area.

10.      In all the recent large and small fires, the Arrowhead property's hydrants have been used by local, state, and federal resources assigned to fight these fires. Arrowhead Springs' fire hydrants are supplied by water delivered by BlueTriton through a gravity fed system owned by the Nation. In addition, the rotary wing resources utilize the Arrowhead property's pond, the only dipping pond available on the "front country" between Hwy. 18 and Hwy. 330. Although every

fire season and year is different, based on my experience at Arrowhead Springs, I estimate that other agencies use the water approximately 4 to 6 times a year. The San Bernadino County Fire Protection District, the California Department of Forestry and Fire Protection (CalFire), and the USFS all share the Nation's water supply at Arrowhead Springs with the San Manuel Fire Department to combat wildfires in the foothills and front country areas. Without access to the Arrowhead Springs water, such firefighting operations will be adversely impacted. In addition, Arrowhead Springs is used for training firefighters and first responders year-round. Indeed, firefighters and other first responders from more than twenty city, state, federal, and other agencies receive training at Arrowhead Springs. Such training will be emasculated by the lack of BlueTriton water.

11. The USFS is keenly aware of the fire risk that plagues the area, including the SBNF, which includes Strawberry Canyon and abuts Arrowhead Springs. According to its own website for the SBNF, "the San Bernadino National Forest is historically one of the most wildfire prone forests in the country" and "fire seasons are longer and fire behavior often more extreme.

*See* https://www.fs.usda.gov/main/sbnf.fire. Without question, the decision by the USFS to deprive the Nation of the water upon which the Nation and others rely to fight wildfires, will imperil the Nation and the surrounding area. The decision will cause immediate harm to Arrowhead Springs, by damaging the value and integrity of the property and, without water supplies essential for wildfire protection, it will endanger people's lives and property.

12. There are no viable alternatives that could be timely and safely implemented by the January 15th water-shut off deadline. Arrowhead Springs is not connected to a municipal water source. I have assisted the Nation in determining the feasibility of connecting to municipal water and, with the input of outside consultants and in-house experts, the Nation has determined that such infrastructure would require years to design, obtain approvals and construct, with

investment of significant capital.  The nearest municipal water connection is over 6,000 linear feet down gradient.  Such connection will require the laying of pipe and numerous pump stations to reach the Arrowhead Springs' tanks that store water to be gravity-delivered throughout the property and will require approvals or agreements with the City of San Bernardino, the County of San Bernardino, and the San Bernardino Municipal Water District, as well as payment for the delivery of such water.  Without study or analysis, the USFS has suggested the Nation can truck in water to meet demands.  In fact, this is not a viable option.  The Nation's reservoirs that receive and hold the water for use at Arrowhead Springs (and into which BlueTriton Currently Delivers Water) are located at the very top of Arrowhead Springs, so they can gravity feed water to the property.  The reservoirs can only be reached by a narrow, steep and winding road and are, thus, in an area that is inaccessible by large water tanker trucks.  Moreover, such trucks are unlikely to be able to reach the property during a large wildfire when access is restricted and dangerous.  If the USFS cuts off water deliveries to Arrowhead Springs before the Nation can secure an alternate water supply, the Nation will be unable to properly maintain its property, let alone ensure there is water available for fire-fighting efforts.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed this 2nd day of January, 2025 at Iron County, Utah.


RODNEY GARTON

# EXHIBIT 6

Case ... Page 10 of 23 ...

GRANT DEED

CARRIE THOMAS, a widow, in consideration of Ten Dollars, to her in hand paid, the receipt of which is hereby acknowledged, does hereby GRANT TO Ethel Thomas, a single woman, all that real property in the County of San Bernardino, State of California, described as:

The South half of Lot 185, in Baldwin Lake Tract No. 1724, as per plat of said Tract of record in the office of the County Recorder of said County in Book 25 of Maps, at page 71 thereof.

SUBJECT TO taxes, assessments, conditions, restrictions, reservations, easements, rights and rights of way of record.

TO HAVE AND TO HOLD to the said grantee, her heirs or assigns forever.

WITNESS my hand this 16th day of October, 1934.

Consideration less than $100.                    Carrie Thomas

STATE OF CALIFORNIA        )
                           ) SS
COUNTY OF LOS ANGELES      )

On this 16th day of October, 1934, before me, the undersigned, a Notary Public in and for said County, personally appeared Carrie Thomas, known to me to be the person whose name is subscribed to the within instrument, and acknowledged that she executed the same.

WITNESS my hand and official seal.

(NOTARIAL SEAL)                    Vance C. Kibbe

                                   Notary Public in and for said County and State

No. 55. "Endorsed." Recorded at Request of Grantee, Dec 3 1934 at 11:12 A. M. in Book 1016, Page 303, Official Records, San Bernardino County, Calif. Fulton G. Feraud, County Recorder, By A. R. Schultz, Deputy. Fee $1.00.

                    Compared

          F. Cooley              E. Quinn

                o o o o o

THIS AGREEMENT made and entered into this 26th day of September, 1931, by and between ARROWHEAD SPRINGS CORPORATION, LTD., (formerly Arrowhead Springs Corporation), a corporation organized and existing under and by virtue of the laws of the State of Delaware, duly qualified to do business in the State of California, (hereinafter called "Arrowhead") and CALIFORNIA CONSOLIDATED WATER COMPANY, a corporation organized and existing under and by virtue of the laws of the State of Delaware, duly qualified to do business in the State of California, (hereinafter called "Consolidated"),

WITNESSETH:

WHEREAS, on the 6th day of August, 1930, the parties hereto entered into a certain agreement, which agreement was thereafter recorded in the office of the County Recorder of San Bernardino County, California, in Book 648, at page 122 of Official Records of said County; and

WHEREAS, the parties hereto have determined to enter into a new agreement, whereby each will acquire certain rights and will agree to perform certain obligations distinct and different from the rights and obligations existing under or on account of said agreement of August 6, 1930, (which agreement, for convenience, will be hereinafter referred to as the "principal agreement"),

NOW, THEREFORE, for and in consideration of the mutual covenants and agreements herein contained, the parties hereto do agree as follows:

First: Consolidated agrees that it will forthwith, upon the execution of this agreement, and at its own cost and expense, develop to the fullest reasonable extent all springs,

seepages and other sources of water, if reasonably available, existing in Strawberry Canyon and all lateral canyons opening into Strawberry Canyon, lying north of the northerly line of the south half of Section 31 and of Section 32, Township 2 North, Range 3 West, S.B.B. & M., and produce and continue to produce from said sources of water sufficient water to fill the pipe line built by Consolidated, under and in accordance with the terms of said principal agreement, in ordinary seasons of dry weather.

Second: Consolidated shall hereafter at all times conduct all water developed and saved by it in Strawberry Canyon, and in the lateral canyons northerly of said line established in paragraph First hereof, through the said pipe line, and agrees that all of the water so developed, saved and produced by it from said sources of supply shall be conducted through said pipe line, and not otherwise, to the point of delivery hereinafter referred to. Of all such water so developed and saved and conveyed through said pipe line, Consolidated shall be entitled to eighty per cent (80%) of the constant flow thereof and Arrowhead shall be entitled, without cost, to twenty per cent (20%) of the constant flow thereof. The point of delivery of said 20% of said water to which Arrowhead is entitled (which is the point of delivery referred to hereinabove in this paragraph) shall be a point in the aforesaid pipe line ten (10) feet north of the rectangular reservoir having dimensions of 50 x 100 feet back of the hotel building of Arrowhead. The method of measurement of said water, so that both Consolidated and Arrowhead shall receive their proportionate part thereof, as hereinabove set out, shall be agreed upon by and between an engineer designated by Arrowhead and an engineer designated by Consolidated. If the two engineers so designated shall fail to agree, then they shall designate a third engineer, who shall be impartial, and the decision of any two of the three engineers thus designated shall be binding upon the parties hereto as to the method of measurement of said water.

Third: Arrowhead grants to Consolidated any and all right, title or interest which Arrowhead now has to develop water from any and all sources whatever, whether surface, subterranean, seepage, or otherwise, in Strawberry Canyon and the lateral canyons northerly of the said northerly line of the said South half of said Sections 31 and 32 above described.

Arrowhead also grants to Consolidated all right, title or interest which it now has or heretofore had in or to the title to, or ownership of, any and all water that Consolidated has heretofore or may hereafter develop from any and all sources whatsoever in Strawberry Canyon and lateral canyons northerly of said northerly line of the south half of said Sections 31 and 32; subject, however, to the right of Arrowhead to have delivered to it by Consolidated at the point of delivery aforesaid, twenty per cent (20%) of all such water developed and saved by Consolidated.

The aforesaid grants are without warranty except the warranty that Arrowhead has not conveyed or transferred to any other person the same right, or any right, title or interest therein.

If, within three (3) years from the date of this agreement, Consolidated does not develop a flow of water in Strawberry Canyon and/or canyons lateral to it, southerly of said line above established, additional to the flow of water developed by Consolidated northerly of said established line, then Arrowhead shall be exclusively entitled, so far as Consolidated is concerned, to develop and produce such additional flow of water at any and all places southerly of said established line, provided that such development and production of water shall not affect or impair the right of Consolidated to develop and produce water northerly of said established line. In the event of the development of any water southerly of said established line, by either party hereto, and northerly of the

Exhibit 6. P. 010

south section lines of said Sections 31 and 32, Arrowhead and Consolidated shall each be entitled to an equal one-half part thereof. In the event of the development by Arrowhead of any water southerly of the south section lines of Sections 31 and 32, Arrowhead shall be entitled to the whole thereof, so far as Consolidated is concerned.

Fourth: It is understood and agreed that all of the covenants, terms and conditions of paragraph Fourth of said principal agreement are hereby agreed to and reaffirmed, except that the same shall be deemed to have been amended so as to substitute the words "eighty per cent (80%) of the water flowing through said pipe line" wherever reference is made to the water to which Consolidated is entitled, in lieu of the words "one-half of the water flowing through said pipe line," and except that the same shall be deemed to have been amended so as to substitute the words "twenty per cent (20%) of the water flowing through said pipe line" wherever reference is made to the water to which Arrowhead is entitled, in lieu of the words "one-half of the water flowing through said pipe line."

Fifth: Consolidated agrees that upon the execution of this agreement it will pay to Arrowhead the sum of fifteen thousand dollars ($15,000.00) towards the development by Arrowhead of water in Cold Water Canyon. Arrowhead agrees that said payment of $15,000.00 was induced by its promise, which it hereby obligates itself to perform, to actually commence the development of water in said Cold Water Canyon within one (1) year from the date hereof, and at its own cost (not exceeding said sum of $15,000.00) to diligently prosecute such work to completion; such work to be done in such manner and to involve the construction of such pipe lines, reservoirs and other facilities as Arrowhead may deem advisable.

Sixth: Except as amended hereby, said principal agreement shall not be affected hereby and each and every sentence, clause or paragraph of said principal agreement not amended hereby, and with which this agreement is not inconsistent, and particularly paragraphs Third, Fifth, Sixth, Seventh and Ninth of said principal agreement, are hereby reaffirmed, and the parties hereto agree that said paragraphs shall not in anywise be affected by anything contained in this agreement.

Seventh: Arrowhead does hereby grant, without warranty, to Consolidated the right to use one miner's inch constant flow of the water arising from Penyugal Springs, or from other springs in the vicinity thereof, but not for sale as mineral medicinal water, and does also hereby grant to Consolidated the necessary easement for a pipe line to run from said Penyugal Springs or vicinity to the reservoirs of Consolidated, the exact course and description of such easement to be hereafter agreed upon by the parties hereto. Consolidated does hereby agree that it shall not have any right to the hot water arising on the property of Arrowhead Springs Corporation, Ltd. other than the one miner's inch above described in this paragraph.

Eighth: WHEREAS, Consolidated has stated to Arrowhead that certain false and fraudulent representations were made by Arrowhead and/or by certain of its officers, agents and/or employees prior to and at the time of the purchase by Consolidated and/or California Consumers Company, its predecessor in interest, of the properties and business as set forth and described in that certain agreement of the 4th day of December, 1928, the Amendatory Contract of the same date, the Second Amendatory Contract of the 19th day of December, 1928, and the agreement of February 28, 1929, which agreements are recited in the principal agreement of August 6, 1930, and that Consolidated and California Consumers Company, its predecessor, relied upon such false and fraudulent representations in the making of all of such agreements and in the purchase of said properties; and

WHEREAS, Arrowhead has denied that any of such false or fraudulent representations were so made by it, or any of its officers, employees or agents, and the parties hereto desire to fully release and discharge any and all claims and causes of action arising on

Case 5:16-cv-01282-JGB-KK Document 16-8 Filed 03/08/25 Page 13 of 23 Page 306/012

account of any such alleged false or fraudulent representations.

NOW, THEREFORE, for and in consideration of the premises and of the covenants, terms and provisions of this agreement, the parties hereto do hereby fully and completely release and discharge each other of and from any and all causes of action, claims, demands or obligations arising out of or on account of any representations, false, fraudulent or otherwise, of any kind or nature, made or alleged to have been made by either party hereto, or any of their respective officers, agents or employes, in connection with or preliminary to, or otherwise affecting or having to do with, the transfer of the business and properties of Arrowhead to Consolidated or to California Consumers Company, a corporation, or in connection with the amount of water developed or to be developed upon the properties of Arrowhead or the amount of water sold by it, or the source of said water, or in connection with the execution of said principal agreement and/or this agreement, and do hereby release and discharge each other from any and all other obligations, causes of action, claims or demands of every kind or nature whatsoever arising out of, or on account of, or in any manner connected with, the sale by Arrowhead to Consolidated, or to California Consumers Company, of its water distribution business and certain water rights, as provided in said agreement of the 4th day of December, 1928, and subsequent agreements hereinbefore designated, except such as are contained in, or arise out of, or on account of the following:

(a)  The warranty deed of February 27, 1929, recorded on the 12th day of May, 1929, in Book 476, Page 175 of Official Records of San Bernardino County, California, as amended by said principal agreement of August 6, 1930;

(b) The principal agreement of August 6, 1930, as amended by this agreement;

(c)  The agreement dated January 2, 1931, executed by Arrowhead Springs Corporation and California Consolidated Water Company, entitled "Memorandum of Agreement," as amended by agreement of even date herewith.

(d) The agreement dated August 6, 1930, executed by Arrowhead Springs Corporation and California Consolidated Water Company, entitled "Special Distributors Agreement," as amended by agreement of even date herewith.

(e)  This agreement.

IN WITNESS WHEREOF, the parties hereto have caused this agreement to be executed by their respective officers, thereunto duly authorized, and their respective corporate seals to be hereto affixed, the day and year first above written.

(CORPORATE SEAL)

ARROWHEAD SPRINGS CORPORATION, LTD.

By  C. M. Rice, Vice-President

And J. C. Macfarland, Assistant Secretary

(CORPORATE SEAL)

CALIFORNIA CONSOLIDATED WATER COMPANY

By  S. C. MacPherson, Exec. Vice President

And  C. A. Werne, Asst. Secretary

```
(Prepared by _                              )
(Attorney's Approval                        )
(  Pillsbury,Madison & Sutro By _           )
(  Other Attorneys                          )
(  or  Lawler Degnan_                        )
(  Form previously approved by              )
(Description approved  J. Paul Jones        )
(R. of W. Approval _                        )
(Approved _                                 )
(Approved _                                 )
(Manager's Approval for Execution _         )
```

STATE OF CALIFORNIA  } SS

COUNTY OF LOS ANGELES }

On this 28th day of September, 1931, before me, Mary S. Alexander, a notary public in and for the said county and state, residing therein, duly commissioned and sworn, personally appeared C. M. Rice, known to me to be the Vice-President, and J. C. Macfarland, known to me to be the Assistant Secretary of ARROWHEAD SPRINGS CORPORATION, LTD., one of

the corporations that executed the foregoing agreement, known to me to be the persons who executed the foregoing agreement on behalf of such corporation, and acknowledged to me that such corporation executed the same.

IN WITNESS WHEREOF, I have hereunto set my hand and affixed my official seal the day and year in this certificate first above written.

Mary S. Alexander

(NOTARIAL SEAL)                    Notary Public in and for the County
                                   of Los Angeles, State of California

No. 70. "Endorsed." Recorded at Request of C. M. Rice, Dec 3 1934 at 1:01 P. M. in Book 1016, Page 303, Official Records, San Bernardino County, Calif. Fulton G. Feraud, County Recorder, By A. R. Schultz, Deputy. Fee $3.80.

Compared

F. Cooley                          E. Quinn

o o o o o

NOTICE

NON-RESPONSIBILITY

TO ALL WHOM IT MAY CONCERN:

NOTICE is hereby given that I, H. H. EASTWOOD, am the owner of certain premises described as follows, to-wit: Lot 34, Block 50, Tract 2439, of _ recorded in Book 34, page 78 of Official Records of San Bernardino County, State of California; That I have obtained knowledge that building is in course of construction on said property; that ten days have not elapsed since I obtained this knowledge; and that I will not be responsible for the construction of said building, or for the material or labor used or to be used therein, or for any alteration or repair thereof, or for any work done upon said building, or any addition thereto, or which has been performed, furnished or used in any manner or way upon said land, or upon the building thereon, or addition thereto, or which may hereafter be performed, furnished, or used upon said land, or building, or addition thereto, or for the service of any architect.

THAT HAL WILSON and HORTENCE WILSON are the purchasers of said property under a contract of purchase.

THAT _ is the lessee of said property.

No. and Street _                   H. H. Eastwood
STATE OF CALIFORNIA        )
                          ) SS
COUNTY OF SAN BERNARDINO   )

H. H. Eastwood being duly sworn deposes and says: That the above and within notice is a true copy of a notice posted on lot 34, block 50, tract 2439, Records of San Bernardino County, California, on the third day of December, 1934 by H. H. Eastwood and that the facts therein stated are true of his own knowledge.

H. H. Eastwood

Subscribed and Sworn to before me this 3rd day of December, 1934.

(NOTARIAL SEAL)                    Mae A. C. Fanning

                                   Notary Public in and for said County and State

STATE OF CALIFORNIA        )
                          ) SS
COUNTY OF SAN BERNARDINO   )

On this third day of December, A. D., 1934, before me, Mae A. C. Fanning, a Notary Public in and for said County and State, personally appeared H. H. Eastwood known to me to be the person whose name is subscribed to the within instrument, and acknowledged to me that he executed the same.

# EXHIBIT 7















December 11, 2023

Lynn R. Valbuena
Chairwoman
San Manuel Band of Mission Indians
26569 Community Center Drive
Highland, California 92346

***Re:    Letter Agreement Amending 80/20 Agreement During Interim Period***

Dear Chairwoman Valbuena,

This letter agreement ("***Letter Agreement***") temporarily amends and supplements the documents collectively referred to as the "***80/20 Agreement***" (as set forth on Schedule 1) between BlueTriton Brands, Inc. ("***BTB***") and the San Manuel Band of Mission Indians ("***Tribe***"; collectively with BTB, the "***Parties***"). The 80/20 Agreement concerns certain volumes of water delivered by BTB to the Tribe from Strawberry Creek, including diversions 1, 1A, 2, 3, 7, 7A, 7B, 7C, 8, 10, 11 and 12 (collectively, the "***Spring Sources***"), through the pipeline and other infrastructure owned by BTB that is located in part on the Tribe's Arrowhead Springs property ("***AHS***") and in part in the San Bernardino National Forest (the "***Infrastructure***").

This Letter Agreement addresses certain water deliveries to be made during the interim period commencing November 1, 2023 and ending on the earlier of (1) the date of any final and unappealable judgment, order or decision by any court of competent jurisdiction concerning the California State Water Resources Control Board ("***SWRCB***") Order WR 2023-0042 adopted on September 19, 2023 ("***Order***"), (2) settlement, withdrawal, or termination by BTB of any challenge to or appeal of the Order, or (3) termination of this Letter Agreement by the Tribe in accordance with the provisions hereof ("***Interim Period***"). The Tribe has the right to terminate this Letter Agreement at any time upon 30 days' written notice to BTB.

During the Interim Period only, the 80/20 Agreement is amended as follows:

1. BTB will deliver water to the Tribe from one or more of BTB's Spring Sources 1, 1A, 2, 3, 7, 7A, 7B, 7C, and/or 8 ("***Restricted Sources***"), upon receipt of and pursuant to monthly written delivery requests from the Tribe for use at AHS, in the form attached hereto as Exhibit A.

2. The Parties understand and agree that deliveries by BTB to the Tribe under this Letter Agreement satisfy BTB's requirement to deliver water to the Tribe from the Spring Sources under the 80/20 Agreement, including deliveries from the Spring Sources 10, 11 and 12 that are not covered by the Order (the "***Unrestricted Sources***").

BlueTriton Brands
900 Long Ridge Road, Building 2
Stamford, CT 06902

Mobile: (203) 461-5327
bluetriton.com
Page 189

3. Notwithstanding the provisions in Sections 1 and 2 of this Letter Agreement above, if BTB obtains interim relief from a court of competent jurisdiction or otherwise that allows BTB to collect water from the Restricted Sources for its own purposes, then during such period of interim relief, the terms of the existing 80/20 Agreement shall govern (*i.e.*, the Tribe shall be entitled to 20% of the water flowing through the pipeline; BTB may also elect to deliver to the Tribe any excess amounts from the Spring Sources that are not needed for BTB's business operations (as determined by BTB in its sole and absolute discretion from time to time)).

4. The Parties further agree that BTB is solely responsible for managing and determining which Spring Sources will be used to deliver water to meet the Tribe's monthly requests.

5. The Parties contemplate that all the water collected at Spring Sources 2, 3, and 8 will be used to provide water to meet the Tribe's requests for November 2023 and December 2023, and agree that the Tribe's requests can vary from month to month.

6. By no later than the 20th day of each month during the Interim Period, beginning December 20, 2023, the Tribe will send a written notice to BTB via email estimating its approximate estimated water request for the following calendar month, which may be, but is not required to be, stated as an estimated minimum and maximum quantity in gallons per minute, and shall be in the form attached hereto as Exhibit A.

7. By the 5th day of each month during the Interim Period, beginning December 5, 2023, the Tribe will send a written confirmation via email to BTB confirming that all water delivered to the Tribe during the prior calendar month was used at AHS, in the form attached hereto as Exhibit B.

8. The Tribe acknowledges and agrees that all water delivered by BTB to the Tribe pursuant to this Letter Agreement during the Interim Period will be measured and reported by BTB in accordance with the existing meters and the requirements of the Order, and that following written notification to the Tribe, BTB may disclose only the Tribe's written water delivery requests and confirmations specified in paragraphs 6 and 7 hereof, to the extent such disclosure is legally required by a governmental agency (such as the SWRCB or the United States Forest Service) or compelled by a court of competent jurisdiction. The Parties agree that the amount reported by BTB as delivered to the Tribe shall be the amount measured

BlueTriton Brands
900 Long Ridge Road, Building 2
Stamford, CT 06902



BLUETRITON

Mobile: (203) 461-5327
bluetriton.com

           

for the applicable time period on the meter located at the point where water is diverted from the main pipeline to the Tribe for use at AHS and, if agreed to by the Parties, any additional water provided by BTB from its tank farm. This Letter Agreement does not authorize BTB to disclose any other non-public documents or information from or belonging to the Tribe in connection with this Letter Agreement to any other entity (other than as required by a governmental agency, court order, or other legal process).

9.  This Letter Agreement outlines only the Parties' agreement regarding the right to the delivery of water under the 80/20 Agreement during the Interim Period and, as such, does not in any manner affect, diminish or enlarge any water rights or water contract entitlements of the Parties, and neither BTB nor the Tribe will assert this Letter Agreement as evidence of any water rights (appropriative, riparian, aboriginal, reserved, prescriptive, or otherwise). Notwithstanding the above, each Party has the right to enforce this Letter Agreement and to use this Letter Agreement as evidence in such enforcement. Further, the Parties agree that this Letter Agreement, BTB's deliveries to the Tribe pursuant to this Letter Agreement, and/or the Parties' execution of this Letter Agreement: (i) are not a waiver of any BTB claim or position that the water it delivers to the Tribe via its pipeline is groundwater (and/or collected under pre-1914 appropriative surface water rights) as defined by California law; (ii) are not a waiver of any of the Tribe's claims or positions as to its water rights, its rights under the 80/20 Agreement or its sovereign immunity; and (iii) are not an admission or waiver as to any finding of fact or legal conclusion contained in the Order. The Parties agree that BTB's deliveries pursuant to the Order do not waive any rights or claims to the use of water at AHS by the Tribe pursuant to any lawful water rights it may hold under federal or state law.

10. During the Interim Period, BTB may suspend deliveries under this Letter Agreement if ordered to do so by a governmental agency (such as the SWRCB or United States Forest Service) or a court of competent jurisdiction (and during any such period, BTB's performance hereunder shall be deemed excused). BTB shall notify the Tribe in writing upon receipt of such order.

11. BTB has no duty to litigate or challenge the Order, and may settle, withdraw, or otherwise terminate any challenge to or appeal of the Order at any time, as determined by BTB in its sole and absolute discretion.

BlueTriton Brands
900 Long Ridge Road, Building 2
Stamford, CT 06902



BLUETRITON

Mobile: (203) 461-5327
bluetriton.com

           

Exhibit 7, P. 018

Page 191

Exxhibit 4

12. Notwithstanding anything to the contrary in this Letter Agreement, the Parties agree that BTB shall not suspend or reduce deliveries of water to the Tribe to less than 20% of the water flowing through the pipeline unless required to by a governmental agency or court of competent jurisdiction. If BTB is required to reduce the delivery of water to the Tribe to less than 850,000 gallons per month, then the terms of Section 13 below shall apply.

13. The Parties agree that if BTB is forced by a governmental agency or court of competitive jurisdiction to take an action that suspends or reduces the delivery of water from the Spring Sources to the Tribe to an amount less than 850,000 gallons a month, BTB shall (1) reasonably cooperate with the Tribe's efforts to obtain water from the Spring Sources that BTB has suspended deliveries from, including any efforts to obtain a special use permit from the United States Forest Service or to otherwise assert the Tribe's water rights or other legal remedies, and/or (2) negotiate in good faith a commercially reasonable agreement with the Tribe to allow the Tribe to use the infrastructure used by BTB to deliver water from the Spring Sources to AHS; provided, however, in all events, the Tribe shall reimburse BTB for all actual and documented third party costs incurred by BTB in connection therewith, and BTB shall have no obligation to take any action that would unreasonably waive, impair, limit, prejudice, or otherwise affect BTB's ability to defend its water rights with respect to the Spring Sources.

14. BTB and the Tribe acknowledge and agree that, except as expressly provided herein, the 80/20 Agreement remains in full force and effect, and that the Parties' performance under this Letter Agreement during the Interim Period is not a default or breach of the 80/20 Agreement.

15. All communications required under this Letter Agreement will be made by email to:

To BTB:      Trey Mixon (louis.mixon@bluetriton.com)
             Tam Pham  (tam.pham@bluetriton.com)
             Christopher Hasbrouck (chasbrouck@hunton.com)

To Tribe:    Rod Garton (rodney.garton@sanmanuel-nsn.gov)
             Michelle Hickey (Legal@sanmanuel-nsn.gov and
             michelle.hickey@sanmanuel-nsn.gov)

BlueTriton Brands
900 Long Ridge Road, Building 2
Stamford, CT 06902



BLUETRITON

Mobile: (203) 461-5327
bluetriton.com

           

Exhibit 7, P. 019

Page 192

Exxhibit 4

Please acknowledge the Tribe's agreement to the terms of this Letter Agreement by signing and dating in the space provided below.

We look forward to continuing our productive relationship with the Tribe. Please let us know if you have any questions.

Very truly yours,

Brendan X. O'Rourke
Vice President, Natural Resources, BlueTriton Brands, Inc.

cc:     Hih Song Kim, Esq.
        Christopher W. Hasbrouck, Esq.
        Robert E. Donlan, Esq.
        J. Michelle Hickey, VP Associate General Counsel
        Rodney Garton, Dir. Operations & Development - Arrowhead Springs

*Acknowledged and Agreed as of December 11, 2023*

San Manuel Band of Mission Indians

By:     _Lynn R. Valbuena_
Name: Lynn R. Valbuena
Title:  Chairwoman

BlueTriton Brands
900 Long Ridge Road, Building 2
Stamford, CT 06902



Mobile: (203) 461-5327
bluetriton.com

       ORIGIN    

Exhibit 7, P. 020

Page 193

Exxhibit 4

SCHEDULE 1

DOCUMENTS

1. Agreement dated August 6, 1930, and recorded in the Official Records of San Bernardino County on August 21, 1930 at Book 648, Page 122.

2. Agreement dated September 26, 1931, and recorded in the Official Records of San Bernardino County on December 3, 1934 at Book 1016, Page 303.

3. Letter Agreement dated June 2, 1993.

4. Acknowledgment and Consent to Assignment dated as of July 1, 2016.

BlueTriton Brands
900 Long Ridge Road, Building 2
Stamford, CT 06902


BLUETRITON

Mobile: (203) 461-5327
bluetriton.com

           

EXHIBIT A

FORM OF MONTHLY REQUEST

In accordance with the terms of the Letter Agreement dated November ___, 2023,
the San Manuel Band of Mission Indians ("Tribe") hereby requests that Blue
Triton Brands ("BTB") deliver approximately _____ of water to
the Tribe for its reasonable and beneficial riparian uses at AHS during the month
of _____ 20___.  The Tribe's submission of this written request to BTB
for water delivery to the Tribe's Arrowhead Springs property does not constitute a
waiver of the Tribe's sovereign immunity nor is it an admission or waiver as to
any finding of fact or legal conclusions contained in the WR 2023-0042
("Order"), adopted by the California State Water Resources Control Board
(SWRCB) on September 19, 2023.  The Tribe is not a party to, nor is bound by
the terms of the Order, and therefore, to the extent the Order refers to the Tribe's
land ownership or riparian water rights claims, the Order does not adjudicate,
resolve or quantify any of the Tribe's claims or rights as they relate to land and
water.

BlueTriton Brands
900 Long Ridge Road, Building 2
Stamford, CT 06902



**BLUETRITON**

Mobile: (203) 461-5327
bluetriton.com

           

Exhibit 7, P. 022

Exhhibit 4

EXHIBIT B

FORM OF MONTHLY CONFIRMATION

In accordance with the terms of the Letter Agreement dated November ___, 2023,
the San Manuel Band of Mission Indians ("Tribe") hereby confirms that all water
delivered by Blue Triton Brands ("BTB") to the Tribe during the month of
_____ 20___ was used by the Tribe for its reasonable and beneficial
riparian uses at AHS. The Tribe's submission of this written request to BTB for
water delivery to the Tribe's Arrowhead Springs property does not constitute a
waiver of the Tribe's sovereign immunity nor is it an admission or waiver as to
any finding of fact or legal conclusions contained in the WR 2023-0042
("Order"), adopted by the California State Water Resources Control Board
(SWRCB) on September 19, 2023. The Tribe is not a party to, nor is bound by
the terms of the Order, and therefore, to the extent the Order refers to the Tribe's
land ownership or riparian water rights claims, the Order does not adjudicate,
resolve or quantify any of the Tribe's claims or rights as they relate to land and
water.

BlueTriton Brands
900 Long Ridge Road, Building 2
Stamford, CT 06902



BLUETRITON

Mobile: (203) 461-5327
bluetriton.com

