1
2
3
4
5
6

Rachel S. Doughty (Cal. Bar No. 255904)
rdoughty@greenfirelaw.com
Cyrus J. Moshiri (Cal. Bar No. 315717)
cmoshiri@greenfirelaw.com
GREENFIRE LAW, PC
2478 Adeline Street, Suite A
Berkeley, CA 94703
Ph/Fax: (510) 900-9502

7   *Attorneys for SAVE OUR FOREST ASSOCIATION, INC.*

8

9              **UNITED STATES DISTRICT COURT**

10           **CENTRAL DISTRICT OF CALIFORNIA**

11            **EASTERN DISTRICT – RIVERSIDE**

12
13

SAVE OUR FOREST ASSOCIATION, INC.

14                Plaintiff,

15        vs.

16   UNITED STATES FOREST SERVICE, *et al.*,

17

18

19                Defendants.

20

| | |
|---|---|
| Case No.: 5:24-cv-01336-JGB-DTB | |

**PLAINTIFF'S OPPOSITION TO YUHAAVIATAM OF SAN MANUEL NATION'S MOTION TO INTERVENE FOR LIMITED PURPOSE OF MOTION TO DISMISS**

Date:  July 7, 2025
Time: 9:00 a.m.
Judge: Hon. Jesus G. Bernal
Dept:   Courtroom 1, Riverside

Action Filed: June 25, 2024
Trial Date:  March 31, 2026

21
22
23
24
25
26

27                    1

28   **PLAINTIFF'S OPPOSITION TO YUHAAVIATAM OF SAN MANUEL NATION'S MOTION TO INTERVENE FOR LIMITED PURPOSE OF MOTION TO DISMISS – 5:24-cv-01336-JGB-DTB**

# TABLE OF CONTENTS

I.   INTRODUCTION ...................................................................................... 9

II.  FACTUAL BACKGROUND ................................................................... 10

   A.   BTB Diversion History and Effect ................................................. 10
   B.   USFS-Issued SUPs .......................................................................... 11

       1.   Pre-2018 SUPs ......................................................................... 11
       2.   2018 Decision to Issue SUP to Nestlé .................................... 12
       3.   Nestlé 2018 SUP ...................................................................... 12
       4.   BTB 2022 & 2023 SUPs .......................................................... 13
       5.   Termination of the SUP ........................................................... 13

   C.   The Nation's interest in BTB's infrastructure is as a successor in interest
        with purchase of the Arrowhead Hotel Property ........................... 14
   D.   The Nation has declined to engage with the SWRCB or the USFS ............ 15
   E.   There is no evidence of impact to cultural resources .................... 16
   F.   There is overwhelming evidence of harm to natural resources from BTB's
        diversion ......................................................................................... 17
   B.   The Instant Motion and the Nation's Motion in the Related Case ............... 18

III. ARGUMENT ............................................................................................ 18

   A.   Rule 24 Does Not Require Limited Intervention for the Nation .................. 18

       1.   The Nation's Motion Is Not Timely. ....................................... 19
       2.   The Nation Does Not Have A Significantly Protectable Interest Relating
            to the Property or Transaction. ............................................... 20
       3.   Disposition of this Action Will Not Impair or Impede the Nation's
            Ability to Protect Its Claimed Interests. ................................ 25
       4.   UFSF Can Adequately Represent the Nation. ......................... 25

   B.   Questions Regarding the Nation's Status as a Necessary Party and its
        Sovereign Immunity Are Not Currently Before the Court. ...................... 26

**PLAINTIFF'S OPPOSITION TO YUHAAVIATAM OF SAN MANUEL
NATION'S MOTION TO INTERVENE FOR LIMITED PURPOSE OF
MOTION TO DISMISS – 5:24-cv-01336-JGB-DTB**

# TABLE OF AUTHORITIES

## CASES

*Alto v. Black*, 738 F.3d 1111 (9th Cir. 2013) ........................................................... 26

*Am. Greyhound Racing, Inc. v. Hull*, 305 F.3d 1015 (9th Cir. 2002) ..................... 21

Arakaki v. Cayetano, 324 F.3d 1078 (9th Cir. 2003) ................................................ 19

*BlueTriton Brands v. United States Forest Service et al*., No. CV 24-9720
    JGB (DTBx) (C.D. Cal. filed Aug. 4, 2024) ("*BTB v. USFS*") ............. 10, 18

*Cachil Dehe Band of Wintun Indians of the Colusa Indian Cmty. v.
    California*, 547 F.3d 962 (9th Cir. 2008) ................................................... 20

*Chinook Indian Nation v. Zinke,* No. C17-5668 RBL, 2018 WL 4095089
    (W.D. Wash. Aug. 28, 2018) ......................................................................... 20

*Deschutes River All. v. Portland Gen. Elec. Co.*, 1 F.4th 1153 (9th Cir.
    2021) .............................................................................................................. 21

*Dine Citizens Against Ruining Our Env't v. Bureau of Indian Affs*., 932 F.3d
    843 (9th Cir. 2019) ................................................................................... 21, 26

*Donaldson v. United States*, 400 U.S. 517, 91 S. Ct. 534, 27 L.Ed.2d 580
    (1971) ................................................................................................. 20, 21, 24

*Kescoli v. Babbitt*, 101 F.3d 1304 (9th Cir. 1996) ................................................... 22

*Makah Indian Tribe v. Verity*, 910 F.2d 555 (9th Cir. 1990) ...................... 20, 24, 25

*Maverick Gaming LLC v. United States*, 123 F.4th 960 (9th Cir. 2024) ............... 20

*Maverick Gaming LLC v. United States*, No. 3:22-CV-05325- DGE, 2023
    WL 2138477 (W.D. Wash. Feb. 21, 2023) ................................................... 22

*Metcalf v. Daley*, 214 F.3d 1135 (9th Cir.2000) ...................................................... 23

*Oregon Nat. Res. Council Action v. U.S. Forest Serv*., 445 F. Supp. 2d 1211
    (D. Or. 2006) ................................................................................................. 23

**PLAINTIFF'S OPPOSITION TO YUHAAVIATAM OF SAN MANUEL
NATION'S MOTION TO INTERVENE FOR LIMITED PURPOSE OF
MOTION TO DISMISS – 5:24-cv-01336-JGB-DTB**

*Scotts Valley Band of Pomo Indians of Sugar Bowl Rancheria v. U.S.*, 921
F.2d 924 (9th Cir. 1990) ................................................................. 19

*Scotts Valley Band of Pomo Indians v. United States Dep't of the Interior*,
337 F.R.D. 19 (D.D.C. 2020) .......................................................... 22

*Shermoen v. United State*s, 982 F.2d 1312 (9th Cir. 1992) ..................... 25

*Smith v. L.A. Unified Sch. Dist.,* 830 F.3d 843 (9th Cir. 2016) .............. 19

*Southwest Center for Biological View v. Babbitt*, 150 F.3d 1152 (9th Cir.
1998) ................................................................................................ 26

*W. Watersheds Project v. Haaland*, 22 F.4th 828 (9th Cir. 2022) ........... 19

*Wilderness Society v. U.S. Forest Service*, 630 F.3d 1173 (2011) .......... 10, 20

*Yocha Dehe v. United States Dep't of the Interior*, 3 F.4th 427 (D.C. Cir.
2021) ................................................................................................ 22

**RULES**

Fed. R. Civ. P. 19(a)(1) ............................................................................ 21

Fed. R. Civ. P. 24(a) .................................................................... passim

Fed. R. Civ. P. 24(a)(2) ............................................................................ 25

Fed. R. Civ. P. 24(b) ....................................................................... 26, 27

Fed. R. Civ. P. 24(b)(1)(B) ...................................................................... 24

4

**PLAINTIFF'S OPPOSITION TO YUHAAVIATAM OF SAN MANUEL
NATION'S MOTION TO INTERVENE FOR LIMITED PURPOSE OF
MOTION TO DISMISS – 5:24-cv-01336-JGB-DTB**

**TABLE OF EXHIBITS**

|  |
|---|

**Exhibits to Declaration of Rachel Doughty**

| No. | Authentication | Date | Document Title | Short Title |
|---|---|---|---|---|
| 1 | Doughty Decl. | 02/11/2010 | Local Agency Formation Commission County of San Bernardino ("LAFCO") Resolution No. 3088 | LAFCO Res. 3088 |
| 2 | Doughty Decl. | 10/10/2006 | LAFCO 3053 Staff Report | LAFCO Staff Report 3053 |
| 3 | Doughty Decl. | 01/25/2019 | *Newspaper article: San Bernardino Sells its Share of Historic Del Rosa Mutual H2O Co. for Less than $2,300* | San Bernardino Sentinel Article |
| 4 | Doughty Decl. | 08/05/2022 | Story of Stuff Project Closing Brief | SOS Closing Brief |
| 5 | Doughty Decl. | 05/16/2022 | Sur-Rebuttal Testimony of Gregory Allord (SOS 288) | Allord Sur-Rebuttal Testimony |
| 6 | Doughty Decl. |  | Curriculum Vitae of Gregory Allord | Allord Qualifications |
| 7 | Doughty Decl. |  | Gregory Allord Slides | Allord Slides |
| 8 | Doughty Decl. | Feb. 2023 | Special Use Permit No. FCD728503, issued to BTB | 2023 SUP |
| 9 | Doughty Decl. | Sep. 2005 | USDA Land Management Plan, Part 1 San Bernardino National Forest (excerpts) | 2005 Land Management Plan |
| 10 | Doughty Decl. |  | USFS Handbook 2509.22 (excerpts) |  |
| 11 | Doughty Decl. | 07/27/2018 | USFS Decision Memo Regarding Nestle | 2018 USFS Memo |
| 12 | Doughty Decl. | 09/29/2023 | USFS Letter to BTB Regarding the 2021 Cease and Desist Order | 2023 USFS Letter |

5

**PLAINTIFF'S OPPOSITION TO YUHAAVIATAM OF SAN MANUEL NATION'S MOTION TO INTERVENE FOR LIMITED PURPOSE OF MOTION TO DISMISS – 5:24-cv-01336-JGB-DTB**

| No. | Authentication | Date | Document Title | Short Title |
|---|---|---|---|---|
| 13 | Doughty Decl. | 11/20/2023 | Second USFS Letter to BTB Regarding the 2021 Cease and Desist Order | 2023 USFS Letter Second Request |
| 14 | Doughty Decl. | 03/01/2024 | USFS Letter to BTB Requesting Missing Information | 2024 USFS Letter |
| 15 | Doughty Decl. | 03/25/2024 | USFS Letter to BTB Reiterating Request for Missing Information | 2024 USFS Letter Second Request |
| 16 | Doughty Decl. | 04/18/2024 | USFS Letter to BTB Third Request for Missing Information | 2024 USFS Letter Third Request |
| 17 | Doughty Decl. | 04/24/2024 | USFS Letter to BTB Fourth Request for Missing Information | 2024 USFS Letter Fourth Request |
| 18 | Doughty Decl. | 05/04/2024 | USFS Letter to BTB Regarding Insufficient Information | 2024 USFS Insufficient Evidence Letter |
| 19 | Doughty Decl. | 06/21/2024 | USFS Second Letter to BTB Regarding Insufficient Information | 2024 USFS Second Insufficient Evidence Letter |
| 20 | Doughty Decl. | 07/26/2024 | USFS Notice to BTB Terminating SUP | 2024 SUP Termination |
| 21 | Doughty Decl. | 10/14/2021 | Newspaper article: Arrowhead Bottler: Most Water Piped from National Forest is Returned to Ground or Supplied to Tribe | 2021 Desert Sun Article |
| 22 | Doughty Decl. | 05/14/2024 | BTB Letter to USFS Regarding SUP Termination | 2024 BTB Letter re Termination |
| 23 | | | **Intentionally Omitted** | |

6

**PLAINTIFF'S OPPOSITION TO YUHAAVIATAM OF SAN MANUEL NATION'S MOTION TO INTERVENE FOR LIMITED PURPOSE OF MOTION TO DISMISS – 5:24-cv-01336-JGB-DTB**

| No. | Authentication | Date | Document Title | Short Title |
|---|---|---|---|---|
| 24 | Doughty Decl. | 01/03/2025 | Motion to Intervene of Yuhaaviatim of San Manuel Nation; Motion for Order Shortening Time (ECF 64) | Tribe Motion to Intervene |
| 25 | Doughty Decl. | 01/03/2025 | Declaration of Paul Hamai In Support of Motion to Intervene an Motion for Preliminary Injunction (ECF 65-10) | Hamai Decl. |
| 26 | Doughty Decl. | 01/14/2025 | Order Granting Yuhaaviatam of San Manuel Nation's Motion to Intervene (ECF 91) | Order Granting Intervention, BTB v. USFS |
| 27 | Doughty Decl. | 01/03/2025 | Declaration of Alexandra McCleary in Support of Motion to Intervene and Preliminary Injunction (ECF 65-9) | McCleary Decl. |
| 28 | Doughty Decl. | 08/24/2018 | Special Use Permit No. FCD728501 | Nestle 2018 SUP |
| 29 | Doughty Decl. | Aug. 2022 | Special Use Permit No. FCD728502 | BTB 2022 SUP |
| 30 | Doughty Decl. | 08/01/2023 | Special Use Permit No. FCD728503 | BTB 2023 SUP |
| 31 | Doughty Decl. | 12/11/2023 | Letter Agreement Amending 80/20 Agreement During Interim Period (ECF 65-8) | 2023 Letter Agreement |
| 32 | Doughty Decl. | 05/20/2016 | News Article: *San Manuel Buys Landmark Arrowhead Springs Property in San Bernardino* | 2016 Desert Sun Article |
| **Exhibits to Declaration of Steve Loe** | | | | |
| No. | Authentication | Date | Document Title | Short Title |
| A | Loe Decl. | 12/17/2021 | Declaration of Steve Loe | Loe Declaration |

7

**PLAINTIFF'S OPPOSITION TO YUHAAVIATAM OF SAN MANUEL NATION'S MOTION TO INTERVENE FOR LIMITED PURPOSE OF MOTION TO DISMISS – 5:24-cv-01336-JGB-DTB**

| No. | Authentication | Date | Document Title | Short Title |
|-----|----------------|------|----------------|-------------|
| B | Loe Decl. | 12/17/2021 | Declaration of Steve Loe (SOS 031) | Loe Declaration SOS |
| C | Loe Decl. | 4/8/2022 | Sur-Rebuttal Testimony of Steve Loe (SOS 282) | Loe Sur-Rebuttal |
| D | Loe Decl. | 12/17/2021 | Loe Sur-Rebuttal Slides (SOS 283) | Loe Slides |
| E | Loe Decl. | 2/23/2015 | Loe Letter to SBNF Regarding Strawberry Creek Emergency | 2023 Loe SBNF Letter |
| F | Loe Decl. | 1/31/1987 | 1986 Water Rights Report | 1986 Water Rights Report |
| G | Loe Decl. | Sep. 1987 | 1987 Water Rights Report | 1987 Water Rights Report |

### Exhibits to Declaration of Hugh Bialecki

| No. | Authentication | Date | Document Title | Short Title |
|-----|----------------|------|----------------|-------------|
| 1 | Bialecki Decl. | 02/10/2022 | Email from San Manuel Tribe to State Water Resources Control Board | 2022 Tribe Email to SWRCB |
| 2 | Bialecki Decl. | 11/18/2009 | LAFCO Resolution No. 2942 | LAFCO Resolution No. 2942 |
| 3 | Bialecki Decl. | 2023 | Water Extraction Recordation for Arrowhead | 2023 Extraction Record |
| 4 | Bialecki Decl. | 2016 - 2021 | Prior Water Extraction Records for Arrowhead | Prior Extraction Records |

**PLAINTIFF'S OPPOSITION TO YUHAAVIATAM OF SAN MANUEL NATION'S MOTION TO INTERVENE FOR LIMITED PURPOSE OF MOTION TO DISMISS – 5:24-cv-01336-JGB-DTB**

I.      Introduction

The Administrative Procedure Act ("APA") establishes the right to judicial review of unlawful federal agency action and waives federal sovereign immunity to ensure the vindication of that right. Pursuant to this right of judicial review, Plaintiff Save Our Forest Association ("Plaintiff" or "SOFA") challenges the U.S. Forest Service's ("USFS") decision to grant BlueTriton Brands, Inc. ("BTB") a permit to occupy the San Bernardino National Forest ("SBNF") lands and BTB's unlawful diversion of water from SBNF Strawberry Creek and its tributary Springs ("Strawberry Creek"). The Yuhaaviatam of San Manuel Nation ("Nation") has moved to intervene in this case for the sole purpose of moving to dismiss Plaintiff's claims under the theory that its water delivery contract with BTB is a significantly protectible interest such that the Nation is a required party but also reserves its sovereign immunity and does not consent to be sued, seeking dismissal.

The Nation's claimed interests fail to meet the threshold for a "significantly protectable" interest required by law. The land at issue lies within a national forest managed by the federal government, not within tribal territory. The Nation has no ownership or jurisdictional interests in Strawberry Creek or its tributary springs. In addition, there is no relationship between the Nation's legal interests in its contract with BTB and the claims at issue in this case. Plaintiffs are not seeking an order directing the Service to conclude that any activity by the Nation is unlawful or barring the Nation from applying for its own Special Use Permit (SUP). The Nation's interest in barring UFSF from engaging in discreet, federal law mandates is not an interest that is "protectable under law."

The Nation's proposed limited intervention for purposes of dismissal would eliminate Plaintiff's right to judicial review of unlawful governmental action,

**PLAINTIFF'S OPPOSITION TO YUHAAVIATAM OF SAN MANUEL NATION'S MOTION TO INTERVENE FOR LIMITED PURPOSE OF MOTION TO DISMISS – 5:24-cv-01336-JGB-DTB**

potentially not just in Strawberry Canyon but over the 7.4 million acres in Southern California claimed as ancestral territory by The Nation. Although the Ninth Circuit generally interprets the rule for intervention "broadly in favor of proposed intervenors," that rationale does not apply here. *Wilderness Society v. U.S. Forest Service*, 630 F.3d 1173, 1179 (2011). The courts favor broad intervention because it promotes the efficient resolution of issues and expands access to the courts. However, the Nation's motion does not advance these goals as it aims solely to dismiss legitimate legal claims under the guise of immunity—an immunity it has not sought in the related case *BlueTriton Brands v. United States Forest Service et al*., No. CV 24-9720 JGB (DTBx) (C.D. Cal. filed Aug. 4, 2024) ("*BTB v. USFS*"). Rather than promoting efficiency or fairness, the intervention would undermine Plaintiff's access to justice by preventing the Court from addressing the merits of Plaintiff's claims altogether.

## II.    Factual Background

### A.    BTB Diversion History and Effect

Since around 1930 BTB and its predecessors in interest, have operated and maintained water diversion structures in the **Strawberry Creek Watershed** (also referred to as **Strawberry Canyon**) within the SBNF. **Strawberry Creek** is tributary to **East Twin Creek** and the Santa Ana River. The West Fork of Strawberry Creek originates in the San Bernardino National Forest ("**SBNF**") with its headwaters in Township 2 North Range 3 West (T2N R3W) ("**Headwaters Springs**"). Strawberry Creek flows approximately three miles, into Township 1 North Range 3 and 4 West (T1N R3W and R4W), which is where the Arrowhead Hotel is located.

**PLAINTIFF'S OPPOSITION TO YUHAAVIATAM OF SAN MANUEL NATION'S MOTION TO INTERVENE FOR LIMITED PURPOSE OF MOTION TO DISMISS – 5:24-cv-01336-JGB-DTB**

BTB's present-day spring diversions are from the Headwaters Springs and from a complex of springs (10, 11, 12) which are located, like the Headwaters Springs, in the drainage area of a tributary of Strawberry Creek, but at a lower elevation (the "**Cienega Springs**"). Both the Headwaters Springs and the Cienega Springs are located entirely within the SBNF. All of the water at issue in this case is diverted from the West Fork of Strawberry Creek Watershed, which is within the Strawberry Creek Watershed, and all within the SBNF.

The present-day engineering of the water diversion system in Strawberry Canyon started in 1929 and 1930. The system expanded over the years with the addition and deepening of boreholes, larger pipes, and more points of diversion. The only present-day diversion structure in Strawberry Canyon is BTB. Only BTB and its predecessors have ever held a Special Use Permit ("**SUP**") to divert water from Strawberry Canyon. *See* Doughty Declaration, filed herewith, Exhs. 4 to 7, Loe Declaration, filed herewith, Exhs. A to D.

BTB is party to a contract, originating from a water rights dispute in the early 1930s, that requires BTB to deliver 20% of whatever water it diverts off of federal land to the party owning the Arrowhead Springs Hotel. Doughty Decl, Exh. 4, The Hotel Property is presently owned by the Nation, which acquired it in 2016. Doughty Decl. ¶8.

//

//

**B. USFS-Issued SUPs**

**1. Pre-2018 SUPs**

USFS first issued an SUP to divert water in Strawberry Canyon in 1931 to Arrowhead & Puritas Waters Inc. and Arrowhead Springs Corporation (collectively

**PLAINTIFF'S OPPOSITION TO YUHAAVIATAM OF SAN MANUEL
NATION'S MOTION TO INTERVENE FOR LIMITED PURPOSE OF
MOTION TO DISMISS – 5:24-cv-01336-JGB-DTB**

"**Arrowhead**") for the purpose of "constructing and maintaining pipelines." There is
no evidence of water diversion from Strawberry Canyon by anyone prior to 1929.
Doughty Decl. Ex. 4, pp. 17-24.

    **2.**      **2018 Decision to Issue SUP to Nestlé**

    On July 27, 2018, Forest Ranger Joseph Rechsteiner signed a decision memo
("**2018 Decision Memo**"), Doughty Decl., Exh. 11, memorializing his decision to
issue a new SUP to the public company Nestlé, a subsidiary of public company
Nestlé, S.A., to operate and maintain existing diversion structures in Strawberry
Canyon. The 2018 Decision Memo allowed issuance of an SUP of 3 years' term
with two one-year discretionary renewals. The 2018 Decision Memo also stated that
"[i]f the Land Management Plan requirements can be met, and the applicant has a
valid state water right, then the access and infrastructure that facilitates water
extraction can be authorized."

    **3.**      **Nestlé 2018 SUP**

    On August 24, 2018, Nestlé's representative and Ranger Rechsteiner signed
the three-year SUP authorized by the 2018 Decision Memo, which SUP would
expire on August 24, 2021 ("**Nestlé 2018 SUP**") (FCD728501). Doughty Decl., Exh.
28. The contents of the Nestlé 2018 SUP specified that the permit was not assignable
or transferable. *Id*. at p. 2 (I.H.). The 2018 SUP stated: "Any change in control of the
business entity [holding the permit] shall result in termination of this permit." *Id.* at
p. 3 (I.J.2.) The contents of the Nestlé 2018 SUP also stated "[t]his permit does not
confer any water rights on the holder. . . . The United States reserves the right to
place any conditions on installation, operation, maintenance, and removal of
facilities to . . . divert, store, or convey water on National Forest System lands
covered by this permit that are necessary to protect public property, public safety,

**PLAINTIFF'S OPPOSITION TO YUHAAVIATAM OF SAN MANUEL
NATION'S MOTION TO INTERVENE FOR LIMITED PURPOSE OF
MOTION TO DISMISS – 5:24-cv-01336-JGB-DTB**

1   and natural resources on National Forest System lands in compliance with applicable

2   law." Doughty Decl. Exh. 28 at p. 12 (VIII.H).

3       **4.    BTB 2022 & 2023 SUPs**

4       On August 18, 2022, Acting Ranger Joseph Jordan signed a SUP for BTB,

5   FCD728502 ("**BTB 2022 SUP**"). Doughty Exh. 29. This SUP expired six days later

6   on August 24, 2022. On February 21, 2023, the Forest Service and BTB executed a

7   second SUP, FCD728503 ("**BTB 2023 SUP**"). Doughty Exh. 30. The BTB 2023

8   SUP contained similar recitations and entries regarding water rights as the BTB

9   2022 SUP.

10      The BTB 2023 SUP, by its own terms, expired on August 24, 2023, with a

11  provision that "[a]pplications for a new permit must be submitted at least 6 months

12  prior to expiration of this permit." *Id.* at p. 2 (I.D.). It also states the holder "shall"

13  comply with state environmental laws. *Id.* at p. 7 (V.A.). Upon termination, it is

14  BTB's responsibility to "remove all structures and improvements [. . .] within a

15  reasonable period prescribed by the authorized officer and shall restore the site to the

16  satisfaction of the authorized officer." *Id.* at p. 12 (VII.E.).

17      **5.    Termination of the SUP**

18      BTB requested renewal of the BTB 2023 SUP some time in 2024 ("**2024**

19  **Renewal Application**"). The USFS demanded certain information from BTB, which

20  it was not forthcoming in providing. *See* Doughty Decl. ¶¶16-20. On May of 2024,

21  BTB provided information the USFS making clear that (1) it delivered part of its

22  water to the Tribe, and (2) that the Tribe was not a party to the SUP. In response to

23  questions from the USFS regarding the 2024 Renewal Application, BTB sent the

24  USFS a statement of the Nation, including the sentence: "The Tribe is not a party to,

25

26

27                                          13
    **PLAINTIFF'S OPPOSITION TO YUHAAVIATAM OF SAN MANUEL
28       NATION'S MOTION TO INTERVENE FOR LIMITED PURPOSE OF
            MOTION TO DISMISS – 5:24-cv-01336-JGB-DTB**

1  nor is it bound by the terms of the [BTB 2023 SUP] or the [SWRCB Order]."

2  Doughty Decl. Exh. 22, p. 15.

3       On July 26, 2024, the USFS sent BTB a "Notice of Denial of Application for

4  Use and Occupancy of National Forest Lands; Termination of Special Use Permit

5  FCD728503 [the BTB 2023 SUP]" ("**Termination Letter**"), which notified BTB

6  that "all use of Forest System lands, including the operation and maintenance of a

7  water collection/water transmission system on USFS lands, must stop immediately,"

8  block flows through the pipeline within seven days, and prepare an infrastructure

9  removal plan within 12 weeks.

10  **C. The Nation's interest in BTB's infrastructure is as a successor in interest
     with purchase of the Arrowhead Hotel Property**

11

12       The Nation purchased the former Arrowhead Hotel in 2016. Doughty Decl.

13  ¶8. The Arrowhead Hotel property is not state or federal reservation land. *Id.* ¶8.

14  BTB delivered some portion of the water it diverts from federal land to the

15  Arrowhead Hotel Property pursuant to an agreement from the 1930s, when BTB's

16  predecessor in interest first diverted water from Strawberry Canyon and first

17  obtained a SUP from the USFS. Doughty Decl., Exh. 4, pp. 23-24. This delivery has

18  continued to the present, with the BTB agreeing to deliver 20% of the diverted water

19  to the Hotel Property, notwithstanding the terms of its SUPs. *See* Doughty Decl.

20  Exh. 22, p. 13, Exh. 25. BTB and the Nation amended the 1930s agreements on

21  December 11, 2023. Again, notwithstanding the limitations of the BTB 2023 SUP,

22  the amended agreement, committed BTB to continue to deliver 20% of whatever

23  water it diverted from Strawberry Canyon to the Hotel Property. Doughty Decl. Exh.

24  31.

25

26

27  14

28  **PLAINTIFF'S OPPOSITION TO YUHAAVIATAM OF SAN MANUEL
    NATION'S MOTION TO INTERVENE FOR LIMITED PURPOSE OF
    MOTION TO DISMISS – 5:24-cv-01336-JGB-DTB**

**D. The Nation has declined to engage with the SWRCB or the USFS**

At multiple times the Nation has been made aware of the controversy surrounding the water it receives from BTB by virtue of having acquired the Arrowhead Springs Hotel:

1. In 2016, the Tribe purchased the Arrowhead Springs Hotel, which was on offer for $60 million. Doughty Decl. ¶8. Presumably due diligence performed in that transaction would have unearthed LAFCO documents and entitlements discussing water sources other than Strawberry Canyon as those identified for development of the property. Doughty Decl. ¶7, Bialecki Decl. ¶¶ 13-14. In 2016, the validity of BTB's (then Nestlé's) occupation was being challenged in federal court, in a lawsuit that was filed on October 13, 2015. (ECF 6, ¶2).

2. In 2021, a representative of the Nation declined to comment to the Desert Sun regarding delivery of water to the Nation through the BTB infrastructure. Doughty Decl. Exh. 21.

3. On February 10, 2022, the Nation declined to engage in the hearing of the SWRCB regarding the water BTB diverts from the SBNF. Bialecki Decl. ¶ 11.

4. A December 11, 2023, agreement between the Nation and BTB made clear that BTB might lose its right to occupy USFS land. See Doughty Decl. Exh. 31. In May 2024, BTB wrote to the USFS, with a statement from the Nation attached, which included the sentence: "The Tribe is not a party to, nor is it bound by the terms of the [BTB 2023 SUP] or the [SWRCB Order]." Doughty Decl. Exh. 22, p. 15.

**PLAINTIFF'S OPPOSITION TO YUHAAVIATAM OF SAN MANUEL NATION'S MOTION TO INTERVENE FOR LIMITED PURPOSE OF MOTION TO DISMISS – 5:24-cv-01336-JGB-DTB**

5.  The Nation has never submitted an application for its own SUP to the
USFS. Doughty Decl. ¶21.

**E.  There is no evidence of impact to cultural resources**

There is no evidence that decommissioning the BTB infrastructure or
restoring Strawberry Canyon's riparian ecosystem will harm culture resources. Gary
Earney, a certified Paraprofessional Archaeologist with the USFS, who was also
responsible for managing the SUPs for the diversion structures in Strawberry
Canyon from 1982 to 2007 states:

> Cultural resource presence is unlikely, from the headwaters down to
> the Forest property line at Arrowhead Springs Resort/Coldwater
> Canyon due to the steep terrain on both sides of the creek, thick and
> almost impassable vegetation on the hillsides on both sides of the
> creek, and the dynamic nature of the stream flows during heavy
> rain/snow melt events that I personally saw be intense enough to
> lower the stream bottom by a good 10 feet in one afternoon--removing
> trees at the same time. Isolated hunting, fishing and gathering would
> have been conducted along the actual stream bottom, but camps
> would have been restricted to milder terrain down around the hot
> springs areas of the Resort, off Forest. The creek flushed almost
> annually from winter rains, which would have removed/destroyed
> isolated artifacts or evidence of human use/habitation along the creek
> bottom, which would have been highly unlikely anyway due to the
> aforementioned reasons.

Earney Decl. ¶ 5.

16
**PLAINTIFF'S OPPOSITION TO YUHAAVIATAM OF SAN MANUEL
NATION'S MOTION TO INTERVENE FOR LIMITED PURPOSE OF
MOTION TO DISMISS – 5:24-cv-01336-JGB-DTB**

In fact, decommissioning is likely to improve resource conditions, including flow in Strawberry and East Twin Creeks. Loe Decl., ¶ 12-17.

In support of its Motion to Intervene in *BTB v. USFS*, the Nation submitted a declaration from its Director of Cultural Resources Management stating:

> The Nation's ancestors used the natural hot springs located throughout the Arrowhead Springs property, which were considered by them to be uniquely sacred and medicinal. The cold water flowing through the property, including Strawberry Creek, was also important to Maara'yam (Serrano) people through time, due to the dependability of this water source and its capacity to support a variety of flora and fauna.

Doughty Decl. Exh. 27, ¶8. No mention is made of use of the Headwaters or Cienega Springs.

**F. There is overwhelming evidence of harm to natural resources from BTB's diversion**

The SBNF was founded on February 25, 1893, with the primary purpose of protecting the watershed and timber supply for the surrounding communities. Prior to BTB's diversions, the United States Geological Survey ("**USGS**") and other sources documented that Strawberry Creek and its tributary springs were historically perennial, flowing even in the dry months and supporting fish and a lush riparian fauna and flora. Strawberry Creek is a tributary to the Santa Ana River and part of the Santa Ana River Watershed. The USGS documented that Strawberry Creek is a recharge source for the Bunker Hill Basin. The dry and diminished Strawberry Creek has led to impaired riparian fauna and flora and a creek that cannot support fish, like the native Speckled Dace, as fish need water to survive. BTB's diversions have left Strawberry Creek with only intermittent pooling water and fractured habitats. Water-

17

**PLAINTIFF'S OPPOSITION TO YUHAAVIATAM OF SAN MANUEL NATION'S MOTION TO INTERVENE FOR LIMITED PURPOSE OF MOTION TO DISMISS – 5:24-cv-01336-JGB-DTB**

dependent flora like alders and willows no longer line the upper reaches of
Strawberry Creek. Because BTB has withdrawn so much water, the species observed
in the 1920s are gone from the Canyon. The USFS has rated each stretch of the
Headwaters and Cienega Springs–public resources on public lands set aside for the
protection of watersheds and habitat–as in poor condition as a direct result of BTB's
diversions. Loe Decl. ¶¶2-17; Doughty Decl. Exh 4; Bialecki Decl. ¶¶4-7, 12.

### B.    The Instant Motion and the Nation's Motion in the Related Case

In the related *BTB v. USFS*, the Nation also moved to intervene, and this
Court granted intervention. *See* Doughty Decl. ¶ 25. Notably, the Nation did not in
that case assert its sovereign immunity but instead waived it for purposes of
litigation. Doughty Decl. ¶ 25. Here, the Nation filed its motion to intervene for the
<u>sole</u> purpose of moving to dismiss, it asserts its sovereign immunity, and it contends
that it "cannot protect itself unless it is permitted to intervene" so it can move to
dismiss. ECF No. 38-2 at 18. The Nation's two positions—waiving its sovereign
immunity for purposes of *BTB v. USFS* and not here, are directly contrary to each
other. The USFS's management of the same resources—the Headwater and Cienega
Springs—are at issue. The Nation asserts it has an "ancestral territory [that] covered
over 7.4 million acres of land, including present-day Antelope Valley on the west,
southwest Mojave Desert to the north, portions of the San Gabriel and San
Bernardino mountains in the center, the Inland Empire to the south, and the City of
Twentynine Palms to the east." Doughty Decl., Exh. 27, ¶4.

## III.   Argument

### A.    Rule 24 Does Not Require Limited Intervention for the Nation.

A party seeking mandatory intervention under Fed. R. Civ. P. 24(a) must meet
the following four requirements: (1) the applicant must timely move to intervene;

18

**PLAINTIFF'S OPPOSITION TO YUHAAVIATAM OF SAN MANUEL
NATION'S MOTION TO INTERVENE FOR LIMITED PURPOSE OF
MOTION TO DISMISS – 5:24-cv-01336-JGB-DTB**

(2) the applicant must have an interest relating to the property or transaction that is the subject of the action; (3) the applicant must be situated such that disposition of the action may impair or impede the party's ability to protect that interest; and (4) the applicant's interest must not be adequately represented by other parties. Fed. R. Civ. P. 24(a)(2); *W. Watersheds Project v. Haaland*, 22 F.4th 828, 835 (9th Cir. 2022); *Scotts Valley Band of Pomo Indians of Sugar Bowl Rancheria v. U.S.*, 921 F.2d 924 (9th Cir. 1990). "Failure to satisfy any one of the requirements is fatal to the application." *Arakaki v. Cayetano*, 324 F.3d 1078, 1083 (9th Cir. 2003). The Nation fails to meet the requirements for mandatory intervention under Rule 24.

### 1.    The Nation's Motion Is Not Timely.

When considering a motion to intervene, courts in the Ninth Circuit consider three factors: (1) the stage of the proceeding; (2) prejudice; and (3) the reasons for the delay. *Smith v. L.A. Unified Sch. Dist.,* 830 F.3d 843, 854 (9th Cir. 2016). Plaintiff will be significantly prejudiced should the Nation be permitted to intervene. The sole purpose of the intervention is to dismiss the case, eliminating Plaintiff's right to judicial review. And while the Nation suggests that it delayed in filing its motion because it was attempting to "resolve its water situation on its own prior to filing for intervention," Nation's Mot. to Intervene at 14, ECF No. 38-2, the record reflects that eight years have elapsed between when the Nation purchased Arrowhead Springs and Plaintiff filed the instant lawsuit, during which time the Nation has known that its access to water from BTB's pipeline was tenuous and contested, and that USFS could revoke or modify access at any time, yet the Nation did not apply for its own SUP, did not perfect its alleged water rights, and did not resolve its present concerns. Doughty Decl. ¶¶5-9, 20, 21. The Nation has failed to act to protect its rights, yet it seeks to intervene in this lawsuit for the sole purpose of

19

**PLAINTIFF'S OPPOSITION TO YUHAAVIATAM OF SAN MANUEL NATION'S MOTION TO INTERVENE FOR LIMITED PURPOSE OF MOTION TO DISMISS – 5:24-cv-01336-JGB-DTB**

moving to dismiss Plaintiff's case, which is brought in the public interest, entirely. This would grossly disadvantage Plaintiff by denying its members the right to challenge this unlawful agency action. *Chinook Indian Nation v. Zinke,* No. C17-5668 RBL, 2018 WL 4095089, at *2 (W.D. Wash. Aug. 28, 2018) (Court may consider the reasons for delay and the Tribe's failure to act to protect its rights by applying for an SUP or through other means as persuasive). As a result, the public would be stripped of its opportunity to vindicate a public right.

### 2. The Nation Does Not Have A Significantly Protectable Interest Relating to the Property or Transaction.

With respect to the second of the four requirements listed above, the applicant must show specifically that its interest relating to the property or transaction is a "significantly protectable" interest. *Donaldson v. United States*, 400 U.S. 517, 531, 91 S. Ct. 534, 27 L.Ed.2d 580 (1971). The interest must be "protectable under some law" and there must be "a relationship between the legally protected interest and the claims at issue." *See Wilderness Society*, 630 F. 3d 1173, 1179 (9th Cir. 2011). The mere fact that the outcome of Plaintiff's litigation "may have some financial consequences for the non-party tribe is not sufficient to make" the Nation a required party, however. *Cachil Dehe Band of Wintun Indians of the Colusa Indian Cmty. v. California*, 547 F.3d 962, 971-72 (9th Cir. 2008). The interest must be "more than a financial stake." *Makah Indian Tribe v. Verity*, 910 F.2d 555, 558 (9th Cir. 1990); *Maverick Gaming LLC v. United States*, 123 F.4th 960, 983 (9th Cir. 2024) (J. Miller, concurring) ("a competitive injury, by itself, is not enough to make a tribe a required party."). The Nation is therefore not a required party to this action.

In *Donaldson*, the Supreme Court rejected a motion to intervene on the grounds that the proposed intervenor lacked a "protectable interest" in the proceeding. There, the IRS issued a summons to Donaldson's past employer seeking records that

**PLAINTIFF'S OPPOSITION TO YUHAAVIATAM OF SAN MANUEL NATION'S MOTION TO INTERVENE FOR LIMITED PURPOSE OF MOTION TO DISMISS – 5:24-cv-01336-JGB-DTB**

included Donaldson's personal tax information. *Donaldson*, 400 U.S. at 522-23. He had an interest, because the employer's records might reveal illegal activity, but his interest was not "protectable" because the records were not his, and he had no proprietary or legal right to interfere with his previous employer's disclosure to the IRS. *Id*. at 530. Donaldson did not own the records, and he had no legal privilege or other right to keep his former employer from giving them to the IRS. *Id.* The Court should deny the Nation's motion under Rule 24(a)(2) for the same reason: the Nation does not have a protectable interest related to Plaintiff's claims, which arise under federal statutes that mandate USFS to manage environmental resources within the National Forest System in a manner that ensures their long-term health and sustainability. To the extent that the Court finds that the Nation has asserted any legally protected interest, the interest is purely financial, thus there is no relationship between that interest and the claims which focus exclusively on administrative, ministerial acts. Several factors support this conclusion.

First, the challenged agency actions do not authorize any activity on tribal land, nor do they implicate tribal sovereignty or self-governance. Although not identical, federal rules 19(a)(1) and 24(a)(2) are similar in that courts consider whether the land at issue was owned by the intervening tribe or whether there were other facts and circumstances that clearly implicated tribal sovereignty, self-governance, and self-determination in reviewing both. *See Deschutes River All. v. Portland Gen. Elec. Co.*, 1 F.4th 1153, 1163 (9th Cir. 2021) ("DRA challenges the operation of a large hydroelectric project co-owned and co-operated by the Tribe, and located partly on the Tribe's reservation."); *Am. Greyhound Racing, Inc. v. Hull*, 305 F.3d 1015, 1027 (9th Cir. 2002) (gaming on tribal lands); *Dine Citizens Against Ruining Our Env't v. Bureau of Indian Affs*., 932 F.3d 843, 858 (9th Cir. 2019) (coal

**PLAINTIFF'S OPPOSITION TO YUHAAVIATAM OF SAN MANUEL
NATION'S MOTION TO INTERVENE FOR LIMITED PURPOSE OF
MOTION TO DISMISS – 5:24-cv-01336-JGB-DTB**

1    mine and power plant on Navajo Nation land); *Maverick Gaming LLC v. United*

2    *States*, No. 3:22-CV-05325- DGE, 2023 WL 2138477, at *2 (W.D. Wash. Feb. 21,

3    2023) (gaming on tribe's reservation); *Kescoli v. Babbitt*, 101 F.3d 1304, 1307 (9th

4    Cir. 1996) ("Although the mine complexes are located on the Navajo Nation's

5    reservation, the Navajo Nation and the Hopi Tribe are joint owners of some of the

6    subsurface minerals."). In this case, the challenged activity does not take place on

7    the Nation's land, but instead it involves the diversion of water from a national forest

8    for bottling and distribution outside of the watershed. The Nation has no land

9    ownership or legal easements at stake in this lawsuit.

10        Second, the challenged agency actions do not implicate any permit granted to

11    the Nation, and the Nation is not a third-party beneficiary of BTB's Special Use

12    Permit.[1] Doughty Decl. Exh 30, p. 4 (section IV.C). Nor will Plaintiff's claims

13    prevent the Nation from applying for its own permit or attempting to perfect its

14    alleged historical water rights. The Nation's claimed interest here is as an agreement

15    with the permit holder, BTB, yet any obligations created by this agreement do not

16    eviscerate USFS's statutory mandates. Even if the protected interest involved the

17    Nation's own permit or a contract between USFS and the Nation, federal law would

18    still require the agency to meet its statutory obligations. *Oregon Nat. Res. Council*

19    _____

20    [1] As the Nation is not a third-party beneficiary of the permit, it also lacks Article III

21    standing. *Scotts Valley Band of Pomo Indians v. United States Dep't of the Interior*,

22    337 F.R.D. 19, 23 (D.D.C. 2020), *aff'd sub nom. Yocha Dehe v. United States Dep't
      of the Interior*, 3 F.4th 427 (D.C. Cir. 2021), and *aff'd sub nom. Yocha Dehe v.*

23    *United States Dep't of the Interior*, 3 F.4th 427 (D.C. Cir. 2021) ("Where, as here, a
      party seeks to intervene as a defendant in case against a federal agency, courts in this

24    district have held that "the party must establish that it will be 'injured by the setting

25    aside of the government's action it seeks to defend, that this injury would have been

26    caused by that invalidation, and the injury would be prevented if the government
      action is upheld.'"

27                                                22

      **PLAINTIFF'S OPPOSITION TO YUHAAVIATAM OF SAN MANUEL
28    NATION'S MOTION TO INTERVENE FOR LIMITED PURPOSE OF
      MOTION TO DISMISS – 5:24-cv-01336-JGB-DTB**

1    *Action v. U.S. Forest Serv.*, 445 F. Supp. 2d 1211, 1220–21 (D. Or. 2006) ("The

2    Ninth Circuit has made it clear that an agency may not limit its obligations to

3    prepare an environmental assessment that complies with NEPA by entering into a

4    contract."). In *Metcalf v. Daley*, 214 F.3d 1135, 1139 (9th Cir.2000), the federal

5    defendants signed a contract with the Makah Indian Tribe, agreeing to make a

6    formal proposal urging the International Whaling Commission to allow the tribe to

7    engage in limited whaling. The next year, the defendants completed an

8    environmental assessment which found that the whaling proposal would not

9    significantly affect the environment. *Id*. at 1140. Pointing out that NEPA's

10   effectiveness depends entirely on involving environmental considerations in the

11   initial decision-making process, the Ninth Circuit concluded that the agency had

12   prepared the EA too late, after it had already committed itself contractually to the

13   proposal it was analyzing. Despite the existence of the government contract with the

14   tribe, the Ninth Circuit ordered the agency to prepare a new EA under circumstances

15   that ensured an objective evaluation, free of the previous taint. *Id*. at 1146.

16          Similarly, here, the Nation must have a legally protected interest in the

17   challenged actions, and the Nation's interest in barring the Service from engaging in

18   discreet, federal mandates is not an interest that is "protectable under law" or

19   redressable through this action. Just as Plaintiff's claims do not prevent the Nation

20   from pursuing "its water rights, including its right to apply for its own permit," the

21   Nation has no cognizable or legally protected interest in perpetuating an unlawful

22   agency process. This lawsuit is not aimed at vacating any permits or approvals that

23   the Nation has obtained from the Service. To the extent that the Nation has asserted

24   any legally protected interest in lawfully securing access to water for its private

25   property, this litigation will not impair or impede the Nation's ability to protect those

26

27                                          23

28   **PLAINTIFF'S OPPOSITION TO YUHAAVIATAM OF SAN MANUEL
     NATION'S MOTION TO INTERVENE FOR LIMITED PURPOSE OF
     MOTION TO DISMISS – 5:24-cv-01336-JGB-DTB**

specified interests. Just as Donaldson had no legal right to keep his former employer from handing his records over to the IRS, *Donaldson*, 400 U.S. at 522-23, the Nation has no legal right to prevent an agency from fulfilling its statutory duties.

Third, any investment of resources by the Nation to obtain the appropriate permits and authorizations from relevant agencies or to establish its own water delivery infrastructure is not a viable or cognizable "protected legal interest." The mere fact that the outcome of Plaintiff's litigation may have some financial consequences for the Nation is not sufficient to make the Nation a required party, however. *See, e.g.*, *Makah*, 910 F.2d at 558 ("[The] interest must be more than a financial stake."). Spending money on obtaining approvals for a development project is not itself a "protected legal interest." More importantly, the Nation made a choice to invest its resources in Arrowhead Springs knowing that USFS could suspend water deliveries or deny BTB's future permits. *See, e.g.*, Doughty Decl. Exh 31("During the interim period, BTB may suspend deliveries if ordered to do so by a government agency such as SWRCB or USFS, or a court and BTB shall notify the Tribe of such order").

And finally, to the extent that the Nation has certain legal claims or defenses that it wants to present to this Court, the Court can grant permissive intervention—as opposed to limited intervention—under Fed. R. Civ. P. 24(b)(1)(B) for the Nation to pursue its claims and defenses. The Nation's position, ECF 38-2 at 15, is that USFS lacks any right to "protect public property, public safety, and natural resources on National Forest System lands in compliance with" its statutory mandates, First Amended Complaint at 81 (citing Nestlé 2018 SUP). These are "legal claims or defenses" not "legally protectable interests." Similarly, to the extent that the Nation wants to argue that USFS need not comply with statutorily mandated procedures or

24

**PLAINTIFF'S OPPOSITION TO YUHAAVIATAM OF SAN MANUEL NATION'S MOTION TO INTERVENE FOR LIMITED PURPOSE OF MOTION TO DISMISS – 5:24-cv-01336-JGB-DTB**

1   that a special use permit is not required here, those are legal claims that they can

2   raise with permissive intervention, not "legally protectable interests."

**3.    Disposition of this Action Will Not Impair or Impede the
Nation's Ability to Protect Its Claimed Interests.**

5    To be granted intervention as a matter of right, the applicant must be

6   situated such that disposition of the action may impair or impede the party's ability to

7   protect that interest. Fed. R. Civ. P. 24(a)(2). The Nation's motion for limited

8   intervention based on Fed. R. Civ. P. 24(a)(2) should be denied because the Nation

9   is not situated such that disposition of the action may impair or impede the party's

10   ability to protect the legal interests that they have alleged. As explained above, the

11   Nation does not own the property, nor does it have jurisdiction over the property at

12   issue, nor does it claim any treaty rights. Plaintiff is not challenging a permit held by

13   the Nation and a ruling in favor of Plaintiff will not prevent the Nation from applying

14   for one. This lawsuit is not aimed at vacating any permits or approvals that the

15   Nation has already obtained from the Service. To the extent that the Nation has

16   asserted any legally protected interest, this litigation will not impair or impede the

17   Tribe's ability to protect those specified interests.

**4.    UFSF Can Adequately Represent the Nation.**

19    The final element requires the applicant to show that existing representation

20   may be inadequate. Generally, "[t]he United States may adequately represent an

21   Indian tribe unless there is a conflict between the United States and the tribe."

22   *Makah*, 910 F.2d at 558. A conflict of interest may be found where there are

23   divergent interests at stake among or between tribes and the United States that render

24   the United States unable to carry out its trust obligations. *See Shermoen v. United*

25   *State*s, 982 F.2d 1312, 1318 (9th Cir. 1992). In *Southwest Center for Biological*

25

**PLAINTIFF'S OPPOSITION TO YUHAAVIATAM OF SAN MANUEL
NATION'S MOTION TO INTERVENE FOR LIMITED PURPOSE OF
MOTION TO DISMISS – 5:24-cv-01336-JGB-DTB**

*View v. Babbitt*, 150 F.3d 1152, 1154 (9th Cir. 1998), the Ninth Circuit found that the shared interests of the government and the Indian community in defeating the lawsuit on the merits meant that the Indian community would be adequately represented by the government. *See also Alto v. Black*, 738 F.3d 1111, 1127 (9th Cir. 2013) (finding that United States adequately represented tribe's interests).

The Nation's reliance on *Diné Citizens Against Ruining Our Environment v. Bureau of Indian Affairs*, 932 F.3d 843, 855 (9th Cir. 2019), is misplaced. The sovereign interests implicated in *Diné* concerned the operation of the Navajo Nation's wholly owned mining corporation on Navajo Nation lands. The Ninth Circuit observed that "[t]he Navajo Nation's interest is tied to its very ability to govern itself, sustain itself financially, and make decisions about its own natural resources." *Id*. at 856. Here, the land is not tribal land and the Nation's interest in lawful governmental procedure is equal to that of the USFS.[2]

**B.    Questions Regarding the Nation's Status as a Necessary Party and its Sovereign Immunity Are Not Currently Before the Court.**

In its Motion for Limited Intervention, the Nation presents arguments alleging that the Nation is a necessary party and has not waived its sovereign immunity. The Nation has gone as far as to file its proposed motion to dismiss. ECF No. 38-15. The Court need not consider questions regarding whether the Nation is a necessary party under Federal Rule 19 and whether the Nation has waived its sovereign immunity at this time. The Nation's Motion for Limited Intervention requests intervention solely under Fed. R. Civ. P. 24(a) or (b) for the limited purpose of moving for dismissal pursuant to Rules 19 and 12. As the Nation's motion to dismiss

---

[2] The Nation has not established any water right, nor is it necessary for this Court to adjudicate the rights of the Nation in considering the legality of BTB's SUPs, or to resolve Plaintiff's claims in this case.

**PLAINTIFF'S OPPOSITION TO YUHAAVIATAM OF SAN MANUEL NATION'S MOTION TO INTERVENE FOR LIMITED PURPOSE OF MOTION TO DISMISS – 5:24-cv-01336-JGB-DTB**

is not yet at issue, Plaintiff has not had an opportunity to file a response. In addition, Plaintiff would like to engage in limited discovery on the issues presented in that motion, such as waiver of sovereign immunity. If this court grants Limited Intervention under Rule 24(a) or (b), then the questions of necessary party and sovereign immunity will be addressed pursuant to the Nation's responsive pleading.

Dated: June 16, 2025                    Respectfully Submitted,


By: _____
     GREENFIRE LAW, PC
     Rachel S. Doughty
     Attorneys for *SAVE OUR FOREST ASSOCIATION, INC.*

27
**PLAINTIFF'S OPPOSITION TO YUHAAVIATAM OF SAN MANUEL NATION'S MOTION TO INTERVENE FOR LIMITED PURPOSE OF MOTION TO DISMISS – 5:24-cv-01336-JGB-DTB**