# Exhibit 19
## to Declaration of Rachel Doughty

| | | | |
|---|---|---|---|
| USDA | United States<br>Department of<br>Agriculture | Forest<br>Service | San Bernardino National Forest<br>Supervisor's Office | 602 S Tippecanoe Ave<br>San Bernardino, CA  92408<br>909-382-2600<br>TDD: 1-800-735-2922 |

**File Code:** 2700  **Date:** June 21, 2024

Louis Mixon, III
Senior Natural Resource Manager
BlueTriton Brands, Inc
4718 Mountain Creek Parkway
Dallas, TX 75236

Dear Mr. Mixon,

I would first like to thank you for your June 4th response to our in-person meeting at the Lytle Creek Ranger Station. I am grateful that we have had the opportunity to both meet and continue to correspond. I understand that you may be able to meet with the Forest Supervisor soon, which I am certain will be a productive meeting as well. In the interim, I provide this initial response to your letter, with the expectation that further communication will continue. As we have explained, while we appreciate what BlueTriton has submitted, several questions we have asked repeatedly remain unanswered, and these questions require answers both for assuring compliance with BlueTriton's current permit, and for evaluation of the application for a future permit.

I'm a bit surprised that you would characterize my requests as being sudden in nature. As you are aware, the Forest is entitled to request additional information, that will allow an efficient and deliberate response to any current or pending permit applications, and that these requirements have been in place since long before I took the Ranger's seat here on the Front Country Ranger District. This was the same policy and regulation during BlueTriton's previous permit (and Nestle's before it). I believe my prior correspondence explains the necessity for each request, and relays how each is related either to compliance with the current permit, or evaluation of your pending application. (As an aside, your characterization that the Forest Service has failed to act on your application is entirely incorrect. As we informed BlueTriton in writing, any final decision on the permit would await the State Water Board's findings concerning BlueTriton's water rights. Since that decision was reached, we have been actively evaluating the application, including requesting updated information from you concerning the application, which you have yet to provide).

As to the information provided in your latest correspondence, we are integrating that into the application file, and evaluating it in terms of the current permit. While I appreciate your willingness to provide missing reports, I would also note that your 2024 operating plan as required by permit provision III: Operations section C: Operating Plan is still incomplete, and the Paired Basin Study for 2024 had not been previously submitted until I requested copies of your compliance reports in the May 22nd meeting. Please submit the completed operating plan by July 1st, 2024. We are examining the Paired Basin Study and will notify you of any necessary follow-up.

Beyond this, significant questions remain about BlueTriton's current operations under the permit, as well as the operations that are to be authorized by a future permit. This is the case despite your assertions that both BlueTriton and the Tribe have provided substantial responses. Thank you for providing the recorded agreement (Exhibit D) for my review. After reading the agreement, the question was raised on the



Caring for the Land and Serving People                                        Printed on Recycled Paper

2024-11-07 2024-FS-R5-07226
000121

contractual agreement between BlueTriton and the Tribe. You have stated that BlueTriton is required to deliver 20% of the flow through the pipeline under the ongoing contract to the Tribe. However, Exhibit D indicates that the Tribe is entitled to 50%, and consolidated is entitled to 50%. I anticipate a follow up document that shows the new contractual agreement between BlueTriton and the Tribe, which will provide light to the 20% that you are stating is being delivered to the Tribe. As our previous correspondence have shown, this question has been asked numerous times requesting the contractual agreement from the Tribe and BlueTriton. I want to reiterate that this information is critical in processing and reviewing your application in a timely manner.

Thank you for providing the use report for May-2024 in the format that I requested. However, that report confirmed, contrary to your assertions during our meeting, that BlueTriton had not gone back to operating as it had before the State ruling (Order WR 2023-0042). I was surprised to see that no BlueTriton tank truck deliveries were reported, no bottling had resumed, and instead that 9.5 million gallons - the entirety of the month's collections minus the large variances - continued to be delivered solely to the Tribe for use on its Arrowhead property. This again represents far more water than has ever been delivered previously, with so far as we can ascertain no change to the uses of the Arrowhead property. I fear that I will repeat myself by stating that this is—once again—an unprecedented volume of water for which the use remains unexplained in sufficient detail. Repeated assertions by BlueTriton that the responsibility for providing the information lie with the Tribe are unavailing: as we have explained BlueTriton is required to provide the information under the current permit, and it is BlueTriton that is an applicant for a new permit. As we have also explained, general assertions of beneficial uses for industrial, agricultural, residential, and recreational uses are wholly insufficient. To be unimpeachably clear: BlueTriton must provide information as to the specific beneficial uses to which the water delivered to the Tribe is being put, and to the best of its ability volumes for the specific uses. We say this fully aware of the Tribe's status as sovereign which you have relied on to avoid this obligation. The Tribe's sovereignty is not in question; BlueTriton's permit compliance is; as is information necessary to consider any application to continue this use. Clearly such an application requires information on the end beneficial uses of the waters to be taken from the Forest.

Separately, 4.6 million gallons were reported under "variance," and while previous months had similar volumes reported in this category, you can understand why such a large variance (nearly a third of the total diversion) is concerning to the agency. We expect BlueTriton to submit a plan to upgrade its infrastructure to assure a more efficient disposition of water. State law requires water use to be beneficial and not wasteful. Such a plan will also be necessary to properly evaluate the future proposed continuation of the water facilities.

In March, I asked you to provide comprehensive and detailed information on the volumes of water delivered to the Tribe and for which beneficial uses. BlueTriton has had ample time to comply and has thus far failed to provide the information. In a separate letter, I requested that you continue to report to the Forest in the format you used for the State Water Resources Control Board per the permit amendment. It's not clear then why you changed your reporting format starting with the March report, and why you stopped calculating the SMBMI (Tribe) deliveries as you had done from November 2023 to February 2024. For this reason, I am restating my previous request for you to provide detailed reporting of past and planned uses, including the volumes delivered to the Tribe and for what beneficial uses. This includes a detailed explanation of where the calculated variance is being delivered, as your reports from November 2023 – February 2024 include variance with the SMBMI delivery, which change starting with the March reporting.

Finally, concerned members of the public brought to our attention BlueTriton's plan to form a new company via a merger with Primo Water. Please note that special use authorization FCD728503 requires

BlueTriton to notify me—as the authorized officer—when a change in control of the business entity is contemplated (Section 1.J). Normally, an authorization of this type is automatically terminated upon transfer of title of the improvements (Section 1.I). In this case, since the permit is already expired, a new application would be required if any change in business control takes place. At this time, I am requiring you to provide a complete explanation of the planned merger in order to prevent any delay in the processing of a new permit.

Regards,

*Michael Nobles*

Michael Nobles
DISTRICT RANGER
San Bernardino National Forest