# Exhibit 22
# to Declaration of Rachel Doughty














May 14, 2024

via email Michael.Nobles@usda.gov
**Privileged and Confidential**
*Pursuant to 5 U.S.C. § 552(b)(4),(9)*

Michael Nobles, District Ranger
United States Forest Service
United States Department of Agriculture
San Bernardino National Forest
602 S. Tippecanoe Ave.
San Bernardino, CA 92408

District Ranger Nobles:

I am writing in response to the following letters and materials delivered by the U.S. Forest Service (USFS) to BlueTriton Brands, Inc. (BTB):

- Letter dated March 1, 2024 (received March 26, 2024);
- Letter dated March 25, 2024 (received March 26, 2024);
- Letter dated April 18, 2024 (received April 19, 2024);
- Letter dated April 18, 2024 (received April 24, 2024); and
- Letter dated April 24, 2024 (received April 24, 2024) (collectively, Correspondence); and
- Proposed Amendment No. 1 to Permit FCD728503 dated April 18, 2024 (Amendment).

As you know, BTB submitted its initial response to the March Correspondence to the USFS on April 23, 2024. However, we understand from the subsequent USFS Correspondence that the USFS has requested that BTB provide additional information.

BTB has always endeavored to provide timely responses to all requests for information from the USFS. As set forth in this letter, we will continue to do so, and we hope that you will find the contents of this letter satisfactory. <u>Attachment 1</u> to this letter outlines the various requests set forth in the USFS Correspondence and Amendment, and provides BTB's detailed answers to the various questions posed. Additional supporting documentation has been attached where noted. As indicated below, certain items requested by the USFS cannot be obtained within the timeline requested. Those items are identified accordingly, and preparation of those responses remains underway.

We note that all information provided hereunder (or to be provided in accordance herewith) is delivered to the USFS for informational purposes only. The terms and provisions of the Amendment remain under review by BTB, including whether BTB may need to challenge any terms or provisions of the Amendment that the parties cannot work out at the upcoming meeting (and for the avoidance of doubt, BTB expressly retains all, and does not waive any, rights and/or remedies in connection therewith).

BlueTriton Brands
4718 Mountain Creek Parkway
Dallas, TX 75236

louis.mixon@bluetriton.com
Mobile: PII
louis.mixon@bluetriton.com

Case 5:24-cv-01336-JGB-DTB   Document 55-24   Filed 06/16/25   Page 3 of 19   Page ID #:1314

*BTB Response to USFS Correspondence and*
*Amendment (March 2024 – April 2024)*
*Privileged and Confidential Pursuant to 5 U.S.C. § 552(b)(4),(9)*

Page 2 of 2

BTB has and will continue to sustainably operate its facilities in Strawberry Canyon, as we have for over 120 years.  We look forward to continuing our productive relationship with the USFS, and we look forward to discussing next steps with the USFS at our in-person meeting on May 22, 2024.

Please feel free to give me a call if you have any questions.

Sincerely,

Louis W. Mixon, III
Senior Natural Resource Manager, BlueTriton Brands, Inc.

cc:        Dave Anderson
           Hih Song Kim, Esq.
           Brendan O'Rourke
           Tam Pham
           Christopher W. Hasbrouck, Esq.
           Robert E. Donlan, Esq.

Attachments:    Attachment 1
                Exhibits A - D



          

**ATTACHMENT 1**

**USFS REQUESTS & BTB RESPONSES**

A. <u>Beneficial Use and Water Rights</u>.

1. *"The Permit stipulates that the beneficial use of water transiting BTB's authorized improvements may not be changed, nor may the location of the water's use, unless authorized by the Forest (see paragraph VIII H 1). Clearly BTB is now delivering water in different volumes, to different locations, for different uses than when the permit was issued."  (March 1 Correspondence at p. 1; see also April 18 Correspondence at p. 1)*

   As a preliminary matter, we note that Special Use Permit No. FCD728503 (SUP) does not specify any particular beneficial use for the water collected and transported via BTB's water collection system in the Forest.  Nevertheless, we are happy to inform you that there has been no change in locations of use, beneficial uses, or recipients of water deliveries.  BTB's beneficial uses of water from Strawberry Canyon are consistent with BTB's commercial and industrial needs (e.g., bottling and line hygiene), its long-standing contractual commitments with the Arrowhead Hotel property owner (now the San Manuel Band of Mission Indians (SMBMI)), and its commitment to environmental protection in Strawberry Canyon.  BTB and its predecessors have delivered water to the Arrowhead Hotel property since the 1930s in accordance with their contractual obligations, and those longstanding deliveries are encompassed within the SUP's existing authorizations.  BTB is not delivering water to any new recipients or locations, and is not discharging water to any new ecological uses or locations.

   To the extent that there have been recent changes in delivery and discharge volumes, such changes are due to natural fluctuations in precipitation, hydrology, hydraulics, and field conditions.  In addition, we note that water collections and usage from Arrowhead Springs were artificially depressed during the past decade.  The reasons for this include, without limitation: (i) the results of the various shut-in tests necessitated by the hydrogeologic and paired basin studies required by the SUP issued by the USFS; (ii) the potential threat of California State Water Resource Control Board (SWRCB) enforcement in connection with the SWRCB's multi-year investigation of BTB's water rights at Arrowhead Springs; and (iii) the SWRCB's enforcement of the SWRCB Order during the approximately four-month period that it remained in effect.  These exogenous events (which are chiefly attributable to the SWRCB and the USFS, rather than BTB) materially changed how BTB and its predecessors were able to collect and use water from Arrowhead Springs over the past decade.  This resulted in historically low water collections during the prior time period, and as discussed below, is contributing to historically high water collections during the current period.

   Further details regarding the historical collections and beneficial uses of water collected from the Arrowhead Springs are set forth in <u>Exhibit A</u> attached hereto.

2. *"The holder shall provide in a separate account, on or before the 15th of each month to the Forest: (i.) the planned amounts of water to be delivered in the following month (volumes in gallons or acre-feet) to all recipients; with the (j.) names of each recipient and the (k.) specific beneficial use of each volume."  (Amendment at p. 3; see also March 1 Correspondence at p. 1; March 25 Correspondence at p. 1)*

BTB collects percolating groundwater at the Strawberry Canyon/Arrowhead Springs system consistent with its long-standing appropriative groundwater rights. Water is collected from seeps and fissures at ten perforated boreholes and two tunnels, and is transported down the Canyon by gravity through a pipeline to the Arrowhead Hotel property and BTB's storage tanks and fill station. The system is equipped to allow discharges and deliveries to the environment at the collection portals, from valves along the Canyon pipeline, and at the Arrowhead Hotel and load station turnouts. The system does not utilize any pumps or mechanized facilities, other than the solar powered metering and telemetry devices.

The volume collected from the boreholes and tunnels each month varies based on climatic and hydrologic conditions. Water collected at the boreholes and tunnels is delivered through the conveyance system to BTB or the SMBMI for beneficial uses (primarily industrial, domestic and irrigation uses), or is returned to the Strawberry Canyon environment for ecological uses. The relative amounts of each beneficial use of BTB's water vary due to a variety of factors, including BTB's business needs and system maintenance requirements, and the SMBMI's beneficial use requirements. BTB operates the site in a sustainable manner based on actual conditions, contractual obligations, and business requirements, and returns all water that is not beneficially used by BTB or the SMBMI back into the Strawberry Canyon environment for the benefit and enhancement of flora, fauna and wildlife.

Because collection rates and beneficial use quantities are dynamic (due to the many factors described above), BTB is unable to predict with any certainty exactly how much water will be collected or delivered for any particular beneficial use at a given point in the future. Nor is it possible to accurately state the beneficial uses to be made from a particular borehole or tunnel; water collected at the boreholes and tunnels is commingled in the Strawberry Canyon pipeline, and the sources cannot be disaggregated when delivered for beneficial use (though the amounts collected from each source, and the amounts discharged at each discharge point, can generally be accounted for). BTB is conferring internally with its operations and business teams to determine whether we can more accurately predict future water demands and operational needs. We will plan to report any findings to you at our meeting on May 22, 2024.

3. *"The San Bernardino National Forest has been reviewing your application dated 21-Feb-2023 to Ranger Rechsteiner for a new special use authorization. The application states that: " ... no changes to the operation of the Business Facilities (as defined below) are being requested," and "The Business Facilities are used to supply bottled drinking water for retail purposes." No other description of the beneficial use of water is described, whereas the reported use of water, specifically the delivery of water to the Arrowhead Springs Hotel property under a presumptive riparian water right from 2023 to 2024 is not authorized under Blue Triton's previous authorization FCD728503, nor is it part of BlueTriton's application for a long-term permit." (April 18 Correspondence at p. 1)*

   As the USFS correctly notes, BTB has not requested any changes to the scope of the authorized activities under the current SUP. As the USFS is well aware, BTB and its predecessors have always delivered water to the Arrowhead Hotel property under contract. The first recorded agreement between the respective predecessors of BTB and the SMBMI providing for the delivery of water to the Arrowhead Hotel property was recorded in the Official Records of San Bernardino County in 1930. In addition to record notice, BTB and its predecessors have given the USFS actual notice of these recorded agreements previously, including during the most

recent permit renewal process, via a letter from BTB's predecessor to the USFS dated July 13, 2016 (*see* Exhibit B attached hereto). Indeed, the delivery of water to the SMBMI (and its predecessors) has been within the scope of the authorized activities under every special use permit that the USFS has ever issued to BTB (and its predecessors) for the last 90+ years. As noted above, BTB continues to deliver water to the SMBMI in accordance with BTB's appropriative groundwater rights and its existing contractual relationship with the SMBMI. To the extent that BTB's application may not have been exhaustive in describing all the beneficial uses served by the collection system, we appreciate this opportunity resolve any confusion.

BTB also delivers water to the Strawberry Canyon environment, as its predecessors did. The USFS is also aware of these uses, and indeed some of the uses were done in coordination with studies and operations required by the USFS. For example, at the request of the USFS in 2022, BTB installed a temporary discharge hose at Transect 6 (recently removed at the USFS's request). BTB also discharged water in Strawberry Canyon as part of the hydrogeologic and paired basin studies of the area during 2020-2023, which were required by the SUP and undertaken in coordination with the USFS. In addition, BTB and its predecessors have always delivered water to the environment at the various source portals and at the load station turnout, as part of their routine operation and maintenance of the collection system.

We note further that the USFS's question regarding riparian claims is now moot. Since the Stay of SWRCB Order WR 2023-0042 (SWRCB Order) went into effect, BTB has been collecting and delivering water under BTB's appropriative groundwater rights, as it had done before the SWRCB Order went into effect. As the USFS is aware, the SWRCB Order authorized the continued delivery of water to the SMBMI for its beneficial uses, under the theory that the Arrowhead Hotel property was riparian to East Twin Creek (*see* SWRCB Order at pp. 75, 86-87, 89-91). In order to continue the delivery of water to the SMBMI in compliance with the terms of the SWRCB Order, BTB relied on this authorization by the SWRCB, and delivered water to the SMBMI in accordance with its requests (see Exhibit C attached hereto). Since the California Superior Court issued its stay of the SWRCB Order as of January 24, 2024 (Stay), BTB has resumed deliveries to the SMBMI under BTB's appropriative groundwater rights. We understand that the USFS was aware of the SWRCB Order and BTB's deliveries to the SMBMI during the period when the SWRCB Order was in effect, since BTB copied the USFS on all correspondence and water collection/delivery reports submitted to the SWRCB during the subject period. However, BTB was not made aware of any objections by the USFS during that time.

Please also see Exhibit C attached hereto, setting forth certain additional responsive information provided by the SMBMI to the USFS.

4. ***"For each well, spring, or borehole: how much water is planned for extraction or diversion, in gallons per month, or acre-feet per month, for the years 2025 to 2030." (April 18 Correspondence at p. 1)***

As noted above, due to numerous factors and variables, BTB cannot accurately predict the volume of water collections and deliveries at a given point in the future. BTB is conferring internally with its operations and business teams to determine whether we can more accurately predict future water demands and operational needs. We will plan to report any findings to you at our meeting on May 22, 2024. For the avoidance of doubt, the foregoing response applies

with respect to each BTB spring source at Arrowhead Springs (*i.e.*, tunnels 2 and 3, and horizontal wells 1, 1A, 7, 7A, 7B, 7C, 8, 10, 11, and 12).

5. ***"For each well, spring, or borehole: a detailed description of the disposition of the water, the recipient, location of use, and beneficial use for the same period of time." (April 18 Correspondence at p. 1)***

   The volume collected from the boreholes and tunnels each month varies based on climatic and hydrologic conditions.  Water collected at the boreholes and tunnels is delivered through the conveyance system to BTB or the SMBMI for beneficial uses (primarily industrial, domestic and irrigation uses), or is returned to the Strawberry Canyon environment for ecological uses.  The relative amounts of each beneficial use of BTB's water vary due to a variety of factors, including BTB's business needs and system maintenance requirements, and the SMBMI's beneficial use requirements.  BTB operates the site in a sustainable manner based on actual conditions, contractual obligations, and business requirements, and returns all water that is not beneficially used by BTB or the SMBMI back into the Strawberry Canyon environment for the benefit and enhancement of flora, fauna and wildlife.   For the avoidance of doubt, the foregoing response applies with respect to each BTB spring source at Arrowhead Springs (*i.e.*, tunnels 2 and 3, and horizontal wells 1, 1A, 7, 7A, 7B, 7C, 8, 10, 11, and 12).

   As noted above, during the approximately four-month period when the SWRCB Order was in effect (from November 2023 through February 2024), BTB relied on the SWRCB's authorizations set forth in the SWRCB Order, and complied with the terms of the SWRCB Order by delivering water to the SMBMI in accordance with its requests (see Exhibit C attached hereto).

6. ***"Regarding your preliminary comments: the terms and conditions of the current special use authorization, FCD728503 (permit) do indeed evidence the Forest Service's concern with the beneficial use and location of use of the waters permitted to be taken under the permit as my prior correspondence indicated. (See section VIII.H. which requires notice for any change in beneficial use or location of use from each extraction point.) Clearly, currently waters which were previously directed to Blue Triton's bottling facilities are being delivered to a different location and are being used in a different manner. As the permit holder, you are required to provide the relevant information to the Forest Service . . . .  Previously, BlueTriton and its predecessors delivered the vast majority of waters to bottling facilities (a recognized beneficial use under California law) with a small share going to the San Manuel Band of Mission Indians for use on their riparian property. Clearly, this is currently no longer the case, and it is incumbent upon you to provide the Forest Service with the relevant information."  (April 24 Correspondence at p. 1; see also April 18 Correspondence at p. 1)***

   As set forth above, BTB is not delivering water to any new locations or new entities, nor are there any new or different beneficial uses.  BTB and its predecessors have always delivered water to the Arrowhead Hotel property, with the knowledge and consent of the USFS, and BTB is not aware of any material changes in the beneficial uses of such water by the SMBMI, as compared to the beneficial uses of such water by the prior owners of the Arrowhead Hotel property (see Exhibit C attached hereto).  As noted above, the first recorded agreement between the respective predecessors of BTB and the SMBMI providing for the delivery of water to the Arrowhead Hotel property was recorded in the Official Records of San Bernardino County in 1930, and the delivery of water to the SMBMI (and its predecessors) has been within the scope

of the authorized activities under every special use permit that the USFS has ever issued to BTB (and its predecessors) for the last 90+ years. While the volumes of water delivered to the SMBMI and for BTB's other beneficial uses may vary from year to year (and from month to month), BTB's current operations remain consistent with the normal operational variability of the collection system over the past nine decades.

7. ***"For each well, spring, or borehole: whether the extraction/diversion is groundwater or surface water." (April 18 Correspondence at p. 1)***

   BTB's boreholes and tunnels collect groundwater from underground sources, which are legally classified as "percolating groundwater" under well-established California law. BTB may appropriate this groundwater pursuant to California law. We note that any confusion regarding the legal distinction between surface water and groundwater likely stems from the SWRCB Order, which ignored the long-standing legal test for determining the SWRCB's permitting authority over underground resources. BTB strongly believes that the SWRCB's conclusion is in error, both legally and factually, and we were glad to see the California Superior Court issue interim relief to BTB on this issue (*i.e.*, the Stay). In any event, the California Courts will ultimately resolve the dispute regarding the legal classification of BTB's water sources when the matter is finally adjudicated on the merits. For the avoidance of doubt, the foregoing response applies with respect to each BTB spring source at Arrowhead Springs (*i.e.*, tunnels 2 and 3, and horizontal wells 1, 1A, 7, 7A, 7B, 7C, 8, 10, 11, and 12).

8. ***"For each surface water use: provide proof of water rights documentation as required by section VIII.H. Water Facilities and Water Rights 3.) Water Rights Acquired in the Name of the Holder." (April 18 Correspondence at p. 1)***

   Section VIII(H)(3) of the SUP is not applicable here (since BTB is not claiming any surface water rights). We note further that Section VIII(H)(3) is not applicable generally—the Section is already filled out, and each line item is shown as "not applicable" (since BTB's water rights pre-date the issuance of the SUP). This issue was specifically discussed prior to BTB's signing of the SUP, which is why each line item is expressly labeled "not applicable." In addition, BTB (and its predecessors) have filed Groundwater Extraction Notices dating back to 1947, which evidence BTB's groundwater rights claims. These Notices are filed with the SWRCB pursuant to California Water Code Section 4999, *et seq.* For the avoidance of doubt, the foregoing response applies with respect to each BTB spring source at Arrowhead Springs (*i.e.*, tunnels 2 and 3, and horizontal wells 1, 1A, 7, 7A, 7B, 7C, 8, 10, 11, and 12).

9. ***"Further, as with all Forest Service permits, your permit specifically requires compliance with applicable State law (Section I.F), in this case California State Water law. In order to monitor compliance with the permit it is necessary that the Forest Service know the locations of the water uses and the beneficial uses for the waters taken from each facility authorized by the permit." (April 24 Correspondence at p. 1)***

   BTB operates its facilities at Arrowhead Springs in compliance with applicable state water law. As noted above, BTB is collecting percolating groundwater in accordance with its appropriative groundwater rights. We note that the California Courts have exclusive jurisdiction over the adjudication of state groundwater rights, and the legality of the SWRCB Order is currently

pending in California Superior Court. For the sake of completeness, we note that BTB's responses with respect to locations of use and beneficial uses are set forth at length above.

In addition, BTB has been voluntarily providing, and will continue to voluntarily provide, monthly reporting of collections to the USFS and the SWRCB in accordance with the USFS's requests. BTB also submits the required annual Groundwater Extraction Notices to the Santa Ana River & Whitewater River Watersheds Cooperative Recordation Program, consistent with the requirements of the California Water Code.

B. <u>Operations and Equipment</u>.

1. *"In BTB's compliance report for November, you describe how the Transect 6 discharge caused a reduced volume in the pipe. Please explain how removing the discharge could have led to this claimed volume reduction in the pipe. If the absence of the discharge did lead to errors, please explain whether there were any errors in measurement prior to 2022 when the equipment was installed." (March 1 Correspondence at p. 1; see also March 25 Correspondence at p. 1; Amendment at p. 4)*

   There may be some confusion here. To clarify, the removal of the Transect 6 infrastructure did not cause a reduction in flow and was not the cause of any high-bias readings. In fact, no measurement challenges were experienced prior to 2022 at the Transect 6 facility, since pipeline pressures at that time were balanced from all sources with a stable flow regime. However, as noted in our November 2023 reporting documentation, BTB's shutting-in of certain spring sources following the issuance of the SWRCB Order created pipeline hydraulic operating conditions never before encountered in Strawberry Canyon. These new conditions included reduced flow in portions of the pipeline due to the discharge to atmospheric pressure and entrained air in the pipeline, creating turbulent flow and high bias readings. As part of its normal maintenance and operation of the collection system, BTB was able to diagnose the root cause of the issue, and installed and adjusted pressure maintenance valves and air evacuation valves to resolve any measurement errors. These modifications should provide for accurate measurement at the SMBMI meter going forward.

2. *"The Forest requests that BTB submit, in accordance with its Permit, a Water Well Decommissioning plan for the removal of all stainless pipe and pipe supports from 7, 7A, 7B, and 7C. The plan should include details for the removal of the pipes and ancillary facilities associated with the 7s Complex, as well as a detailed timeline for the restoration of the impacted surface areas. The plan should also include restoration/revegetation of the road but should leave the above-ground portions of the vaults in place." (March 1 Correspondence at p. 2; see also March 25 Correspondence at p. 1; Amendment at p. 4)*

   We note that Section VIII(G)(4) of the SUP concerns the decommissioning process and, by its plain terms, applies only to "water wells that are no longer needed or maintained." BTB can confirm that all spring sources connected to BTB's collection and transmission system (including spring sources 7, 7A, 7B, and 7C) continue to be both needed and maintained in accordance with BTB's business and operational needs.

   The foregoing notwithstanding, and despite the short timeline given for its preparation, we are delivering to the USFS for informational purposes only (and at the USFS's request) the concept

decommissioning plan attached hereto as Exhibit D.  We note that we have endeavored to prepare a plan that meets the USFS's requested specifications, while still complying with the legal and regulatory requirements of applicable state law.

BTB looks forward to discussing this matter further at the upcoming meeting on May 22, 2024.

C. San Manuel Band of Mission Indians.

1. *"The Forest has noted that, according to BTB's monthly compliance reports, BTB delivered 46.5 acre feet of water to the San Manuel Band of Mission Indians (Tribe) in three months. This is many times more than the historic average of the Tribe's deliveries. Please provide an explanation of the current and expected uses of this volume of water." "The holder shall provide in a separate account, on or before the 15th of each month to the Forest: . . . (l.) a comprehensive and descriptive explanation for any increase in monthly delivery to the Tribe, over and above the historic average receipt of 40 acre-feet per year, or 3.33 acre-feet per month." "In the most recent monthly water use report (for February 2024), I see that the amount of water delivered to the Tribe increased in February by 17% over the previous 3-month average.  I would greatly appreciate an additional explanation of whether the Tribe has requested this increase, where the water is being used and for which beneficial uses, whether the Tribe has requested further increases for the upcoming months, and whether the Tribe has asked for the water deliveries to be sourced from 2, 3, and 8."  (March 1 Correspondence at p. 1; Amendment at p. 3; March 25 Correspondence at p. 2)*

    As noted above, the volume collected from the boreholes and tunnels each month varies based on climatic and hydrologic conditions.  Water collected at the boreholes and tunnels is delivered through the conveyance system to BTB or the SMBMI for beneficial uses (primarily industrial, domestic and irrigation uses), or is returned to the Strawberry Canyon environment for ecological uses.  As a result of two abundant rainfall years (2022-2023 and 2023-2024), combined with the artificially depressed water collections at Arrowhead Springs over the last decade (see Section A(1) above), exceptionally high groundwater volumes have been collected at Tunnels 2 and 3 and borehole 8 over the past six months.  BTB does not have control over these exceptional hydrologic conditions (or the other exogenous factors noted in Section A(1) above) (see Exhibit A attached hereto).  For the avoidance of doubt, the SMBMI did not request any such increase in deliveries over and above the normal collection levels at Tunnels 2 and 3 and borehole 8 (see Exhibit C attached hereto).

    The current and expected beneficial uses of BTB's water are described above (*i.e.*, industrial, municipal/domestic, irrigation, or returned to the environment for environmental habitat).

    Please also see Exhibit C attached hereto, setting forth certain additional responsive information provided by the SMBMI to the USFS.

2. *"The holder shall provide in a separate account, on or before the 15th of each month to the Forest: . . . (m.) sufficient evidence that any amount of water diverted for the Tribe's riparian use is not more than would flow naturally past the property on which the riparian right is claimed; (n.) a statement detailing volumes and beneficial uses for any and all riparian different uses from all water sources, to demonstrate that the total amount from wells and the springs complies with the State's recordation program and requirement for reasonable use;*

**(o.) documentation that the water used by the Tribe is not stored or transported and is used on a daily basis; (p.) documentation that the diversion of water to the Tribe is not adversely impacting surface resources in the watershed." (Amendment at p. 3; see also March 1 Correspondence at p. 1; March 25 Correspondence at pp. 1-2)**

The SMBMI is a sovereign nation and distinct political entity, separate and apart from BTB. BTB has no legal authority to compel the SMBMI to disclose the specific details of its internal operations, and BTB is in no position to make any comments or representations with respect thereto. However, we direct your attention to Exhibit C attached hereto, setting forth certain additional responsive information provided by the SMBMI to the USFS.

As noted above, during the approximately four-month period when the SWRCB Order was in effect (from November 2023 through February 2024), BTB relied on the SWRCB's authorizations set forth in the SWRCB Order, and complied with the terms of the SWRCB Order by delivering water to the SMBMI in accordance with its requests (see Exhibit C attached hereto). Since the issuance of the Stay, BTB has resumed deliveries to the SMBMI in accordance with BTB's appropriative groundwater rights.

BTB notes separately that it is not aware of any information or data concluding that collections of water in Strawberry Canyon have adversely impacted hydrology or wildlife in the watershed. At the USFS's request, BTB performed multi-year hydrologic and paired basin studies, which empirically demonstrated that our operations have no material impact to hydrology or wildlife in the watershed. BTB is not aware of any technical analysis finding adverse environmental impacts in the watershed resulting from BTB's operations.

As noted above, BTB also submits the required annual Groundwater Extraction Notices to the Santa Ana River & Whitewater River Watersheds Cooperative Recordation Program, consistent with the requirements of the California Water Code.

3. **"Finally, a reminder that while the San Manuel Band of Mission Indians may be the end user of waters supplied by BlueTriton, and it may be the Tribe's riparian right that allows BlueTriton to remove certain waters from the National Forest, it is BlueTriton which holds the permit for these operations, and thus the obligation to satisfy all the terms and conditions of the permit. It is BlueTriton's responsibility to provide the Forest Service with all relevant information, including the location of use and beneficial use for all the waters that are taken under the permit, our communications with the Tribe notwithstanding." (April 24 Correspondence at pp. 1-2)**

We reiterate that the SMBMI is a sovereign nation and distinct political entity, separate and apart from BTB. BTB has no legal authority to compel the SMBMI to disclose the specific details of its internal operations, and BTB is in no position to make any comments or representations with respect thereto. However, we direct your attention to Exhibit C attached hereto, setting forth certain additional responsive information provided by the SMBMI to the USFS.

As noted above, during the approximately four-month period when the SWRCB Order was in effect (from November 2023 through February 2024), BTB relied on the SWRCB's authorizations set forth in the SWRCB Order, and complied with the terms of the SWRCB Order by delivering water to the SMBMI in accordance with its requests (see Exhibit C attached hereto). Since the

issuance of the Stay, BTB has resumed deliveries to the SMBMI in accordance with BTB's appropriative groundwater rights.

D. Correspondence, Logistics, and Reporting.

1. *"Because I reiterated the need for this information in my previous letter (18-Apr-2024) (attached hereto) and the amendment to the permit (sent at the same time), I will not re-list each item now. I encourage you to review those documents and the associated deadlines . . . . At this time, you should plan to respond to the permit amendment requirements as well as the accompanying letter addressing your application and adhere to the deadlines stipulated in those documents.  Bear in mind that I am requiring you to address each point separately and in detail, with supporting evidence where necessary, with the understanding that the statements made in your 23-Apr- 2024 letter were not sufficient."  (April 24 Correspondence at pp. 1-2; see also April 18 Correspondence at p. 1)*

   We were surprised to receive your Correspondence and your proposed unilateral Amendment on April 18, 2024, since: (i) BTB had acknowledged receipt of your prior requests via email on March 27, 2024; (ii) BTB had indicated on March 27, 2024 that it would respond to your prior requests by April 30, 2024; and (iii) BTB submitted its response to the USFS on April 23, 2024. Nevertheless, BTB appreciates your attention to these matters, and will continue to work with the USFS to move the process forward.

2. *"The Forest would be happy to meet with you and Mr. Pham at any time to discuss topics related to BlueTriton's use and occupancy of Federal lands. Possible dates for such a meeting include, 1-Apr 2024, 11:00 AM to 12:00 PM, 1:00 PM – 2:00 PM; or 2-Apr-2024, 2:00 PM – 3:00 PM. Please let us know at your earliest convenience BlueTriton's preference or suggest an alternate date and time. In the interim, it would be helpful if you forwarded a brief agenda, that outlines the questions and concerns you would like to address, along with any documents that you feel would be beneficial to review prior to our in-person meeting."  (March 25 Correspondence at p. 1; see also April 24 Correspondence at p. 2)*

   As you know, on April 19, 2024, the parties confirmed that the in-person meeting would be held on May 22, 2024 at the USFS's office in San Bernardino.  We will circulate a meeting agenda (and any additional relevant materials) prior to the meeting.

3. *"In the meantime, we await your response to my letter dated 1-Mar-2024. It would be helpful if you could provide the information requested in that letter in advance so that we may have an informed discussion of the issues."  (March 25 Correspondence at p. 1)*

   As discussed previously, BTB's team did not actually receive the March 1 Correspondence or the March 25 Correspondence until March 26, 2024.  As noted above, BTB provided its response to the March Correspondence to the USFS on April 23, 2024 (further supplemented by this letter).

4. *"On or before the 15th of each month, the holder shall provide to the Forest, for the facilities specified in FCD728503 (Tunnels 2, 3, and 7, and Boreholes/wells 1, 1A, 7, 7A, 7B, 7C, and 8): Separate accountings of: (a.) the daily amounts of diversions at each of the facilities described in the preceding paragraph; (b.) the total daily amounts of diversions by all these facilities; (c.) the daily amounts of deliveries to the San Manuel Band; (d.) the daily amounts of water diverted at each of Boreholes 10, 11 and 12; (e.) the daily amounts of the total diversions at*

> *Boreholes 10, 11 and 12; (f.) the daily amounts of water delivered to tank trucks from Blue Triton's facilities described in this order; (g.) the daily amounts of water discharged to Strawberry Creek through Blue Triton's discharge facility near Boreholes 10, 11 and 12; and (h.) the daily amounts of water discharged or delivered anywhere else, with a description of each point of discharge and each point of delivery. These separate accountings shall follow the format of previous reporting represented by the attached example. These accountings of daily diversions, deliveries and discharges shall be sufficient to account for all diverted water. If there are any differences between the total amounts diverted on any day and the total amounts delivered and discharged on the same day, then the holder shall explain the reason or reasons for the differences."* (Amendment at p. 3; see also April 24 Correspondence at p. 1; April 18 Correspondence at p. 1)

BTB has updated and provided its monthly reporting data to the USFS to identify the locations and volumes of collections, and the beneficial uses associated with such collections, as requested by the USFS  BTB delivered its first such requested monthly report to the USFS on April 30, 2024, and will plan to continue delivering such requested monthly reports on the 15th of each month, as requested by the USFS.

Please also see <u>Exhibit C</u> attached hereto, setting forth certain additional responsive information provided by the SMBMI to the USFS.

5. *"For the month of March-2024, the holder shall submit the above information in its entirety on or before 15-May-2024. Any information not previously submitted for the monthly reporting periods from November-2023 through February-2024 (see requirements i. - p., above) shall be submitted concurrently."* (Amendment at pp. 3-4)

As noted above, BTB delivered its first such requested monthly report for March 2024 to the USFS on April 30, 2024, and will plan to continue delivering such requested monthly reports on the 15th of each month, as requested by the USFS. With respect to the reports for the period from November 2023 through February 2024, BTB will plan to submit any applicable updates to those reports on or before May 15, 2024. To the extent that any information from that prior period is not available, BTB will inform the USFS accordingly.

## EXHIBIT A

## HISTORICAL BENEFICIAL USES AND COLLECTIONS FROM ARROWHEAD SPRINGS

**In millions of gallons**

|  | To the factory | Strawberry Watershed | Arrowhead Property | Total from Recordation |
|---|---|---|---|---|
| 2018 | 16.8 | 19.5 | 9.1 | 45.3 |
| 2019 | 10.4 | 44.3 | 13.7 | 68.4 |
| 2020 | 6.4 | 40.8 | 11.8 | 59.0 |
| 2021 | 2.7 | 24.6 | 19.1 | 46.4 |
| 2022 | 0.3 | 36.6 | 14.8 | 51.7 |
| 2023 | 0.5 | 76.3 | 26.7 | 103.5 |

**In acre feet**

|  | To the factory | Strawberry Watershed | Arrowhead Property | Total from Recordation |
|---|---|---|---|---|
| 2018 | 51.6 | 59.8 | 27.9 | 139.1 |
| 2019 | 31.9 | 136.0 | 42.0 | 210.0 |
| 2020 | 19.6 | 125.2 | 36.2 | 181.1 |
| 2021 | 8.3 | 75.4 | 58.7 | 142.4 |
| 2022 | 0.9 | 112.2 | 45.4 | 158.5 |
| 2023 | 1.5 | 234.2 | 81.9 | 317.7 |

EXHIBIT B

2016 LETTER TO USFS

Nestlé Waters North America Inc.

5772 Jurupa St
Ontario, CA
91761
TEL: 909.974.0600



July 13, 2016

**VIA ELECTRONIC MAIL**



Christine A. Hill
District Ranger
Front Country Ranger District
San Bernardino National Forest
1209 Lytle Creek Road
Lytle Creek, CA 92358





Re: Purchase of Arrowhead Hotel by San Manuel Band of Mission Indians, a Federally-recognized Indian tribe (the "Tribe")

Dear Ms. Hill:

During Nestlé Waters North America Inc.'s ("NWNA") meeting with the U.S. Forest Service (the "USFS") on May 31, 2016, the USFS requested certain information regarding the Tribe's purchase of the Arrowhead Hotel.



As you know, NWNA owns certain real property rights (collectively, the "Real Property Rights") located on and within certain private property outside the San Bernardino National Forest (the "Property"). The Property includes, without limitation, the Arrowhead Hotel, and was formerly owned by the Campus Crusade for Christ ("CRU"). In connection with the Real Property Rights, NWNA maintains a pipeline that transports spring water from the Arrowhead Springs to NWNA's storage and loading facilities located on the Property (the "Arrowhead Springs Pipeline").



We have been informed that CRU conveyed the Property to the Tribe some time in May 2016. Pursuant to a series of recorded documents—which, we understand, were assigned to the Tribe in connection with the sale—the Tribe has rights to a certain portion of the spring water which currently flows through the Arrowhead Springs Pipeline. If you have any questions regarding this, the Tribe would be the best source of information.

Should you have any questions, please do not hesitate to contact me.



Very truly yours,

Larry Lawrence



cc (via email): Jody Noiron
Bob Hawkins



EXHIBIT C

SUPPLEMENTAL INFORMATION SUBMITTED BY SMBMI TO USFS

Following BTB's discussions with the SMBMI regarding the USFS's requests for information outlined above, the SMBMI agreed to provide the following statement to the USFS:

*The Tribe requested that BlueTriton Brands ("BTB") provide water from tunnels 2 and 3 and borehole 8 for the period of November 2023 through February 2024 (the "Period"). The Tribe used the water delivered by BTB during the Period at the Arrowhead Springs property for a variety of beneficial and reasonable purposes as has occurred historically and returned any unused water to the watershed downstream. The Tribe has broad water rights claims to such water, including, but not limited to, those acknowledged by the State Water Resources Control Board.*

*The Tribe is not aware of a gauge that would accurately reflect all the water flowing past the Arrowhead Springs property.*

*The Tribe does not take issue with BTB's plans to release aggregate information on the water deliveries to the Tribe.*

*The Tribe's submission of the above information to BTB regarding water delivery to and uses of such water at the Tribe's Arrowhead Springs property does not constitute a waiver of the Tribe's sovereign immunity nor is it an admission or waiver as to any finding of fact or legal conclusions, including those made in connection with BlueTriton's Special Use Permit with the United States Forest Service (the "Permit") or WR 2023-0042 ("Order"), adopted by the California State Water Resources Control Board ("SWRCB") on September 19, 2023, and as stayed by the California Superior Court. The Tribe is not a party to, nor is it bound by the terms of the Permit or the Order, and therefore, to the extent either refers to the Tribe's land ownership or water rights claims, they do not adjudicate, resolve, or quantify any of the Tribe's claims or rights as they relate to land and water.*

EXHIBIT D

REQUESTED DECOMMISSIONING PLAN

# REQUESTED DECOMMISSIONING PLAN
## NO. 7 BOREHOLE COMPLEX
## ARROWHEAD SPRINGS
## SAN BERNARDINO, CALIFORNIA

BlueTriton Brands
Ontario, California

May 2024

# No. 7 Borehole Complex Requested Decommissioning Plan

Presented herein is the requested decommissioning plan for the No. 7 Borehole Complex located at Arrowhead Springs in San Bernardino County, California, and operated by BTB. The No. 7 Borehole Complex is part of a group of springs located in Strawberry Canyon, which is on the southern slope of the San Bernardino Mountains at the northern edge of the Santa Ana River Basin. Strawberry Canyon is characterized as steep, rugged terrain with deeply incised canyons.

The No. 7 Borehole Complex is located at 5,200 feet above mean sea level, and is developed by horizontal boreholes 7, 7A, 7B, and 7C. The horizontal boreholes were developed for the purpose of producing spring water from the same underground strata feeding the springs. Percolating groundwater flows by the force of gravity through bedrock fractures into the borehole screens and into the water conveyance pipeline, without the assistance of pumps. Each of the boreholes consists of a horizontal boring drilled into fractured bedrock, with a cement surface seal and perforated borehole liner.

Typical horizontal borehole construction includes a conductor casing cemented from ground surface to a depth greater than 50 feet, and a perforated screen installed from the conductor casing seal to the total depth of the borehole. The dimensions of the boreholes range between 2.5 and 2.875 inches in diameter, and each borehole is between 230 and 397 feet in length. The perforated screen and conductor materials consist of Schedule 40 galvanized steel pipe. The well screen includes 0.125-inch holes drilled to allow the inflow of water. Table 1 includes the No. 7 Borehole Complex construction summary.

Table 1. No. 7 Borehole Complex Construction Summary

| Horizontal Borehole No. | Borehole Length (feet) | Borehole Diameter (inches) | Seal Length (feet) | Casing Material | Conductor Casing Diameter (inches) | Screen Diameter (inches) | Screen Perforations (inches) |
|---|---|---|---|---|---|---|---|
| 7 | 290 | 2.875 | 126 | Sch 40 Galv. Steel | 2 | 1.25 | 0.1875 |
| 7A | 230 | 2.875 | 95 | Sch 40 Galv. Steel | 2 | 1.25 | 0.1875 |
| 7B | 397 | 2.875 | 121 | Sch 40 Galv. Steel | 2 | 1.25 | 0.1875 |
| 7C | 390 | 2.5 | 168 | Sch 40 Galv. Steel | 2 | 1.25 | 0.1875 |

Any decommissioning of the No. 7 Borehole Complex would include mobilization to the spring location, removal of all piping and electronics from the No. 7 Borehole Complex vault structure, pressure grouting each of the four boreholes, restoration/revegetation of the road to No. 7 Borehole Complex, recontouring the ground surface, and removal of above ground stainless steel piping and pipe stands. We note that any decommissioning process would need to comply with the applicable state requirements in effect at that time (whether legal or regulatory), and the requested decommissioning plan set forth herein was prepared accordingly. Table 2 includes details for the requested decommissioning plan.

Table 2. Requested Decommissioning Plan

| Item No. | Description | Units | Est. Qty. |
|---|---|---|---|
| 1 | Mobilization/demobilization | LS | 1 |
| 2 | Remove piping and electronics from vault structure | LS | 1 |
| 3 | Pressure grout each of the horizontal boreholes | EA | 4 |
| 4 | Restoration/revegetation of the road to No. 7 Borehole Complex | SF | 2,300 |
| 5 | Recontour ground surface at vault location | SF | 500 |
| 6 | Remove above ground stainless steel pipe (4-inch) and pipe stands | LF | 1,800 |

The work associated with the requested decommissioning plan outlined above would take roughly one year from start to finish. We note that this concept plan outlined above is being delivered to the USFS for informational purposes only and at their request. BTB continues to operate and maintain the No. 7 Borehole Complex in accordance with BTB's business and operational needs.