SOMACH SIMMONS & DUNN
MICHAEL W. DAUGHERTY, ESQ. (Co. Bar No. 49074)
Pro Hac Vice
RAMSEY L. KROPF, ESQ. (Co. Bar No. 21528)
Pro Hac Vice
1155 Canyon Blvd., Suite 110
Boulder, CO 80302
Telephone (916) 446-7979
mdaugherty@somachlaw.com
rkropf@somachlaw.com

LAW OFFICE OF FRANK LAWRENCE
FRANK LAWRENCE, ESQ. (Ca. Bar No. 147531)
ZEHAVA ZEVIT, ESQ. (Ca. Bar No. 230600)
111 Bank St. No. 175
Grass Valley, CA 95945
Telephone: (530) 362-8434
frank@franklawrence.com
zehava@franklawrence.com

Attorneys for [PROPOSED] Defendant-Intervenor
YUHAAVIATAM OF SAN MANUEL NATION,
a federally recognized Indian tribe, also federally recognized as
SAN MANUEL BAND OF MISSION INDIANS

# UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

### EASTERN DIVISION – RIVERSIDE

| | |
|---|---|
| SAVE OUR FOREST ASSOCIATION,<br><br>Plaintiff,<br><br>v.<br><br>UNITED STATES FOREST SERVICE,<br><br>RANDY MOORE, in his official capacity as Chief of the U.S. Forest Service, | Case No.: 5:24-cv-01336-JGB-DTB<br><br>**REPLY BRIEF IN SUPPORT OF YUHAAVIATAM OF SAN MANUEL NATION'S MOTION TO INTERVENE**<br><br>Hearing Date: July 7, 2025 |

i

| | |
|---|---|
| CHRISTOPHER FRENCH, in his official capacity as Deputy Chief for the National Forest System of the U.S. Forest Service, | Hearing Time: 9:00 a.m.<br>Courtroom: 1<br>Judge: Hon. Jesus G. Bernal |
| JENNIFER EBERLEIN, in her official capacity as Regional Forester for the Pacific Southwest Region of the U.S. Forest Service, | Action Filed: June 25, 2024<br>Trial Date: March 31, 2026 |
| DANELLE HARRISON, in her official capacity as Forest Supervisor of the San Bernardino National Forest of the U.S. Forest Service, | |
| MICHAEL NOBLES, in his official capacity as Front Country District Ranger of the U.S. Forest Service, | |
| Defendants. | |
| YUHAAVIATAM OF SAN MANUEL NATION, a federally recognized Indian tribe,<br><br>[PROPOSED] Defendant-Intervenor. | |

# TABLE OF CONTENTS

**I. INTRODUCTION** ................................................................................................. 1

**II. ARGUMENT** ....................................................................................................... 1

   **A. Rule 24 Requires Intervention Under the Circumstances of this Case** .... 1
      1. The Nation's Motion is Timely ........................................................................ 1
      2. The Nation Has Significant Legally Protectable Interests Here ..................... 3
      3. Disposition of this Action May Impair or Impede the Nation's Ability to Protect its Interests .............................................................................................. 9
      4. The USFS Cannot Adequately Represent the Nation .................................... 9

   **B. Plaintiff's Argument That Intervention Should Be Denied Because the Nation Plans to Seek Dismissal Must Fail** ....................................................... 10

**III. CONCLUSION** ............................................................................................... 12

# TABLE OF AUTHORITIES

## CASES

Alainz v. Tillie Lewis Foods, 572 F.2d 657 (9th Cir. 1978)..................................2

Balsam v. Tucows Inc., 627 F.3d 1158 (9th Cir. 2010)..........................................7

Day v. Apoliona, 505 F.3d 963 (9th Cir. 2007).....................................................1

Dine Citizens v. B.I.A., 932 F.3d 831 (9th Cir. 2019).........................................11

Donaldson v. United States, 400 U.S. 517 (1971)................................................4

Donnely v. Glickman, 159 F. 3d 405 (9th Cir. 1998)............................................6

Grondal v. United States, 37 F.4th 610 (9th Cir. 2022)........................................6

Jajco, Inc. v. Leader Drug Stores, Inc., No. C 12-05703 PJH, 2013 WL 2403593, 2013 U.S. Dist. LEXIS 77830 (N.D. Cal. May 31, 2013).................7

Jamul Action Comm. v. Simermeyer, 974 F.3d 984 (9th Cir. 2020).....................6

Kalbers v. U.S., 22 F.4th 816 (9th Cir. 2021)...............................................2, 3, 6

Klamath Irrig. Dist. v. U.S., 48 F.4th 934 (9th Cir. 2022)..................................11

Maverick Gaming v. U.S., 658 F. Supp. 3d 966 (W.D. Wash. 2023)..................11

Maverick Gaming v. U.S.,123 F.4th 960 (9th Cir. 2024)...............................11, 12

Mendoza v. Tucson Unified Sch. Dist., 125 F.4th 1262 (9th Cir. 2025)................7

Metcalf v. Daley, 214 F.3d 1135 (9th Cir. 2000)...................................................8

NAACP v. N.Y., 413 U.S. 345 (1973)....................................................................3

NW Forest Res. Council v. Glickman, 82 F.3d 825 (9th Cir. 1996).....................2

Oklahoma Tax Com'n v. Citizen Band Potawatomi Indian Tribe of Oklahoma, 498 U.S. 505 (1991).................................................................12

Scotts Valley Band of Pomo Indians v. United States Dep't of the Interior, 337 F.R.D. 19 (D.D.C. 2020)........................................................7

See Mountain Top Condo. Ass'n v. Dave Stabbert Master Builder, Inc., 72 F.3d 361 (3d Cir. 1995).............................................................5

SK Networks Co. v. Bentley Forbes Holdings, Ltd. Liab. Co., No. CV 12-08997 MMM (SHx), 2013 WL 12131715, 2013 U.S. Dist. LEXIS 203163 (C.D. Cal. Nov. 7, 2013)..................................................7

Smith v. L.A. Unified Sch. Dist., 830 F.3d 843 (9th Cir. 2016)........................1, 3

Sweet v. Cardona, 121 F.4th 32 (9th Cir. 2024) ....................................................... 9
U.S. v. Oregon, 913 F.2d 576 (9th Cir. 1990) ......................................................... 2
United States v. New York Tel. Co., 644 F.2d 953 (2d Cir. 1981) ......................... 4
Western Watersheds Project v. Haaland, 22 F.4th 828 (9th Cir. 2022).................. 1
Wilderness Soc. v. U.S. Forest Serv., 630 F.3d 1173 (9th Cir. 2011) ................ 4, 6

**RULES**

Fed. R. Civ. P. 24 ............................................................................................passim.

## I. INTRODUCTION

Plaintiff opposes the Nation's intervention on two grounds. First, Plaintiff argues the Nation fails to meet Fed. R. Civ. P. 24's four requirements for intervention as of right. However, as explained below, the Nation satisfies the Rule's four prongs.

Second, Plaintiff argues intervention is unwarranted because the Nation has indicated it will seek dismissal if its motion to intervene is granted, an outcome Plaintiff claims would be unfair. The argument is misplaced because the fairness of dismissal is not at issue now. The sole question before the Court is whether the Nation meets Rule 24's requirements for intervention. As shown below, it does.

## II. ARGUMENT

**A.    Rule 24 Requires Intervention Under the Circumstances of this Case**

   **1. The Nation's Motion is Timely**

Plaintiff's timeliness arguments completely misconstrue the issue presented. Plaintiff argues the Motion to Intervene is untimely because "eight years have elapsed between when the Nation purchased Arrowhead Springs and [when] Plaintiff filed the instant lawsuit." Plaintiff's Opposition Brief at page 19, lines 18-20 ("Opp'n 19:18-20"). But Rule 24's timeliness factor does not contemplate acts taken before Plaintiff filed its lawsuit, and relevant cases demonstrate that courts do not consider the time elapsed prior to the lawsuit. *See, e.g., Western Watersheds Project v. Haaland*, 22 F.4th 828, 836 (9th Cir. 2022); *Smith v. L.A. Unified Sch. Dist.*, 830 F.3d 843, 854-55 (9th Cir. 2016). Focusing on the time elapsed after commencement of lawsuits, courts have deemed motions to intervene timely even when filed at the appellate stage and/or years after the litigation began, depending on the case's circumstances. *See Smith*, 830 F.3d at 855; *Day v. Apoliona*, 505 F.3d 963, 966 (9th Cir. 2007) (motion timely despite the case being two years old and on appeal, because it would not "broaden the scope of the case going forward").

Here, the Nation timely filed its motion before any substantive hearings or rulings, less than nine months after the lawsuit commenced and less than seven months after Plaintiff filed its First Amended Complaint ("FAC"), which first explicitly targeted the Nation's rights and water deliveries.[1]  *See* Opening Brief at 10-14.  The Ninth Circuit requires that the alleged "prejudice must be connected in some way to the timing of the intervention motion – and the fact that including another party in the case might make resolution more difficult[] does ***not*** constitute prejudice." *Kalbers v. U.S.*, 22 F.4th 816, 825 (9th Cir. 2021) (internal quotations and citations omitted) (emphasis added).

Courts generally find no prejudice when intervention is sought before any substantive rulings have been made.  *See NW Forest Res. Council v. Glickman*, 82 F.3d 825, 837 (9th Cir. 1996).  Here, the existing parties will not be prejudiced because the Nation seeks intervention before the Court has made any substantive rulings.  Furthermore, intervention will not cause serious disruption, unravel previously-reached settlements, or upset a consent decree.  *Compare U.S. v. Oregon*, 913 F.2d 576, 588–89 (9th Cir. 1990) (delicately balanced, multi-party settlement, where "the possibility of this settlement unraveling is so prejudicial that to allow [intervention] at this late date would be tantamount to disaster"); *Alainz v. Tillie Lewis Foods*, 572 F.2d 657, 659 (9th Cir. 1978) (prejudice when motion was filed 17 days after a consent decree had become effective and was adjudicated after the decree was modified).

Plaintiff also argues "the Nation has declined to engage with the SWRCB or the USFS," citing five actions the Nation allegedly failed to take. Opp'n 15:1-16:2. Notably, Plaintiff lacks personal knowledge of the alleged inactions.  More

---

[1] While the original complaint does not mention the Nation, *see* ECF 1, the FAC explicitly targets the Nation's water rights, expressly alleging, for the first time, that "San Manuel … has not demonstrated water rights …." ECF 24 ¶ 110.  The FAC also targets BlueTriton's continued water deliveries to the Nation. *Compare* Complaint, ECF 1 ¶ 57 to ECF 24 ¶ 66; ECF 1 ¶ 75 to ECF 24 ¶¶ 96-97; *see* Opening Brief, at 12:22-13:2.

importantly, however, the Nation *did* take numerous actions to protect its interests, both before and after Plaintiff filed its complaints. *See* Opening Brief at 12-14; Hickey Decl. (ECF No. 38-8) at ¶¶ 5-12 (detailing the Nation's extensive efforts to protect its water rights). Those actions both explain and justify the timing of the Nation's motion.

In addition, Plaintiff's argument ignores case law finding that intervenors need not intervene immediately but rather can work in other ways to try to protect their interests and that courts determine timeliness "from all the circumstances." *See NAACP v. N.Y.*, 413 U.S. 345, 366-67 (1973). The Ninth Circuit discourages premature intervention that unnecessarily wastes judicial resources and increases litigation costs, and favors intervention which serves efficient resolution of disputes, such that the court "construe[s] … intervention motions … liberally" and it does "not require hasty intervention. [T]imeliness is not a tool of retribution to punish the tardy would-be intervenor, but rather a guard against prejudicing the original parties by the failure to apply sooner. The purpose of the requirement is to prevent a tardy intervenor from derailing a lawsuit within sight of the terminal." *Kalbers*, 22 F.4th at 823 (internal quotations and citations omitted). Moreover, where, as here, "both the first and second timeliness factors weigh in favor of intervention," courts have found motions timely even in the wake of long delays. *Smith,* 830 F.3d at 861.

Here, there has been no undue delay. The proceedings are at an early stage with no substantive rulings, judgments, or consent decrees. Thus, any alleged "delay" prejudices no party, and the Nation's Motion is timely.

**2.     The Nation Has Significant Legally Protectable Interests Here**

Plaintiff does not and cannot dispute that the Nation's Motion to Intervene presents legally protected interests, namely the Nation's riparian, appropriative, contractual, and aboriginal water rights (*see* Opening Brief 15:15-24) that Plaintiff disputes (FAC, ECF 24 ¶110), including its contractual right to receive water from

BlueTriton and enter an agreement with BlueTriton to use its infrastructure if BlueTriton is unable to do so. *See* Opening Brief at 15:24-16:4.

Instead, Plaintiff offers four arguments regarding the Nation's protectable interests that are as inaccurate as they are irrelevant. First, it argues the Nation lacks protectable interests because the statutes the Complaint cites do not apply to the Nation. *See* Opp'n 21:7-11, citing *Donaldson v. United States*, 400 U.S. 517 (1971). Second, Plaintiff argues that any interests the Nation does possess are "purely financial." Opp'n 21:11-14. Third, Plaintiff argues the Nation lacks an interest here because "the challenged agency actions do not authorize any activity on tribal land, nor do they implicate tribal sovereignty or self-governance." Opp'n 21:15-16. Finally, Plaintiff argues "the challenged agency actions do not implicate any permit granted to the Nation, and the Nation is not a third-party beneficiary of BTB's Special Use Permit." Opp'n at 22:10-12; 23:20-23. Plaintiff is wrong on all points.

First, Plaintiff's reliance on *Donaldson* is misplaced. *Donaldson* finds intervention improper where the proposed intervenor asserts no legally protected interest in the suit's subject matter. *See* 400 U.S. at 530–31.[2] Unlike the *Donaldson* intervenor, which lacked a legal interest, here the Nation asserts direct, legally protected interests (water rights and contract rights) in the subject of this litigation: water being diverted under the SUP. *See, e.g.,* Opening Brief at 15:24-16:4. Contrary to Plaintiff's suggestion (*see* Opp'n at 21:7-11), nothing in *Donaldson* even hints that an intervenor's legally protected interests must arise under the same laws as the plaintiff's asserted claims. The Ninth Circuit has squarely rejected Plaintiff's first argument: a "prospective intervenor's asserted interest need not be protected by the statute under which the litigation is brought to qualify as 'significantly protectable' under Rule 24(a)(2)." *Wilderness Soc. v. U.S.*

---

[2] Additionally, *Donaldson* is not good law as it was long ago superseded by statute. *See United States v. New York Tel. Co.*, 644 F.2d 953, 956 (2d Cir. 1981).

*Forest Serv.*, 630 F3d 1173, 1179 (9th Cir. 2011). This Court recognized that point in its Order permitting intervention in the related case of *BlueTriton Brands v. USFS*, CV 24-9720 JDB (DTBx) (1/14/2025).

Plaintiff's second argument, that the Nation's interests in this legal action are "purely financial," is simply wrong and misses the point. No law Plaintiff cites holds that legally protected interests may be disregarded simply because infringement of those legally protected rights is "purely financial". *See Mountain Top Condo. Ass'n v. Dave Stabbert Master Builder, Inc.*, 72 F.3d 361, 366 (3d Cir. 1995) ("While a mere economic interest may be insufficient to support the right to intervene, an intervenor's interest in a specific fund is sufficient to entitle intervention in a case affecting that fund.").

The Nation detailed its varied interests at length in its Opening Brief at 14:23-18:15. These interests include the Nation's ability to exercise water rights, its contractual rights, its governmental operations, policies, and practices, its cultural rights,[3] its ability to protect its citizens' (and other people's) lives and property from fire, and the Nation's sovereignty. Characterizing these rights as "purely financial" is both absurd and inappropriate.

Plaintiff's third argument, that the agency actions at issue here do not affect tribal land or implicate tribal sovereignty or self-governance are equally wrong, as the Nation explained extensively in its Opening Brief. *See, e.g.,* Opening Brief at 17:3-13 (fire and life safety interests), 17:14-18:12 (sovereign interests). It is also

---

[3] Plaintiff argues "there is no evidence that decommissioning the BTB infrastructure … will harm culture resources" *outside* the Nation's Arrowhead Springs property. *See* Opp'n 16:3-24; Earney Dec. That argument relevance here. The Nation has not argued interests in *off-site* cultural resources. Rather, the Nation has identified present-day cultural interests *within the Arrowhead Springs property* that will be harmed if Plaintiff prevails. These include, among others, the Nation's native plant propagation program (*see* Garton Dec. ¶6, (RJN Ex. 4)) and the tribal cultural activities that occur at Arrowhead Springs. *See* D. Little Dec ¶ 12(a)-(c) (RJN Ex. 5); Garton Dec. ¶ 6 (RJN Ex. 4); McCleary Dec. ¶ 10 (RJN Ex. 1). Plaintiff's argument is immaterial.

misplaced. Nothing in Rule 24 requires an Indian tribe's asserted rights to be tied to exercising self-government, even though the Nation's rights here surely are. The Arrowhead Springs property is – contrary to Plaintiff's repeated misstatements (see, e.g., Opp'n 14:12) – tribally-owned land. The fact that that the Nation owns that land in fee simple, rather than federal trust, is immaterial. *See Jamul Action Comm. v. Simermeyer*, 974 F.3d 984, 991 (9th Cir. 2020) ("Tribal sovereign immunity extends to both the governmental and commercial activities of a tribe, whether undertaken on or off its reservation."); *Grondal v. United States*, 37 F.4th 610, 617 (9th Cir. 2022). What matters is that Arrowhead Springs belongs to the Nation and is within the Nation's ancestral lands, and this litigation stands to negatively impact the Nation's legally-protected interests therein, and the water upon which the Nation depends for those lands. This, in addition to the other adverse impacts on fundamental tribal interests, satisfies Rule 24's requirement.

The fourth argument, that the Complaint does not challenge any permit the Nation possesses, is also off base. The Nation need not show the litigation challenges a permit granted to it. Rather, it must show the disposition of the case in its absence may "impair or impede [its] ability to protect its interest…." *See* Rule 24(a). "[A] proposed intervenor 'has a significant protectable interest in an action if (1) it asserts an interest that is protected under some law, and (2) there is a relationship between its legally protected interest and the plaintiff's claims.'" *Kalbers*, 22 F. 4th at 827 (*citing Donnely v. Glickman*, 159 F. 3d 405, 409 (9th Cir. 1998)). Here, the Nation has established several significant protectable interests supporting intervention which Plaintiff's action may impair. The Nation is not required to show that it has an interest in the specific permit at issue in the Complaint. *See Wilderness Soc*., 630 F.3d at 1179. Moreover, USFS knew that the Nation receives water from BlueTriton pursuant to the 1931 contract, even before it issued the 2018 Decision Memo (*see* Doughty Decl., Ex. 12 (ECF No. 55-14), at 27), and that a SUP was the only viable mechanism for BlueTriton to

deliver water to the Nation. The 1931 contract effectively renders the Nation a third-party beneficiary, notwithstanding the SUP's disclaimer.[4] "[T]o conclude otherwise would be to prioritize form over substance." *Mendoza v. Tucson Unified Sch. Dist.*, 125 F.4th 1262, 1279 (9th Cir. 2025).[5]

In yet another permit-focused argument, Plaintiff contends the Nation lacks an interest in the case because "Plaintiff's claims [will not] prevent the Nation from applying for its own permit…." Opp'n 22:12-14. This assertion directly contradicts the First Amended Complaint, which seeks to enjoin the USFS from issuing a SUP to anyone, including the Nation, until a new or supplemental environmental analysis has been performed, which could take years. *See* FAC, Prayer for Relief, ¶5 (seeking to "[e]njoin Defendant from approving or allowing **any third party** to divert water from Strawberry Canyon by entry onto USFS land") (emphasis added). In the interim, the Nation's access to water would end, creating devastating impacts for the Nation and its use of Arrowhead Springs.

---

[4] *See SK Networks Co. v. Bentley Forbes Holdings, Ltd. Liab. Co.*, No. CV 12-08997 MMM (SHx), 2013 WL 12131715, 2013 U.S. Dist. LEXIS 203163, at *58 (C.D. Cal. Nov. 7, 2013) ("[l]anguage disclaiming an intention to benefit third party beneficiaries does not automatically foreclose the parties' intent to benefit a third party"); *Jajco, Inc. v. Leader Drug Stores, Inc.*, No. C 12-05703 PJH, 2013 WL 2403593, 2013 U.S. Dist. LEXIS 77830, at *16 (N.D. Cal. May 31, 2013) (while a disclaimer of third-party beneficiaries is strong evidence of intent not to create any third-party obligations, it "is not necessarily dispositive of whether a third party qualifies as a beneficiary") (citing *Balsam v. Tucows Inc.*, 627 F.3d 1158, 1163 (9th Cir. 2010)).

[5] Moreover, the Nation *can* "establish that it will be 'injured by the setting aside of the government's action it seeks to defend, that this injury would have been caused by that invalidation, and the injury would be prevented if the government action is upheld.'" *See* Opp'n at 22 n.1 (*quoting Scotts Valley Band of Pomo Indians v. United States Dep't of the Interior*, 337 F.R.D. 19, 23 (D.D.C. 2020)). If Plaintiff prevails on its claims, the "BTB 2023 SUP, the 2018 Decision Memo, and the NEPA conclusions supporting the 2018 Decision Memo" would be set aside, thereby causing deliveries of Strawberry Canyon water to the Nation to be curtailed, even if temporarily, whereas if those documents are upheld, there will be no curtailment due to this litigation. *See* FAC, Prayer for Relief, ¶4.

Further, Plaintiff asks the Court to order the removal of the diversion structures in Strawberry Canyon (*see* FAC, Prayer for Relief, ¶7), which would eliminate the Nation's ability to take delivery of and beneficially use water in the manner that the owners of the Arrowhead Springs Hotel Property have done for nearly a century). All of this will occur if Plaintiff's prayer for relief is granted.

Additionally, Plaintiff's discussion of *Metcalf v. Daley*, 214 F.3d 1135 (9th Cir. 2000), at Opp'n 23:4-15, is irrelevant to determining whether the Nation's interests are at stake. *Metcalf* provides guidance to federal agencies regarding the timing of their NEPA reviews, which has no bearing on the fact that here, the Nation's interests will be irrevocably and seriously harmed if the Court grants Plaintiff's requested relief.

Moreover, Plaintiff's assertion that none of the Nation's rights are at stake in the Complaint because the Complaint does not challenge a permit granted to the Nation, is disingenuous. The Complaint itself expressly and directly challenges the Nation's rights: "[The Nation] has not demonstrated water rights." FAC ¶ 110. Under these circumstances, and considering the interests the Nation identified in its Motion to Intervene, Plaintiff cannot seriously argue the Complaint fails to implicate the Nation's significant tribal interests.[6]

On January 14, 2025, this Court found the Nation is entitled to intervene as of right in the related case *BlueTriton Brands v. USFS*. As the Forest Service did there, Plaintiff SOFA "construes the protectable interest analysis too narrowly." *Id.* Doc. 91, p. 4 of 5. This Court recognized that "[w]hile the Nation's water rights are certainly a protectable interest, the Nation also has a separate protectable

---

[6] Notably, the SWRCB's Order WR 2023-0042 concluded "the San Manuel Band has riparian rights that authorize diversions through [BlueTriton's] facilities for beneficial uses on the Arrowhead Springs Hotel property." ECF No. 38-7 at 92. (The Fresno County Superior Court recently set aside the aspect of the SWRCB's Order finding BlueTriton lacks water rights within the San Bernadino National Forest, although that ruling is not yet final pending the state water board's right to appeal.)

interest in the delivery of that water pursuant to its rights under its contract with BlueTriton. That is, the Nation has an interest in the delivery of water that 'is protected under some law.'" *Id.* (*quoting Sweet v. Cardona*, 121 F.4th 32, 48 (9th Cir. 2024)) (emphasis in original). The Nation's interests at stake here are identical, and more than satisfy Rule 24's requirements.

### 3. Disposition of this Action May Impair or Impede the Nation's Ability to Protect its Interests

Incredibly, Plaintiff argues the Nation's interest will not be impaired absent intervention because, *inter alia*, it "does not own the property, nor does it have jurisdiction over the property at issue …." Opp'n 25: 11-12. Those statements are just false. Indeed, Plaintiff's Opposition expressly **concedes** the Nation owns the Arrowhead Springs property: "The Hotel Property **is presently owned by the Nation** …." *Id.* at 11:18 (emphasis added).

Under Rule 24(a)(2), "[t]he relevant inquiry is whether the consent decree '**may**' impair rights 'as a practical matter' rather than whether the decree will 'necessarily' impair them." *Los Angeles*, 288 F.3d at 401 (*quoting* Rule 24(a)(2)) (emphasis added). The Nation's burden is minimal, requiring only a showing that its legal interest *could be* impaired if intervention is denied. *See id*. at 401. Here, there is no doubt that if Plaintiff prevails, the Nation's contractual water rights would be effectively vitiated by this litigation in numerous ways the Opening Brief details. *See* Opening Brief at 14:23-18:15. The Court need look no further than the FAC's fifth and seventh prayers for relief to conclude that Plaintiff's claims will adversely impact the Nation should they be granted.

### 4. The USFS Cannot Adequately Represent the Nation

The Nation's Opening Brief devoted almost four pages to explaining the many ways in which the USFS has demonstrated that it cannot (and would not) adequately represent the Nation's interests in this litigation. *See* Opening Brief at

19:4-22:17. As the Nation has shown, (1) the USFS has admitted that it lacks an adequate understanding of the Nation's water use on the Arrowhead Springs property (*see id.* at 20:21-28); (2) the USFS has made erroneous statements about the Nation's interests (*see id.* at 21:1-15); and (3) the USFS went so far as to affirmatively undermine the Nation's very interests at issue in this litigation (*see id.* at 21:16-22:2). Moreover, not only does the Nation's evidence show the federal defendants expressed positions in *BTB v. USFS* that directly undermine tribal interests at issue here, the federal defendants' interests in fact *directly compete with* the Nation's interests. See Opening Brief at 22:3-15.

Plaintiff ignores that record and instead asserts that because courts have found shared interests between Indian tribes and the federal government in other cases, the USFS will represent the Nation's interests here. See Opp'n at 25:25-26:5. There is no shared interest here, and as the Nation has shown, the USFS is incapable of adequately representing the Nation's vital interests in this case.

**B.     Plaintiff's Argument That Intervention Should Be Denied Because the Nation Plans to Seek Dismissal Must Fail**

Plaintiff argues that this Court should deny the Motion to Intervene because the Nation plans to file a Motion to Dismiss (a copy of which is attached at ECF 38-14, as Rule 24(c) requires). See Opp'n at 9:24-10:13; *id.* at 20:6-7 (arguing erroneously that this Court should conclude intervention was untimely because if intervention were granted, "the public would be stripped of its opportunity to vindicate a public right"). This argument is misplaced.

Rule 24 describes the parameters a court considers while adjudicating intervention. A party is permitted to intervene when Rule 24's requirements are met regardless of the arguments it plans to raise upon intervening. The Nation attached a copy of its proposed Rule 19 Motion to Dismiss because Rule 24(c) requires that the proposed intervenor accompany its motion to intervene with "a

pleading that sets out the claim or defense for which intervention is sought." The merits of the planned dismissal motion are not currently at issue.

The Ninth Circuit permits intervention even when the intervenor plans to seek dismissal. Indian "tribes may intervene for the limited purpose of asserting they are required parties without waiving their sovereign immunity." *Maverick Gaming v. U.S.*, 658 F. Supp. 3d 966, 974 (W.D. Wash. 2023), *aff'd*, 123 F.4th 960 (9th Cir. 2024). "[W]here, as here, a tribe intervenes for the limited purpose of a motion to dismiss the action because it is a required party that cannot be joined due to its sovereign immunity, the court's jurisdiction is 'limited to the issues necessary to decide' that controversy, only." *Id.*, 123 F.4th at 979 (internal quotation omitted) (emphasis added). *See Klamath Irrig. Dist. v. U.S.*, 48 F.4th 934, 942 (9th Cir. 2022); *Dine Citizens v. B.I.A.*, 932 F.3d 831, 850 (9th Cir. 2019).[7]

Furthermore, Plaintiff argues that intervention is impermissible when the party seeking intervention plans to seek dismissal because it would be unfair to plaintiffs. *See* Opp'n at 10:11-13; 20:6-7. This argument is contrary to the established Ninth Circuit precedent cited herein. It is also unconvincing because it assumes the outcome — that this Court's granting of intervention in a case in which the Nation possesses a direct interest guarantees that its dismissal motion will be granted. However, intervention and dismissal are two separate proceedings with separate briefing and argument, based on different Federal Rules. Granting intervention is not tantamount to granting dismissal. In addition, Plaintiff's argument is not actually an argument against intervention, but rather against dismissal and Rule 19 itself. While Plaintiff may fear the prospect of its lawsuit's dismissal if and when intervention is granted and the Nation's Motion to Dismiss is heard, that fear provides no basis to prevent the Nation's intervention, at issue in this motion, under Rule 24.

---

[7] *Maverick Gaming* also notes this procedure has been accepted by courts in sister circuits. *See Maverick Gaming*, 658 F. Supp. 3d at 974.

Finally, Plaintiff argues the Nation's intent to invoke sovereign immunity after intervention is granted contradicts its election to waive that immunity in the related case of *BTB v. USFS*. *See* Opp'n 18:14-16. This argument fails too. It is well established that federally-recognized Indian tribes have authority and discretion to determine whether and when to waive their sovereign immunity, and that "a tribe's voluntary participation in litigation for a limited purpose does not constitute a blanket waiver of immunity from suit in general. Rather, '[t]he scope of the waiver depends on the particular circumstances….'" *Maverick Gaming*, 123 F.4th at 978 (citations omitted). Tribes may waive their immunity as to some claims, even within a single legal proceeding, but not to others. *See Oklahoma Tax Com'n v. Citizen Band Potawatomi Indian Tribe of Oklahoma*, 498 U.S. 505, 509 (1991) (a tribe filing a lawsuit does not waive its sovereign immunity as to counterclaims). Here, the Nation has asserted, and repeats, that by intervening in this action for the limited purpose of moving to dismiss, the Nation does not waive, and reserves, its sovereign immunity. There is no inconsistency in the Nation's positions here and in *BTB v. USFS*; the Nation's election to waive immunity in that case, while limiting its waiver to seeking dismissal here, is within its sovereign determination to make. It also happens to be well-reasoned, justified, and protective of its interests. Plaintiff's contrary argument arises either from its ignorance of, or disregard for, the Nation's political status as a sovereign Indian tribe. And, in any case, as Plaintiff itself asserts at Opp'n 26:14, the Nation's sovereign immunity is not at issue in the present motion.

### III.   CONCLUSION

For the foregoing reasons, the Nation satisfies the requirements for intervention as of right. Alternatively, this Court should exercise its discretion to allow the Nation's permissive intervention.

DATED: June 23, 2025        Respectfully submitted,

LAW OFFICE OF FRANK LAWRENCE

By /S_____
    Frank Lawrence, Esq.
Attorneys for Specially Appearing (Proposed) Intervenor Yuhaaviatam of San Manuel Nation

## **CERTIFICATION OF COMPLIANCE. LR11-6.2**

The undersigned, counsel of record for proposed Intervenor, certifies that this Reply Brief contains 4,079 words, which complies with the word limit of L.R. 11-6.1.

DATED: June 23, 2025                    Respectfully submitted,

                                         LAW OFFICE OF FRANK LAWRENCE

                                         By /S_____
                                            Frank Lawrence, Esq.
                                            Attorneys for Specially Appearing (Proposed) Intervenor Yuhaaviatam of San Manuel Nation