SOMACH SIMMONS & DUNN
MICHAEL W. DAUGHERTY, ESQ. (Co. Bar No. 49074)
Pro Hac Vice
RAMSEY L. KROPF, ESQ. (Co. Bar No. 21528)
Pro Hac Vice
1155 Canyon Blvd., Suite 110
Boulder, CO 80302
Telephone (916) 446-7979
Facsimile: (916) 446-8199
mdaugherty@somachlaw.com
rkropf@somachlaw.com

LAW OFFICE OF FRANK LAWRENCE
FRANK LAWRENCE, ESQ. (Ca. Bar No.147531)
ZEHAVA ZEVIT, ESQ. (Ca. Bar No. 230600)
111 Bank St. No. 175
Grass Valley, CA 95945
Telephone: (530) 362-8434
frank@franklawrence.com
zehava@franklawrence.com

Attorneys for Defendant-Intervenor
YUHAAVIATAM OF SAN MANUEL NATION,
a federally recognized Indian tribe, also federally
recognized as SAN MANUEL BAND OF MISSION INDIANS

# UNITED STATES DISTRICT COURT

# FOR THE CENTRAL DISTRICT OF CALIFORNIA

# EASTERN DIVISION – RIVERSIDE

| | |
|---|---|
| SAVE OUR FOREST ASSOCIATION, INC.,<br><br>                              Plaintiff,<br><br>     v.<br><br>UNITED STATES FOREST SERVICE,<br><br>RANDY MOORE, in his official capacity as Chief of the U.S. Forest Service, | Case No.: 5:24-cv-01336-JCB-DTB<br><br>**YUHAAVIATAM OF SAN MANUEL NATION's MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS**<br><br>Hearing Date: November 24, 2025<br>Hearing Time: 9:00 A.M.<br>Courtroom: 1<br>Judge: Hon. Jesus G. Bernal<br><br>Action Filed:  June 25, 2024 |

1

2     CHRISTOPHER FRENCH, in his
official capacity as Deputy Chief for the
3     National Forest System of the
U.S. Forest Service,

4     JENNIFER EBERLEIN, in her official
capacity as Regional Forester for the
5     Pacific Southwest Region of the
U.S. Forest Service,

6

7     DANELLE HARRISON, in her official
capacity as Forest Supervisor of the San
Bernardino National Forest of the
8     U.S. Forest Service,

9     MICHAEL NOBLES, in his official
capacity as Front Country District
10     Ranger of the U.S. Forest Service,

11                Defendants.

12     YUHAAVIATAM OF SAN MANUEL
NATION, a federally recognized Indian
13     tribe, also federally recognized as SAN
MANUEL BAND OF MISSION
14     INDIANS,

15                Defendant-Intervenor.

16

17

18

19

20

21

22

23

24

25

26

27

28

# **TABLE OF CONTENTS**

Page

I.  INTRODUCTION ................................................................................... 1

II.  STATEMENT OF FACTS ...................................................................... 3

    A.  The Nation's Ancestral Ties, Rights, and Interests at Arrowhead Springs ........................................................................ 3

    B.  The Instant Suit.......................................................................... 8

III.  ARGUMENT......................................................................................... 9

    A.  Legal Standard for Dismissal Per Rule 12(b)(7) and Rule 19 .............. 9

    B.  The Nation is a Required Party under Rule 19(a). ............................... 9

        1.  The Court Cannot Accord Complete Relief Among Existing Parties in the Nation's Absence ................................. 10

        2.  The Nation Has an Interest in the Subject of the Action and the Nation's Absence Will Impair or Impede Its Ability to Protect Its Interest ...................................................... 11

        3.  The Existing Parties Do Not Adequately Represent the Nation's Interests.............................................................. 14

    C.  Joinder is Not Feasible Because the Nation Is a Federally Recognized Tribe With Sovereign Immunity...................................... 18

    D.  The Action Cannot Proceed in Equity and Good Conscience Absent the Nation as a Party ............................................................. 19

IV.  CONCLUSION.................................................................................... 22

# <u>TABLE OF AUTHORITIES</u>

Page(s)

<u>Cases</u>

*Alto v. Black*,
    738 F.3d 1111 (9th Cir. 2013) ............................................................... 14

*Am. Greyhound Racing, Inc. v. Hull*,
    305 F.3d 1015 (9th Cir. 2002) ...................................................... 19, 21

*Amerind Risk Mgmt. Corp. v. Malaterre*,
    633 F.3d 680 (8th Cir. 2011) ............................................................. 18

*Confederated Tribes of Chehalis Indian Reservation v. Lujan*,
    928 F.2d 1496 (9th Cir. 1991) .................................................... 10, 20

*Dawavendewa v. Salt River Project Agric. Improvement & Power Dist.*,
    276 F.3d 1150 (9th Cir. 2002) ......................................... 9, 11, 18, 21

*Deschutes River All. V. Portland Gen. Elec. Co.*,
    1 F.4th 1153 (9th Cir. 2021) ........................................................ 19, 21

*Dine Citizens v. BIA*,
    932 F.3d 843 (9th Cir. 2019) ..............................................2, *passim*

*E.E.O.C. v. Peabody W. Coal Co.*,
    610 F.3d 1070 (9th Cir. 2010) ...................................................... 11, 12

*Elliott v. White Mountain Apache Tribal Ct.*,
    566 F.3d 842 (9th Cir. 2009) ............................................................ 12

*Garcia v. Akwesasne Hous. Auth.*,
    268 F.3d 76 (2d Cir. 2001)................................................................. 18

*Jamul Action Comm. v. Simermeyer*,
    974 F.3d 984 (9th Cir. 2020) ............................................................. 11

*Kescoli v. Babbitt*,
    101 F. 3d 1304 (9th Cir. 1996) .............................................. 13, 20, 21

*Klamath Irrig. Dist. v. U.S.*,
  48 F.4th 934 (9th Cir. 2022) ...................................................................2, *passim*

*Makah Indian Tribe v. Verity*,
  910 F.2d 555, 560 (9th Cir. 2004)........................................................... 21

*Maverick Gaming LLC v. United States*,
  123 F.4th 960 (9th Cir. 2024) ...........................................................9, *passim*

*Maverick Gaming LLC v. United States*,
  658 F. Supp. 3d 966 (W.D. Wash. 2023)
  *aff'd,* 123 F.4th 960 (9th Cir. 2024) ............................................... 2, 18

*Metlakatla Indian Cmty. v. Dunleavy*,
  58 F.4th 1034 (9th Cir. 2023) ............................................................... 7

*Miller v. Wright*,
  705 F.3d 919 (9th Cir. 2013) ............................................................... 18

*Pit River Home & Agric. Coop. Ass'n v. United States*,
  30 F.3d 1088 (9th Cir. 1994) ................................................... 10, 17, 21

*Republic of Philippines v. Pimentel*,
  553 U.S. 851 (2008)............................................................................. 20

*Robinson v. United States*,
  586 F.3d 683, 685 (9th Cir. 2009) ..................................................... 18

*Welch v. United States*,
  409 F.3d 646 (4th Cir. 2005) .............................................................. 18

*White v. Univ. of Cal.*,
  765 F.3d 1010 (9th Cir. 2014) ..................................................... 15, 21

Statutes

California Water Code, § 1706 ............................................................... 7

Other Authorities

89 Fed. Reg. 99899, 99902 (Dec. 11, 2024) ..................................... 1, 18

Federal Rule of Civil Procedure, rule

12(b)(7) .......................................................................................... 1, *passim*

19.................................................................................................... 1, *passim*

19(a) .................................................................................. 9, 10, 11, 19

19(a)(1) ................................................................................................ 9

19(b) ............................................................................... 18, 19, 20, 21

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    INTRODUCTION

The Yuhaaviatam of San Manuel Nation ("Nation") moves to dismiss this case with prejudice for failure and inability to join the Nation as a required party. *See* FRCP 12(b)(7) and 19.  The Nation has substantial sovereign, historical, contractual, and other rights at issue here, but it cannot be joined because of its sovereign immunity.  This case may not proceed in equity and good conscience without the Nation, and therefore, this Court should dismiss.

The Nation is a federally recognized Indian tribe that exercises sovereignty over its lands and citizens.  *See* 89 Fed. Reg. 99899, 99902 (Dec. 11, 2024).  Since time immemorial, the Nation has occupied and stewarded the lands that now comprise the San Bernardino National Forest, including the Strawberry Canyon watershed.

Plaintiff Save Our Forest Association, Inc. ("SOFA") seeks injunctive and declaratory relief against the United States Forest Service ("USFS") that would significantly and adversely impact the Nation's sovereignty, improperly render useless its water rights, cut off the Nation's water delivery, undermine its fundamental interests, and endanger its people and surrounding communities. Specifically, SOFA seeks to enjoin a special use permit ("SUP") that allows water delivery to the Nation on the over 2,000-acre property known as Arrowhead Springs ("Property" or "Arrowhead Springs") that has relied upon such water for over 100 years and to which the Nation has legal rights.  Arrowhead Springs' water serves the Nation's governmental, cultural, recreational and community facilities located on the Property that are used daily by the Nation and its citizens, employees, and guests.  It also supplies the Nation's fire station and system of fire hydrants on the Property, which local, regional, state and federal agencies use to combat fires at and around Arrowhead Springs.  The Property also serves as a training facility for these first responders.

SOFA also seeks to force the removal of a pipeline and associated infrastructure that deliver the Nation's much-needed water to the Property. Such removal would force the Nation to incur losses and costs totaling millions of dollars.

SOFA's action threatens several of the Nation's fundamental interests including sovereign, historic, cultural, property, and contractual rights. If successful, this action would undermine the Nation's ability to conduct governmental operations, harm its property and facilities, hinder its cultural activities and economic development efforts, vitiate its legal rights, and deprive the Nation (and non-tribal firefighting agencies) of the ability to combat wildfire that threatens the Property and neighboring lands.

Despite the significant dangers this lawsuit poses to the Nation, the Nation cannot be joined because it is immune from suit absent a clear waiver or congressional abrogation of its sovereign immunity, neither of which have occurred here. Accordingly, given the breadth and scope of its interests at stake in this matter, the action cannot in equity and good conscience proceed in the Nation's absence.

The Nation appears for the limited purpose of moving to dismiss under Rules 12(b)(7) and 19. It expressly reserves its sovereign immunity and does not consent to be sued, nor does it subject itself to the Court's authority for any purposes other than adjudication of this motion and the accompanying motion for limited intervention.[1]

---

[1] "[T]ribes may intervene for the limited purpose of asserting they are required parties without waiving their sovereign immunity." *Maverick Gaming LLC v. United States*, 658 F. Supp. 3d 966, 974 (W.D. Wash. 2023), *aff'd*, 123 F.4th 960 (9th Cir. 2024); *Cert. denied RunItOneTime LLC (fka Maverick Gaming LLC, v. U.S. et. al.,* 24-1161 (Oct. 6, 2025) ("*Maverick Gaming*"). "[W]here, as here, a tribe intervenes for the limited purpose of a motion to dismiss the action because it is a required party that cannot be joined due to its sovereign immunity, the court's

1

2

## II.    STATEMENT OF FACTS

### A. The Nation Has Ancestral Ties, Legal Rights, and Sovereign Interests at Arrowhead Springs.

The Property holds significant historical, spiritual, and cultural value to the Nation.  Since time immemorial, the Nation, its people, and their ancestors have used, lived among, and shared an intimate connection to this land.  The ancient village known as Apuiv'at was located in the area of what is today known as Arrowhead Springs.  The Arrowhead landmark, natural hot mineral springs, and surrounding areas are sacred sites, as defined in Executive Order 13007.  *See* Declaration of A. McCleary ¶¶2-3, 5-8, 10, filed in the related case *BlueTriton Brands v. United States Forest Service*, Case No. 2:24-cv-09720 ("*BlueTriton*") and attached as Exhibit 1 to the Nation's Request for Judicial Notice ("RJN") submitted herewith.[2]

In addition to the Nation's water use at Arrowhead Springs prior to colonization, the Property's owners have diverted water on and around Arrowhead Springs for the Property's beneficial uses since at least 1864, when the Property first housed a hotel and resort.  *See* State Water Resources Control Board Order WR 2023-0042 (April 23, 2021) at RJN Ex. 2 pp.22-23 ("Water Board Order").  The Nation purchased the Property in 2016.  *See* McCleary Dec. ¶7 (RJN Ex. 1); Hickey Dec. ¶3 (RJN Ex. 3).

---

jurisdiction is 'limited to the issues necessary to decide' that controversy, only." *Id.*, 123 F.4th at 979 (quotation omitted).  *See Klamath Irrig. Dist. v. U.S.*, 48 F.4th 934, 942 (9th Cir. 2022); *Diné Citizens v. BIA*, 932 F.3d 843, 850 (9th Cir. 2019).

[2] Citations to documents in the related case *BlueTriton* and included as exhibits to the Nation's RJN here, are cited as: "__ Dec. ¶__ (RJN Ex. __)" or "__ Dec. [or document name] Ex. __ at RJN Ex. __ pp.__-__".  Page numbers refer to the RJN's sequentially number pages in the lower right corner.

Between 1929 and 1930, the previous Property owners contracted with BlueTriton's predecessor, the last of which contracts, dated September 26, 1931 ("1931 Contract"), provided that BlueTriton's predecessor has the right to develop water in "Strawberry Canyon" and is obliged to deliver 20 percent of that water to Arrowhead Springs. *See* 1931 Contract ¶2, R. Garton Dec. Ex. 6 at RJN Ex. 4 p.184. To transport the water, BlueTriton and its predecessors constructed, accessed and operated the infrastructure in Strawberry Canyon, primarily located on San Bernardino National Forest lands. While water use at Arrowhead Springs clearly began in the 1880s, "since 1930" BlueTriton and its predecessors sought and received special use permits issued by the Forest Service to operate infrastructure on federal lands for water delivery. Water Board Order at RJN Ex. 2 p.35. This infrastructure is used to this day to deliver water to the Nation. *Id.* pp.34-35.

Following the 1931 Contract, downstream users sued the Nation's predecessor and BlueTriton's predecessor, alleging that upstream diversions and uses injured their water rights. On October 19, 1931, the San Bernardino County Superior Court rejected the challenge, entering a stipulated judgment confirming BlueTriton's predecessor's rights to divert water, and the Tribe's predecessor's right to use water, from Strawberry Canyon at Arrowhead Springs. *See* Water Board Order at RJN Ex. 2 pp.26-27; D. Little Dec. ¶19 and Ex. 5 at RJN Ex. 5 pp.280-281) (*Del Rosa Mutual Water Company v. Carpenter*, No. 31798, Judgment at 7-8 (S.B. Sup. Ct. 1931)) (describing the Property's previous owner's water uses since circa 1880 and decreeing its right to divert and use water).

When the Nation purchased Arrowhead Springs in 2016, it acquired all related real property, water and other rights from the previous Property owners, including the right to receive water under the 1931 Contract. *See* McCleary Dec. ¶7 (RJN Ex. 1); Hickey Dec. ¶3 (RJN Ex. 3).

On December 11, 2023, the Nation and BlueTriton entered a Letter Agreement ("Letter Agreement") that amended and clarified BlueTriton's water

delivery obligations under the 1931 Contract.  *See* R. Garton Dec. Ex. 4 at RJN Ex. 4 p.189-193.  The Letter Agreement requires BlueTriton to cooperate with the Nation's efforts to obtain water from Strawberry Canyon, including to support any application the Nation might file for its own SUP from the USFS, and to negotiate an agreement so the Nation can use the infrastructure pursuant to that potential SUP.  *See id.*

The Nation continues to use water supplied under BlueTriton's prior SUPs and pursuant to the State Water Board's stayed order[3] for governmental uses, including:

- Government administrative offices located at Arrowhead Springs;[4]
- Tribal cultural purposes, including cultural facilities and grounds;[5]
- Event spaces used both for the Nation's meetings and special events and, as a governmental economic development project, for meetings and events hosted by third parties;[6]
- Native plant propagation;[7]

---

[3] The State Water Board's Order at RJN Ex. 2 p.79 carves out authority for BlueTriton to divert and deliver water through its facilities in the Strawberry Creek watershed from Tunnels 2 & 3, and Boreholes 1, 1A, 7, 7A, 7B, 7C, and 8.

[4] *See* D. Little Dec. ¶12 (RJN Ex. 5); "Summary of Information on the Critical Need for Continued Delivery of Water to the Yuhaaviatam of San Manuel Nation's Arrowhead Property" dated November 15, 2024, attached to D. Little Dec. as . Ex. 5 and found at RJN Ex. 5 pp.255-56 (hereinafter, "Summary"). This "Summary" is the Nation's expert's report on the Nation's need for the water at issue here. *See* Hickey Dec. ¶8, RJN Ex. 3 ("the Nation hired consultants and outside water law counsel and produced a 49-page letter and attachments dated November 15, 2024, that provided all the information the USFS requested).

[5] *See* R. Garton Dec. ¶6 (RJN Ex. 4); A. McCleary Dec. ¶10 (RJN Ex. 1); Summary (D. Little Dec. Ex 5) at RJN Ex. 5 pp.255-56.

[6] "In 2024, over 60 events occurred in the event spaces. This does not include the daily use by the Nation and its employees and the training events, where fire fighters and other first responders from more than 20 city, state, federal and other agencies receive training."  Summary (D. Little Dec. Ex. 5), at RJN Ex. 5 p.256.

[7] "The Nation's Cultural Resource Management and Environmental Departments

- ▪ A tribal fire station and fire hydrants that serve both Nation and non-Nation lands;[8]
- ▪ Domestic irrigation of fire-defensible green space surrounding important facilities;[9]
- ▪ Fire suppression training, including tribal, local, State, and federal firefighting agencies' training and firefighting;[10] and
- ▪ Recreational purposes.[11]

The Nation has broad riparian, appropriative, contractual, groundwater and aboriginal water rights in Arrowhead Springs and the surrounding area, including Strawberry Canyon.  The Nation has "State riparian water rights, as Strawberry Creek and East Twin Creek flow across the Arrowhead property owned by the Nation."  Summary (D. Little Dec. Ex. 5) at RJN Ex. 5 p.266.  The Nation's

---

manage this work, and the Nation employs a full-time ethno-botanist and other experts to assist."  Summary (D. Little Dec. Ex. 5), at RJN Ex. 5 p.270; R. Garton Dec. ¶6 (RJN Ex. 4).

[8] *See* Summary (D. Little Dec. Ex. 5), at RJN Ex. 5 p.256; R. Garton Dec. ¶6 (RJN Ex. 4).

[9] *See* R. Garton Dec. ¶7 (RJN Ex.4).  After reacquiring the property, the Nation instituted water conservation measures, reducing irrigation uses by approximately 40% over prior owners' use.  *See id.*

[10] "[F]ire fighters and other first responders from more than 20 city, state, federal and other agencies have attended training events in the property's other facilities in 2024, including, but not limited to, Cal-Fire, San Bernardino County, City of San Bernardino, City of Ontario, City of Rancho Cucamonga, City of Chino, Fontana Police Department, City of Barstow, City of Big Bear, City of Apple Valley, City of Rialto, City of Colton, City of Redlands, City of Loma Linda, San Bernardino County Sheriffs, Riverside County Sheriffs, LA County Sheriffs, California State Park Rangers, US Marshalls…."  Summary (D. Little Dec. Ex. 5), at RJN Ex. 5 p.270. Arrowhead Springs also has the only "dipping pond" available for firefighting between Hwy. 18 and Hwy. 330.  *See* R. Garton Dec. ¶10 (RJN Ex. 4).

[11] *See* R. Garton Dec. ¶6 (RJN Ex. 4).

riparian rights "were acknowledged by the State Water Resources Control Board …." *Id.* (*citing* pp.79, 89-90 of the Water Board Order[12]).

In addition to those water rights, the Nation also has historic "State pre-1914 appropriative water rights," based on the "Arrowhead property's diversions of water from Strawberry Canyon for use at the hotel and other facilities on such land prior to 1914, which were recorded with the County of San Bernardino." Summary (D. Little Dec. Ex. 5), at RJN Ex. 5 p.267. "[T]he Nation [also has historic] appropriative rights in East Twin Creek, which the Nation may divert further upstream, including from Strawberry Canyon, pursuant to state law, including California Water Code Section 1706 …." *Id.* "This right predates all other state water rights, and the USFS lacks authority to modify the priority and administration of a recognized state water right. The Nation also possesses other pre-1914 rights in East Twin Creek and its tributaries by virtue of being the sole shareholder of the Del Rosa Mutual Water Company." *Id.*

In addition to those riparian and historic appropriative water rights, the Nation has a contractual right to water under the 1931 Contract as a successor in interest to receive water from BlueTriton. *See* Water Board Order at RJN Ex. 2 p.30; Letter Agreement (R. Garton Dec. Ex. 7) at RJN Ex. 4 pp.189-192 ("Letter Agreement").

Finally, as the Nation explained to the USFS in November 2024, it also claims "aboriginal water rights, rooted in the fact that Strawberry Canyon lies in the Nation's aboriginal territory. In fact, as discussed above, the Nation's ancestors had a village on and around the Arrowhead property." Summary (D. Little Dec.

---

[12] The Order is RJN Ex. 2.

Ex. 5), at RJN Ex. 5 pp.266-67.  *See Metlakatla Indian Cmty. v. Dunleavy*, 58 F.4th 1034, 1042 (9th Cir. 2023).[13]

### B.  The Instant Suit.

The first amended complaint ("Complaint") seeks to prevent Defendants from continuing to allow BlueTriton's occupancy and water diversion from Strawberry Canyon to Arrowhead Springs.  *See* Complaint, Prayer for Relief ¶¶4-5, 7.  The Complaint directly attacks the USFS's grant to BlueTriton of the permit that allows water delivery to the Nation.  *See id*.  Moreover, Plaintiff seeks to not only prevent BlueTriton from holding such a permit but also to prevent the Nation from itself securing a permit allowing it to operate BlueTriton's infrastructure.  *See id.* Prayer for Relief ¶5.  The Complaint also challenges the Nation's water rights directly, asserting that the Nation "has not demonstrated water rights."  *See id.*, ¶110.  Finally, Plaintiff seeks to permanently cut off water delivery to the Nation by forcing removal of the water-delivery pipeline and infrastructure, which will cost millions of dollars and which is essential to delivering water to the Property.  *See id.* ¶¶69, 94, Prayer for Relief ¶7.

SOFA's requested relief would indefinitely terminate the Nation's primary water supply for Arrowhead Springs and would remove the infrastructure necessary to deliver such water to Arrowhead Springs before the Nation could assume its operation.  That outcome would prevent the Nation from exercising its water rights, including its right to apply for its own permit to operate the infrastructure.  Despite the Nation's indisputable sovereign interests and legal rights, including riparian,

---

[13] The Nation also possesses groundwater rights at Arrowhead Springs, however those rights are not at issue here.  The groundwater supply is insufficient to meet the needs at Arrowhead Springs, in part due to low and unreliable production and temperature, high levels of contaminants in the water, and a lack of infrastructure. Several wells contain elevated levels of arsenic and fluoride and are not suitable for potable uses or irrigation.  Hamai Dec. ¶ 10 (RJN Ex. 8).

appropriative, groundwater, contractual, and aboriginal water rights, at issue here, SOFA did not name the Nation as a defendant.  The Nation now moves for dismissal under Fed. Rules of Civ. Proc. 12(b)(7) and 19.

## III.    ARGUMENT

### A. Legal Standard for Dismissal Per Rule 12(b)(7) and Rule 19.

"A party may move for dismissal of a complaint under Federal Rule of Civil Procedure 12(b)(7) for 'failure to join a party under Rule 19.'"  *Maverick Gaming*, 123 F.4th at 971  (*quoting* FRCP 12(b)(7)).  *See Klamath*, 48 F.4th at 943.  Courts analyze Rule 19 motions under a three-part inquiry.  *See Maverick Gaming*, 123 F.4th at 972-973.  First, the court determines whether the absent party is required under Rule 19(a).  *See id*. (*citing Klamath*, 48 F.4th at 943).  Second, if the court determines the absent party is required, it then determines whether joinder is feasible.  *See id*.  Third, if joinder is infeasible, the court must "'determine whether, in equity and good conscience, the action should proceed among the existing parties or should be dismissed.'"  *Id.* (*quoting* FRCP 19(b)).

### B. The Nation is a Required Party under Rule 19(a).

A party is required under Rule 19(a) if (a) the court cannot accord complete relief among existing parties in the nonparty's absence, or (b) the nonparty claims an interest relating to the subject of the action and is so situated that disposing of the action in their absence may "as a practical matter" impair or impede the nonparty's ability to protect their interest or "leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest."  FRCP 19 (a)(1).  Although the Nation need satisfy only one criterion under Rule 19(a) to be a required party, it satisfies both.

### 1. The Court Cannot Accord Complete Relief Among Existing Parties in the Nation's Absence.

A party is required under Rule 19(a) if complete relief cannot be accorded to Plaintiff even if victorious. *See Dawavendewa v. Salt River Project Agric. Improvement & Power Dist.,* 276 F.3d 1150, 1156 (9th Cir. 2002) (complete relief cannot be accorded absent the Nation because only the defendant and plaintiff "and not the Nation—would be bound by such an injunction"); *Pit River Home & Agric. Coop. Ass'n v. United States,* 30 F.3d 1088, 1099 (9th Cir. 1994) ("judgment against the government would not bind the [Tribal] Council, which could continue to assert its" rights); *Confederated Tribes of Chehalis Indian Reservation v. Lujan,* 928 F.2d 1496, 1498 (9th Cir. 1991) ("judgment against the federal officials would not be binding on the Quinault Nation …").

Here, SOFA seeks to enjoin the USFS from allowing BlueTriton or "any third party" (such as the Nation) to divert water from Strawberry Canyon unless and until the USFS has performed a new or supplemental environmental analysis. *See* Complaint, Prayer for Relief ¶5.  But as noted above, the Nation has broad water rights that authorize receipt of water through BlueTriton's infrastructure. *See* Summary (D. Little Dec. Ex. 5), at RJN Ex. 5 pp.266-267.  It has a contractual right to receive water directly from BlueTriton.  The Nation also has an agreement requiring BlueTriton to support the Nation's own SUP from the USFS, and to enter an agreement allowing the Nation to use BlueTriton water infrastructure pursuant to that SUP. *See* Water Board Order at RJN Ex. 2 p.26; Letter Agreement (R. Garton Dec., Ex. 7) at RJN Ex. 4 pp.189-192.  Accordingly, even if Plaintiff wins here, the Nation can still assert its rights to divert water through the facilities in Strawberry Canyon, and Plaintiff would not be accorded complete relief.  The Nation is a required party under Rule 19(a) because complete relief cannot be accorded in its absence.

### 2. The Nation Has an Interest in the Subject of the Action and the Nation's Absence Will Impair or Impede Its Ability to Protect Its Interest.

The Nation is also a required party under Rule 19(a) because its absence will impair and impede its ability to protect its interests. Under Rule 19(a), "the interest of the absent party must be a legally protected interest …." *Jamul Action Comm. v. Simermeyer*, 974 F.3d 984, 996 (9th Cir. 2020).

The Ninth Circuit has held that a "public entity has an interest in a lawsuit that could result in the invalidation or modification of one of its ordinances, rules, regulations, or practices." *E.E.O.C. v. Peabody W. Coal Co.*, 610 F.3d 1070, 1082 (9th Cir. 2010). The Ninth Circuit includes Indian Tribes among "public entities" for purposes of this Rule 19 analysis. *Id.* In addition, the Ninth Circuit has held that "a party to a contract is necessary, and if not susceptible to joinder, indispensable to litigation seeking to decimate that contract." *Dawavendewa,* 276 F.3d at 1157 (9th Cir. 2002).

Here, the Nation has several legally protected interests at stake that render it a "required" party. First, as noted above, the Nation's ability to exercise its water rights is at stake, including riparian, pre-1914 appropriative, contractual, and aboriginal water rights. *See* Summary (D. Little Dec. Ex. 5) at RJN Ex. 5 pp.266-267. The Complaint threatens these rights explicitly: "[The Nation] has not demonstrated water rights." ECF 24 ("Complaint") ¶110. It also threatens them implicitly because the relief sought would, *de facto*, eviscerate those rights by removing the infrastructure and voiding the permit necessary to exercise them. This lawsuit would alter the conditions that allow the Nation to receive its water, thereby impairing the Nation's water rights that the State Water Board acknowledged.

Second, the Nation's contractual right to receive water from BlueTriton is at stake here. *See* 1931 Contract (R. Garton Dec. Ex. 6) at RJN Ex. 4 p.183; Water

Board Order at RJN Ex. 2 p.26; Letter Agreement (R. Garton Dec., Ex. 7) at RJN Ex. 4 pp.189-192. The link between this lawsuit and the Nation's contractual rights is direct: if the lawsuit succeeds, it will remove BlueTriton's water delivery infrastructure, revoke the USFS permit authorizing the Nation's water delivery, and nullify the Nation's contractual right to water. *See* Complaint, Prayer for Relief ¶¶1-7.

Third, the Nation's tribal governmental operations, policies, and practices will be negatively impacted. The Tribal governmental offices located at Arrowhead Springs will shut down if the action succeeds, Tribal governmental employees will not be able to work there, and thus the work of Tribal government will be directly impacted in the most immediate sense. *See* D. Little Dec. ¶12(c) (RJN Ex. 5). The Nation's provision of fire protection services through the fire station and fire hydrants located at Arrowhead Springs will be cut off. *See* R. Garton Dec. ¶ 10 (RJN Ex. 4); D. Little Dec. ¶12(a), (c) (RJN Ex. 5); *see also Elliott v. White Mountain Apache Tribal Ct.*, 566 F.3d 842, 850 (9th Cir. 2009) (noting "the tribe's strong interest in . . . prevention of forest fires, and preservation of its natural resources"). The Nation will no longer be able to facilitate firefighter training for federal, State, Tribal and local firefighters on its property. *See* R. Garton Dec. ¶10 (RJN Ex. 4); K. Alexander Dec. ¶4 (RJN Ex. 6); D. Little Dec. ¶12(e) (RJN Ex. 5). The Nation will no longer be able to irrigate fire-defensible green spaces surrounding important facilities. *See* R. Garton Dec. ¶6 (RJN Ex. 4); D. Little Dec. ¶12(d) (RJN Ex. 5). The Nation also will be unable to use its Property for Tribal cultural purposes, recreation, meetings, or events, nor will it be able to rent out facilities to third parties. *See* D. Little Dec. ¶12(a)-(c) (RJN Ex. 5). Consequently, the Nation will lose not only a meeting place that serves important Tribal cultural and governmental purposes, but also a source of revenue that funds Tribal operations and contributes to the Nation's economic development. The Nation's native plant propagation program will wither due to a lack of water, and the cultural

benefits that result from that program will be lost.  *See* R. Garton Dec. ¶6 (RJN Ex. 4).  In short, many important Tribal governmental practices and policies will be impaired if this action succeeds.  Under *E.E.O.C. v. Peabody W. Coal Co*, that negative impact alone renders the Nation a required party.

Fourth, this action stands to directly affect the Nation's citizens' and other people's lives and property.  "The Arrowhead [Springs] property maintains a strategically located fire station and a system of fire hydrants… The Nation provides water through its fire hydrants to local, state, and federal firefighters. Every firefighting agency in the region connects to the hydrants to fight fires in the area."  Summary (D. Little Dec. Ex. 5), at RJN Ex. 5 p.271.  The risk of fire at Arrowhead Springs is real, and indeed, the current conditions at and around the Property are particularly susceptible to wildfire.  *See* K. Alexander Dec. ¶5 (RJN Ex.6).  Curtailing or ceasing water deliveries to Arrowhead Springs will interfere with local and regional firefighting efforts, putting people's lives and property at peril.  *See* K. Alexander Dec. ¶¶3,4 (RJN Ex. 6); R. Garton Dec. ¶¶6, 8, 9, 10 (RJN Ex. 4).

In addition to all the above, the action threatens the Nation's sovereignty.  A tribe's sovereign claim of an interest in existing rights is precisely the type of interest that Rule 19 is intended to protect.  *See, e.g., Diné Citizens Against Ruining Our Env't v. Bureau of Indian Affairs,* 932 F.3d 843, 852 (9th Cir. 2019) (holding that a tribe had a legally-protected interest in procedural claims where the effect of a plaintiff's successful suit would be to impair an existing right that benefited the tribe); *Kescoli v. Babbitt*, 101 F. 3d 1304, 1311 (9th Cir. 1996) (finding that "the Navajo Nation and the Hopi Tribe, by virtue of their sovereign capacity, have an interest in determining what is in their best interests…" and holding that the tribes were "necessary" parties under Rule 19).

Here, the Nation's sovereignty is directly implicated by SOFA's Complaint in numerous ways.  An outcome favoring SOFA and halting water supplies for

Arrowhead Springs would threaten the Property itself, thereby threatening the Nation's sovereign right to control and protect numerous important tribal resources including the Property, the facilities it houses, and the activities conducted on it, all of which rely on water.  *See* K. Alexander Dec. ¶¶3, 4 (RJN Ex. 6); R. Garton Dec. ¶10 (RJN Ex. 4).  Such an outcome would also threaten the Nation's sovereign right to protect its cultural values like those implicated in the native plant propagation program currently operating at Arrowhead Springs, and the cultural activities that occur at the event center.  *See* Summary (D. Little Dec. Ex. 5), at RJN Ex. 5 p.270. It would also directly impact Tribal government operations by shutting down some of the Nation's administrative government offices and one of its economic development projects.  *See* Nation's Letter to USFS dated Nov. 15, 2024, at RJN Ex. 5 p.256.  Here, as in *Diné Citizens,* "[t]he [Nation]'s interest is tied to" its self-governance, economic development, and control over "its own natural resources." *Diné Citizens*, 932 F.3d at 856.  The Nation is a required party because several of its fundamental interests are at stake here.

### 3. The Existing Parties Do Not Adequately Represent the Nation's Interests.

As demonstrated below, none of the existing parties can or will adequately represent the Nation's interests.  "Three factors are relevant to whether an existing party may adequately represent an absent party's interests: [1] whether the interests of a present party to the suit are such that it will undoubtedly make all of the absent party's arguments; [2] whether the party is capable of and willing to make such arguments; and [3] whether the absent party would offer any necessary element to the proceedings that the present parties would neglect."  *Diné Citizens*, 932 F.3d at 852 (quotation omitted); *see also Klamath Irr. Dist.,* 48 F.4th at 943; *Alto v. Black,* 738 F.3d 1111, 1127-1128 (9th Cir. 2013).

In *Diné Citizens*, a coalition of conservation groups sued federal agencies for

permitting operation of a mine and power plant on Navajo land.  The Ninth Circuit considered whether the federal defendants could adequately represent the absent Navajo Nation's interests under Rule 19.  *Diné Citizens*, 932 F.3d at 852.  The Court concluded that because the federal defendants had an "interest in defending their decisions, their overriding interest … must be in complying with environmental laws such as NEPA and ESA."  It held that "[t]his interest differs in a meaningful sense" from the Navajo Nation's "sovereign interest in ensuring the Mine and Power Plant continues to operate and provide profits to the Navajo Nation."  *Id.* at 855.

The Ninth Circuit noted that if the district court were to hold that federal law required more analysis that would delay mining and power generation activities, it would impede the Tribe's activities on its land, and the federal defendants' interests might diverge from the Tribe's interests.  *Id.*  It further noted that "while Federal Defendants have an interest in defending their own analyses that formed the basis of the approvals at issue, here they do not share an interest in the *outcome* of the approvals…"  *Id.* (emphasis in original).  Thus, the Court held that the federal defendants could not adequately represent the absent Tribe.  *Id.  See also White v. Univ. of Cal.*, 765 F.3d 1010, 1027 (9th Cir. 2014) (defendant could not sufficiently represent the tribes' interests because the University's and the tribes' interests were of a different nature and accordingly would not necessarily remain aligned).

Here, too, the federal Defendants cannot adequately represent the Nation's interests.  First, as in *Diné*, the federal government's interest is in defending its interpretation and application of the environmental laws Plaintiff cites and in demonstrating that the standards articulated in the Administrative Procedure Act have been met.  *See* Complaint ¶5.  That interest differs from the Nation's sovereign interest in ensuring that water delivery to Tribal lands continues and that the water delivery infrastructure currently in place remains for the Nation's beneficial use.  As in *Diné*, the federal defendants have no vested interest in the

outcome and practical implications of this lawsuit; they have no interest in water delivery to Arrowhead Springs.  The Nation, on the other hand, has a fundamental interest in the immediate and continuing delivery of water because its governmental operations, cultural practices, economic well-being, property, and personal safety are at stake.  As in *Diné*, here too the "Nation's interest is tied to its very ability to govern itself, sustain itself financially, and make decisions about its own natural resources." *Diné Citizens*, 932 F.3d at 857.  The federal defendants do not share these interests.

Defendants cannot adequately represent the Nation's interests in this matter not only because their interests diverge from those of the Nation, but also because they will not make all of the Nation's arguments, nor are they capable of doing so. Indeed, the USFS and San Bernardino National Forest asserted several times in the last year that they lack an adequate understanding of the Nation's use of water on the Arrowhead Springs property despite being told in detail, numerous times over the last year, how the Nation uses its property and water.  *See* A. Binney Dec. ¶¶13, 22, 24, 37, 39, 42 (RJN Ex. 7); D. Little Dec. ¶¶10-13 (RJN Ex. 5).

Furthermore, when USFS officials did purport to discuss the Nation's need for water, they got it wrong.  The USFS "mischaracterized and misstated the Nation's need for water at Arrowhead Springs" when it alleged that there were "no irrigated agricultural uses on the [Nation's] property."  D. Little Dec. ¶11 (RJN Ex. 5).  In fact, the Nation operates a Native plant propagation project there, *id.* ¶12(d), and uses some of the subject water to irrigate fire-defensible green space surrounding important facilities.  *See* R. Garton Dec. ¶6 (RJN Ex. 4).

The USFS wrote that the "hotel and conference facility is not currently being operated," D. Little Dec. ¶11 (RJN Ex. 5), when in fact the Nation uses Arrowhead Springs daily, including, for example, "by the government departments housed in the administration building, the firefighters at the fire station, and the employees who operate the events that are held throughout the property."  *Id.* ¶ 12(c).

Defendants have demonstrated their inability to retain and articulate the information necessary to protect the Nation's interests and thus cannot adequately represent these interests.

Moreover, in the last few months the federal defendants have acted in ways that run directly counter to the Nation's interests, and there is no reason to believe they will suddenly alter that practice. For example, although the federal government has fiduciary obligations to protect tribal interests, the federal agencies involved in this dispute never notified the Nation that it was in danger of losing its water source at Arrowhead Springs. *See* D. Little Dec. ¶7 (RJN Ex. 5) ("The USFS never notified the Nation of its Notice of Denial, before or after the notice issued"). This omission was patently adverse to the Nation's interests given that "agency officials knew the Nation relied upon the water … and used it for a variety of purposes." *Id.* ¶8. Similarly, the federal defendants failed to meet with the Nation or consult with its officials before issuing the Notice of Denial despite federal law and policy requiring them to do so, and even while knowing the Notice of Denial "would leave the Nation without water for Arrowhead Springs." A. Binney Dec. ¶¶7, 10 (RJN Ex. 7).

Finally, the United States cannot adequately represent the Nation when it has competing interests. *See Pit River Home & Agric. Coop. Ass'n*, 30 F.3d at 1101. Here, the Nation seeks to ensure continued water delivery to Arrowhead Springs. However, in another action in this Court, *BlueTriton Brands LLC v. USFS*, the USFS is defending its denial of BlueTriton's and the Nation's access to the very infrastructure the Nation is seeking to safeguard in this case. In their answer in *BlueTriton Brands*, the federal defendants, including the USFS, "deny the allegation … that BlueTriton has any water rights sources on the San Bernardino National Forest." *See BlueTriton Brands LLC v. USFS*, ECF 33, p.5, ¶¶11, 14. A federal agency that presents a position that is adverse to the Nation's interests in one lawsuit will never adequately represent and defend those same interests in a

1    different lawsuit.

2

### C. Joinder is Not Feasible Because the Nation Is a Federally Recognized Tribe with Sovereign Immunity.

5    Federally recognized Indian tribes are sovereign governments that may not

6    be sued absent an "express and unequivocal waiver of immunity by the tribe or

7    abrogation of tribal immunity by Congress." *Dawavendewa*, 276 F.3d 1150 at

8    1159.  It is "well established" in the Ninth Circuit that a tribe may intervene for the

9    limited purpose of asserting it is a required party without waiving its sovereign

10   immunity.  *Maverick Gaming LLC v. United States*, 658 F. Supp. 3d 966, 974

11   (W.D. Wash. 2023) (*citing Klamath*, 48 F.4th at 942; *Diné,* 932 F.3d at 850), *aff'd,*

12   *Maverick Gaming LLC v. United States*, 123 F.4th 960 (9th Cir. 2024).

13   Here, the Nation is a federally recognized tribe that has not waived and does

14   not now waive its sovereign immunity, and Congress has not abrogated that

15   immunity.  *See* 89 Fed. Reg. 99899, 99902 (Dec. 11, 2024) (list of federally

16   recognized tribes).  The burden of pleading and proving a waiver of tribal sovereign

17   immunity is on the Plaintiff SOFA.  *See Miller v. Wright*, 705 F.3d 919, 923 (9th

18   Cir. 2013) ("the party asserting subject matter jurisdiction has the burden of

19   proving its existence") (*citing Robinson v. United States*, 586 F.3d 683, 685 (9th

20   Cir. 2009)).  *See also Amerind Risk Mgmt. Corp. v. Malaterre*, 633 F.3d 680, 685–

21   86 (8th Cir. 2011) ("The plaintiffs bear the burden of proving that either Congress

22   or Amerind has expressly and unequivocally waived tribal sovereign immunity");

23   *Garcia v. Akwesasne Hous. Auth.*, 268 F.3d 76, 84 (2d Cir. 2001); *Welch v. United*

24   *States*, 409 F.3d 646, 651 (4th Cir. 2005).  Plaintiff has not pled, and cannot prove,

25   a clear and unequivocal waiver or congressional abrogation of the Nation's

26   sovereign immunity.  Accordingly, the Nation cannot be joined to this action.

27

28

**D. The Action Cannot Proceed in Equity and Good Conscience Absent the Nation as a Party Under FRCP 19(b).**

The Court considers four factors when determining whether an action can proceed in equity and good conscience if a required party cannot be joined: "'(i) potential prejudice, (ii) possibility to reduce prejudice, (iii) adequacy of a judgment without the required party, and (iv) adequacy of a remedy with dismissal.'" *Maverick Gaming LLC*, 123 F.4th at 980 (*quoting Klamath*, 48 F.4th at 947 (*citing* FRCP 19(b)). Notably, "'[t]he balancing of equitable factors under Rule 19(b) almost always favors dismissal when a tribe cannot be joined due to tribal sovereign immunity.'" *Id.* at 980 (*quoting Deschutes River All. v. Portland Gen. Elec. Co.,* 1 F.4th 1153, 1163 (9th Cir. 2021)).

First, consideration of the potential prejudice to the absent party or the existing parties "largely duplicates the consideration that made a party necessary [now "required"] under Rule 19(a)." *Am. Greyhound Racing, Inc. v. Hull*, 305 F.3d 1015, 1025 (9th Cir. 2002)). As discussed above, the Nation has substantial interests in its riparian, appropriative, aboriginal, groundwater, and contractual water rights, as well as its sovereign governmental interests, property rights, and interests in the safety of its citizens and neighbors. SOFA seeks to enjoin the USFS from granting any third party, including the Nation, a SUP to operate BlueTriton's infrastructure, and further, seeks removal of said infrastructure. Complaint, pp.34-36. If SOFA succeeds, water will no longer flow to Arrowhead Springs, and the prejudice to the Nation will be substantial.

Second, it is not possible to reduce the prejudice the Nation would suffer here. This factor too favors dismissal. SOFA seeks to immediately set aside the SUP that permits delivery of water to the Nation. It also seeks the immediate removal of the physical infrastructure that delivers water to the Property, including water transmission lines, pipelines, water collection tunnels, boreholes, wells, service trails, and more. *See* Complaint ¶69. These remedies would terminate the

1  Nation's water supply at Arrowhead Springs, causing the severe harms described
2  above.

3        There is no way this Court could shape relief to avoid prejudice here because
4  the Nation's interests and the Plaintiff's interests are mutually exclusive.  The
5  Nation seeks to leave the physical water-delivery infrastructure in place, whereas
6  the Plaintiff seeks to remove it immediately.  The Nation seeks to permit either
7  BlueTriton or a third party (including itself) to hold a SUP, whereas the Plaintiff
8  seeks to preclude *any* party from holding a SUP.  The Nation requires water,
9  whereas the Plaintiff seeks to cut off the water flowing to Arrowhead Springs.
10 There is no way to reduce prejudice to the Nation.

11       Third, a judgment rendered without the Nation would be inadequate.  This
12 "third Rule 19(b) factor – whether a judgment rendered without the absent party
13 would be adequate … refers to the public stake in *settling disputes by wholes*,
14 whenever possible." *Republic of Philippines v. Pimentel*, 553 U.S. 851, 870–71
15 (2008) (emphasis added) (quotations and citations omitted).  As discussed above,
16 SOFA seeks to "enjoin defendant from approving or allowing any third party to
17 divert water from Strawberry Canyon" and requests an order requiring the USFS or
18 BlueTriton to remove all water delivery infrastructure within the SBNF.
19 Complaint, Prayer for Relief ¶¶5,7.  However, such a judgment would be
20 inadequate because the Nation still has its riparian, appropriative, contractual, and
21 aboriginal water rights to water from the Strawberry Canyon watershed, as outlined
22 above.

23       Even if SOFA obtained a judgment against the USFS here, that judgment
24 necessarily could not bind the Nation in its absence.  Thus, this "social interest in
25 the efficient administration of justice and the avoidance of multiple litigation is an
26 interest that has traditionally been thought to support compulsory joinder of absent
27 and potentially adverse claimants." *Republic of Philippines*, 553 U.S. at 870–71
28 (quotations and citations omitted). "Going forward with the action without the"

Nation's joinder as a full party "would not further the public interest in settling the dispute as a whole because the" Nation "would not be bound by the judgment …." *Id.*

Lastly, regarding the fourth factor, the Ninth Circuit has repeatedly "recognized that a plaintiff's interest in litigating a claim may be outweighed by a tribe's interest in maintaining its sovereign immunity." *Kescoli,* 101 F.3d at 1312 (*citing Confederated Tribes v. Lujan,* 928 F.3d 1496, 1500 (9th Cir. 1991)). "If the necessary party is immune from suit, there may be '*very little need for balancing Rule 19(b) factors because immunity itself may be viewed as the compelling factor.*'" *Id.* (emphasis added).

Indeed, there is a "wall of circuit authority requiring dismissal when a Native American tribe cannot be joined due to its assertion of tribal sovereign immunity." *Maverick Gaming,* 123 F.4th at 971 (quotations omitted); *see Klamath,* 48 F.4th at 938; *Deschutes River,* 1 F.4th at 1163; *Am. Greyhound Racing, Inc.,* 305 F.3d at 1025 ("the tribes' interest in maintaining their sovereign immunity outweighs the plaintiffs' interest in litigating their claims"). As the Ninth Circuit has observed, "in *Lomayaktewa, Confederated Tribe, Shermoen, Pit River Home, Quileute Indian Tribe, Kescoli,* and *Clinton*, we determined that the plaintiff would be without an alternative forum to air his grievances. Nevertheless, in each case, we determined that the absent Indian Tribe was indispensable and dismissed the case." *Dawavendewa*, 276 F.3d at 1162. The lack of an alternative forum does not "prevent dismissal of a suit. Sovereign immunity may leave a party with no forum for its claims." *Makah Indian Tribe v. Verity*, 910 F.2d 555, 560 (9th Cir. 2004). Here, the Nation's sovereign immunity is the compelling factor favoring dismissal.

Note that some of the interests SOFA mentions in this lawsuit, namely the interests of "downstream water rights holders," Complaint ¶63, may be defended in a state general stream adjudication. However, regardless of whether an alternative forum exists, this case should be dismissed given the Nation's sovereign immunity.

The Ninth Circuit has "'regularly held that the tribal interest in immunity overcomes the lack of an alternative remedy or forum for the plaintiffs.'" *Diné*, 932 F.3d at 858 (*quoting Am. Greyhound Racing, Inc.*, 305 F.3d 1015); *see Dawavendewa,* 276 F.3d at 1162. "Mindful of the 'wall of circuit authority' in favor of dismissing an action where a tribe is a necessary party, we agree with the district court that this litigation cannot, in good conscience, continue in NTEC's absence." *Id.* (*quoting White v. University of California*, 765 F.3d 1010, 1028 (9th Cir. 2014)). The same result should obtain here.

## IV.    CONCLUSION

For these reasons, the Nation satisfies the requirements for a motion to dismiss SOFA's Complaint under Rules 12(b)(7) and 19, and respectfully requests that the Court dismiss this case with prejudice.

Dated: October 9, 2025

Respectfully submitted,
LAW OFFICE OF FRANK LAWRENCE

By: ___/S_____
Frank R. Lawrence
Law Office of Frank Lawrence
Counsel for Intervenor
Yuhaaviatam of San Manuel Nation

**CERTIFICATION OF BRIEF LENGTH**

The undersigned, counsel of record for the Defendant-Intervenor Yuhaaviatam Nation, certifies that the above Memorandum of Points and Authorities contains 6995 words, which complies with the word limit of L.R. 11-6.1.

Dated: October 9, 2025

Respectfully submitted,

LAW OFFICE OF FRANK LAWRENCE

By: ___/S_____
    Frank R. Lawrence
    Law Office of Frank Lawrence
    Counsel for Intervenor
    Yuhaaviatam of San Manuel Nation