ADAM R.F. GUSTAFSON
Acting Assistant Attorney General
United States Department of Justice
Environment & Natural Resources Division

EMMA L. HAMILTON (CA #325360)
Trial Attorney
ANDREW A. SMITH (NM #8341)
Senior Trial Attorney
Natural Resources Section
201 Third Street NW, Suite 900
Albuquerque, New Mexico 87102
(202) 305-5689 (Hamilton)
(202) 598-3803 (Smith)
emma.hamilton@usdoj.gov
andrew.smith@usdoj.gov

*Attorneys for Federal Defendants*

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SAVE OUR FOREST ASSOCIATION, INC., | Case No. 5:24-cv-01336-JGB-DTB |
| Plaintiff, | **FEDERAL DEFENDANTS' RESPONSE IN OPPOSITION TO DEFENDANT-INTERVENOR'S MOTION TO DISMISS** |
| v. | |
| UNITED STATES FOREST SERVICE, *et al.,* | Hearing Date: November 24, 2025 |
| Federal Defendants, | Hearing Time: 9:00 AM |
| and | Courtroom: Riverside Courtroom 1 |
| YUHAAVIATAM OF SAN MANUEL NATION, a federally recognized Indian tribe, also federally recognized as SAN MANUEL BAND OF MISSION INDIANS, | Judge: Hon. Jesus G. Bernal |
| | Action Filed: June 25, 2024 |
| Defendant-Intervenor. | |

5:24-cv-01336-JGB-DTB

# <u>TABLE OF CONTENTS</u>

INTRODUCTION ...................................................................................................1

LEGAL STANDARD............................................................................................2

FACTUAL BACKGROUND ................................................................................3

ARGUMENT .........................................................................................................5

    I.     THE NATION IS NOT A REQUIRED PARTY UNDER RULE
          19 ................................................................................................................5

        A.    The Nation is Not a Required Party Under Rule
            19(a)(1)(A) ...................................................................................5

        B.    The Nation is Not a Required Party Under Rule
            19(a)(1)(B) ...................................................................................6

    II.    EVEN IF THE NATION WAS A REQUIRED PARTY, THE
          COMPLAINT SHOULD NOT BE DISMISSED UNDER RULE
          19(B) ......................................................................................................13

CONCLUSION .....................................................................................................16

# <u>TABLE OF AUTHORITIES</u>

**Cases**

*American Greyhound Racing, Inc. v. Hull,*
   305 F.3d 1015 (9th Cir. 2002) ...............................................................15

*BlueTriton Brands v. United States Forest Service,*
   Case No. 2:24-cv-09720 (C.D. Cal.) (Nov. 4, 2024)........................3, 12

*Cachil Dehe Band of Wintun Indians of the Colusa Indian Cmty. v. California,*
   547 F.3d 962 (9th Cir. 2008) ...........................................................6, 10

*Connor v. Burford,*
   848 F.2d 1441 (9th Cir. 1988) ................................................. 12, 14, 15

*Davis v. United States,*
   192 F.3d 951 (10th Cir. 1999) ..................................................................2

*Dawavendewa v. Salt River Project Agricultural Improvement & Power District,*
   276 F.3d 1150 (9th Cir. 2002)................................................................11

*Diné Citizens Against Ruining our Env't v. Bureau of Indian Affs.,*
   932 F.3d 843 (9th Cir. 2019) ...........................................11, 12, 13, 14

*Jamul Action Comm. v. Simermeyer,*
   974 F.3d 984, 996 (9th Cir. 2020) ...................................................7, 11

*Kescoli v. Babbitt,*
   101 F.3d 1304 (9th Cir. 1996) ...............................................................11

*Makah Indian Tribe v. Verity,*
   910 F.2d 555, 558-60 (9th Cir. 1990) .................................... 3, 6, 10, 15

*Manygoats v. Kleppe,*
   558 F.2d 556 (10th Cir. 1977) ...............................................................12

*Maverick Gaming, LLC v. United States,*
   No. 24-1161 (U.S.), 2025 WL 2491783 ...........................11, 13, 15, 16

*N. Alaska Env'tl Ctr. v. Hodel,*
   803 F.2d 466 (9th Cir. 1986) ...................................................................6

*Northrop Corp. v. McDonnell Douglas Corp.,*
   705 F.2d 1030(9th Cir. 1983) ..................................................................2

*Republic of Philippines v. Pimentel,*
   553 U.S. 851 (2008) .................................................................................2

*Sac & Fox Nation of Mo. v. Norton*,
   240 F.3d 1250 (10th Cir. 2001) ...................................................................2

*Washington v. Daley*,
   173 F.3d 1158 (9th Cir. 1999)....................................................................2

**Rules**

FRCP 12(b)(7) .................................................................................................2

FRCP 19 ......................................................................................................1, 2

FRCP 19(a)................................................................................................... 10

FRCP 19 (b) ........................................................................... 2, 13, 15, 16

FRCP 19 (a) (1) ............................................................................................2

FRCP 19(a)(1)(A) .....................................................................................5, 7

FRCP 19(a)(1)(B) ............................................................. 6, 7, 10, 12

# <u>TABLE OF ACRONYMS</u>

| APA | Administrative Procedure Act |
|---|---|
| BLM | Bureau of Land Management |
| ESA | Endangered Species Act |
| FLPMA | Federal Land Policy and Management Act |
| NEPA | National Environmental Policy Act |
| NFMA | National Forest Management Act |
| SOFA | Save Our Forest Association |
| SUP | Special Use Permit |

### **INTRODUCTION**

Plaintiff Save Our Forest Association ("SOFA") challenges the Forest Service's 2023 Special Use Permit ("SUP") authorizing BlueTriton Brands, Inc. to occupy and use the San Bernardino National Forest for a water collection and transmission system. *See generally* ECF No. 24 ("Am. Compl."). The Yuhaaviatam of San Manuel Nation has specially intervened, alleging that it is a "required" party that cannot be joined because it has not waived its sovereign immunity. But the Nation is not a party to the challenged SUP and cannot, by law, be a third-party beneficiary to the SUP. Because the Nation has no legally cognizable interests in the agency actions at issue in this litigation, the Nation is not a necessary or indispensable party under Federal Rule of Civil Procedure 19.

While the United States and Federal Defendants would benefit from dismissal of this lawsuit against them, dismissal under the circumstances here would be unjust and would hamstring judicial review of federal agency actions any time a party to a federal authorization enters into a side agreement with a federally recognized tribe. Federal Defendants are prepared to fully defend and prevail on the merits of this case. With the Administrative Procedure Act ("APA"), Congress intended for Plaintiff to have its day in Court, and that right to judicial review should not be thwarted simply because the Nation recently (in 2016) purchased a contract from a private entity in which BlueTriton agreed to provide some of the water it removes from National Forest System lands. The Court should deny the Nation's Motion to Dismiss, ECF No. 79.

## **LEGAL STANDARD**

Federal Rule of Civil Procedure 12(b)(7) authorizes a motion to dismiss for failure to join a party in accordance with Federal Rule of Civil Procedure 19, which covers joinder of parties. Determining whether a party is required under Rule 19 involves a two-step analysis. *See Washington v. Daley*, 173 F.3d 1158, 1167 (9th Cir. 1999); *Northrop Corp. v. McDonnell Douglas Corp.*, 705 F.2d 1030, 1043 (9th Cir. 1983); *Davis v. United States*, 192 F.3d 951, 957-60 (10th Cir. 1999). First, the court determines whether the party is "required" and must therefore be joined if feasible. Fed. R. Civ. P. 19(a)(1). If the absent party is required but cannot be joined, the court must then determine whether in "equity and good conscience" the action should proceed without it. Fed. R. Civ. P. 19(b). Rule 19(b) enumerates the four factors a court considers in determining whether to proceed. *Id*. These factors are neither exclusive nor dispositive.

When a civil action involves the interests of a government entity that cannot be joined due to sovereign immunity, Rule 19 may require dismissal. *See Republic of Philippines v. Pimentel*, 553 U.S. 851, 872 (2008). Tribal sovereign immunity and Rule 19, however, do not bar every suit where an absent tribe or tribal entity claims an interest. *See Sac & Fox Nation of Mo. v. Norton*, 240 F.3d 1250, 1258-60 (10th Cir. 2001) (affirming district court decision to exercise jurisdiction despite impacts on tribal interests). The moving party bears the burden of showing that the absent party that cannot be joined is required to be joined. *See Daley*, 173 F.3d at 1166 (citing *Makah Indian Tribe v. Verity*, 910 F.2d 555, 558-60 (9th Cir. 1990)).

## FACTUAL BACKGROUND

The Nation acquired the Arrowhead Springs Property ("Arrowhead Property") in 2016. McCleary Decl. ¶ 9, ECF No. 38-6.[1] Prior to the Nation's acquisition, the Arrowhead Property was owned by private entities. In 1931, one of the Nation's predecessors-in-interest ("Arrowhead Springs Corporation") entered into a contractual agreement with one of BlueTriton's predecessors-in-interest ("California Consolidated Water Company"). ECF No. 38-9 at PDF 10 (1931 Deed). Through this agreement, Consolidated agreed to provide Arrowhead with 20% "[o]f all such water so developed and saved and conveyed through [the] pipe line" currently used for BlueTriton's water development activities under the challenged SUP, for use at the Arrowhead Property resort. *Id.* at PDF 11. In return, Arrowhead conveyed to Consolidated any and all of Arrowhead's rights to water in the headwaters of Strawberry Canyon and lateral canyons. *Id.* The agreement for 20% "[o]f all such water so developed and saved and conveyed

---

[1] The Nation's Memorandum of Points and Authorities requests that the Court take judicial notice of various filings in the related case *BlueTriton Brands v. United States Forest Service*, Case No. 2:24-cv-09720 (C.D. Cal.), and states that the materials and request for judicial notice are "submitted herewith." *See* Mem. of P. & A. in Supp. of Mot. to Dismiss ("MTD") 3 & n.2, ECF No. 79-2. However, the Nation did not submit its request for judicial notice (or the referenced exhibits) with its filing. Federal Defendants thus cite the filings previously submitted at ECF No. 38. Because some of these documents include multiple conflicting page and exhibit numbers in the footer, page number citations in this memorandum refer to the PDF page numbers of each document. And because overlapping ECF headers make the document numbers difficult to identify, Federal Defendants will include labelled and highlighted copies of each cited attachment to ECF No. 38 in the physical copy of this filing submitted to Chambers.

through [the] pipe line" passed to the Nation when it acquired the Arrowhead Property from the private owner in 2016. *See* MTD, ECF No. 79-2 at 4. The plain terms of the contract make it clear that the water deliveries are subject to water actually being "developed" and "conveyed" through BlueTriton's pipeline and associated water rights claimed and held by BlueTriton. ECF No. 38-9 at PDF 10-11. The deliveries are not tied to any water rights claimed or held by the Nation or the previous owners of the Arrowhead Property.

Since the 1930s, BlueTriton and its predecessors have developed and conveyed water through the pipeline located on the San Bernardino National Forest pursuant to SUPs issued by the U.S. Forest Service. *See* MTD, ECF No. 79-2 at 4. BlueTriton's claimed water rights in Strawberry Canyon are currently developed and conveyed pursuant to the 2023 SUP. ECF No. 24-2. The 2023 SUP notes that it is a "revocable and terminable" federal license, "not a contract or lease," *id.* at PDF 5, ¶ IV.A, and that it "does not confer any water rights on the holder," *id.* at PDF 15, ¶ VIII.H.2. Rather, the 2023 SUP permits BlueTriton to develop and convey water from *BlueTriton's* separately-held water rights across federal lands. The *only* parties to the 2023 SUP are BlueTriton and the U.S. Forest Service. The 2023 SUP expressly states that "[t]he parties to this permit do not intend to confer any rights on any third party as a beneficiary under this permit." *Id.* at PDF 5, ¶ IV.C.

Plaintiff challenges the 2023 SUP, alleging that the SUP is invalid because it violates the Federal Land Policy and Management Act ("FLPMA"), the National Forest Management Act ("NFMA"), the National Environmental Policy Act

("NEPA"), and the APA.  Am. Compl., ECF No. 24 ¶¶ 105-18.  Plaintiff seeks a

declaration that the Forest Service's issuance of the SUP violates these statutes,

and injunctive relief preventing "any third party" from diverting water from

Strawberry Canyon using National Forest System lands without a valid SUP and

requiring the Forest Service to remove diversion infrastructure.  *Id.* at 35-36.

## ARGUMENT

## I.    THE NATION IS NOT A REQUIRED PARTY UNDER RULE 19

### A.    The Nation is Not a Required Party Under Rule 19(a)(1)(A)

The Nation briefly asserts that Plaintiff cannot be accorded complete relief

without the presence of the Nation in the litigation, qualifying the Nation as a

"required" party under Federal Rule of Civil Procedure 19(a)(1)(A).  MTD, ECF

No. 79-2 at 10.  The Nation takes specific exception to Paragraph 5 of Plaintiff's

requested relief, which requests that the Court enjoin the Forest Service "from

approving or allowing any third party to divert water from Strawberry Canyon by

entry onto [National Forest System] land unless and until" the Forest Service

completes a new environmental analysis considering certain information.  Am.

Compl., ECF No. 24 at 35.  While Federal Defendants do not believe that

Plaintiff's requested relief is available under the APA, such relief would not

require the presence of the Nation in this litigation, as it would not require the

Nation to do or refrain from doing anything, regardless of the Nation's claimed

interests in water or infrastructure on National Forest System lands.  It would

simply proscribe the Forest Service from issuing a new SUP to BlueTriton, the

Nation, or any other party pending completion of the specified environmental

analysis.  Once completed, the Forest Service would be free to grant subsequent

SUPs to the Nation or any other party that meets SUP eligibility requirements.

Indeed, as to the Nation, it has not even applied for a SUP to develop water

sources or to use BlueTriton's water delivery infrastructure on the National Forest.

As the Ninth Circuit has made clear,  claims for relief concerning the "future

conduct of the administrative process" are "reasonably susceptible to adjudication

without the presence of other parties to the administrative process."  *Makah*, 910

F.2d at 559; *see also Cachil Dehe Band of Wintun Indians of the Colusa Indian*

*Cmty. v. California*, 547 F.3d 962, 970 (9th Cir. 2008) (citing *N. Alaska Env'tl Ctr.*

*v. Hodel*, 803 F.2d 466, 468-69 (9th Cir. 1986)), for the proposition that "miners

who had submitted mining plans to National Park Service were not necessary

parties to an action to enjoin mining in parks until environmental impact

statements were prepared").  If this Court were to set aside BlueTriton's 2023 SUP,

no party—including the Nation, which is not a party to the 2023 SUP—could

lawfully develop and transport water across National Forest System lands in

Strawberry Canyon without a new SUP being issued by the Forest Service.  The

Nation is not a required party for this result.

## B.    The Nation is Not a Required Party Under Rule 19(a)(1)(B)

The Nation also argues that it is a required party under Federal Rule of Civil

Procedure 19(a)(1)(B), which is met when the absent party "claims an interest

relating to the subject of the action and is so situated that disposing of the action in

the [party's] absence may . . . as a practical matter impair or impede the [party's]

ability to protect the interest."  Fed. R. Civ. P. 19(a)(1)(B).  As the Nation

concedes, however, to trigger Rule 19(a)(1)(B), "the interest of the absent party must be a legally protected interest . . . ."  MTD, ECF No. 79-2 at 11 (quoting *Jamul Action Comm. v. Simermeyer*, 974 F.3d 984, 996 (9th Cir. 2020)).  The full sentence from the Ninth Circuit in *Jamul Action* that the Nation excerpts, though, is: "To come within the bounds of Rule 19(a)(1)(B)(i), the interest of the absent party must be a legally protected interest and not merely some stake in the outcome of the litigation."  974 F.3d at 996.

The Nation does not meet this standard.  The "subject of the action" here is the Forest Service's issuance of the 2023 SUP to BlueTriton, authorizing BlueTriton—and only BlueTriton—to use and occupy National Forest System lands to operate and maintain BlueTriton's (and only BlueTriton's) water collection and transmission infrastructure to exercise BlueTriton's (and only BlueTriton's) water rights.  *See generally* 2023 SUP, ECF No. 24-2.  The Nation is not a party to the 2023 SUP.  And, indeed, the Nation cannot even claim that it is somehow a third-party beneficiary, as the 2023 SUP expressly proscribes such a result: "**C.  ABSENCE OF THIRD-PARTY BENEFICIARY RIGHTS.**  The parties to this permit do not intend to confer any rights on any third party as a beneficiary under this permit."  ECF No. 24-2 at PDF 5, ¶ IV.C.  In short, the Nation has no legally protected interest in the 2023 SUP or the 2023 SUP's continued existence.

The Nation nonetheless claims that it has "several legally protected interests at stake that render it a 'required' party."  MTD, ECF No. 79-2 at 11.  The first of these, it claims, is that "the Nation's ability to exercise its water rights is at stake,

including riparian, pre-1914 appropriative, contractual, and aboriginal water rights." *Id.* Regardless of what water rights the Nation may hold, Plaintiff does not "threaten[]" them merely by alleging that the Nation "has not demonstrated water rights." *Id.* (quoting Am. Compl., ECF No. 24 ¶ 110). Plaintiff's Complaint contains no claims against the Nation and does not seek any declaration that the Nation holds no water rights.

More importantly, the subject of this action, the 2023 SUP, does not service any of the Nation's water rights, but authorizes only BlueTriton to exercise Blue Triton's water rights. The 2023 SUP requires that "*[t]he holder* [(i.e., BlueTriton)] shall obtain all required State and local water permits, licenses, registrations, certificates, and *rights* for existing and proposed water wells." ECF No. 24-2 at PDF 14, ¶ VIII.G.1 (emphasis added); *see also id.* at PDF 15, ¶ VIII.H.2 ("Any necessary water rights must be acquired and maintained by the holder in accordance with State law and the terms of this permit.").[2] While the 2023 SUP recognizes that BlueTriton "is currently awaiting determination from the California State Water Board on Water Rights," *id.* at PDF 15, ¶ VIII.H.3, if BlueTriton does not establish it holds those water rights, the 2023 SUP would be subject to termination. *See* ECF No. 24-2 at PDF 3, ¶ I.F; *id.* at PDF 12, ¶ VII.A; *id.* at PDF

---

[2] Moreover, the 1931 Contract conveyed to BlueTriton's predecessor-in-interest (Consolidated) any and all rights to water in the headwaters of Strawberry Canyon and lateral canyons that were held by the Nation's predecessor-in-interest (Arrowhead) at the time of the agreement. ECF No. 38-9 at PDF 11. Thus, all water being collected and transported by BlueTriton under the 2023 SUP is water associated with BlueTriton's water rights. *Id.* Water to which the Nation holds rights is not being collected and transported under the challenged SUP.

13, ¶ VII.D.

The Nation also invokes the 1931 Contract between the Nation's and BlueTriton's predecessors-in-interest to assert that "if the lawsuit succeeds, it will remove BlueTriton's water delivery infrastructure, revoke the USFS permit authorizing the Nation's water delivery, and nullify the Nation's contractual right to water." MTD, ECF No. 79-2 at 11-12. But, as explained above, the 2023 SUP does not authorize *any* delivery of water to the Nation, and whatever "contractual right" the Nation may have to water, that right is by virtue of any agreements with BlueTriton that occur *off* National Forest System lands and is not provided for in or by the 2023 SUP. In other words, the subject of this action—the 2023 SUP—does not provide the Nation with any legal rights whatsoever and, in fact, expressly disclaims them by barring any third-party beneficiaries.

The Nation also has no legally cognizable interest in the "water delivery infrastructure" on National Forest System lands and permitted by the 2023 SUP. In the 2023 "Letter Agreement" between BlueTriton and the Nation, BlueTriton agrees that if a "court of competitive [sic] jurisdiction" takes action that reduces the amount of water BlueTriton provides to the Nation to "less than 850,000 gallons a month," then BlueTriton will cooperate with the Nation to obtain its own SUP based on the Nation's claimed water rights and to "negotiate" to allow the Nation to use BlueTriton's infrastructure. ECF No. 38-9 at PDF 19, ¶ 13. But, as discussed above, the Nation's prospective interest in obtaining its own SUP based on some conveyance of BlueTriton's infrastructure and water rights (or the Nation's own water rights) is precisely the type of inchoate future interest that the

Ninth Circuit has repeatedly found does not establish a party as a "required" party under Federal Rule of Civil Procedure 19(a).  *See, e.g.*, *Makah*, 910 F.2d at 559; *Cachil Dehe Band*, 547 F.3d at 970.

The Nation's remaining claimed interests focus on the alleged importance of the water it receives from BlueTriton to the Arrowhead Springs facility, its tribal functions, and even its sovereign interests.  MTD, ECF No. 79-1 at 12-14.  But those alleged interests are all contingent on there being a legally protected nexus between the 2023 SUP that is the subject of this action and BlueTriton's agreement to provide the Nation with some of BlueTriton's water which, as discussed above, there is not.  Indeed, rather than "nullify" the Nation's agreement with BlueTriton, *see* MTD, ECF No. 79-2 at 12, vacatur of the 2023 SUP in this litigation is consistent with the parties' recognition in the 2023 "Letter Agreement" that if BlueTriton is unable to deliver a certain amount of water to the Nation, BlueTriton will work with the Nation to seek a SUP and the necessary infrastructure for that SUP.  *See* ECF No. 38-9 at PDF 19, ¶ 13.  While the Nation may have a "stake" in the outcome of this litigation, it does not have the necessary legally protected interest in the 2023 SUP to make it a required party under Rule 19(a)(1)(B).

The fact that the Nation is not a party to—or third-party beneficiary of—the 2023 SUP distinguishes the circumstances of this case from the Ninth Circuit cases on which the Nation relies in its "required" party argument, because in those cases the tribe was a party to the challenged actions.  For instance, in *Diné Citizens*, the plaintiffs "challeng[ed] a variety of agency actions [(mining permits and related authorizations)] that reauthorized coal mining activities on land reserved to the

1   Navajo Nation," and the impacted owner of the mine to whom the mining permits

2   were issued was a tribal-owned corporation. *Diné Citizens Against Ruining our*

3   *Env't v. Bureau of Indian Affs.*, 932 F.3d 843, 847-48 (9th Cir. 2019).  In *Kescoli v.*

4   *Babbitt*, the Navajo Nation and Hopi Tribe were parties to a settlement agreement

5   challenged in the lawsuit that had been approved by the federal government.  101

6   F.3d 1304, 1307 (9th Cir. 1996).  Similarly, *Jamul Action* involved a challenge to a

7   tribal village's construction of a casino, 974 F.3d at 988-89.  And, in

8   *Dawavendewa v. Salt River Project Agricultural Improvement & Power District*,

9   the plaintiff challenged the Power District's lease with the Navajo Nation.  276

10  F.3d 1150, 1156-57 (9th Cir. 2002).

11          Thus, the common thread in the cases cited by the Nation in which the Ninth

12  Circuit has found tribal entities to be necessary and indispensable parties is that the

13  tribal entities had more than just a "stake" in the outcome of the cases, but were

14  actual parties to the actions challenged in the lawsuits.  Here, in contrast, the

15  Nation is not a party to, or even legally entitled beneficiary of, the challenged 2023

16  SUP.[3]  The Nation's argument that it is a "required" party under Federal Rule of

17  ─────────────────

18  [3] Federal Defendants' position is that these cases are inapposite because, here, the
    Nation has no legally protected interest in the challenged SUP.  If the Court finds

19  these cases controlling, however, the United States notes that it disagrees with the
    ruling in *Diné Citizens* and its progeny and reserves the right to assert in future

20  proceedings that the United States is generally the only required and indispensable
    defendant in APA litigation challenging federal agency action.  *See Maverick*

21  *Gaming, LLC v. United States*, No. 24-1161 (U.S.), 2025 WL 2491783, at *11-21
    (United States' Brief in Opposition to Petition for a Writ of Certiorari); *see also id.*

22  at *11 ("When a proper plaintiff aggrieved by a federal agency's final action brings
    suit under the APA seeking judicial review of that action, the relevant federal

23  agency or officer is generally the only required party under Rule 19.").

24

1    Civil Procedure 19(a)(1)(B) must be rejected.

2    Moreover, the Ninth Circuit has acknowledged that Rule 19 dismissals in

3    these cases create the "anomalous result" of preventing all parties except tribes

4    from "seek[ing] review of an environmental impact statement covering significant

5    federal action relating to leases or agreements for development of natural resources

6    on that tribe's lands." *Diné Citizens*, 932 F.3d at 860-61 (quoting *Manygoats v.*

7    *Kleppe*, 558 F.2d 556, 559 (10th Cir. 1977)) (citation modified).  Dismissal in this

8    case would create an even more anomalous and illogical result—allowing the

9    Nation to prevent any party from challenging Forest Service compliance with

10   federal environmental laws for activities *on National Forest System lands* merely

11   because the Nation recently (and seperately) contracted with the private company

12   to obtain some portion of any water it develops on the National Forest.[4]  If

13   dismissing an administrative review case for nonjoinder of an absent party would

14   "sound[] the death knell for any judicial review of executive decisionmaking,"

15   *Connor v. Burford*, 848 F.2d 1441, 1460 (9th Cir. 1988), dismissing such a case for

16   failure to join an entity that is not even a party with a legal interest in the

17   challenged permit action is even more troubling.

18   **II.    EVEN IF THE NATION WAS A REQUIRED PARTY, THE
         COMPLAINT SHOULD NOT BE DISMISSED UNDER RULE 19(B)**

19

20   Finally, even if the Nation was a required party, the Court should still

21   _____

22   [4] Yet if and when the Forest Service makes a decision the Nation and BlueTriton
     wish to challenge, such litigation may freely proceed.  *See BlueTriton Brands v.*
23   *U.S. Forest Serv.*, Case No. 2:24-cv-09720 (C.D. Cal.) (Nov. 4, 2024).

24

decline to dismiss this case because it falls squarely within the "public rights

exception" to traditional joinder rules.[5]  *Maverick Gaming LLC v. United States*,

123 F.4th 960, 982 (9th Cir. 2024).  "The public rights exception is a limited

'exception to traditional joinder rules' under which a party, although necessary,

will not be deemed 'indispensable,' and the litigation may continue in the absence

of that party."  *Id.* (quoting *Diné Citizens*, 932 F.3d at 858).  The exception applies

"where the litigation both transcends the private interests of the litigants and seeks

to vindicate a public right, and does not destroy the legal entitlements of the absent

parties."  *Id.* (citation modified).  Here, Plaintiff seeks to vindicate public rights by

alleging Federal Defendants have not complied with federal environmental laws

and seeking to compel agency compliance with FLPMA, NEPA, and NFMA as a

prerequisite to issuing any SUP for water diversion in Strawberry Canyon.  *See*

Am. Compl., ECF No. 24 at 31-36.  The suit does not seek to prevent BlueTriton

or the Nation from ever obtaining a valid water diversion SUP, nor would a

favorable judgment "destroy" any existing legal entitlements of either entity.

    As described in the First Amended Complaint, Plaintiff seeks to ensure that

Federal Defendants' actions comply with federal environmental statutes, with the

goal of reversing alleged negative impacts of water diversions in Strawberry

Canyon on "the [San Bernardino National] Forest, local communities, and

---

[5] Federal Defendants defer to Plaintiff any argument over the other equitable
factors Courts consider under Rule 19(b) to determine whether in "equity and good
conscience" the action should proceed without a required party that cannot be
joined.  *See* Fed. R. Civ. P. 19(b) .

downstream users." Am. Compl. ¶ 1, ECF No. 24. The public interest Plaintiff asserts mirrors the interest at stake in *Connor v. Burford*, where the Ninth Circuit applied the public rights exception in a challenge by environmental plaintiffs to the Bureau of Land Management's ("BLM") issuance of oil and gas leases on public lands. 848 F.2d at 1443-44. In *Connor*, individual leaseholders argued they were indispensable parties under Rule 19 and that the environmental plaintiffs' challenge to BLM's issuance of the leases could not proceed without the lessees given their concrete legal interest in the leases. *Id.* at 1444.

In holding the public rights exception applied, the Ninth Circuit explained that the "litigation against the government does not purport to adjudicate the rights of current lessees; it merely seeks to enforce the public right to administrative compliance with the environmental protection standards of NEPA and the [Endangered Species Act ("ESA")]." *Id.* at 1460. Thus, "the only thing foreclosed by the district court's judgment [enjoining lease implementation] was the lessees' ability to get specific performance on their contracts until the government complied with NEPA and the ESA, which was insufficient to make the lessees indispensable to the litigation." *Diné Citizens*, 932 F.3d at 859 (quoting *Connor*, 848 F.2d at 1461) (citation modified).

Here, Plaintiff's suit does not purport to adjudicate BlueTriton's *rights* to water diversions in and around Strawberry Canyon (let alone the Nation's separate contractual entitlement to a portion of any water conveyed through BlueTriton's pipeline). Rather, the suit argues that the Forest Service's 2023 SUP approval for BlueTriton to develop and convey water across National Forest System lands failed

1    to comply with FLPMA, NFMA, NEPA, and the APA.  *See* Am. Compl., ECF No.

2    24 at ¶¶ 104-18.  Plaintiff does not seek to invalidate water rights claimed by

3    BlueTriton or the Nation's separate water delivery contract with the company, but

4    rather to enjoin federal approval of water diversions on the Forest "unless and

5    until" the agency completes new environmental analyses that comply with federal

6    law.  *Id.* at 35.  Thus, like in *Connor*, this case should proceed under the public

7    rights exception even if the Nation is deemed a required party that cannot be

8    joined.  *See* 848 F.2d at 1461; *see also Makah*, 910 F.2d at 559 n.6)) (noting public

9    interest in ensuring regulations were promulgated in compliance with APA

10   procedures was an important factor mitigating against dismissal under Rule 19(b)).

11        Cases where the Ninth Circuit has found the public rights exception does not

12   apply are easily distinguishable because those suits targeted individual litigants'

13   private interests.  For example, the Ninth Circuit explained that the exception was

14   inapplicable in *Maverick Gaming* and *Greyhound Racing,* both challenges to "the

15   validity of tribal-gaming compacts," because the plaintiffs' "real interest" in those

16   cases was "in freeing themselves from the competition of Indian gaming, not in

17   establishing for all the principle of separation of powers."  *Maverick Gaming*, 123

18   F.4th at 982 (citing *American Greyhound Racing, Inc. v. Hull*, 305 F.3d 1015,

19   1026 (9th Cir. 2002)).  In those cases, the suits did not just "*incidentally*" affect the

20   gaming tribes in the course of enforcing some public right," but were instead

21   "*aimed* at the tribes and their gaming," *id.* at 982, and "any incidental affect [sic]

22   that [the plaintiff's] suit could have in ensuring governmental compliance with

23   administrative and constitutional law does not transcend [its] private interest in

24

increasing its own revenue." *Id.* at 983 (citation modified).

Here, by contrast, Plaintiff seeks to enjoin Forest Service authorization of a water diversion SUP to any third party pending further environmental review and compliance with FLPMA, NFMA, and NEPA. Should such review ultimately prevent or inhibit BlueTriton's ability to develop water in Strawberry Canyon using National Forest System lands, any corresponding decrease in water deliveries from BlueTriton to the Nation would be wholly incidental. Indeed, the separate, private contract between BlueTriton and the Nation only legally entitles the Nation to a set percentage of all water, *if any*, BlueTriton conveys through its pipeline in Strawberry Canyon. *See* ECF No. 38-9 at PDF 11.

At bottom, Plaintiff's suit is a FLPMA, NFMA, and NEPA challenge under the APA. Even if the Nation was a required party, the public interest weighs in favor of finding that dismissal under Rule 19(b) is not proper.

## CONCLUSION

For the reasons set forth above, the Nation is not a required party in this lawsuit because it has no legally protected interest in the federal agency action Plaintiff challenges. Therefore, Federal Defendants respectfully request that the Court deny the Nation's Motion to Dismiss, ECF No. 79.

Respectfully submitted on November 3, 2025.

ADAM R.F. GUSTAFSON
Acting Assistant Attorney General
Environment and Natural Resources Division
United States Department of Justice

*/s/ Emma L. Hamilton*
EMMA L. HAMILTON
Trial Attorney
ANDREW A. SMITH
Senior Trial Attorney
Natural Resources Section
c/o United States Attorney's Office
201 Third Street, N.W., Suite 900
Albuquerque, New Mexico 87102
andrew.smith@usdoj.gov

*Attorneys for Defendants*

1

## <u>CERTIFICATE OF SERVICE</u>

2       I hereby certify that on November 3, 2025, I electronically filed the

3   foregoing document with the Clerk of Court using the CM/ECF system, which will

4   automatically send email notification to the attorneys of record.

5

6                                  <u>*/s/ Emma L. Hamilton*</u>
                                   Emma L. Hamilton
7                                  U.S. Department of Justice

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24