1  Rachel S. Doughty (Cal. Bar No. 255904)
2  GREENFIRE LAW, PC
3  2478 Adeline Street, Suite A
   Berkeley, CA 94703
4  Ph/Fax: (510) 900-9502
   Email: RDoughty@greenfirelaw.com
5
6  Attorneys for SAVE OUR FOREST ASSOCIATION, INC.

7
8              UNITED STATES DISTRICT COURT

9              CENTRAL DISTRICT OF CALIFORNIA

10             EASTERN DISTRICT – RIVERSIDE

11 | SAVE OUR FOREST ASSOCIATION, | Case No.: 5:24-cv-01336
12 | INC. |
   | | **PLAINTIFF'S OPPOSITION TO**
13 | Plaintiff, | **YUHAAVIATAM OF SAN**
   | | **MANUEL NATION'S MOTION**
14 | vs. | **TO DISMISS**
15 | UNITED STATES FOREST SERVICE, et |
16 | al., | Date:   March 9, 2026
   | | Time:  9:00 a.m.
17 | | Judge: Hon. Jesus G. Bernal
   | Defendants. | Dept:   Courtroom 1, Riverside
18 |
19 | | Action Filed: June 25, 2024
   | | Trial Date:  March 31, 2026
20
21
22
23
24
25
26
27
28 **PLAINTIFF'S OPPOSITION TO YUHAAVIATAM OF SAN MANUEL NATION'S**
   **MOTION TO DISMISS – 5:24-cv-01336**

# TABLE OF CONTENTS

I.    INTRODUCTION ...................................................................................10

II.   FACTUAL AND PROCEDURAL BACKGROUND ...................................11

   A.   Historically, USFS issued SUPs for a right-of-way to use and occupy the
        SBNF for water diversion infrastructure........................................................12

   B.   BTB's diversion harms trust resources of SBNF...........................................15

   C.   The Nation's contract-derived interest in BTB's water delivered through
        the diversion infrastructure..........................................................................15

   D.   The Nation has not asserted its own rights....................................................16

   E.   The Nation asserts its sovereignty selectively. ..............................................17

III.  ARGUMENT .......................................................................................17

   A.   The Nation Is Not a Required Party. .............................................................18

        1.   The Nation is not a required party under Rule 19(a)(1)(A) because the
             Court can accord complete relief among the parties............................18

        2.   The Nation is not a required party under Rule 19(a)(1)(B) because it
             does not have an interest in the subject claims. ...................................19

   B.   Even were the Nation a necessary party, equity and good conscience
        require that this case continue. .....................................................................21

        1.   The Nation can avoid prejudice by participating in this action. ...........22

        2.   Any prejudice the Nation claims can be avoided by other measures. ...24

        3.   Judgement rendered in the Nation's absence would be adequate.........25

        4.   Dismissal will strip Plaintiff of any adequate remedy.........................25

   C.   Even if this Court finds that the Nation meets the Rule 19 requirements for
        dismissal, the Court should apply the public rights exception....................27

        1.   Plaintiff's claims transcend private rights...........................................28

**PLAINTIFF'S OPPOSITION TO YUHAAVIATAM OF SAN MANUEL NATION'S
MOTION TO DISMISS – 5:24-cv-01336**

2.   This case will not destroy the Nation's legal entitlements. ..................32

**IV.    CONCLUSION ................................................................................34**

**PLAINTIFF'S OPPOSITION TO YUHAAVIATAM OF SAN MANUEL NATION'S
MOTION TO DISMISS – 5:24-cv-01336**

1

**TABLE OF AUTHORITIES**

2

**CASES**

3

*Am. Greyhound Racing, Inc. v. Hull*, 305 F.3d 1015 (9th Cir. 2002) ..............passim

4

*Bowen v. Mich. Acad. of Fam. Physicians*, 476 U.S. 667 (1986) ...........................11

5

6

*Cachil Dehe Band of Wintun Indians v. California*, 547 F.3d 962 (9th Cir. 2008)....................................................................................................................21

7

*Conner v. Burford*, 848 F.2d 1441 (9th Cir. 1988)........................................passim

8

9

*Deschutes River All. v. Portland Gen. Elec. Co.*, 1 F.4th 1153, (9th Cir. 2021) ...............................................................................................................20, 31

10

*Dieden v. Schmidt*, 104 Cal. App. 4th 645 ...............................................................27

11

12

*Diné Citizens Against Ruining Our Env't v. Bureau of Indian Affs.*, 932 F.3d 843 (9th Cir. 2019) ...........................................................................18, 20, 32

13

*Env't Prot. Info Ctr. v. Carlson*, 968 F.3d 985 (9th Cir. 2020)..............................28

14

15

*Federated Indians of Graton Rancheria v. United States Dep't of the Interior*, No. 24-CV-08582-RFL, 2025 WL 2096171, at *1 (N.D. Cal. July 18, 2025) ........................................................................................32, 34

16

17

*Forest Conservation Council v. U.S. Forest Serv.*, 66 F.3d 1489 (9th Cir. 1995)......................................................................................................................23

18

19

*Guardians v. U.S. Fish & Wildlife Serv.*, No. 16-CV-65, 2018 WL 1023104 (D. Mont. Feb. 22, 2018) ...............................................................28

20

*Jamul Action Comm. V. Simermeyer*, 974 F.3d 984 (9th Cir. 2020)......................26

21

*Kamal v. Eden Creamery, LLC*, 88 F.4th 1268 (9th Cir. 2023) ..............................22

22

*Kescoli v. Babbitt*, 101 F.3d 1304 (9th Cir. 1996)...................................20, 22, 30

23

*Makah Indian Tribe v. Verity*, 910 F.2d 555 (9th Cir. 1990) ..........................passim

24

25

*Manygoats v. Kleppe*, 558 F.2d 556 (10th Cir. 1977) .......................................19, 26

26

27

28

3

*Marbury v. Madison*, 5 U.S. 137 (1803).................................................................11

*Maverick Gaming LLC v. United States*, 123 F.4th 960, 982 (9th Cir. 2024),
    *cert. denied sub nom. Runitonetime LLC v. United States*, No. 24-
    1161, 2025 WL 2823742 (U.S. Oct. 6, 2025) ........................................passim

*Nat'l Licorice Co. v. NLRB*, 309 U.S. 350 (1940).....................................18, 27, 33

*Nat'l Wildlife Fed'n v. Burford*, 835 F.2d 305, 333 (D.C. Cir. 1987) ....................27

Nicholas V. Merkley, *Compulsory Party Joinder and Tribal Sovereign
    Immunity: A Proposal to Modify Federal Courts' Application of Rule
    19 to Cases Involving Absent Tribes as "Necessary" Parties*, 56
    OKLA. L. REV. 931 ...............................................................................23

*Norton v. Southern Utah Wilderness Alliance*, 542 U.S. 55 (2004).......................29

*Pac. Coast Fed'n of Fishermen's Ass'n v. U.S. Dep't of the Interior*, 929 F.
    Supp. 2d 1039 (E.D. Cal. 2013).........................................................28

*Protect the Peninsula's Future v. Haaland*, No. CV23-5737-BHS, 2025 WL
    1413734, at *3 (W.D. Wash. May 15, 2025) .................................17

*Republic of Philippines v. Pimentel*, 553 U.S. 851 (2008)....................................21

*SEC v. Jarkesy*, 603 U.S. 109 (2024).................................................................28

*Sierra Club v. Watt*, 608 F.Supp. 305 (E.D. Cal. 1985) .........................................18

*Smith v. Lenches*, 263 F.3d 972 (9th Cir. 2001) .................................................22

*United Farm Workers v. U.S. Dep't of Lab.*, 509 F. Supp. 3d 1225 (E.D.
    Cal. 2020) .......................................................................................28

*United States v. City of Los Angeles*, Cal., 288 F.3d 391 (9th Cir. 2002)...............23

**STATUTES**

5 U.S.C. § 702..................................................................................................28

**RULES**

Fed. R. Civ. P. 19(a)(1)(A)................................................................................18

**PLAINTIFF'S OPPOSITION TO YUHAAVIATAM OF SAN MANUEL NATION'S MOTION TO DISMISS – 5:24-cv-01336**

Fed. R. Civ. P. 19(a)(1)(B) ......................................................................... 19

Fed. R. Civ. P. 19(b) ............................................................................. 21, 23

Fed. R. Civ. P. 19(b)(1) ............................................................................. 22

Fed. R. Civ. P. 19(b)(2) ............................................................................. 24

Fed. R. Civ. P. 19(b)(3) ............................................................................. 25

Fed. R. Civ. P. 19(b)(4) ............................................................................. 25

**PLAINTIFF'S OPPOSITION TO YUHAAVIATAM OF SAN MANUEL NATION'S
MOTION TO DISMISS – 5:24-cv-01336**

**INDEX OF EXHIBITS**

| No. | Declaration | ECF No. | Description |
|---|---|---|---|
| 1 | Rachel Doughty [ECF 94-1] | 094-2 | Local Agency Formation Commission County of San Bernardino ("LAFCO") Resolution No. 3088 annexing the Hotel Property to the City of San Bernardino. |
| 2 | Rachel Doughty | 094-3 | October 10, 2006, LAFCO 3053 Staff Report, at page 15 |
| 3 | Rachel Doughty | 094-4 | *January 25, 2019, article San Bernardino Sells its Share of Historic Del Rosa Mutual H2O Co. for Less than $2,300, published in The Sun* |
| 4 | Rachel Doughty | 094-5 | Story of Stuff Project closing Brief from SWRCB administrative proceeding re BTB water rights |
| 5 | Rachel Doughty | 094-6 | Testimony of Gregory Allord in SWRCB administrative proceeding |
| 6 | Rachel Doughty | 094-7 | Gregory Allord Qualifications |
| 7 | Rachel Doughty | 094-8 | Gregory Allord Summary Slides |
| 8 | Rachel Doughty | 094-9 | Special Use Permit FCD728503 ("BTB 2023 SUP") |
| 9 | Rachel Doughty | 094-10 | Excerpts of the Land and Resource Management Plan for the San Bernardino National Forest |
| 10 | Rachel Doughty | 094-11 | Excerpts of Forest Service Handbook 2509.22 |
| 11 | Rachel Doughty | 094-12 | July 27, 2018, Decision Memo of the USFS authorizing Nestlé to occupy a portion of SBNF with its diversion equipment |
| 12 | Rachel Doughty | 094-13 | September 29, 2023, letter from the Forest Service to BTB |
| 13 | Rachel Doughty | 094-14 | November 20, 2023, letter from the Forest Service to BTB |
| 14 | Rachel Doughty | 094-15 | March 1, 2024, letter from the Forest Service to BTB |
| 15 | Rachel Doughty | 094-16 | March 25, 2024, letter from the Forest Service to BTB |

PLAINTIFF'S OPPOSITION TO YUHAAVIATAM OF SAN MANUEL NATION'S MOTION TO DISMISS – 5:24-cv-01336

| No. | Declaration | ECF No. | Description |
|---|---|---|---|
| 16 | Rachel Doughty | 094-17 | April 18, 2024, letter from the Forest Service to BTB |
| 17 | Rachel Doughty | 094-18 | April 24, 2024, letter from the Forest Service to BTB |
| 18 | Rachel Doughty | 094-19 | May 4, 2024, letter from the Forest Service to BTB |
| 19 | Rachel Doughty | 094-20 | June 21, 2024, letter from the Forest Service to BTB |
| 20 | Rachel Doughty | 094-21 | July 26, 2024, letter from Forest Service to BTB ("Termination Letter") |
| 21 | Rachel Doughty | 094-22 | *October 14, 2021, article Arrowhead bottler: Most water piped from national forest is returned to ground or supplied to tribe, published in the Desert Sun* |
| 22 | Rachel Doughty | 094-23 | May 14, 2024, letter from BTB to the Forest Service |
| 24 | Rachel Doughty | 094-24 | Notice and Motion to Intervene of Yuhaaviatam of San Manuel Nation; Memorandum of Points and Authorities; Motion for Order Shortening Time for Hearing (ECF 64) in the related matter BlueTriton Brands v. United States Forest Service et al., No. CV 24-9720 JGB (DTBx) (C.D. Cal. filed Aug. 4, 2024) ("BTB Case") |
| 25 | Rachel Doughty | 094-25 | *The Declaration of Paul Hamai (BTB Case, ECF 65-10)* |
| 26 | Rachel Doughty | 094-26 | Order Granting the Tribe's Motion to Intervene (BTB Case, ECF 91) |
| 27 | Rachel Doughty | 094-27 | Declaration of Alexandra McCleary in Support of Motion to Intervene and Motion for Preliminary Injunction (BTB Case, ECF 65-9) |
| 28 | Rachel Doughty | 094-28 | Special Use Permit FCD728501 ("Nestle 2018 SUP") |
| 29 | Rachel Doughty | 094-29 | Special Use Permit FCDFCD728502 ("BTB 2022 SUP") |

7
PLAINTIFF'S OPPOSITION TO YUHAAVIATAM OF SAN MANUEL NATION'S
MOTION TO DISMISS – 5:24-cv-01336

| No. | Declaration | ECF No. | Description |
|---|---|---|---|
| 30 | Rachel Doughty | 094-30 | Special Use Permit FCD728503 ("BTB 2023 SUP") |
| 31 | Rachel Doughty | 094-31 | Letter Agreement Amending 80/20 Agreement During Interim Period (BTB Case, ECF 65-8) |
| 32 | Rachel Doughty | 094-32 | May 20, 2016, article San Manuel Buys landmark Arrowhead Springs property in San Bernardino, published in The Sun |
| 33 | Rachel Doughty | 094-33 | August 22, 2024 Letter from USFS Allowing Continued Diversion |
| 34 | Rachel Doughty | 094-34 | 2017 Robert Taylor Hydrologist Report |
| 1 | Hugh Bialecki [ECF 94-35] | 094-36 | February 10, 2022, letter from the Nation to Alan B. Lilly, Presiding Hearing Officer at the Administrative Hearings Office of the SWRCB |
| 2 | Hugh Bialecki | 094-37 | LAFCO Resolution 2942 dated November 18, 2009 |
| 3 | Hugh Bialecki | 094-38 | Extraction recordation for the Arrowhead Drinking Water Company for 2023 |
| 4 | Hugh Bialecki | 094-39 | Extractions recordation for prior years |
| 5 | Hugh Bialecki | 094-40 | October 7, 2025, the SBVMWD regular Board of Directors meeting minutes |
| A | Steve Loe [ECF 094-40] | 094-41 | Testimony of Steve Loe in SWRCB administrative proceeding (Dec. 17, 2021) |
| B | Steve Loe | 094-42 | Testimony of Steve Loe in SWRCB administrative proceeding on behalf of Story of Stuff Project (Dec. 17, 2021) |
| C | Steve Loe | 094-43 | Sur-Rebuttal Testimony of Steve Loe in SWRCB administrative proceeding on behalf of Story of Stuff Project (April 8, 2022) |
| D | Steve Loe | 094-44 | Slides Summarizing Steve Loe Testimony |
| E | Steve Loe | 094-45 | February 23, 2025, Letter from Steve Loe and Jonathan Baskin to the Forest Service |
| F | Steve Loe | 094-46 | Jan. 31, 1987 Forest Service Memo re Water Rights in Strawberry Canyon Water |

8

**PLAINTIFF'S OPPOSITION TO YUHAAVIATAM OF SAN MANUEL NATION'S MOTION TO DISMISS – 5:24-cv-01336**

| No. | Declaration | ECF No. | Description |
|-----|-------------|---------|-------------|
| G | Steve Loe | 094-47 | Sept. 1987 Water Rights Report of C M Engineering Associates |

**PLAINTIFF'S OPPOSITION TO YUHAAVIATAM OF SAN MANUEL NATION'S MOTION TO DISMISS – 5:24-cv-01336**

## I.    INTRODUCTION

The Yuhaaviatam of San Manuel Nation ("**Nation**") has intervened in this case for the sole purpose of moving to dismiss Plaintiff Save Our Forest Association's ("**Plaintiff**" or "**SOFA**") claims against the United States Forest Service ("**USFS**" or "**Agency**") regarding management of a special use permit ("SUP") for a water diversion structure located on federal land. Boiled down, the Nation's theory is that its private contract for water delivery *off* National Forest System lands with a private party SUP-holder, BlueTriton Brands, Inc. ("**BTB**"), permits the Nation to decide who can challenge USFS's compliance with the law in managing resources *on* the Forest. This is wrong. First, the Nation is not a required party, and its sovereign immunity defense cannot preclude SOFA from pursuing its claims. Notably, the Nation does not assert its sovereign immunity to prevent it or its business partner from challenging USFS management decisions of the exact same resources on public lands in this exact same Court. This Court cannot condone the Nation's untenable position that a beneficiary to a contract for the delivery of water to a privately-owned parcel of land can be the ultimate decisionmaker on who can challenge USFS's compliance with statutory mandates and Agency decision-making under the APA on federal land.

Nor does the potential impairment of the Nation's interest in procuring water vis-à-vis its contract with BTB outweigh the public's interest in the federal government's acting lawfully in its management of *public land.* The importance of this case to SOFA and its members—a group of citizens whose goal is to preserve the integrity of public forest lands in the San Bernardino Mountains—cannot be overstated. If accepted, the Nation's position would sound "the death knell" for any judicial review of Plaintiff's claims. *Conner v. Burford*, 848 F.2d 1441, 1460 (9th Cir. 1988). This lawsuit contends that the federal government flagrantly violated the

**PLAINTIFF'S OPPOSITION TO YUHAAVIATAM OF SAN MANUEL NATION'S
MOTION TO DISMISS – 5:24-cv-01336**

1  law, and a "strong presumption" favors "judicial review of administrative action,"

2  *Bowen v. Mich. Acad. of Fam. Physicians*, 476 U.S. 667, 670 (1986), and vindication

3  of a public right. There is nothing more foundational to our legal system than the

4  principle that "when a specific duty is assigned by law" to "the Executive," an injured

5  person "has a right to resort to the laws of his country for a remedy." *Marbury v.*

6  *Madison*, 5 U.S. 137, 166 (1803). Dismissal of this case would cause immense

7  prejudice to SOFA because it has no alternative forum where it can plead its case. *See*

8  *White v. Univ. of Cal.*, 765 F.3d 1010, 1028 (9th Cir. 2014).

9      The Nation's Motion to Dismiss attempts to strip the Court of its power to

10  provide a remedy to SOFA while giving the Nation the power to select who can

11  challenge a federal agency action. The Court should deny the Nation's motion.

12  **II.      FACTUAL AND PROCEDURAL BACKGROUND**

13      The San Bernardino National Forest ("**SBNF**") was reserved in 1893 for the

14  primary purpose of conserving the water supply and timber for local communities.

15      Since approximately 1930, BTB and its predecessors in interest, have operated

16  and maintained water diversion structures in Strawberry Canyon within the SBNF.

17  Strawberry Creek flows through the canyon and is a tributary to East Twin Creek and

18  the Santa Ana River. The West Fork of Strawberry Creek originates in the SBNF

19  with its headwaters in Township 2 North Range 3 West (T2N R3W) ("**Headwaters**

20  **Springs**") and from another complex of springs at lower elevation, also still within

21  the SBNF ("**Cienega Springs**"). Strawberry Creek flows approximately three miles

22  down the mountains into Township 1 North Range 3 and 4 West (T1N R3W and

23  R4W), which is where the Arrowhead Hotel is located. Declaration of Rachel S.

24  Doughty in Support of Opposition to Motion to Dismiss ("Doughty Decl."), Ex. 4 at

25  2.

26

27

28

**PLAINTIFF'S OPPOSITION TO YUHAAVIATAM OF SAN MANUEL NATION'S
MOTION TO DISMISS – 5:24-cv-01336**

**A.   Historically, USFS issued SUPs for a right-of-way to use and occupy the SBNF for water diversion infrastructure.**

The USFS first issued a Special Use Permit ("**SUP**") for a right-of-way in Strawberry Canyon in 1931 to Arrowhead & Puritas Waters Inc. and Arrowhead Springs Corporation (collectively "**Arrowhead**") for purposes of "constructing and maintaining pipelines." There is no evidence of water diversion from Strawberry Canyon by anyone prior to 1929. Doughty Decl., Ex. 4, at 17-24.

On July 27, 2018, USFS Ranger Joseph Rechsteiner signed a decision memo ("**2018 Decision Memo**") memorializing his decision to issue a new SUP to BTB's immediate predecessor in interest, Nestlé Waters North America ("**Nestlé**"). Doughty Decl., Ex. 11 at 1. This Decision Memo allowed a SUP for a term of "(3) years, with discretionary annual renewals of the permit for an additional two (2) years" for "a maximum permit term of five (5) years." Doughty Decl., Ex. 11 at 2. The allowance for a SUP was based on an expedited environmental review, and conditioned upon compliance with the Federal Lands Policy and Management Act ("**FLPMA**") and the National Forest Management Act ("**NFMA**"). Doughty Decl., Ex. 11 at 23.

On August 24, 2018, USFS Ranger Rechsteiner executed the contemplated three-year SUP for the right of way to use and occupy the SNBF with the water diversion infrastructure to Nestlé (FCD728501) ("**Nestlé 2018 SUP**"). Doughty Decl., Ex. 28 at 13. The terms of the Nestlé 2018 SUP specified the permit was not assignable or transferable. Doughty Decl., Ex. 28 at 2 (I.H.).The terms of the Nestlé 2018 SUP reserved the right of the United States to "place any conditions on installation, operation, maintenance, and removal of facilities to . . . divert, store, or convey water on National Forest System lands covered by this permit that are necessary to protect public property, public safety, and natural resources on National

12

**PLAINTIFF'S OPPOSITION TO YUHAAVIATAM OF SAN MANUEL NATION'S MOTION TO DISMISS – 5:24-cv-01336**

1    Forest System lands in compliance with applicable law." Doughty Decl., Ex. 28 at 12

2    (VIII.H).

3        On August 18, 2022, notwithstanding the non-assignment clause, the USFS

4    executed the first discretionary one-year renewal of the SUP for BTB that

5    retroactively covered the one-year period from when the Nestlé 2018 SUP expired

6    (FCD728502) ("**BTB 2022 SUP**"). Doughty Decl., Ex. 29 at 12. This SUP expired

7    six days later August 24, 2022. Doughty Decl., Ex. 29 at 1. The BTB 2022 SUP was

8    based on the same determinations and conditioned upon the same terms that

9    supported issuing the Nestlé 2018 SUP. Doughty Decl., Ex. 29 at Appendix A.

10        On February 21, 2023, the USFS executed the second discretionary one-year

11    renewal of the SUP that retroactively covered the approximately six months from

12    when the BTB 2022 SUP expired (FCD728503) ("**BTB 2023 SUP**"). Doughty Decl.,

13    Ex. 30 at 18. The BTB 2023 SUP expired, by its own terms, on August 24, 2023.

14    Doughty Decl., Ex. 30 at 3. The terms of the BTB 2023 SUP required that the holder

15    "remove all structures and improvements [. . .] within a reasonable period prescribed

16    by the authorized officer and shall restore the site to the satisfaction of the authorized

17    officer. Doughty Decl., Ex. 30 at 13. The BTB 2023 SUP also states: "[t]he parties to

18    this permit do not intend to confer any rights on any third party as a beneficiary under

19    this permit." Doughty Decl., Ex. 30 at 4.

20        On February 21, 2023, BTB requested renewal of the BTB 2023 SUP ("**2024**

21    **Renewal Application**"). The USFS demanded certain information from BTB, which

22    it was not forthcoming in providing. Doughty Decl. ¶¶ 16-20. In May of 2024, BTB

23    provided information to the USFS making clear that (1) it delivered part of its water

24

25

26

27

28

13

PLAINTIFF'S OPPOSITION TO YUHAAVIATAM OF SAN MANUEL NATION'S
MOTION TO DISMISS – 5:24-cv-01336

to the Nation,[1] and (2) that the Nation was not a party to the SUP. Doughty Decl. ¶ 19. In response to questions from the USFS regarding the 2024 Renewal Application, BTB sent the USFS a statement of the Nation, including the sentence: "The Tribe is not a party to, nor is it bound by the terms of the [BTB 2023 SUP] or the [SWRCB Order]." Doughty Decl., Ex. 22 at 15.

On July 26, 2024, the USFS sent BTB a "Notice of Denial of Application for Use and Occupancy of National Forest Lands; Termination of Special Use Permit FCD728503 [the BTB 2023 SUP]" ("**Termination Letter**"), which notified BTB that "all use of Forest System lands, including the operation and maintenance of a water collection/water transmission system on USFS lands, must stop immediately," block flows through the pipeline within seven days, and prepare an infrastructure removal plan within 12 weeks. Doughty Decl., Ex. 20 at 1. The USFS then allowed continued diversion of water for the sole purpose of providing water to the Nation, notwithstanding the termination letter and the fact that the Nation holds no SUP. Doughty Decl., Ex. 33 at 3.

---

[1] The water diversion and extraction records reported by BTB show a total of 317.7-acre feet in 2023. Declaration of Hugh Bialecki in Support of Opposition to Motion to Dismiss ("Bialecki Decl.") ¶¶ 20, 21. Of this total water diverted or extracted, 81.9-acre feet (or approximately 26.7 million gallons) was delivered to the Nation in 2023. Bialecki Decl. ¶¶ 20, 21. The records show that during the preceding five years, the average amount of water delivered to the Nation was an estimated 30.7 acre feet. Bialecki Decl. ¶¶ 20, 21.

The water diversion and extraction records reported by BTB show a total of only 1.5 acre feet being delivered to the factory for use in bottled water in 2023. The stated beneficial use of the water diversion infrastructure for which all prior SUPs have been issued is for bottled water. Doughty Decl., Ex. 11 at 1.

**PLAINTIFF'S OPPOSITION TO YUHAAVIATAM OF SAN MANUEL NATION'S MOTION TO DISMISS – 5:24-cv-01336**

**B.    BTB's diversion harms trust resources of SBNF.**

Prior to BTB and its predecessors' diversions, the United States Geological Survey ("**USGS**") and other sources documented that Strawberry Creek and its tributary springs were historically perennial, flowing even in the dry months and supporting fish and a lush riparian fauna and flora. Doughty Decl. Ex. 5 at 4; Declaration of Steve Loe in Support of Opposition to Motion to Dismiss ("Loe Decl.") ¶ 11. Strawberry Creek is a tributary to the Santa Ana River and part of the Santa Ana River Watershed. The USGS documented that Strawberry Creek is a recharge source for the Bunker Hill Basin. BTB's diversions, continue to leave Strawberry Creek dry and diminished, unable to support fish like the native Speckled Dace, and have impaired riparian flora and fauna. Loe Decl. ¶¶ 6, 11. BTB's diversion allow only intermittent pooling of water and fractured habitats in Strawberry Creek on the SBNF. Loe Decl. ¶ 11. Water dependent flora like alders and willows no longer line the upper reaches of Strawberry Creek. Because BTB has withdrawn so much water, the species observed in the 1920s are gone from the canyon. Loe Decl. ¶ 11. The USFS itself has rated each stretch of the Headwaters and Cienega Springs—public resources on public lands set aside for the protection of watersheds and habitat—as in poor condition as a direct result of BTB's diversions. Doughty Decl., Ex. 34 at 39-40.

**C.    The Nation's contract-derived interest in BTB's water delivered through the diversion infrastructure.**

In the early 1930s, shortly after construction of the water diversion infrastructure began, Arrowhead entered into an agreement conveying to California Consolidated Water Company ("**Consolidated**") whatever appropriative rights Arrowhead might have to water in Strawberry Canyon in exchange for the delivery by Consolidated of 20% of any water diverted from USFS lands in Strawberry

15

**PLAINTIFF'S OPPOSITION TO YUHAAVIATAM OF SAN MANUEL NATION'S MOTION TO DISMISS – 5:24-cv-01336**

Canyon to the Arrowhead Springs Hotel through the diversion infrastructure ("**80/20 Agreement**"). ECF No. 38-9 at PDF 10; Doughty Decl. Ex. 4 at 23-24.

BTB is Consolidated's successor in interest to this contract; the Nation is Arrowhead's successor in interest, as a result of the Nation's 2016 acquisition of the Arrowhead Springs Hotel ("**Hotel Property**"). Doughty Decl. ¶ 8; ECF No. 38-6, McCleary Decl. ¶ 9. The Hotel Property is not federal land or reservation land. Doughty Decl. ¶ 8.

On December 11, 2023, BTB and the Nation reaffirmed the private 80/20 Agreement, and BTB committed to helping the Nation obtain its own SUP or negotiate a "commercially reasonable agreement" to "allow the Tribe to use the infrastructure used by BTB." Doughty Decl., Ex. 31 at 4.

Prior to 2016, when the Nation acquired the Hotel Property, no water had ever been delivered to the Nation through the pipeline permitted by the SUP. The right to delivery of that water through BTB's pipeline is wholly a creature of contract.

**D.     The Nation has not asserted its own rights.**

The Nation acquired the Hotel Property in 2016, presumably for something in the neighborhood of the $60 million for which it was offered. Doughty Decl., Ex. 32. The Hotel Property had been annexed to San Bernardino City in 2010. Doughty Decl. Ex. 1. The Hotel Property came entitled for 600 hotel rooms, a golf course, and 1,044,646 gross square feet of commercial space, as well as 1,350 residential units. Doughty Decl. Ex. 2, p. 15. The purpose of the annexation was so that the Hotel Property could receive municipal services. *Id*. The Nation has had nine years since when it acquired the Hotel Property to seek connection to the municipal water supply of the City of San Bernardino, and this connection would be feasible, not cost prohibitive, and would meet the Nation's stated needs for water, which are certainly less than the entitled uses. Bialecki Decl. ¶¶ 16, 19.

**PLAINTIFF'S OPPOSITION TO YUHAAVIATAM OF SAN MANUEL NATION'S MOTION TO DISMISS – 5:24-cv-01336**

The Nation was notified of the NEPA review process that supported issuing the Nestlé 2018 SUP. Doughty Decl., Ex. 11 at 27. That process made clear that BTB's right to the water it diverts were in dispute.

Likewise, the Nation was made aware of the State Water Resources Control Board's proceedings in which BTB's rights to the water it diverts from federal land were in dispute. Bialecki Decl., Ex. 1.

The Nation could have—but has not—applied for its own SUP from USFS to divert water from Strawberry Canyon.[2] Doughty Decl. ¶ 21.

### E.    The Nation asserts its sovereignty selectively.

The Nation intervened in the related case of *BlueTriton Brands v. United States Forest Service et al.*, No. CV 24-9720 JGB (DTBx) (C.D.Cal.) ("**BTB v. USFS**"), in which BTB is challenging the USFS denial of its 2024 Renewal Application. Doughty Decl. ¶ 25. In that case the Nation waived its sovereign immunity and has not moved for dismissal of the case. *Id*.

## III.    ARGUMENT

Courts employ a two-part analysis to determine whether to dismiss a case because a necessary party cannot be joined. First, it determines if an absent party is required as defined in Rule 19. *Protect the Peninsula's Future v. Haaland*, No. CV23-5737-BHS, 2025 WL 1413734, at *3 (W.D. Wash. May 15, 2025), reconsideration denied*,* No. CV23-5737-BHS, 2025 WL 1928846 (W.D. Wash. July 14, 2025). Then, if the party is required but cannot be joined, the court considers four factors to determine whether the party is "indispensable" so that in "equity and good

---

[2] Presumably, if the Nation did seek its own SUP, it would seek to dismiss any challenge to the issuance or terms of that SUP as well under the same theory it asserts here, rendering its interactions with the federal government, whether lawful or not, unreviewable.

**PLAINTIFF'S OPPOSITION TO YUHAAVIATAM OF SAN MANUEL NATION'S
MOTION TO DISMISS – 5:24-cv-01336**

conscience" the suit should be dismissed. *Makah Indian Tribe v. Verity*, 910 F.2d 555, 558 (9th Cir. 1990). The inquiry is fact specific, practical, and "designed to avoid the harsh results of rigid application." *Id.* The moving party bears the burden of persuasion, and the court accepts allegations in the plaintiff's complaint as true and draws all reasonable inferences in plaintiff's favor. *Diné Citizens Against Ruining Our Env't v. Bureau of Indian Affs.*, 932 F.3d 843, 851 (9th Cir. 2019); *Sierra Club v. Watt*, 608 F.Supp. 305, 312 (E.D. Cal. 1985).

Moreover, the Supreme Court has also created a "Public Rights Exception" to the traditional joinder rules for claimants, like Plaintiff here, who seek to vindicate public rights. *Nat'l Licorice Co. v. NLRB*, 309 U.S. 350 (1940). Under that Exception, Plaintiff's claims can proceed without the Nation because the litigation "transcend[s] the private interests of the litigants" and does not "destroy the legal entitlements" of the Nation. *Maverick Gaming LLC v. United States*, 123 F.4th 960, 982 (9th Cir. 2024), *cert. denied sub nom. Runitonetime LLC v. United States*, No. 24-1161, 2025 WL 2823742 (U.S. Oct. 6, 2025).

## A. The Nation Is Not a Required Party.

### 1. The Nation is not a required party under Rule 19(a)(1)(A) because the Court can accord complete relief among the parties.

Under Fed. R. Civ. P. 19(a)(1)(A), a nonparty is must be joined if "in that person's absence, the court cannot accord complete relief among the existing parties." Fed. R. Civ. Proc. 19(a)(1)(A). The Nation is not required to accord complete relief among the existing parties. SOFA challenges only the lawfulness of the USFS's decisions to allow BTB a right of way and authorization for occupancy of federal land with a pipeline to divert water to which BTB has a right. SOFA's seeks declaratory and prospective relief: it asks this Court to vacate and set aside USFS's

18

PLAINTIFF'S OPPOSITION TO YUHAAVIATAM OF SAN MANUEL NATION'S
MOTION TO DISMISS – 5:24-cv-01336

1   prior unlawful approvals—in which the Nation has no legal interest—and to require

2   the Agency to follow mandated statutory procedures before allowing BTB--or any

3   party--to divert water from the Strawberry Creen Watershed. *See* FAC at p. 35. If the

4   Court grants Plaintiff's requests for relief, the Nation would not be required to act or

5   refrain from acting. *Manygoats v. Kleppe*, 558 F.2d 556, 558–59 (10th Cir. 1977)

6   ("The requested relief does not call for any action by or against the Tribe.").

7       Only USFS would be required to act – to perform a new or supplemental

8   environmental analysis and to meet the statutory goals set forth in FLPMA, NEPA,

9   NFMA, and the APA before approving a new SUP. Until USFS complies with its

10  statutory mandates, no party could divert water from Strawberry Canyon. SOFA's

11  relief in no way prevents the Nation or anyone else from participating in any new

12  Agency decisionmaking process or from applying for an SUP to divert water from

13  federal land. *Makah*, 910 F.2d at 558-60 (claims for relief concerning the "future

14  conduct of the administrative process" are "reasonably susceptible to adjudication

15  without the presence of other parties to the administrative process."). The Nation is

16  not required for this Court to order that the Agency comply with federal law in its

17  permitting process; and the Nation can have no legally cognizable interest in

18  shielding the USFS from an order requiring nothing more than compliance with the

19  law.

20      **2.    The Nation is not a required party under Rule 19(a)(1)(B)
21            because it does not have an interest in the subject claims.**

22      Under Fed. R. Civ. P. 19(a)(1)(B), a nonparty is necessary if "that person

23  claims an interest relating to the subject of the action and is so situated that

24  disposing of the action in the person's absence may as a practical matter impair or

25  impede the person's ability to protect the interest; or leave an existing party subject

26  to a substantial risk of incurring double, multiple, or otherwise inconsistent

27

28                          19

obligations because of the interest." The Nation is not a required party because it has

no legally protectable interest in the challenged SUP. Instead, the Nation's claimed

interest in BTB's SUP arises exclusively from the terms of a bargained for contract

with another private party that is not the subject of this action. The Nation fails to

meet its burden to establish that it has legally protected interest in the subject of the

action. At best, it alleges an insubstantial stake in the outcome of the litigation.

This case addresses USFS's issuance of a permit to the Nation's business

partner, BTB. The Nation admits it does not hold a permit to divert water through the

facilities on federal land. Doughty Decl. ¶ 21. The Nation argues that it could "assert"

these rights, but the threat of future action does not create a vested legal right. As the

Nation is not a holder of the SUP which is the subject of this case, the challenged

Agency actions in issuing and enforcing the terms of the SUP do not authorize the

Nation to receive any water from federal land. While the Nation maintains it has

"broad water rights that authorize the receipt of water through [BTB's]

infrastructure," no such water rights are at issue in this case.

The cases the Nation cites in support of its position that it is a required party

involved challenges to activity on tribal land or agency actions where the tribe was a

party to that action. *See, e.g., Deschutes River All. v. Portland Gen. Elec. Co.*, 1 F.4th

1153, 1163 (9th Cir. 2021) ("DRA challenges the operation of a large hydroelectric

project co-owned and co-operated by the Tribe, and located partly on the Tribe's

reservation."); *Am. Greyhound Racing, Inc. v. Hull*, 305 F.3d 1015, 1027 (9th Cir.

2002) (gaming on tribal lands); *Diné Citizens Against Ruining Our Env't v. Bureau of

Indian Affs.*, 932 F.3d 843, 858 (9th Cir. 2019) (coal mine and power plant on Navajo

Nation land); *Maverick*, 123 F.4th at 978 (gaming on tribe's reservation); *Kescoli v.

Babbitt*, 101 F.3d 1304, 1307 (9th Cir. 1996) ("Although the mine complexes are

located on the Navajo Nation's reservation, the Navajo Nation and the Hopi Tribe are

20

**PLAINTIFF'S OPPOSITION TO YUHAAVIATAM OF SAN MANUEL NATION'S
MOTION TO DISMISS – 5:24-cv-01336**

joint owners of some of the subsurface minerals."). Tribal land is not at stake here – this case involves the issuance of a permit on federal land, to a private, non-tribal business. The Nation has no land ownership, legal easements, or a legally protected interest in the challenged agency actions. The challenged permit also strictly forbids the allocation of third-party beneficiary rights–the exact rights the Nation is asserting. ECF No. 24-2 at PDF 5, ¶ IV.C. ("The parties to this permit do not intend to confer any rights on any third party as a beneficiary under this permit."). In short, the Nation has no legally protected interest in the challenged permit.

This lawsuit will not vacate any permits or approvals that the Nation may obtain from USFS; it does not impair in any way the Nation's ability to seek an SUP. Future interest do not establish a party is a "required" party under Rule 19. *See, e.g.*, *Makah*, 910 F.2d at 559; *Cachil Dehe Band of Wintun Indians v. California*, 547 F.3d 962, 970 (9th Cir. 2008).

The Nation is simply not a required party in litigation that seeks to ensure that the Agency comply with its obligations when issuing a permit to allow another to operate a pipeline on federal land.

**B.    Even were the Nation a necessary party, equity and good conscience require that this case continue.**

Courts have equitable discretion to deny dismissal when "equity and good conscience" mandate. Fed. R. Civ. P. 19(b). This is a case-specific equitable determination, in which a court is required to consider a non-exhaustive list of four enumerated factors that address the interests of the plaintiff, the defendant, the absent party, the broader public, and the judicial system. Fed. R. Civ. P. 19(b); *Republic of Philippines v. Pimentel*, 553 U.S. 851, 862 (2008) ("The considerations set forth in subdivision (b) are nonexclusive."). Where "no alternative forum exists" to address

**PLAINTIFF'S OPPOSITION TO YUHAAVIATAM OF SAN MANUEL NATION'S MOTION TO DISMISS – 5:24-cv-01336**

plaintiff's claims, courts must be "extra cautious before dismissing an action." *Kescoli v. Babbitt*, 101 F.3d at 1311 (quotation omitted).

### 1.    The Nation can avoid prejudice by participating in this action.

The first factor considers "the extent to which a judgment rendered in the person's absence might prejudice the person or the existing parties." Fed. R. Civ. P. 19(b)(1). In the Order Granting Intervention, the Court ruled that the Nation has a "protectable interest." ECF No. 75, p. 5.  But, having a protectable interest is not the same as suffering potential *legal* prejudice, and here there is no legal prejudice to avoid. The Ninth Circuit defines "legal prejudice" as "prejudice to some legal interest, some legal claim, some legal argument." The court explicitly stated that "uncertainty because a dispute remains unresolved or because the threat of future litigation causes uncertainty does not result in plain legal prejudice." *Smith v. Lenches*, 263 F.3d 972 (9th Cir. 2001); *accord Kamal v. Eden Creamery, LLC*, 88 F.4th 1268 (9th Cir. 2023). Inconvenience to the defendant, such as having to defend in another forum or the plaintiff gaining a tactical advantage, does not amount to legal prejudice. *Id*. And, as all SOFA seeks is that the USFS comply with the law in allowing the placement of infrastructure on public lands, then the Nation cannot have any legitimate, protectable, interest to the contrary.

It is neither equitable nor in good conscience to allow the Nation to use this protectable interest as a basis to prevent Plaintiff's claims entirely. The Nation decided to intervene in this action—it was not ordered into court involuntarily (as would be the case were involuntary joinder ordered under Rule 19). The Nation argued that "permitting disposition of this action without the Nation would *impair* and *impede* the Nation's ability to protect some of its most fundamental rights and interests." ECF No. 38-2 at 24 (emphasis added). But this lawsuit disturbs no rights or legally cognizable interests of the Nation. In granting intervention, this Court

22

1    reminded Plaintiff that "intervention" is not the same as "dismissal," citing

2    "broadened access to the courts" as a primary basis for intervention. ECF No. 75 at 4.

3    Waiving sovereign immunity to participate as a defendant-intervenor serves to

4    provide the Nation the opportunity to protect its interests. *See* Nicholas V. Merkley,

5    *Compulsory Party Joinder and Tribal Sovereign Immunity: A Proposal to Modify*

6    *Federal Courts' Application of Rule 19 to Cases Involving Absent Tribes as*

7    *"Necessary" Parties*, 56 OKLA. L. REV. 931, 963-964 (arguing that "[r]ule 19 should

8    not serve as a barrier that prevents the parties from obtaining justice simply because

9    an absent tribe claims an interest in the suit but refuses to participate" and that tribal

10   intervention under Rule 24 "allows courts to better serve Rule 19 interests").

11          On the other hand, the Nation does not have a sovereign right to continue to

12   benefit from an ongoing unlawful federal agency dispensation. And it should not

13   offend sovereign immunity to allow a case against the federal government to proceed,

14   even if it means confronting the Nation with a choice: gain the advantages of waiving

15   sovereign immunity or standing on sovereign immunity.

16          Finally, dismissal would eliminate Plaintiff's right to judicial review while the

17   Nation's participation in this case would provide an "efficient resolution of issues."

18   *United States v. City of Los Angeles*, Cal., 288 F.3d 391, 397 (9th Cir. 2002) (citing

19   *Forest Conservation Council v. U.S. Forest Serv.*, 66 F.3d 1489, 1497 n. 8 (9th Cir.

20   1995)). Plaintiff stands to suffer great harm if this case is dismissed. The Nation, on

21   the other hand, can "avert prejudice . . . by voluntarily appearing in the action," Fed.

22   R. Civ. P. 19(b) at Advisory Committee's Note to 1966 Amendment. Thus, factor one

23   does not support dismissal.

24

25

26

27

28
                                            23
**PLAINTIFF'S OPPOSITION TO YUHAAVIATAM OF SAN MANUEL NATION'S
MOTION TO DISMISS – 5:24-cv-01336**

### 2.    Any prejudice the Nation claims can be avoided by other measures.

The second factor considers whether any potential prejudice to any of the parties "could be lessened or avoided" by "shaping the relief," or "other measures." Fed. R. Civ. P. 19(b)(2). Here, other measures can appropriately reduce any "prejudice" the Nation alleges. For instance, the Nation has the option of applying itself for a lawful SUP from the USFS. Doughty Decl. ¶ 21. The water from its own groundwater wells or connection to state water from the San Bernardino Valley Municipal Water District, for instance, would be more than adequate to replace the current amount of water delivered to the Hotel Property under the terms of the contract with BTB. *See* Bialecki Decl. ¶¶ 16, 19, 24, 25, 26 (describing the Nation's access to 1,900 acre-feet of water annually from its own wells and a few hundred acre-feet annually from the SBVMWD when it receives only approximately 30 acre-feet annually from BTB).

The Nation was well aware of the that the water was in dispute when it purchased Arrowhead Springs. It is also aware that the permit holder—BTB—"shall obtain all required State and local water permits, licenses, registrations, certificates, and *rights* for existing and proposed water wells."  ECF No. 24-2 at PDF 14, ¶ VIII.G.1 (emphasis added); *see also id.* at PDF 15, ¶ VIII.H.2 ("Any necessary water rights must be acquired and maintained by the holder in accordance with State law and the terms of this permit."). Instead of asking this Court to dismiss this case and strip SOFA of its right to judicial review, equity and good conscious require the Nation to employ these other measures to obtain water to reduce any alleged prejudice.

**PLAINTIFF'S OPPOSITION TO YUHAAVIATAM OF SAN MANUEL NATION'S
MOTION TO DISMISS – 5:24-cv-01336**

### 3. Judgement rendered in the Nation's absence would be adequate.

The third factor is "whether a judgment rendered in the person's absence would be adequate." Fed. R. Civ. P. 19(b)(3). The Nation contends that relief cannot be "adequate … without the absent party," because the Nation has "riparian, appropriative, contractual, and aboriginal water rights" to water from the Strawberry Canyon watershed, Motion to Dismiss, ECF No. 80 at 20, and a judgment would therefore not "settle the dispute" in whole. SOFA challenges none of the Nation's claimed water rights in this lawsuit, only the lawfulness of the USFS's issuance of SUPs to BTB and prior holders of SUPs in Strawberry Canyon. Thus, judgement rendered in the Nation's absence would be adequate. *Makah*, 910 F.2d at 560 ("administrative litigation commonly inflicts drastic effects on absent third parties.").

### 4. Dismissal will strip Plaintiff of any adequate remedy.

Finally, the fourth factor considers "whether the plaintiff would have an adequate remedy if the action were dismissed for nonjoinder." Fed. R. Civ. P. 19(b)(4). If this case were dismissed, Plaintiff's claims would never be resolved because there is not another forum where Plaintiff could obtain judicial review of the Federal Defendants' NEPA analysis or FLPMA violations. The more equitable approach is for the Nation to participate in the litigation or for it to employ other measures to protect its interest, as explained above. The Nation is no stranger to this approach, having intervened without asserting a sovereign immunity defense in *BlueTriton Brands v. United States Forest Service*, the related matter.

The Ninth Circuit has said that "the tribal interest in immunity" only "overcomes the lack of an alternative remedy or forum for the plaintiffs" under highly limited circumstances. *Maverick*, 123 F.4th at 981 (quoting *Am. Greyhound Racing*, 305 F.3d at 1025)). The impact to an absent tribe must be nothing short of existential.

25
**PLAINTIFF'S OPPOSITION TO YUHAAVIATAM OF SAN MANUEL NATION'S MOTION TO DISMISS – 5:24-cv-01336**

*See id.* at 965 ("Maverick seeks relief that would invalidate the gaming compacts of all tribes in Washington"); *Am. Greyhound Racing*, 305 F.3d at 1025 (plaintiff seeks to "shut down virtually the entire Indian gaming industry in Arizona"); *Jamul Action Comm. V. Simermeyer*, 974 F.3d 984, 996 (9th Cir. 2020) (challenging "not only the geographical extent of the Village's sovereignty, but the very fact of its sovereignty"). In the face of such existential crises, those tribes may have been "indispensable," but the Nation alleges no such "existential" impact.

Dismissal of the action for nonjoinder of the Nation would produce an anomalous result as "no one, except the [Nation] could seek review" of the Federal Defendants' actions." *Manygoats*, 558 F.2d at 559. In *Manygoats,* seventeen members of the Navajo Tribe sought to enjoin the performance of a mining agreement between the Navajo Tribe and Exxon Corporation. The agreement had to be approved by the Secretary of the Interior, and the members based their claim on the alleged inadequacy of the EIS required under NEPA. *Manygoats*, 558 F.2d at 558. The Tenth Circuit reversed the district court's decision to dismiss the case. "Dismissal of the action for nonjoinder of the Tribe would produce an anomalous result. No one, except the Tribe, could seek review of an environmental impact statement covering significant federal action relating to" a tribal interest. *Id.* at 559. *Manygoats* is applicable here. "NEPA is concerned with national environmental interests. Tribal interests may not coincide with national interests" but this cannot exempt federal agencies from engaging in a lawful administrative process. *Id.* Here, although the Nation may have an interest in the outcome of the administrative process, it still remains that SOFA is seeking relief against the government to ensure a lawful administrative process. And SOFA "would be left without an adequate remedy if this action is dismissed. In equity and good conscience, this action should not be dismissed, but should proceed." *Id.*

26

In an analogous situation—a buyer acquires title to property subject to a
pending lien—a buyer takes title "subject to the lien . . . not as bona fide purchaser[]."
*See, e.g., Dieden v. Schmidt*, 104 Cal. App. 4th 645, 651-52 (2002). The same
reasoning applies here: the Nation acquired its interest in the water from Strawberry
Canyon subject to state and federal laws and with knowledge of already pending
legal challenges to the Forest Service's prior decisions. Doughty Decl. ¶ 8. Thus,
because no adequate remedy is available to Plaintiffs if this suit were dismissed, the
fourth factor requires allowing this case to proceed.

### C. Even if this Court finds that the Nation meets the Rule 19 requirements for dismissal, the Court should apply the public rights exception.

The Supreme Court has created a "public rights" exception to traditional
joinder rules. *Nat'l Licorice Co. v. NLRB*, 309 U.S. 350 (1940). Under the
exception, a lawsuit can proceed without a required party if the litigation
"transcend[s] the private interests of the litigants" and does not "destroy the legal
entitlements of the absent parties." *Maverick*, 123 F.4th at 982.

The exception was tailor-made for cases like this one, where the application of
"traditional joinder rules" would "effectively undermine" a plaintiff's ability to
enforce administrative statutes and the claims do not "destroy the legal entitlements
of the absent parties." *Conner*, 848 U.S. at 1459; *Maverick*, 123 F.4th at 982. When
these factors are satisfied, courts decide plaintiffs' claims without joining every
party potentially affected by the litigation, "even when those affected parties have
property interests at stake." *Conner*, 848 F.2d at 1459; *see Nat'l Wildlife Fed'n v.
Burford*, 835 F.2d 305, 333 (D.C. Cir. 1987) ("administrative litigation commonly
inflicts drastic effects on absent third parties" but "potential unfairness seems in
accord with what we often tolerate").

**PLAINTIFF'S OPPOSITION TO YUHAAVIATAM OF SAN MANUEL NATION'S
MOTION TO DISMISS – 5:24-cv-01336**

1     This is a textbook case for the public rights exception to traditional joinder.

2  At its core, this litigation transcends the private interests of the Nation and seeks to

3  vindicate a public right. Plaintiffs' focus is on protecting publicly owned property

4  within a National Forest and restoring the land for the public good. In order to do so,

5  the Federal Defendants must comply with their statutory mandates under NEPA and

6  FLPMA. *Env't Prot. Info Ctr. v. Carlson*, 968 F.3d 985, 992 (9th Cir. 2020) ("The

7  public interest is served by requiring the [federal government] to comply with the

8  law").

9          **1.    Plaintiff's claims transcend private rights.**

10     This case addresses a critical issue: Federal agencies must be required to

11  execute legal duties designed to protect publicly owned lands. The fact that

12  Plaintiff brings a classic APA suit under NEPA, FLPMA, and NFMA, seeking only

13  injunctive and declaratory relief, confirms the public nature of this dispute. The entire

14  point of the APA is to vindicate "substantial public interest in having government

15  agencies" follow the law. *United Farm Workers v. U.S. Dep't of Lab.*, 509 F. Supp.

16  3d 1225, 1253 (E.D. Cal. 2020). That is why Congress waived U.S. sovereign

17  immunity for APA suits requesting injunctive relief, *see* 5 U.S.C. § 702, but not for

18  suits requesting "money damages"—the "prototypical common law remedy" for

19  violation of private rights, *SEC v. Jarkesy*, 603 U.S. 109, 123 (2024).

20     Plaintiff's APA claims fit that mold. First Am. Compl., ECF No. 24 ¶¶ 104-

21  118. Plaintiff's claims only seek relief ensuring that Federal Defendants "follow[s]

22  statutory procedures." *Makah*, 910 F.2d at 559 n. 6; *see Conner*, 848 F.2d at 1460

23  (suits requesting "administrative compliance" fall under the exception); *Guardians

24  v. U.S. Fish & Wildlife Serv.*, No. 16-CV-65, 2018 WL 1023104, at *4 n. 4 (D.

25  Mont. Feb. 22, 2018) (same); *Pac. Coast Fed'n of Fishermen's Ass'n v. U.S. Dep't

26  of the Interior*, 929 F. Supp. 2d 1039, 1062 (E.D. Cal. 2013) (same). For example,

27

28
                                    28
**PLAINTIFF'S OPPOSITION TO YUHAAVIATAM OF SAN MANUEL NATION'S
MOTION TO DISMISS – 5:24-cv-01336**

FLMPA envisions management that balances the use of the resources of public lands with the preservation of those resources for future generations. In *Norton v. Southern Utah Wilderness Alliance*, 542 U.S. 55 (2004), the Supreme Court described "multiple use management" as "a deceptively simple term that describes the enormously complicated task of striking a balance among the many competing uses to which land can be put." Because FLPMA includes more than 200 million acres in its definition of *public lands*, many parties have significant interests in the interpretation and application of *multiple use and sustained yield*.

Plaintiff's claims also center on vindicating public rights under NEPA and NFMA—federal statutes created to safeguard public interests. At stake are the policy objectives of these statutes. NEPA expressly seeks to ensure agencies conduct environmental review before committing resources. NFMA seeks to serve the public interest by sustainably managing renewable resources.

This case is similar to *Makah Indian Tribe*, referenced above. In that case, the Ninth Circuit held that its claims were reasonably susceptible to adjudication without the presence of other tribes. *Makah*, 910 F.2d at 559. The absent tribes would not be prejudiced because *all of the tribes* had an equal interest in an administrative process that is lawful. The court stated "[e]ven if the absent tribes were "necessary" to the Makah's procedural claims, they would not be "indispensable." We have adopted the "public rights" exception to traditional joinder rules. *Makah*, 910 F.2d at 560 (citing *Conner v. Burford,* 848 F.2d at 1459–61)).

Plaintiff's claims vindicate the public's foundational right to challenge administrative actions. The cases the Nation cites in favor of dismissal are easily distinguishable because they target the *private rights* of individual litigants, not cases brought to vindicate public rights. For example, the Nation tries to analogize this case

29

**PLAINTIFF'S OPPOSITION TO YUHAAVIATAM OF SAN MANUEL NATION'S MOTION TO DISMISS – 5:24-cv-01336**

to *Kescoli v. Babbitt*, but there, the dispute was "private in nature;" the plaintiff—a member of the Navajo Nation—opposed a modified settlement agreement between the Navajo and a mining company because the modified settlement permitted the company to mine too close to sacred burial sites, whereas the original settlement was more protective. *Kescoli,* 101 F.3d at 1307, 1311. Specifically, the plaintiff argued the modified settlement would permit mining within 100 feet of a burial site, in violation of federal law. *Id.* at 1308. The Ninth Circuit found that "limited" issue had little relevance beyond "the merits of [Kescoli's] dispute*,*" declining to apply the public rights exception to what amounted to a private claim. *Id.* at 1311. By contrast, Plaintiff here seeks to "enforce the duty of the [USFS] to follow statutory procedures," preserve resources, and place all parties on equal footing. *See Makah*, 910 F.2d at 559 n.6. Plaintiff's suit "benefits all," tribes as well as the surrounding communities, and therefore is public in nature. *Id.*

In *American Greyhound Racing, Inc. v. Hull*, 305 F.3d 1015 (9th Cir. 2002), the plaintiffs—private racetrack owners—sought to force the governor of Arizona to terminate existing gaming compacts with the tribes and to prevent negotiation of new compacts. *See Am. Greyhound Racing, Inc.*, 305 F.3d at 1023. The court found that the only interest actually advanced was the private plaintiffs' desire to "avoid competitive harm to their own operations." *Id.* at 1026. The court distinguished that case from *Makah*, where the tribe genuinely sought to challenge administrative action and clarify fishing rights for all the tribes involved, "including Makah." *See id.*

> This litigation does not *incidentally* affect the gaming tribes in the course of enforcing some public right. This litigation is *aimed* at the tribes and their gaming. It was central to the plaintiffs' case to establish that casino-type gaming of the kind carried on under the existing

30
**PLAINTIFF'S OPPOSITION TO YUHAAVIATAM OF SAN MANUEL NATION'S
MOTION TO DISMISS – 5:24-cv-01336**

compacts was unlawful under state law and IGRA. This case is thus distinguishable from *Makah Indian Tribe,* in which we held that other tribes were not necessary parties to that part of the Makah's action that sought to require administrative authorities to follow certain procedures in establishing future fishing quotas for all parties, including the Makah.

*Am. Greyhound Racing, Inc.*, 305 F.3d at 1026.

Similarly, in *Maverick Gaming*, private cardroom and casino owners sought to invalidate tribes' gaming compacts under the Indian Gaming Regulatory Act. *Maverick*, 123 F.4th at 965. Like *American Greyhound*, the court concluded that the public rights exception was inapplicable because the plaintiffs were business competitors seeking to overturn legally recognized tribal compacts. *Id.* at 982-83. In both *American Greyhound* and *Maverick Gaming*, the claims centered on plaintiffs' private economic interests rather than the enforcement of public rights. *Id.*

*Kescoli*, *Maverick Gaming*, and *American Greyhound* are fundamentally different than the case at hand: when plaintiffs pursue private gains or seek to undermine tribal governance, courts are reluctant to apply the public rights exception. In contrast, where, as here, claims serve the broader public interest, do not advance a plaintiff's economic interests, and only incidentally impact a tribe, the public rights exception is appropriate.

It is also significant that the challenged agency action does not involve tribally-owned land or a tribal permit to operate on federal land. *Deschutes River All. v. Portland Gen. Elec. Co.*, 1 F.4th 1153, 1163 (9th Cir. 2021) ("The Tribe's sovereign immunity requires dismissal of this suit, in which DRA challenges the operation of a large hydroelectric project co-owned and co-operated by the Tribe, and located partly on the Tribe's reservation."); *Diné Citizens Against Ruining Our Env't.*, 932 F.3d at

31

858 (coal mine and power plant on Navajo Nation land). Instead, the Nation's
asserted protectable interests that this Court found relevant for intervention are its
contractual rights to receive water, the impairment of which could be addressed by
the Nation's intervention or by the other prejudice-reducing measures discussed,
*infra* such as sources water from other sources or applying for its own lawful SUP.
Doughty Decl. ¶ 12; Bialecki Decl. ¶¶ 13-15, 24, 25, 26. The public interest in
litigating this case transcends the Nation's private right in a water procurement
contract.

This is a public lawsuit through and through. While SOFA maintains that the
Nation is not required, if this Court concludes that the Nation is an indispensable
party, it should apply the public rights exception in support of SOFA's—and the
public's—right to challenge federal agency action. Judicial review of agency
decision-making is simply too important.

### 2.    This case will not destroy the Nation's legal entitlements.

Finally, "so long as [this] suit does not threaten to *destroy* the [Nation's]
private entitlements, but merely impairs those rights, the suit may proceed."
*Federated Indians of Graton Rancheria v. United States Dep't of the Interior*, No.
24-CV-08582-RFL, 2025 WL 2096171, at *1 (N.D. Cal. July 18, 2025). The Nation
does not grapple with this distinction or even once argue that its legal entitlements
will be destroyed. Instead, it mentions seven times that their property interests will be
"impaired" if the court does not dismiss, and eight times that this case "threatens"
their property interests. "Impair" and "threaten" are not the same as "destroy."

In an analogous case, *Conner v. Burford*, 848 F.2d 1441 (9th Cir. 1988), some
lessees had sought intervention and dismissal of the case on grounds that they were
necessary and indispensable parties that could not be joined under Rule 19. *Id.* at
1445. The Ninth Circuit held the parties were necessary but not indispensable. The

**PLAINTIFF'S OPPOSITION TO YUHAAVIATAM OF SAN MANUEL NATION'S
MOTION TO DISMISS – 5:24-cv-01336**

court reasoned that such joinder, even when property interests were at stake, would impose overly strict constraints on litigation against the government, undermining the ability to address public rights effectively. *Conner*, 848 F.2d at 1459-60 (relying on *National Licorice* and multiple other cases). In response to the lessees' strong objections that the court had "destroyed" their property rights, the court stated: "We enjoin only the actions of the government; the lessees remain free to assert whatever claims they may have against the government. Thus, the public right to compliance with environmental standards is vindicated with a minimum imposition on the rights of lessees." *Id.* Even though the Court's order, as modified precluded " immediate government approval of surface-disturbing activity" it was only "until the government complies with NEPA and the ESA." This was "insufficient to make the lessees indispensable to this litigation." *Id.*

In *Federated Indians of Graton Rancheria*, the Northern District found earlier this year that a land-into-trust decision conferred rights on the non-party tribe, but the litigation did not "threaten to destroy" the fundamental attributes of those interests:

> Although [the tribe – the Koi] may currently possess the rights to engage in Class I and Class II gaming, this litigation does not threaten to destroy Koi's interests in already established revenue or activity associated with those rights. Moreover, Koi already holds the land in fee simple. Thus, its interest in the land would not be destroyed, even if the Court were to ultimately order the land-into-trust decision reversed until the Federal Defendants complied with the NHPA and NEPA. Koi would still have rights to farm the land, and to engage in the same activities it has been doing on the land up until this point. Moreover, even if the land-into-trust transaction were reversed due to inadequacies in the decisionmaking process, Koi would not be

33

PLAINTIFF'S OPPOSITION TO YUHAAVIATAM OF SAN MANUEL NATION'S
MOTION TO DISMISS – 5:24-cv-01336

foreclosed from seeking to have the transaction reinstated following proper review.

*Federated Indians of Graton Rancheria*, 2025 WL 2096171, at \*9 (N.D. Cal. July 18, 2025).

Similarly, here, the Nation has failed to even approach this high bar. While the Nation currently possesses an interest in water deliveries from BTB derived from the contractual agreement signed by its predecessor in interest, this litigation does not threaten to destroy the Nation's contractual rights. Moreover, the lawsuit will not destroy the Nation's other alleged water rights, which are separate and apart from this private water delivery contract. Even if this Court were to ultimately vacate the 2023 SUP and require USFS to comply with its statutory obligations before issuing a new permit to any party, the Nation still has the rights to the land it owns in fee simple, its options to obtain water from various other sources, the right to pursue its alleged riparian, appropriative, and aboriginal water rights in other forums, the ability to pursue the remedies available to it under the contract, or the possibility that BTB reinstate water delivery after proper review and a lawfully-issued permit. *Id.* ("Moreover, even if the land-into-trust transaction were reversed due to inadequacies in the decisionmaking process, Koi would not be foreclosed from seeking to have the transaction reinstated following proper review.").

## IV.    CONCLUSION

For the reasons set forth above, the Nation is not a required party in this lawsuit because it has no legally protected interest at risk in the federal agency actions Plaintiff challenges. Even if it were a required party, the Public Rights Exception would prevent dismissal of this case. Agencies must remain accountable to the public and adhere to their statutory mandates to protect the environment and balance public resources. Dismissal should be denied.

34

1

2    Dated: February 2, 2026                    Respectfully Submitted,

3
                                        By:    */s/ Rachel S. Doughty*
4                                              GREENFIRE LAW, PC
5                                              Rachel S. Doughty
                                               Attorneys for SAVE OUR FOREST
6                                              ASSOCIATION, INC.

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28
                                         35
     **PLAINTIFF'S OPPOSITION TO YUHAAVIATAM OF SAN MANUEL NATION'S
     MOTION TO DISMISS – 5:24-cv-01336**

# CERTIFICATE OF SERVICE

I hereby certify that on February 2, 2026, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will automatically send email notification to the attorneys of record.


_/s/ Jessica San Luis_

**PLAINTIFF'S OPPOSITION TO YUHAAVIATAM OF SAN MANUEL NATION'S
MOTION TO DISMISS – 5:24-cv-01336**