# Exhibit  24
# Tribe Motion to Intervene

<table>
<tr><td>1</td><td>SOMACH SIMMONS & DUNN<br>A Professional Corporation</td></tr>
</table>

1  SOMACH SIMMONS & DUNN
   A Professional Corporation

2  STUART L. SOMACH, ESQ. (SBN 90959)
   MAXIMILIAN C. BRICKER, ESQ. (SBN 350150)

3  500 Capitol Mall, Suite 1000
   Sacramento, CA 95814

4  ssomach@somachlaw.com
   mbricker@somachlaw.com

5
   MICHAEL W. DAUGHERTY, ESQ. (Co. Bar 49074)

6  *Pro Hac Vice* Forthcoming
   RAMSEY L. KROPF, ESQ. (Co. Bar 21528)

7  *Pro Hac Vice* Forthcoming
   1155 Canyon Blvd., Suite 110

8  Boulder, CO 80302
   Telephone: (916) 446-7979

9  Facsimile: (916) 446-8199
   mdaugherty@somachlaw.com

10 rkropf@somachlaw.com

11 Attorneys for [PROPOSED] Plaintiff-Intervenor
   YUHAAVIATAM OF SAN MANUEL NATION,

12 a federally recognized Indian tribe, also federally
   recognized as SAN MANUEL BAND OF MISSION INDIANS

13

14

15                    **UNITED STATES DISTRICT COURT**

16              **FOR THE CENTRAL DISTRICT OF CALIFORNIA**

17                    **EASTERN DIVISION – RIVERSIDE**

18 BLUETRITON BRANDS, INC.,                Case No.: 2:24-cv-09720-JGB-DTB

19                          Plaintiff,     **NOTICE AND MOTION TO**
                                           **INTERVENE OF YUHAAVIATAM**
20        v.                               **OF SAN MANUEL NATION;**
                                           **MEMORANDUM OF POINTS AND**
21 UNITED STATES FOREST SERVICE,           **AUTHORITIES; MOTION FOR**
                                           **ORDER SHORTENING TIME FOR**
22 RANDY MOORE, in his official            **HEARING**
   capacity as Chief of the U.S. Forest
23 Service,                                **EXPEDITED HEARING**
                                           **REQUESTED**
24 CHRISTOPHER FRENCH, in his
   official capacity as Deputy Chief for the   Hearing Date:   February 3, 2025
25 National Forest System of the           Hearing Time:   9:00 AM
   U.S. Forest Service,                     Courtroom:      1
26                                          Judge: Hon. Jesus G. Bernal
   JENNIFER EBERLEIN, in her official
27 capacity as Regional Forester for the    Action Filed:  August 6, 2024
   Pacific Southwest Region of the
28 U.S. Forest Service,

SOMACH SIMMONS & DUNN
A Professional Corporation

1  DANELLE HARRISON, in her official
   capacity as Forest Supervisor of the San
2  Bernardino National Forest of the
   U.S. Forest Service,
3
   MICHAEL NOBLES, in his official
4  capacity as Front Country District
   Ranger of the U.S. Forest Service,
5
                          Defendants.
6

7  YUHAAVIATAM OF SAN MANUEL
   NATION, a federally recognized Indian
8  tribe, also federally recognized as SAN
   MANUEL BAND OF MISSION
9  INDIANS,
10        [PROPOSED] Plaintiff-Intervenor.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

NOTICE & MOTION TO INTERVENE OF YUHAAVIATAM OF SAN MANUEL NATION;
MEMORANDUM OF P&As; MOTION FOR ORDER SHORTENING TIME FOR HEARING

# **TABLE OF CONTENTS**

Page

NOTICE OF MOTION AND MOTION TO INTERVENE ................................... 1

MOTION FOR ORDER SHORTENING TIME FOR HEARING ...................... 2

PLEADINGS ACCOMPANYING THIS MOTION .............................................. 2

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT
OF MOTION TO INTERVENE .......................................................................... 2

I.      INTRODUCTION ....................................................................................... 2

II.     STATEMENT OF FACTS ......................................................................... 6

    A.    The Nation's Ancestral Ties and Use of Strawberry Canyon
        Water at Arrowhead Springs ......................................................... 6

    B.    USFS Action to Cut-off BlueTriton and the Nation's Water
        Without Consultation with the Nation ........................................ 8

    C.    USFS' Delay of Cut-Off of Water to Nation Only Until
        January 15, 2025, and Failure to Provide Any Resolution
        or Agree to Additional Delay ....................................................... 9

III.    ARGUMENT ............................................................................................ 11

    A.    Intervention as of Right Should Be Granted Pursuant to
        Rule 24(a)(2) ................................................................................ 11

        1.    The Nation's Motion Is Timely .................................... 12

        2.    The Nation Has a Significant Protectable Interest
            Relating to Plaintiff's Claims ...................................... 15

        3.    Disposition of the Action May as a Practical Matter
            Impair or Impede the Nation's Ability to Protect Its
            Interests ........................................................................... 16

        4.    The Nation's Interests Are Not Adequately
            Represented by the Existing Parties ........................... 17

    B.    Alternatively, Permissive Intervention Should Be Granted
        Pursuant to FRCP 24(b)(1)(B) .................................................. 20

IV.     CONCLUSION ......................................................................................... 22

TABLE OF EXHIBITS ....................................................................................... 24

SOMACH SIMMONS & DUNN
A Professional Corporation

1

# TABLE OF AUTHORITIES

2

Page(s)

3

**Cases**

4

*Bates v. Jones,*
   127 F.3d 870 (9th Cir. 1997) ........................................................... 13

5

*BlueTriton Brands, Inc. v. California State Water Res. Control Bd. et al.,*
   Case No. 23CECG04292 (Fresno Cty. Sup. Ct.) ........................................... 13

6

*California v. Tahoe Regional Planning Agency,*
   792 F.2d 775 (9th Cir. 1986) ........................................................... 18

7

8

*Casitas Mun. Water Dist. v. United States,*
   708 F.3d 1340 (Fed. Cir. 2013) ......................................................... 15

9

*Day v. Apoliona,*
   505 F.3d 963 (9th Cir. 2007) ........................................................... 12

10

11

*Donnelly v. Glickman,*
   159 F.3d 405 (9th Cir. 1998) ........................................................... 11

12

*Forest Conservation Council v. United States Forest Serv.,*
   66 F.3d 1489 (9th Cir. 1995) ...................................................... 11, 18

13

14

*Hilao v. Estate of Marcos*
   *(In re Estate of Ferdinand E. Marcos Human Rights Litigation),*
   536 F.3d 980 (9th Cir. 2008) ........................................................... 11

15

16

*Idaho Farm Bureau Fed'n v. Babbitt,*
   58 F.3d 1392 (9th Cir. 1995) ...................................................... 12, 13

17

*League of United Latin American Citizens v. Wilson,*
   131 F.3d 1297 (9th Cir. 1997) .......................................................... 12

18

19

*New England Petroleum Corp. v. Federal Energy Admin.,*
   71 F.R.D. 454 (S.D.N.Y. 1976) ................................................... 18, 20

20

*New York Pub. Interest Research Grp., Inc.*
   *v. Regents of Univ. of State of N.Y.,*
   516 F.2d 350 (2d Cir. 1975) ........................................................... 18

21

22

*NW Forest Res. Council v. Glickman,*
   82 F.3d 825 (9th Cir. 1996) ............................................................ 13

23

24

*Perry v. Schwarzenegger,*
   630 F.3d 898 (9th Cir. 2011) ........................................................... 22

25

*Peruta v. Cty. of San Diego,*
   824 F.3d 919 (9th Cir. 2016) ........................................................... 13

26

27

28

SOMACH SIMMONS & DUNN
A Professional Corporation

*Save Our Forest Ass'n, Inc.*
  *v. U.S. Forest Service et al.,*
  Case No. 5:24-cv-01336 (C.D. Cal.) ............................................................. 13

*Scotts Valley Band of Pomo Indians of Sugar Bowl Rancheria*
  *v. United States,*
  921 F.2d 924 (9th Cir. 1990) .................................................................... 11, 12

*Silver v. Babbitt,*
  166 F.R.D. 418 (D. Az. 1994) ......................................................................... 21

*Smith v. L.A. Unified Sch. Dist.,*
  830 F.3d 843 (9th Cir. 2016) ............................................................... 11, 12, 14

*Spangler v. Pasadena City Bd. of Educ.,*
  552 F.2d 1326 (9th Cir. 1977) ...................................................................... 22

*State Water Res. Control Bd.,*
  182 Cal.App.3d 82 (Cal. Ct. App. 1986) ........................................................ 15

*SW Ctr. for Biological Diversity v. Berg,*
  268 F.3d 810 (9th Cir. 2001) ........................................................................ 12

*Town of North Hempstead v. Village of North Hills,*
  80 F.R.D. 714 (E.D.N.Y. 1978) ..................................................................... 19

*Trbovich v. United Mine Workers,*
  404 U.S. 528 (1972) ..................................................................................... 18

*United States v. Alisal Water Corp.,*
  370 F.3d 915 (9th Cir. 2004) ................................................................... 12, 14

*United States v. City of L.A.,*
  288 F.3d 391 (9th Cir. 2002) .............................................................. 11, 15, 16, 21

*United States v. State of Oregon,*
  745 F.2d 550 (9th Cir. 1984) ................................................................... 12, 14

*United States v. State of Oregon,*
  839 F.2d 635 (9th Cir. 1988) ........................................................................ 18

*United States v. Washington,*
  86 F.3d 1499 (9th Cir. 1996) ........................................................................ 14

*United States v. Washington,*
  86 F.3d 1499 (9th Cir. 1996) ........................................................................ 11

*W. Watersheds Project v. Haaland,*
  22 F.4th 828, (9th Cir. 2022) ....................................................................... 14

*Wilderness Soc'y v. United States Forest Serv.,*
  630 F.3d 1173 (9th Cir. 2011) ...................................................................... 11

SOMACH SIMMONS & DUNN
A Professional Corporation

1

## Statutes

2   5 U.S.C. § 702.............................................................................................................21

3   5 U.S.C. § 706...............................................................................................................4

4   22 U.S.C. § 1331.........................................................................................................21

5   28 U.S.C. § 1362.........................................................................................................21

6   54 U.S.C. § 306108.....................................................................................................20

7

8

## Other Authorities

9   FRCP, Rule
    24(a)(2) .................................................................. 1, 5, 11, 16, 20
10   24(b)......................................................................................................... 1
    24(b)(1)(B)......................................................................................1,5, 21
11   24(b)(3) ...............................................................................................21
    24(c) .......................................................................................................2

12   Local Rule
13   7-3 .........................................................................................................2
    6-1 ......................................................................................................2, 23

14
15   7C Wright, Miller & Kane, *Federal Practice and Procedure*,
    § 1908 (2d. ed. 1986)..................................................................17
    § 1911 (2d. ed. 1986)..................................................................21
16   § 1913 (2d. ed. 1986)..................................................................21

17

18

19

20

21

22

23

24

25

26

27

28

SOMACH SIMMONS & DUNN
A Professional Corporation

# NOTICE OF MOTION AND MOTION TO INTERVENE

TO ALL PARTIES AND THEIR ATTORNEYS:

PLEASE TAKE NOTICE that on Monday, February 3, 2025, at 9:00 a.m., or as soon thereafter as the matter may be heard, in Courtroom 1, at the above-entitled Court, located at 3470 Twelfth Street, Riverside, California, the Yuhaaviatam of San Manuel Nation, a federally recognized Indian tribe, also federally recognized as the San Manuel Band of Mission Indians (the "Nation"), will move this Court for an order granting leave to intervene in this matter as a Plaintiff-Intervenor, pursuant to Federal Rules of Civil Procedure (FRCP), Rule 24(a)(2) or, alternatively, Rule 24(b) on the following grounds:

1.    The Nation is entitled to intervene as a matter of right pursuant to FRCP 24(a)(2) because this motion is timely; the Nation has significant protectable interests relating to the properties and/or transactions which are the subject of this action; the Nation is so situated that the disposition of this action may, as a practical matter, impair or impede its ability to protect those interests; and the Nation's interests are not adequately represented by the existing parties.

2.    Alternatively, the Nation should be permitted to intervene pursuant to FRCP 24(b)(1)(B) because this motion is timely; the Nation's proposed Complaint raises questions of law and fact which are common with those in the main action; and the Nation's intervention will not unduly delay or prejudice the rights of the original parties.

This motion is based upon this Notice of Motion; the Memorandum of Points and Authorities in Support of Motion to Intervene; the Declarations of Rodney Garton, Paul Hamai, Daniel Little, and Alexandra McCleary filed in support of this Motion to Intervene and/or the corresponding Motion for Preliminary Injunction; the proposed Complaint-in-Intervention and Motion for Preliminary Injunction attached hereto as Attachments 1 and 2; all the pleadings and records on file herein;

SOMACH SIMMONS & DUNN
A Professional Corporation

and on such other and further documentary or oral evidence as may be presented at the hearing of this motion.

Pursuant to L.R. 7-3, the Nation's counsel has conferred with counsel for Plaintiff and Defendants.  Plaintiff does not oppose the motion and Defendants reserve taking a position on the motion pending review of the papers.

## MOTION FOR ORDER SHORTENING TIME FOR HEARING

While a hearing on this motion has been noticed for February 3, 2025, due to the exigent circumstances described herein, the Nation requests that the Court enter an order, pursuant to L.R. 6-1, shortening time such that a hearing on this motion will be held on January 13, 2025, at 9:00 a.m., on the same date a hearing on Plaintiff BlueTriton Brands, Inc.'s ("Plaintiff" or "BlueTriton") Motion for Preliminary Injunction will be held.  *See* ECF No. 60.  The Nation proposes setting an expedited briefing schedule such that the deadline to file response briefs is January 8, 2025, and the deadline to file reply briefs is January 10, 2025.  Plaintiff consents to this expedited briefing and hearing schedule; Defendants oppose it.

## PLEADINGS ACCOMPANYING THIS MOTION

FRCP 24(c) requires that a motion to intervene must "be accompanied by a pleading that sets out the claim or defense for which intervention is sought."  The Nation seeks to intervene and bring claims against Defendants for violations of federal law associated with the same agency action that Plaintiff alleges is unlawful, and to obtain injunctive and declaratory relief against Defendants.  Attachments 1 and 2 to this memorandum are the proposed Complaint-in-Intervention and Motion for Preliminary Injunction.

## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO INTERVENE

### I.    INTRODUCTION

The Nation seeks to intervene in this action to protect its water supply and property interests at Arrowhead Springs.

Since time immemorial, the Serrano people have occupied and stewarded the land encompassed by the San Bernardino National Forest (SBNF).  Once the United States acquired such lands, the Nation was relegated to and granted a 655-acre parcel of land for its Reservation in 1891, just above the City of Highland.  Declaration of Alexandra McCleary in Support of Yuhaaviatam of San Manuel Nation's Motion to Intervene (McCleary Decl.) at ¶ 6.  As part of a coordinated effort to reacquire certain portions of its ancestral land, the Nation acquired title to the approximately 2,000-acre Arrowhead Springs property (Arrowhead Springs) in 2016 (*id.* at ¶ 7) and is now in the process of completing an Ancestral Land Exchange with the United States Forest Service (USFS) to reestablish continuity between the Nation's Reservation and Arrowhead Springs.[1]  Arrowhead Springs requires water for a variety of year-round uses, including for domestic, irrigation, and fire protection purposes.  Arrowhead Springs contains wildfire protection facilities available to the Nation and surrounding local governments, cultural sites, recreational facilities, a historic hotel, and associated improvements.  Accordingly, a safe and reliable water supply is crucial to meet these demands, which benefit not only the Nation but also numerous other fire-fighting agencies[2] and the community at large.  This water is currently supplied by Plaintiff.  However, the USFS, through its officials named as Defendants in this proceeding (collectively with the USFS, the "Defendants"), has taken actions to terminate this water supply without notice

---

[1] For more information on the San Manuel Ancestral Land Exchange, *see* USDA Forest Service San Manuel Ancestral Land Exchange, https://www.fs.usda.gov/project/?project=63386&exp=overview (last visited Jan. 2, 2025).

[2] Local elected officials have expressed grave concern over Arrowhead Springs no longer having access to water sourced from Strawberry Canyon, as those supplies are vital to fire-fighting efforts in the region. *See* Ex. 11 (*Ex. 1 to Motion to PI, 8/1/24 Letter*); Joe Nelson, *Potential water restrictions at Arrowhead Springs Hotel raise concerns over wildfire danger*, The Sun, https://www.sbsun.com/2024/08/23/potential-water-restrictions-at-arrowhead-springs-hotel-raise-concerns-over-wildfire-danger/ (last visited Jan. 2, 2025).

SOMACH SIMMONS & DUNN
A Professional Corporation

to or consultation with the Nation. Defendants' actions will significantly impact the Nation, even if Defendants' actions are primarily intended to target BlueTriton's special use authorization.

Since 1930, BlueTriton and its predecessors in interest have accessed and operated its water diversion and conveyance structures (collectively, "facilities") on SBNF lands through a series of special use permits (SUP) issued by the USFS. A portion of such water was provided to the Nation for use at Arrowhead Springs and a portion was used by BlueTriton for commercial bottling purposes. BlueTriton is currently challenging an action of Defendants—the issuance of a "Notice of Denial of Application for Use and Occupancy of National Forest Lands; Termination of Special Use Permit FCD728503" (Notice of Denial) on July 26, 2024. The Notice of Denial rejects BlueTriton's request for a renewal of SUP No. FCD728503 and terminates the SUP, immediately prohibiting Plaintiff from accessing and operating its facilities on SBNF lands. Defendants' Notice of Denial also requires BlueTriton to remove the facilities in short order. Plaintiff's Complaint for Declaratory and Injunctive Relief (Plaintiff's Complaint) alleges that Defendants' issuance of the Notice of Denial violated the Administrative Procedure Act (APA), 5 U.S.C. § 706, by exceeding their statutory authority and acting arbitrarily and capriciously. *See* ECF No. 1 at 8-10. Plaintiff's Complaint, in conjunction with its Motion for Preliminary Injunction (Plaintiff's Motion), asks the Court, *inter alia*, to: declare that Defendants violated the APA; vacate and set aside the Notice of Denial; and enjoin Defendants, preliminarily and permanently, from denying or otherwise unreasonably restricting Plaintiff from accessing its facilities on SBNF lands. *See* ECF No. 1 at 10; *see generally* ECF No. 2.

The Nation has protectable rights that are separate and distinct from those of Plaintiff that will be injured by the agency action in question if the Court does not grant injunctive relief. The Nation and its predecessors have diverted and used water from sources in the vicinity of Arrowhead Springs, including Strawberry

SOMACH SIMMONS & DUNN
A Professional Corporation

NOTICE & MOTION TO INTERVENE OF YUHAAVIATAM OF SAN MANUEL NATION;
MEMORANDUM OF P&As; MOTION FOR ORDER SHORTENING TIME FOR HEARING          -4-

Canyon and Creek, for well over a century and, accordingly, possess rights to use such water under California law.  *See* ECF No. 2-5 at 7 (stating that, as of 1931, the Nation's predecessors have been diverting and using water from East Twin Creek and its tributaries for various purposes, including domestic and irrigation uses, for "more than 50 years").  Since 1931, by virtue of a judgment entered by the San Bernardino County Superior Court and a contract executed by Plaintiff's and the Nation's respective predecessors, the Nation has been entitled to receive 20 percent of the water diverted by Plaintiff on SBNF lands, which is conveyed to Arrowhead Springs through Plaintiff's facilities ("Subject Water").  Accordingly, by terminating Plaintiff's special use authorization, Defendants' actions will injure the rights of the Nation, beyond any potential injury to Plaintiff.  The California State Water Resources Control Board (SWRCB) has stated that the Nation "has riparian rights that authorize diversions through these facilities for beneficial uses on the [Arrowhead Springs] property."  ECF No. 15-6 at 91.

Further, the injunctive relief that the Nation seeks is distinct and narrower than the injunctive relief sought by Plaintiff—rather than enjoin the Notice of Denial in its entirety, the Nation requests that the Court preserve the status quo as of July 25, 2024, as it pertains to the delivery of the Subject Water to the Nation for use at Arrowhead Springs until an out-of-court solution can be reached or the Court has entered a final decision in this case.  *See* Attach. 2.

Thus, the Nation is entitled to intervene as a matter of right pursuant to FRCP 24(a)(2) because: this motion is timely; the Nation has protectable interests relating to the properties and/or transactions which are the subject of this action; the Nation is so situated that the disposition of this action may, as a practical matter, impair or impede its ability to protect those interests; and the Nation's interests are not adequately represented by the existing parties.

Alternatively, the Nation should be permitted to intervene pursuant to FRCP 24(b)(1)(B) because: this motion is timely; the Nation's proposed Complaint

SOMACH SIMMONS & DUNN
A Professional Corporation

raises questions of law and fact which are common with those in the main action; and the Nation's intervention will not unduly delay or prejudice the original parties' rights.

## II.    STATEMENT OF FACTS

### A.    The Nation's Ancestral Ties and Use of Strawberry Canyon Water at Arrowhead Springs

The Nation's occupation and stewardship of its ancestral lands, including much of the SBNF, dates back to pre-colonization.  Arrowhead Springs, in particular, has tremendous historic, spiritual, and cultural value for the Nation—its people and their ancestors used, lived among, and shared an intimate connection with the land.  The ancient village known as Apuiv'at was located at Arrowhead Springs, and the Arrowhead landmark, natural hot mineral springs, and surrounding areas constitute sacred sites, as defined in Executive Order 13007,[3] to the Nation and its citizens.

In addition to the ancient village's use of the water sources before colonization, the Nation and its predecessors have been diverting water from sources in the vicinity of Arrowhead Springs and applying it to beneficial uses since at least 1864.  *See* ECF No. 15-6 at 12.  Beginning in 1885, the property's owners used it for hotel/resort purposes.  *Id.*  They began bottling and selling "spring-fed water that was captured near the hotel" by at least 1906.  *Id.* at 13.

Several notable events occurred between 1929 and 1931.  First, the Nation's and Plaintiff's respective predecessors in interest executed multiple contracts, the last of which (dated September 26, 1931, hereinafter the "1931 Contract") set forth that, as relevant here, Plaintiff's predecessor has the right to develop water in "Strawberry Canyon" but is obliged to deliver 20 percent of the water to the Nation's predecessor.  *Id.* at 15-16; Ex. 6 (1931 Contract).  Meanwhile, Plaintiff's

---

[3] *See* Exec Order No. 13007, 61 Fed. Reg. 26,771 (May 29, 1996).

SOMACH SIMMONS & DUNN
A Professional Corporation

1    predecessor applied for and secured a SUP from Defendants to construct, access,

2    and operate the facilities in Strawberry Canyon, which are primarily located on

3    SBNF lands.  ECF No. 15-6 at 25 (describing issuance of SUPs since 1930).

4    Finally, both sets of predecessors were sued by other water users, located

5    downstream of Arrowhead Springs, alleging that upstream diversions and uses

6    injured their water rights.  On October 19, 1931, the San Bernardino County

7    Superior Court entered a stipulated judgment that confirmed both predecessors'

8    rights to divert and use water in Strawberry Canyon and other sources in the

9    vicinity of Arrowhead Springs.  ECF No. 15-6 at 16-17; ECF No. 2-5 at 7, 10-15

10    (describing the Nation's predecessor's uses of water on the property since circa

11    1880 and decreeing the same's right to divert and use water from East Twin Creek

12    and its tributaries).

13        The Nation reacquired Arrowhead Springs in 2016 as part of its efforts to

14    reclaim and steward its ancestral lands, a policy goal the United States

15    wholeheartedly supports across the country.  McCleary Decl. at ¶ 7.  The Nation

16    continues to use water sourced from Strawberry Canyon on the property for a

17    variety of beneficial uses, including fire protection, domestic, and irrigation

18    purposes.  Garton Decl. at ¶ 6; ECF No. 27-1; *see also* n.2, *ante*.

19        Plaintiff acquired its interests in the facilities and commercial bottling

20    operations from Nestlé Waters American Holdings, Inc. (Nestlé), in March 2021.

21    *See* ECF No. 15-6 at 20-21.  Notwithstanding this transfer of ownership, the

22    1931 Contract remained in effect, and Plaintiff and its predecessors operated under

23    its terms, until December 11, 2023, when the Nation and Plaintiff entered a "Letter

24    Agreement Amending 80/20 Agreement During Interim Period" (Letter

25    Agreement) that amended and clarified Plaintiff's delivery obligation given

26    ongoing legal controversies, including events leading up to the instant matter.

27    Ex. 7.

28

SOMACH SIMMONS & DUNN
A Professional Corporation

Importantly, the Nation possesses rights *independent from* Plaintiff to use the Subject Water. These independent water rights are recognized by the SWRCB, a state agency with authority to regulate surface water rights in California. ECF No. 15-6 at 91 ("[the Nation] has riparian rights that authorize diversions through these facilities for beneficial uses on [Arrowhead Springs]").

**B.    USFS Action to Cut-off BlueTriton and the Nation's Water Without Consultation with the Nation**

On August 24, 2018, the USFS issued SUP No. FCD728501 to Nestlé after issuing a "Decision Memo" on June 27, 2018. ECF No. 2-10 (the SUP); ECF No. 2-12 (the Decision Memo). On February 21, 2023, the USFS issued SUP No. FCD728503 to Plaintiff, which contained an expiration date of August 24, 2023. ECF No. 15-4. Also on February 21, 2023, Plaintiff submitted a "Proposal and Application for Renewal of Special Use Permit for Long Term Permit" based on SUP No. FCD728503. ECF No. 15-5. On July 27, 2024, Defendants issued the Notice of Denial, terminating SUP No. FCD728503 and denying Plaintiff's request to renew the same, and also requiring Plaintiff to prepare and submit, within 12 weeks, a plan to remove the facilities from SBNF lands (a/k/a "decommissioning plan"). ECF No. 2-23. Defendants never provide the Nation a copy of the Notice of Denial. Declaration of Daniel Little in Support of Yuhaaviatam of San Manuel Nation's Motion to Intervene (Little Decl.) at ¶ 7. Nor did Defendants ever notify the Nation that the agency was taking such an action or consult with the Nation regarding the impact of such action on the Nation and Arrowhead Springs. *Id.* at ¶¶ 12, 16. Indeed, the Nation only came to learn of the Notice of Denial after its issuance through BlueTriton, which, without obligation, provided it to the Nation as a courtesy. *Id.* at ¶ 7.

Furthermore, at no point—before or after the issuance of the Notice of Denial—have Defendants meaningfully consulted with the Nation regarding, nor have they analyzed, the potential impacts of the agency action upon the Nation or

SOMACH SIMMONS & DUNN
A Professional Corporation

upon Arrowhead Springs, which is eligible for listing under the National Historic Preservation Act (NHPA) and is culturally significant to the Nation and its people. Little Decl. at ¶ 18; McCleary Decl. at ¶ 10.  Such failure to consult is particularly notable since the USFS was aware of the Nation's reliance upon and use the Subject Water from BlueTriton at Arrowhead Springs, as well as the fact that no alternative water resource existed.  Indeed, prior to the Notice of Denial, the Nation's representatives met with USFS officials and so informed them, going so far as to correct factual misstatements the USFS had made to BlueTriton about the Nation's supposed lack of water needs at Arrowhead Springs.  Little Decl. at ¶¶ 9-13.  Plaintiff filed its Complaint in the instant matter on August 6, 2024, requesting that the Court vacate and set aside the Notice of Denial and enjoin Defendants from denying Plaintiff access to the facilities.  ECF No. 1.  Plaintiff also concurrently filed its Motion, asking the Court to preliminarily enjoin the Notice of Denial.  ECF No. 2.  Once the Nation learned of the Notice of Denial, the Nation was prepared to intervene in this action, or initiate its own action, to enjoin Defendants from shutting off its water supply for Arrowhead Springs; the Nation refrained from doing so, however, on information and belief that an out-of-court solution with Defendants could be reached.  *See* Little Decl. at ¶ 23.

## C.    USFS' Delay of Cut-Off of Water to Nation Only Until January 15, 2025, and Failure to Provide Any Resolution or Agree to Additional Delay

The Nation's beliefs that USFS should not cut-off water to the Nation were validated, at least initially—Defendants twice modified the Notice of Denial to allow Plaintiff to continue delivering water to the Nation for use at Arrowhead Springs on an interim basis, which would "allow further time for [Defendants] and [the Nation] to work with partners to address access to water for the Arrowhead Springs Property."  ECF No. 15-21 (August 2, 2024 letter modifying the Notice of Denial by providing temporary authorization to Plaintiff to continue delivering

SOMACH SIMMONS & DUNN
A Professional Corporation

water to the Nation until September 2, 2024); ECF No. 27-1 (August 26, 2024 letter extending the temporary authorization until January 15, 2025).

Since the temporary authorization was granted and extended, the Nation and Defendants have held several meetings; however, such communications have not led to a successful resolution of the Nation's concerns. Little Decl. at ¶¶ 17-18. Defendants have offered no solution that would allow for the continued delivery of the Subject Water that can be implemented by the January 15, 2025 expiration of the temporary authorization, and to the Nation's knowledge, Defendants do not intend to re-extend such authorization or otherwise allow the Nation to continue receiving water at Arrowhead Springs. *Id.* at ¶ 23. Defendants have even seemingly contested the notion that the Nation has valid water rights that authorize it to use water from Strawberry Canyon, notwithstanding the Nation's provision of information, County and City of San Bernardino confirmation of the importance of the water for fire-fighting, and SWRCB's statements confirming as much, and have yet to offer a workable solution that can be implemented by January 15, 2025, or indicate a willingness to extend such date. *Id.* at ¶¶ 12-13, 16-17, 21.

On October 22, 2024, Plaintiff filed a notice that it had submitted a decommissioning plan to Defendants, which states that "absent an injunction, nothing prevents the USFS from directing implementation of the decommissioning plan." ECF No. 34. On October 23, 2024, the United States District Court for the District of Columbia issued an order transferring the instant matter to the United States District Court for the Central District of California. ECF No. 35. On December 4, 2024, the instant matter was transferred from the docket of the Honorable John F. Walter, District Judge, to the docket of the Honorable Jesus G. Bernal, District Judge. ECF No. 56. On December 13, 2024, Plaintiff and Defendant filed a Stipulation regarding Plaintiff's Motion for Preliminary Injunction, wherein the parties requested that the Court consider the Plaintiff's Motion and hold a hearing thereon no later than January 13, 2025. ECF No. 59.

SOMACH SIMMONS & DUNN
A Professional Corporation

The Court granted the Stipulation and set a hearing on Plaintiff's Motion for 9:00 a.m. on January 13, 2025.  ECF No. 60.  The Nation has filed a Motion for Preliminary Injunction contemporaneously with this Motion to Intervene, and to the extent the Court shortens time for hearing and permits intervention, the Nation also requests that the hearing on its Motion for Preliminary Injunction be held on the same day as BlueTriton's Motion.

### III.    ARGUMENT

**A.    Intervention as of Right Should Be Granted Pursuant to Rule 24(a)(2)**

The Ninth Circuit Court of Appeals has adopted a four-part test for determining whether an applicant can intervene as of right pursuant to FRCP 24(a)(2):

(1)    the application for intervention must be timely;

(2)    the applicant must have a significant protectable interest relating to the property or transaction that is the subject of the action;

(3)    the applicant must be so situated that disposition of the action may, as a practical matter, impair or impede the applicant's ability to protect that interest; and,

(4)    the applicant's interest must not be adequately represented by the existing parties to the action.  *Smith v. L.A. Unified Sch. Dist.*, 830 F.3d 843, 853 (9th Cir. 2016) (*Smith*); *Hilao v. Estate of Marcos (In re Estate of Ferdinand E. Marcos Human Rights Litigation)*, 536 F.3d 980, 984 (9th Cir. 2008); *United States v. City of L.A.,* 288 F.3d 391, 397 (9th Cir. 2002) (*City of L.A.*), *citing Donnelly v. Glickman,* 159 F.3d 405, 409 (9th Cir. 1998).

The Ninth Circuit interprets and applies the rule broadly in favor of intervention.  *United States v. Washington*, 86 F.3d 1499, 1503 (9th Cir. 1996); *City of L.A.,* 288 F.3d at 398-99 (citing *Forest Conservation Council v. United States Forest Serv.*, 66 F.3d 1489, 1496 (9th Cir. 1995) (*Forest Conservation Council*), *overruled on other grounds by Wilderness Soc'y v. United States Forest Serv.*,

SOMACH SIMMONS & DUNN
A Professional Corporation

630 F.3d 1173 (9th Cir. 2011)); *Scotts Valley Band of Pomo Indians of Sugar Bowl Rancheria v. United States*, 921 F.2d 924, 926 (9th Cir. 1990) ("Rule 24(a) is construed broadly, in favor of the applicants for intervention.").[4]

### 1. The Nation's Motion Is Timely

In assessing the element of timeliness, the Court considers three factors: (1) the stage of the proceedings at which an applicant seeks to intervene; (2) whether the existing parties would be prejudiced; and (3) the reason for any delay in moving to intervene.  *Smith*, 830 F.3d at 854; *United States v. Alisal Water Corp.*, 370 F.3d 915, 921 (9th Cir. 2004) (*Alisal*); *League of United Latin American Citizens v. Wilson*, 131 F.3d 1297, 1302 (9th Cir. 1997).  Courts look at the totality of the circumstances in determining timeliness.  *Smith* at 854.

In analyzing the "stage of the proceedings" factor, the lapse of time since the proceedings commenced is not determinative.  *Smith*, 830 F.3d at 854, 856 ("[T]he amount of time which has elapsed since the litigation began is not in itself the determinative test of timeliness.  Rather, the court should also look to the related circumstances, including the purpose for which intervention is sought . . . .") (quoting *United States v. State of Oregon*, 745 F.2d 550, 552 (9th Cir. 1984) (*State of Oregon*)).  In *Smith*, the motion was found timely despite *twenty years* passing since the litigation commenced.  *Id.* at 854-57.  Courts have similarly viewed motions as timely even if the case is at the appellate stage.  *Day v. Apoliona*, 505 F.3d 963, 964-66 (9th Cir. 2007) (*Day*) (finding motion timely, despite the case being two years old and on appeal, because, *inter alia*, it would not "broaden the scope of the case going forward").  Finally, a motion is timely if it is filed "before

---

[4] In addition, "[c]ourts are to take all well-pleaded, nonconclusory allegations in the motion to intervene, the proposed complaint or answer in intervention, and declarations supporting the motion as true absent sham, frivolity or other objections."  *SW Ctr. for Biological Diversity v. Berg*, 268 F.3d 810, 820 (9th Cir. 2001).

SOMACH SIMMONS & DUNN
A Professional Corporation

any hearings or rulings on substantive matters." *Idaho Farm Bureau Fed'n v. Babbitt*, 58 F.3d 1392, 1397 (9th Cir. 1995) (*Babbitt*) (finding motion timely because it was filed "prior to the hearing on the preliminary injunction motion" and other parties did not "contend that the intervention was prejudicial").

Here, the Nation files this motion less than five months since the proceedings commenced, before the Court has heard argument or ruled on Plaintiff's Motion for Preliminary Injunction, and does so to preserve the status quo for water delivery to Arrowhead Springs. The Nation seeks to continue receiving water from Plaintiff's facilities, as it has for nearly a century, while this case and other cases[5] remain pending, since out-of-court attempts to have Defendants re-extend the temporary authorization, or otherwise allow continued deliveries, have been unsuccessful. Little Decl. at ¶¶ 16-17, 21. For the Nation to intervene at this "stage of the proceedings" is appropriate.

Regarding prejudice to the parties, the existing parties are not prejudiced "since the motion was filed before the district court [has] made any substantive rulings." *NW Forest Res. Council v. Glickman*, 82 F.3d 825, 837 (9th Cir. 1996) (*NW Forest*); *see also Babbitt*, 58 F.3d at 1397. Courts are also likely to conclude a motion is timely when the parties do not allege prejudice. *Peruta v. Cty. of San Diego*, 824 F.3d 919, 940 (9th Cir. 2016) ("We recognize that California sought to intervene at a relatively late stage in the proceeding. But the timing of California's motion to intervene did not prejudice Plaintiffs; indeed, Plaintiffs did not, and do not, oppose the State's intervention."); *Bates v. Jones*, 127 F.3d 870, 874 (9th Cir. 1997). Also, the USFS can hardly claim prejudice for a delay it orchestrated. The USFS granted a delay of the Notice of Denial to allow the Nation to receive water

---

[5] Including *Save Our Forest Ass'n, Inc. v. U.S. Forest Service et al.*, Case No. 5:24-cv-01336 (C.D. Cal.), which is before this Court, and *BlueTriton Brands, Inc. v. California State Water Res. Control Bd. et al.*, Case No. 23CECG04292 (Fresno Cty. Sup. Ct.).

SOMACH SIMMONS & DUNN
A Professional Corporation

until January 15, 2025, under the guise of working on a solution but then failed to provide any resolution that could be implemented by such date and has refused to extend such date. *See* Little Decl. at ¶¶ 17, 18, 23.

Here, the Nation's intervention will not prevent or otherwise hinder an existing party from taking any action or pursuing their claims or defenses. Nor will the Nation's intervention delay the proceedings or materially "broaden the scope of the case going forward." *Day*, 505 F.3d at 966. As mentioned, the Nation's limited purpose in intervening is to preserve the status quo to protect its own property rights and interests, not to engage in discovery or "inject new issues into the litigation." *Alisal*, 370 F.3d at 922. There will be no prejudice to the other parties.

Regarding the last factor, courts consider "the length of, and explanation for, any delay in seeking intervention." *W. Watersheds Project v. Haaland*, 22 F.4th 828, 839 (9th Cir. 2022) (citations omitted). "Delay is measured from the date the proposed intervenor should have been aware that its interests would no longer be protected adequately by the parties, not the date it learned of the litigation." *United States v. Washington*, 86 F.3d 1499, 1503 (9th Cir. 1996). Courts have excused a delay in seeking intervention, for example, when there are changed circumstances over the course of litigation. *State of Oregon*, 745 F.2d at 552. Moreover, where "both the first and second timeliness factors weigh in favor of intervention," courts "have found motions to be timely even in the face of *longer* delays than [71 and 79 days]." *Smith*, 830 F.3d at 861.

Here, the Nation seeks to intervene less than five months since the proceedings commenced, and there was just reason for waiting—the Nation reasonably believed Defendants would consult with it in good faith, as the law requires, in an effort to find a solution allowing continued deliveries of water to Arrowhead Springs, whether by extending the temporary authorization or by other means. Despite the Nation's best efforts, this outcome has not materialized. *See* Little Decl. at ¶¶ 17-18, 23. The Nation considered intervening in this matter, or

SOMACH SIMMONS & DUNN
A Professional Corporation

filing its own action, in August 2024, but once Defendants granted and extended the temporary authorization until January 15, 2025, the Nation decided to seek a non-litigation solution and began preliminary discussions with Defendants. *See id.* at ¶¶ 12, 16-17, 23. Now, faced with no other viable means to ensure the status quo is preserved beyond January 15, 2025, the Nation seeks to intervene as a last resort. Thus, in light of these changed circumstances, the Nation's timing in seeking intervention is justified.

When considering the totality of the circumstances, the Court should find that this motion to intervene is timely.

### 2.    The Nation Has a Significant Protectable Interest Relating to Plaintiff's Claims

"An applicant has a 'significant protectable interest' in an action if (1) it asserts an interest that is protected under some law, and (2) there is a 'relationship' between its legally protected interest and the plaintiff's claims." *City of L.A.*, 288 F.3d at 398 (citations omitted). There is no bright-line rule for the "interest" test, because an applicant need not establish a specific legal or equitable interest. *Id.* The "relationship" test is met if an applicant will be affected by a court's resolution of the plaintiff's claims. *Id.*

The Nation has an interest in beneficially using water at Arrowhead Springs, whether it be for domestic, irrigation, or fire protection purposes. Again, the SWRCB has stated the Nation "has riparian rights that authorize diversions through these facilities for beneficial uses on the [Arrowhead Springs] property." ECF No. 15-6 at 90. Water rights are protectable interests under California law. *See, e.g.*, *Casitas Mun. Water Dist. v. United States*, 708 F.3d 1340, 1354 (Fed. Cir. 2013) (explaining that "the right to use . . . water is considered private property" in California and affirming the holding that the "right to beneficial use" is a "compensable right under California water law") (citing *State Water Res. Control Bd.*, 182 Cal.App.3d 82, 100 (Cal. Ct. App. 1986)). In addition to the riparian water

SOMACH SIMMONS & DUNN
A Professional Corporation

rights, the Nation has broad state and federal water rights, including pre-1914 appropriative and groundwater rights.

Further, the Nation's interest in exercising its right to beneficially use water at Arrowhead Springs will be affected by the Court's resolution of Plaintiff's claim.  If the Court denies Plaintiff's requests for injunctive relief, the Nation appropriately assumes Defendants will move forward with requiring removal of the facilities located on SBNF lands.  *See* ECF No. 34.  Completely removing the current historic water supply will severely harm the Nation's interest (and settled expectations), as the Nation will lack sufficient water to operate Arrowhead Springs, which also will interfere with local and regional fire-fighting efforts, leaving property and lives in peril at the Nation's Arrowhead Springs and within the surrounding community. Defendants' refusal to allow continued water deliveries to Arrowhead Springs from Strawberry Canyon will result in the Nation being deprived of those water supplies for an indefinite period of time and will require the Nation to expend substantial time, money, and resources to find alternative water supplies to meet demands, all while being at risk to wildfires.  Garton Decl. at ¶¶ 9-12.

Plaintiff seeks a declaration that Defendants violated the APA by issuing the Notice of Determination, as well as injunctive relief, which, if granted, would allow for continued diversions from Strawberry Canyon and continued deliveries to Arrowhead Springs.  The Nation's interests are clearly implicated in this action.

### 3.    Disposition of the Action May as a Practical Matter Impair or Impede the Nation's Ability to Protect Its Interests

FRCP 24(a)(2) only requires that disposition of the lawsuit *may*, not *will*, adversely affect an applicant's interest if intervention is not granted.  *City of L.A.*, 288 F.3d at 400-01.  Analysis of this third element of the four-part test follows from the analysis of the second element, and the Nation's burden on this element is minimal—a proposed intervenor need only show that impairment of its legal interest is *possible* if intervention is denied.  *Id.* at 401.  Moreover, "[i]t is generally

SOMACH SIMMONS & DUNN
A Professional Corporation

SOMACH SIMMONS & DUNN
A Professional Corporation

1   agreed that in determining whether disposition of the action will impede or impair

2   the applicant's ability to protect his interest the question must be put in practical

3   terms rather than in legal terms."  7C Wright, Miller & Kane, *Federal Practice and*

4   *Procedure*, § 1908 at 301 (2d. ed. 1986).

5          Here, if intervention is denied, it is highly likely that the Nation's ability to

6   safeguard its right to beneficially use water at Arrowhead Springs will be impaired.

7   As Plaintiff has pointed out, "absent an injunction, nothing prevents the USFS from

8   directing implementation of the decommissioning plan."  ECF No. 34.

9   Implementing the decommissioning plan would mean removing Plaintiff's facilities

10  from SBNF lands.  *See* ECF No. 2 at 2, 16, 19, 25, 29; ECF No. 2-23 at 3.  Thus, an

11  unfavorable disposition of the instant action could certainly impair the Nation's

12  ability to protect its interests, as its primary water supply (upon which the Nation

13  has relied for well over a century) would be *shut off entirely*.  Further, since the

14  issuance of the Notice of Denial, the Nation has worked tirelessly with Defendants

15  to find an out-of-court solution to protect its interest, but to no avail.  Little Decl.

16  at ¶¶ 16-23.  While the Nation is committed to continuing to pursue non-litigation

17  solutions, Defendants' lack of recognition of their trust relationship to the Nation,

18  and failure to consult with the Nation, consider the impact to the Nation, and

19  protect the Nation's resources both before and after issuing the Notice of Denial in

20  violation of numerous federal laws and policies and their refusal to further extend

21  the January 15, 2025 deadline leaves the Nation no legal means other than to seek

22  relief from this Court to protect its interests.

23         In sum, disposition of this action may very well, as a practical matter, impair

24  or impede the Nation's ability to protect its interests.

25     **4.    The Nation's Interests Are Not Adequately Represented by the
             Existing Parties**

26

27         The fourth and final element necessary for intervention as of right is

28  inadequate representation by the existing parties.  Again, applicants seeking

intervention have a minimal burden in showing inadequate representation: "it is sufficient to show that representation *may* be inadequate." *Forest Conservation Council,* 66 F.3d at 1498, *citing Trbovich v. United Mine Workers*, 404 U.S. 528, 538 n.10 (1972) (original emphasis); *California v. Tahoe Regional Planning Agency*, 792 F.2d 775, 779 (9th Cir. 1986).

In determining the adequacy of representation, the Ninth Circuit considers "whether the interest of a present party is such that it will undoubtedly make all the intervenor's arguments; whether the present party is capable and willing to make such arguments; and whether the intervenor would offer any necessary elements to the proceedings that other parties would neglect." *Forest Conservation Council*, 66 F.3d at 1498-99 (citing *California v. Tahoe Regional Planning Agency,* 792 F.2d at 778).

Intervention of right is allowed where, as here, the interest of the applicant actually, or even potentially, differs from those of the existing parties.  In *United States v. State of Oregon*, 839 F.2d 635 (9th Cir. 1988), residents of a mental health center were allowed to intervene in an action brought by the federal government against a state agency for failure to provide adequate training and care.  The court found that the residents' interests in receiving the care might cause them to raise different arguments than the government's interests in prosecuting alleged violations.  *See also New York Pub. Interest Research Grp., Inc. v. Regents of Univ. of State of N.Y.*, 516 F.2d 350, 352 (2d Cir. 1975) (in action brought by consumers to set rules aside, regents who issued rules did not adequately represent interests of pharmacists who supported statewide regulations, since there was a substantial likelihood that the pharmacists would make more vigorous presentation of the economic side of argument than would the regents); *New England Petroleum Corp. v. Federal Energy Admin.*, 71 F.R.D. 454 (S.D.N.Y. 1976) (*New England Petroleum Corp.*) (oil company entitled to intervene as of right in action brought by fuel oil supplier against the Federal Energy Administration over denial of

SOMACH SIMMONS & DUNN
A Professional Corporation

regulatory relief, since oil company was in position to address issues from industry, as opposed to government, point of view, and it could not be assumed that those viewpoints were identical); *Town of North Hempstead v. Village of North Hills*, 80 F.R.D. 714 (E.D.N.Y. 1978) (owner of property affected by allegedly improper zoning by defendant village could intervene as of right in action brought by other town and residents under federal environmental laws since, although named defendants had great incentive to preserve their power to perform their functions and to protect past decisions made in accordance with their view of official responsibilities, it could not be said that defendants shared the very real and immediate economic interests of the proposed intervenor in the pending litigation).

Here, the Nation's interests are significantly different in kind and degree from those of Plaintiff.  First, the SWRCB has determined that the Nation "has riparian rights that authorize diversions through these facilities for beneficial uses on the [Arrowhead Springs] property," whereas the SWRCB's order asserts that Plaintiff "does not have any water rights that authorize [its diversions of water through its Tunnels 2 and 3, and its Boreholes 1A, 7, 7A, 7B, 7C and 8, and associated beneficial uses]."  ECF No. 15-6 at 91, 94.[6]  In addition to the riparian rights acknowledged by the SWRCB, the Nation also enjoys broad state and federal water rights in the watershed, including pre-1914 appropriative and groundwater rights.  Further, the Nation's irreparable harm is very different than Plaintiff's.  The Nation needs the Subject Water for fire protection, domestic, and irrigation purposes, including use of such water by local, state, federal, and the Nation's fire fighters to combat wildfires.  *See* Garton Decl. at ¶ 6.  This peril of the loss of life

---

[6] To be clear, the Nation is not agreeing with the statements in the SWRCB's order and is not contending that Plaintiff lacks water rights; it merely cites the order to demonstrate that the Nation and Plaintiff have separate and distinct water rights and interests at stake.

SOMACH SIMMONS & DUNN
A Professional Corporation

and property caused by the cut-off of water to Arrowhead Springs is very different than the loss of water for commercial bottling purposes.

While the Nation and Plaintiff both seek injunctive relief against Defendants, the nature of the requested relief is different. Plaintiff seeks to have the Notice of Denial vacated and set aside (ECF No. 1 at 10); whereas the Nation merely seeks to preserve the status quo as of July 25, 2024, with regard to delivery of the Subject Water to the Nation for use at Arrowhead Springs until an out-of-court solution can be reached or the Court has entered a final decision in this case. *See* Attach. 2. Finally, as a federally recognized Indian tribe and the owner of Arrowhead Springs, which constitutes a culturally significant sacred site, as defined in Executive Order 13007 and contains historic and culturally significant resources, Defendants owe a unique duty to the Nation that it does not owe Plaintiff, including continuing duties to consult with the Nation before they take an action that may negatively impact the Nation, its property, or water and other resources. *See* McCleary Decl. at ¶ 10; 54 U.S.C. § 306108 (regarding the duty to consult under the NHPA).[7] Apart from the questions of adequacy of representation, intervention should be granted so the Court is fully advised of the merits of the controversy and *all* the interests that will be affected by the Court's decision. *New England Petroleum Corp.*, 71 F.R.D. at 458.

Suffice it to say that the Nation has different rights at stake than Plaintiff, seeks different forms of relief than Plaintiff, and can (and will) present different facts and make different arguments than Plaintiff. Under no circumstance is Plaintiff able to adequately represent the Nation's interests. Thus, the Court must grant the Nation's motion under FRCP 24(a)(2).

///

///

---

[7] This also includes Defendants' trust obligations to the Nation.

SOMACH SIMMONS & DUNN
A Professional Corporation

**B.    Alternatively, Permissive Intervention Should Be Granted Pursuant to FRCP 24(b)(1)(B)**

The Nation has satisfied the four-part test for intervention as of right. Alternatively, the Court should permit the Nation to intervene pursuant to FRCP 24(b)(1)(B).  Like intervention as of right, motions for permissive intervention are construed liberally in favor of the moving party—neither the inadequacy of representation, nor a direct interest in the subject matter of the action need be shown.  7C Wright, Miller & Kane, *Federal Practice and Procedure*, § 1911 (2d. ed. 1986).  For permissive intervention, the Ninth Circuit requires the applicant to show "(1) independent grounds for jurisdiction; (2) the motion is timely; and (3) the applicant's claim or defense, and the main action, have a question of law or a question of fact in common."  *City of L.A.*, 288 F.3d at 403. "In exercising its discretion," a court must also "consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." FRCP 24(b)(3).

Regarding the first element, this Court has jurisdiction over the Nation's claims under multiple federal statutes, including 28 U.S.C. § 1362 (Indian tribe as plaintiff), 22 U.S.C. § 1331 (federal questions), and 5 U.S.C. § 702 (APA claims). Because the Nation has colorable claims that Defendants are violating multiple federal laws by prohibiting continued delivery of the Subject Water to Arrowhead Springs and requiring Plaintiff to remove the facilities that enable such deliveries, the Nation has independent grounds for jurisdiction as far as it is required for permissive intervention.

Regarding the second element, and the requirement under FRCP 24(b)(3), this motion is timely, and it will not unduly delay or prejudice the adjudication of the claims of the existing parties, as discussed in section III.A, *ante*.  The issue of undue delay or prejudice is the principal consideration in the Court's assessment of

SOMACH SIMMONS & DUNN
A Professional Corporation

NOTICE & MOTION TO INTERVENE OF YUHAAVIATAM OF SAN MANUEL NATION;
MEMORANDUM OF P&As; MOTION FOR ORDER SHORTENING TIME FOR HEARING                    -21-

a motion for permission to intervene.  7C Wright, Miller & Kane, *Federal Practice and Procedure*, § 1913 at 379 (2d. ed. 1986).

Regarding the third element, whether an applicant's proposed pleading raises questions of law or fact in common with the main action, courts liberally construe it in the applicant's favor.  *Silver v. Babbitt*, 166 F.R.D. 418, 433 (D. Az. 1994). Even under a strict construction, the Nation satisfies this element.  As the preceding discussion and the Nation's accompanying proposed Complaint-in-Intervention set forth, the Nation's claims stem from the same agency action that precipitated the main action, and the Nation also alleges that Defendants have violated the APA and seeks injunctive relief.  Additionally, the Nation seeks a narrower injunction than Plaintiff currently seeks that would allow the continued delivery of water for use at Arrowhead Springs.  Intervention by the Nation, therefore, will not result in any material expansion of the present litigation.

Other factors considered in determining whether to allow intervention include: (1) the nature and extent of the intervenor's interest in the litigation; (2) the intervenor's ability to contribute to the full development of the factual issues and to the just and equitable adjudication of the legal issues presented; and (3) the legal position that the intervenor seeks to advance and its probable relation to the merits of the case.  *Perry v. Schwarzenegger*, 630 F.3d 898, 905 (9th Cir. 2011); *Spangler v. Pasadena City Bd. of Educ.*, 552 F.2d 1326, 1329 (9th Cir. 1977).  The discussion in section III.A, *ante*, demonstrates that the Nation has distinct interests that stand to be impaired by an unfavorable disposition of Plaintiff's claims, that the Nation's participation in the matter will aid the Court in equitably adjudicating the claims, and that the Nation's legal position is sound and directly related to the facts and issues at hand.  Accordingly, this Court should grant the Nation's alternative request for permissive intervention.

SOMACH SIMMONS & DUNN
A Professional Corporation

# IV.    CONCLUSION

For all the above reasons, the Nation satisfies the requirements for intervention as of right.  Alternatively, the Court should exercise its discretion to allow the Nation's permissive intervention.

While a hearing on this motion has been noticed for February 3, 2025, because the January 15, 2025 expiration of the temporary authorization precedes that date, the Nation respectfully requests that the Court enter an order, pursuant to L.R. 6-1, shortening time such that a hearing on this motion will be held on January 13, 2025, at 9:00 a.m., on the same date a hearing on BlueTriton's Motion for Preliminary Injunction will be held.  The Nation proposes setting an expedited briefing schedule such that the deadline to file response briefs is January 8, 2025, and the deadline to file reply briefs is January 10, 2025.

The undersigned, counsel of record certifies that the Memorandum of Points and Authorities contains 6,543 words, which complies with the word limit of L.R. 11-6.1.

Respectfully submitted,

SOMACH SIMMONS & DUNN, PC

DATED: January 3, 2025        By *s/ Stuart L. Somach*
Stuart L. Somach (SBN 90959)
Maximilian C. Bricker (SBN 350150)
Attorneys for [PROPOSED] Plaintiff-Intervenor Yuhaaviatam of San Manuel Nation, a federally recognized Indian tribe, also federally recognized as San Manuel Band of Mission Indians

SOMACH SIMMONS & DUNN
A Professional Corporation

## TABLE OF EXHIBITS

| 1 | April 18, 2024, Letter from BlueTriton Brands, Inc. to Nobles |
|---|---|
| 2 | May 24, 2024, Letter from Nobles to BlueTriton Brands, Inc. |
| 3 | June 4, 2024, Letter from BlueTriton Brands, Inc. to Nobles |
| 4 | July 30, 2024 Letter Request for Consultation |
| 5 | November 4 and November 15, 2024, Letter From Nation to United States Forest Service |
| 6 | 1931 Contract Also mentioned in Paragraph 7 of Hamai Decl. |
| 7 | December 11, 2023 80/20 Letter Agreement |
| 8 | NCRE Map |
| 9 | SWRCB Order 2023-0042 |
| 10 | Notice of Denial July 26, 2024 |
| 11 | Decommissioning Plan October 2024 |
| 12 | August 1, 2024 Letter regarding Loss of Water Supply at Arrowhead Springs Property |
| 13 | November 15, 2024 Letter from Nation to United States Forest Service |
| 14 | San Bernardino National Forest Land Management Plan 2006 Revision, Phase I, II, and III |
| 15 | Joint Secretarial Order 3403-2023 |
| 16 | Presidential Memorandum on Uniform Standards for Tribal Consultation |
| 17 | Executive Order 13647 |
| 18 | Executive Order 13175 |
| 19 | Executive Order 13007 |
| 20 | USDA Departmental Regulation 1350-002 |
| 21 | Forest Service Manual section 1563.1 |

SOMACH SIMMONS & DUNN
A Professional Corporation

NOTICE & MOTION TO INTERVENE OF YUHAAVIATAM OF SAN MANUEL NATION;
MEMORANDUM OF P&As; MOTION FOR ORDER SHORTENING TIME FOR HEARING    -24-