EXHIBIT F
# 1986 Water Rights Report

ATTACHMENT T

MEMO                                      Attachment T

TO: Robert R. Thompson
    Don Myers

FROM: Richard A. Moore
      Staff Attorney, 48-00

RE: Water Rights Report

DATE: January 31, 1987

A. Water Rights of Campus Crusade for Christ, Inc., with respect to Arrowhead
   Puritas Water, Inc.

The current water rights of Campus Crusade for Christ, Inc.
(hereafter referred to as "CCC") with respect to Arrowhead Puritas Water,
Inc. (hereafter referred to as "APW") are defined by a series of
contractual agreements entered into between the predecessors-in-interest of
CCC and APW. The predecessor-in-interest of CCC is Arrowhead Springs Corp.
(hereafter referred to as "Arrowhead"), and the predecessor-in-interest of
APW is California Consolodated Water Co. (hereafter referred to as
"Consolodated").

The subject of the impending negotiations with APW is the water
supplied to us through a pipeline which extends up into the Strawberry
Canyon watershed above Arrowhead Springs. This water source, which I shall
refer to as the "Strawberry Canyon Pipeline", supplies a substantial
portion (approx. 50%) of the water presently used by CCC on the Arrowhead
Springs property.

1. The Strawberry Canyon Pipeline

The following legal and historical summary is necessary to
understand the status of our rights today.

(a) The "50-50" Agreement: In 1930, an agreement was reached
whereby Consolodated was granted the exclusive right to
develop the water sources of the upper Strawberry Canyon
area, which included the construction of a pipeline to
convey the water to the Arrowhead Springs Hotel property.
All of the water developed and saved by Consolodated was
to be conveyed through the pipeline, and of this water
Arrowhead was entitled to 50%. Arrowhead's portion of the
water was to be delivered, through the pipeline, to the
cement storage reservoir located behind the hotel. If at
any time, either party was not using or storing all of
their respective 50% of the water flowing through the
pipeline, the other party had the right to use the excess
water without cost.

25/4/2/2/87

(b) <u>The "80-20" Agreement</u>:  In 1931, the parties substantially modified and clarified their rights in a new agreement. Both CCC and APW acknowledge that this 1931 agreement defines the current adjustment of water rights between them regarding the Strawberry Canyon Pipeline.

The pertinent terms of the 1931 Agreement are as follows:

(1) Consolodated agreed to develop, at its own expense, "<u>to the fullest reasonable extent</u>" all springs, seepages and other sources of water, if reasonably available, existing in the upper Strawberry Canyon area and all lateral canyons opening into Strawberry Canyon.

(2) Consolodated agreed to "<u>produce and continue to produce</u> from said sources of water <u>sufficient water to fill the</u> pipeline ... <u>in ordinary seasons of dry weather</u>."

(3) Consolodated agreed that "<u>all water developed and saved</u>" by it in the Strawberry Canyon area "<u>shall be conducted through the pipeline</u>, <u>and not otherwise</u>, to the point of delivery."

(4) The parties agreed that "<u>Of all water so developed and saved and conveyed through said pipeline</u>, Consolodated shall be entitled to 80% of the constant flow thereof and <u>Arrowhead shall be entitled, without cost, to 20%</u> <u>of the constant flow thereof</u>."

(5) The "point of delivery" of Arrowhead's portion of the water is the rectangular reservoir behind the Arrowhead Springs Hotel.  The aforesaid pipeline empties the water from a point in the pipeline 10-feet north (i.e., above) said reservoir.

(6) The method of measurement, to insure that each party received their proportionate share of the water flow, was to be agreed upon by an engineer appointed by Consolodated and an engineer appointed by Arrowhead. If the 2-designated engineers fail to agree, then they were to choose a third engineer to break the tie and determine the method of measurement.

(7) All of the terms and covenants of the 1930 Agreement, except as altered or amended by the new agreement, were reaffirmed and incorporated into the agreement.

(8) As consideration for all of the above-mentioned obligations of Consolodated, Arrowhead relinquished 30% of the water which it had previously been entitled to, and Arrowhead further granted Consolodated all right, title, or interest to water, and the development of water, from any and all sources whatsoever in the upper Strawberry Canyon area (lying north of a certain line); "subject, however, to the right of Arrowhead to have delivered to it by Consolodated at the agreed point of delivery, 20% of all such water developed and saved by Consolodated."

At this point, I would emphasize that the above contract (1) gave Arrowhead the right to 20% of the constant flow of the water developed and conveyed through the pipeline; (2) contemplated that there would be future or continuing development of the water source by Consolodated, so that the area would be developed "to the fullest reasonable extent," and that Arrowhead retained for all time the right to 20% of "all such water developed and saved" by Consolodated; and (3) by virtue of reaffirming the 1930 agreement, either party retained the right to use any water not being used or stored by the other.

(c) The Conveyance of the Arrowhead Springs property to CCC.

In 1962, Arrowhead Springs Corp. transferred the real property to Campus Crusade for Christ, Inc.  The Deed expressly conveyed to CCC all water rights appurtenant to the land, "subject, however, to the rights and interests of Consolodated Water Company and its successor in interest" under the prior agreements.  Consolodated's successor in interest is APW.

(d) The 1984 Negotiations/CCC begins to sell back water to APW.

Over the years, APW has on numerous occasions sought to purchase our excess water from the Strawberry Canyon pipeline, and, to expedite this, has even offered to lend us its expertise in developing other sources of water.

Beginning in about 1984, our legal staff began negotiating with APW for a written contract to sell back our excess water (or unused portion of our 20% allotment) to APW. Several drafts of proposed agreements were written, but nothing was ever signed by the parties.  The negotiations apparently were broken off.

At about this time, even though no agreement was ever formally signed, CCC began to sell its excess water to APW at the price of one-cent per gallon.  This informal, oral contractual arrangement has continued to the present date.

T-3

(e) <u>Present Status of Negotiations.</u>

In the fall of 1986, CCC expressed to APW its interest in developing additional water sources so that more of the Strawberry Canyon Pipeline water would be available for sale to APW. APW is <u>very</u> interested in cooperating with us in this, because they <u>are</u> anxious to receive more of the pipeline water, which is a proven source to them of good quality, pure water.

As of December of 1986, the bargaining position of APW is as follows:

(1) They are willing to provide engineering and laboratory assistance in developing an additional water source of our choice. The cost could be offset on future sales of pipeline water to APW.

(2) APW indicated that it had recently improved the pipeline and thereby increased the water flow. It contends that, since CCC did not share in the cost of the improvements, we are not entitled to any of the increased water flow. (i.e. that increases in the water flow due to the improvements made by APW are exempt from the 80-20 Agreement).

(3) They are <u>very interested</u> in increasing their purchase of our excess water. They seem ready and willing to buy our entire 20% allotment, if possible.

(f) <u>Our Objectives in the Negotiations.</u>

(1) Make sure we have the right to receive <u>a constant flow of 20%</u> of the water at all times, measured on a continuous basis or at very brief intervals. (This will prevent them from "dumping" their excess on us during heavy flow periods).

(2) Make clear that we are entitled to 20% of all the water

(6) <u>Other objectives:</u>

I should note at this point that our riparian rights in the East Twin Creek watercourse are being significantly utilized by means of a dam located in the Coldwater Creek (a tributory of East Twin Creek), which diverts water from Coldwater Canyon to the Arrowhead Spring property through a pipeline.

The dam is apparently located on land owned by the Federal Government (U.S. Dept of Forestry). Nevertheless, a riparian land owner (such as Campus Crusade) may divert their riparian water from a point upstream which is on or crosses the land of another, as long as there is lawful access to use the upstream land involved. Whether we have lawful access to use the Federal land in this manner is discussed elsewhere.

(b) West Twin Creek:

An 1894 Judgment, in which our predecessor in interest was Sather Banking Co., limited our rights in this watercourse to the use of "a continuous flow of an amount of water equal to four inches under a four inch pressure" upon the land, with any surplus water being drained back into the same creek. In addition, we are entitled to all the water in said creek from 7 a.m Thursday until 7 a.m. Sunday of every week, plus all the water on the Sundays from the 1st to the 15th of every month.

The 1894 Judgment also provided that if the point of diversion of the water is changed and the change would further diminish Plaintiff's water supply, Sather Banking Co. must do so without totally depriving the Plaintiff (West Twin Creek Water Co.) of water, "but shall permit a continuous stream of 4-inches of water" to reach Plaintiff's point of intake downstream.

The Judgment also recognized our (Sather's) right to all hot water rising upon the Arrowhead Springs property, and gave the right to develop all hot and cold water rising upon the premises for any use, including sale, provided that such use does not diminish the volume of water which would flow from the premises back into the West Twin Creek Watershed.

(c) Indian Springs:

In 1930, the water rights to Indian Springs were quitclaimed from Consolidated to Arrowhead Springs (our predecessor), along with an easement to use, operate, maintain, repair and replace the Indian Springs Pipeline. Consolidated (Arrowhead Puritas' predecessor) retained the right to any surplus of this water.

Portions of the Indian Springs Pipelines are apparently located on or under land owned by the Federal government (U.S. Department of Forestry). Legal issues arising from this fact are discussed in the section which follows.

T-11

25/41/2/12/87

2. Federal Lands Issues

As previously indicated, certain portions of our water systems extend onto Federal lands (i.e., the Coldwater Canyon dam and a portion of the Indian Springs pipelines). I believe that there is no question of our entitlement to the use of the water from these sources by virtue of our riparian rights. The real question is that of lawful access to the lands of another.

I am unable to locate in our files any records showing that Campus Crusade was ever formally granted a right of way or given permission to place portions of our water system on Federal land.

Initially, it was my impression that the law of prescriptive easements would settle this matter, since the water systems have been on the Federal land for over 50 years, but I have subsequently learned that the Federal government does not recognize prescriptive rights concerning Federal land. Therefore, the only way to obtain lawful access to the land, either to repair existing facilities or to construct new ones, is to obtain a Special Use Permit from the U.S. Dept. of Forestry.

3. Implications of Water Company Stock

The West Twin Creek Water Co. and the Del Rosa Mutual Water Co. receive their water at points downstream from Campus Crusade. Basically, the Del Rosa Mutual Water Co. is entitled to all (or substantially all) of the water of East Twin Creek which flows to their point of intake downstream from Campus Crusade; and the West Twin Creek Water Co. is entitled to all (or substantially all) of the water of West Twin Creek which flows to their point of intake downstream from Campus Crusade. In other words, they have the right to the water remaining in or flowing back into the watercourse after we have exercised our water rights.

The legal effect of our ownership in these companies is not entirely clear. Stock in a private water company generally entitles its holder to a right to receive a certain quantity of water - usually proportional to the number of shares owned. In the absence of some express provision to that effect, in the Articles of Incorporation, the Bylaws or on the certificate, the stock is generally not appurtenant to any particular land, and may be freely transferred apart from the land. On the other hand, if the stock is appurtenant, the right to the stock runs with the land, and apart from the land no title to the stock (or water rights arising therefrom) can pass.

The Stock of the two water companies does not seem to be appurtenant to any particular parcel of land, and it appears that the holder thereof would be entitled to a certain proportional quantity of the water flow. We would probably be entitled to simply divert the quantities of water which the stock entitles us to as it flows past our property, or at any other convenient location, as long as the remaining shareholders received their portion.

( 1 )                                    Attachment U

1863 -- David Noble Smith -- East 1/2 of Southeast 1/4 and Southeast 1/4 of Northeast
     $\cancel{B}$ 573   6-21-80
     1/4 of Section 11, and Northwest 1/4 of Southwest 1/4 of Section 12.   All
          unsurveyed till 1878.   on 2-1-82 Patent was issued. ~~and was fixed will~~

1871 -- All of section 7 granted to Southern Pacific Railway Co. of California on
     E- 386   11-19-87
          4-3-71.   On 11-1-97 Patent was issued with no reservation of water rights
     ~~what~~
          what-so-ever.

1871       West 1/2 of Southeast 1/4 and Southwest 1/4 of Northeast 1/4 of Section 11,
     N- 100   8-21-1922
          granted to S.P.R.R. Co. of Calif ~~and was~~ on 4-3-71 and on 2-9-85 Patent issued
     ~~withxmax~~   with no ~~restrict~~ reservation of water rights what-so-ever.

1877       5-3-77 A. B. Chaappman and others applied for purchase of ~~below~~ land as
     C- 374   10-24-89
          timberland.   Northeast 1/4 of Southwest 1/4 and North 1/2 of Southeast 1/4
     ~~andx2ax~~   And Southeast 1/4 of Northeast 1/4 of Section -12.   Patent issued on 8-15-89.

1880       Thomas B. Elder applied for South 1/2 of Northwest 1/4 and West 1/2 of North
     C- 338   4-15-89
          east 1/4 of section 12 and on 10-6-88 patent was issued.

1891   ✓ Herbert J. Royer applied for North 1/2 of Northwest 1/4 of Section 12 and
     G-63   11-18-07
          on 11-12-97 patent was issued.

U-1

(6)

¹1923, October 18 (Book 813 Deeds. Pg 254)

Arrowhead Springs Company, a corporation organized under the laws of the State of Maine and having its principal place of business at Augusta Maine, and being duly qualified to do business in the State of California, Party of the first part, in consideration of valuable services rendered the party of the first part, receipt whereof is hereby acknowledged, does hereby grant to SETH MARSHALL, party of the second part, all that real property situate in the ~~xxxxx~~ County of San Bernardino, State of California, described as follows:

Beginning at Cor. No. 1, the S.W. Cor. A one inch pipe, whence the south quarter ~~xx~~ Cor. Sec. 11, T. 1 N., R. ~~4~~ W., S.B.~~2~~M. bears S. ~~·~~40° 01' W 2070.3 feet; thence N. 18°39' W. 171.9 feet to Cor No. 2, a 1 1/4 inch iron pipe; thence N. 26°34' E. 268.72 feet Cor. No. 3, a 2 inch pipe; thence S. 89° 05' E. 79.~~xx~~268 feet to Cor. No. 4, a 2 inch iron pipe; thence S. 4°51' W. 405.19 feet to Cor. No. 5, a 2 inch iron pipe; thence N. –89°05' W. 110.67 feet to Cor. No. 1., the place of beginning.

It is the express condition hereof that said premises so granted shall be used solely for private residence purposes. During the occupancy of said premises by the aforesaid grantee, his heirs, ~~xxxx~~ representatives or assigns, said grantee, his heirs, representatives and assigns, shall have the right to use the waters of the grantor for domestic purposes only, including in that term the household, and private lawns, shrubberies and gardens, adjacent there to and in connection therewith.

· · · · · · · · · · · · · · · · · · · · · ·

Book 476. Pg 175 Rec mar 21, 1929

1929, February 27 —

WARRANTY DEED

Arrowhead Springs Corporation, a corporation organized and ~~xxxixxixxx~~ existing under and by virtue of the laws of the State of Delaware, and having its principal place of business in and for the State of California in the City of Los Angeles, in said S~~a~~ate, does hereby grant to CALIFORNIA CONSOLIDATED WATER COMPANY, a corporation organized and existing under and by virtue of the laws of the State of Delaware, all that certain property situated in the County of San Bernardino, State of California, described as follows, to-wit:

1. A perpetual right and easement to use, operate, maintain, repair and replace~~m~~ the reservoirs, pipe lines, tunnels and collecting basins hereinafter described, together with the easement to enter and go across other property of the grantor hereinafter described, in order to use, operate, maintain, repair and replace such facilities and the other facilities ~~h~~ereinafter mantioned. The reservoirs, pipe lines, tunnels and collecting basins above mention ~~a~~re described as follows:

Water Lot No. 1 as sh~~e~~wn and delineated on License~~d~~ Surveyor's Map "Showing ~~Ce~~rtain Pipe Lines and Easements Arrowh~~e~~ad Springs Corporation:, recorded in Book 2,

U-6

Record of Surverys, Pages 18 and 19.  (see exhibit)

Water Lot No. 2 as shown and delineated on said licensed Surveyor's Map recorded in Book 2, Records of Surverys, Pages 18 and 19.

Also the existing reservoir site and tanks as sown on said Licensed Surveyor's Map.

Also the proposed reservoir site as shown on said Licensed Surveyor&s Map.

Also a right of way 10 feet wide for pipe line the center line of which is desig nated as "Waterman Canyon) Pipe Line on said Licensed Surveyor's Map.

EtC Also a right of way 10 feet wide for pipe line, the center line of which is designated as "Indian Springs Pipe Line: on said Licensed Surveyor's Map.

Also a right of way 40 feet wide for pipe line designated as "Proposed Pipe Line ", the center line of which is the center line of Pacific Electric Railway as shown on said licensed Surveyor's Map.

Also a right of way 10 feet wide for pipe line the center line of which designated as "Proposed Pipe Line "A" on said Licensed Surveyor's Map.

Also a perpetual easement to lay, construct, erect, use, operate, maintain, repair and replace necessary additional reservoirs, pipe lines, tunnels, oc collecting ins and similar facilities as may be hereafter needed by the grantee, its successors assignes, in on and across other property of the grantor, hereinafter described.

Also all pipe lines, pipe racks and loading facilities for the transportation ter from the existing collecting basins and tunnels of the grantor, to Pacific Electric ay, or elsewhere, and also all reservoirs and tanks of the grantor, now being used by it e development and distribution of its water.

2. All subterranean waters in Waterman Canyon (also known as West Twin Creek) Strawberry and Cold Water Canyons (also known as East Twin Creek), belonging to ntor, including all waters now being developed and produced by said grantor in said , together with such additional subterranean waters now belonging to the grantor as tee its successors or assigns, may hereafter desire to develop, together with necessary f way for pipe lines to convey such water to the reservoirs of the grantee, its successe ns, and the right to go upon the premises of the grantor and erect necessary tunnels cting basins for the development of such water; excluding, however, all water of the

U-7

ETC

grantor from surface streams and hot springs.

3.; Also whatever rights and int interests ARROWHEAD SPRINGS CORPORATION
owns and possesses in water fktxxhxxfxixxWhxmxx flowing from Indian Springs and
in the tunnels located at and adjoining said springs.

4. Also, in the event of emergency creating a shortage in the supply of
water available to grantee, its successors or assigns, from the above sources of supply, the
right and privilege on the part of the grantee, its successors or assigns, to take hot
water from any of the springs or other sources of supply owned or controlled by the grantor
n such amounts and at such times as will not interfere with or interrupt the hot water uses
nd service of the grantor.

SUBJECT to the

30, August 6th    Bk 648 Pg 122 Rec Aug 21, 1930
his has been modified by Bk 1016 Pg 303 Rec Dec 3, 1934

WHEREAS, since the execution and delivery of said instruments and warranty
ed (above) a controversy has arisen between the parties hereto as to the character and
unt of water to which CONSOLIDATED is entitled under the terms of said contracts and said
d, and as to the character and amount of water which ARROWHEAD has retained under said
tracts and deed, and during such controversy each of the parties hereto has made such e
ination of the said premises of ARROWHEAD and contiguous properties with reference to th
t mf and flow of water, both surface and sub-surface, thereon and thereunder, as to sat
the execution of this agreement; and

WHEREAS, the parties hereto now desire to enter into an agreement for the purpose
pletely compromising and settling all disputes, controversies and matters of every kin
ture as between the parties relative to the amount of water to be received by CONSOLI
e amount of water to be retained by ARROWHEAD,

NOW, THEREFORE, for the purpose of fully compromising and settling all of said
ns of every kind or nature, and for and, in consideration of the promises and of the
ts and agreements herein contained, the partixmxhxrxxmxpafx parties hereto do agree
ws:

9

First: CONSOLIDATED agrees that it will, as soon as practicable after the
ecution of this agreement, and at its own cost and expense, construct and build a pipe line
at least three inches outside diameter from the intake of the present pipe line of ARROWHEAD
in Strawberry Canyon, constructed in 1929, to the springs located in upper STRAWBERRYxCANYON,
Strawberry Canyon, twelve thousand three hundred (12,300) feet, more or less, north of
the present pipe line intake of ARROWHEAD in Strawberry Canyon, and also that it will
construct a pipe line of at least three inches outside diameter from the end of said pipe line
in Strawberry Canyon belonging to ARROWHEAD one hundred (100) feet north of the tunnel in Cold
Water Canyon to a point ten (10) feet north of the existing storage reservoir, having dimensions
of 50 x 100', belonging to ARROWHEAD, back of the existing hotel building of ARROWHEAD, and also
that it will construct a pipe line from the said reservoir to storage tanks and loading depot
owned and operated by CONSOLIDATED west of Hot Water Canyon. (CROSS 446,400 GPDay
m/h Machinus

Second: Upon the completion of said pipe line by CONSOLIDATED, it may thereafter,
without interference from ARROWHEAD, conduct all water developed by it in Strawberry Canyon
rough the pipe line so constructed by it, and also through the present pipe line constructed
1929 by Arrowhead, which latter pipe line consists of six inch, four inch and three inch
utside dimension steel pipe, and ARROWHEAD hereby grants CONSOLIDATED an easement to use for
 purpose aforesaid ARROWHEAD"S said pipe line and any line, whatever the size thereof,
structed by way of replacement thxx thereof, constructed by way of replacement thereof or
titution therefor. Of the water so developed and conveyed through said pipe line,
OLIDATED shall be entitled to one-half thereof, and ARROWHEAD shall be entitled to one=half,
the point of delivery of that portion of said water to which ARROWHEAD is entitled shall be
oint in said pipe line ten (10) feet north of the said rectangular reservoir having a
sion of 50 x 100', back of the hotel building of ARROWHEAD. The method of measurement
d water, so that both CONSOLIDATED AND ARROWHEAD shall receive their proper proportionate
hereof, shall be agreed upon by and between an engineer designated by ARROWHEAD and
neer designated by CONSOLIDATED. If the two engineers so designated shall fail
e, then they shall designate a third engineer who shall be impartial and the decision
wo of the three engineers thus designated shall be binding upon the parties hereto as
ethod of measurement of said water.

16

ARROWHEAD hereby grants to CONSOLIDATED (without any warranty whatsoever, except the warranty that ARROWHEAD has not conveyed or transferred to any other person the same right, or any right, title or interest therein) the sole and exclusive right to develop water from any and all sources whatever, whether surface, subterranean, seepage or otherwise, in Strawberry Canyon, and whether within or without the real properties now owned by ARROWHEAD, and hereby grants to CONSOLIDATED (without any warranty whatsoever, except the warranty that ARROWHEAD has not conveyed or transferred to any other person the same right, or any right, title or interest therein( one-half of all water developed from any and all sources, whatever, in S Strawberry Canyon, reserving to itself one-half of all such water.

Third: The pipe line above referred to, that is to say, that portion thereof construc ed by CONSOLIDATED and that portion thereof constructed in 1929 by ARROWHEAD and now belonging to it, shall continue to be maintained at all times hereafter by CONSOLIDATED, at its own cost and expense, but CONSOLIDATED shall not be required to replace the whole, or any portion, ᶠ the said pipe line constructed by ARROWHEAD in 1929 and above referred to, CONSOLIDATED shall make all replacements required in that portion of said pipe line constructed or to be constructe by it, and ARROWHEAD Shall make all replacements required in that portion of said line constructed by it,. The officers, agents and representatives of each of said parties ahall t all times have the right to inspect all springs, pipe lines, structures, and measuring device ithout interference from the other party.

Fourth: If an any time CONSOLIDATED is not using, selling, distributing or storing l of the one-half of the water flowing through said pipe line to whibh it is entitled reunder, ARROWHEAD shall have the right to use for domestic purposes, human consumption, rigation purposes or such other beneficial use upon its property as it may deem suitable, that tion of said one-half of such water not used, sold, distributed or stored by CONSOLIDATED, whenever the storage facilities of CONSOLIDATED are full and can receive no more water witho flow, then ARROWHEAD shall be conclusively deemed to be entitled to the use, for the oses aforesaid, of that portion of the water in said pipe line to which CONSOLIDATED is tled hereunder but which CONSOLIDATED is not using, selling, distributing or storing, the storage facilities of CONSOLIDATED aan receive such water. If at any time ARROWHEAD t using for comestic purposes, human consumption, irrigation purposes or such other

beneficial usd oupon its property as it may deem suitable, all of the one=half of the water lowing through said pipe line to which it is entitled hererunder, CONSOLIDATED shall have the right to use, sell, distribute and store the portion thereof not used by ARROWHEAD. CONSOLIDATEI agrees that it whall not be deemed to be xxx using,. selling or distributing water sithin the meaning of this Paragraph Fourth or of Paragraph Sixth below, wwkix which is used for irrigatior purposes km outside of the watershed in which such water is obtained or which is used for irriga ion purposes within such watershed upon real property-not owned by CONSOLIDATED at the time of such use.

Fifth: In consideration of the promises, CONSOLIDATED does hereby wholly release, surrender and quitclaim unto ARROWHEAD any right whatsoever which it may have obtained by virtu of said contracts and/or said warranty deed, or otherwise, to any surface or subsurface water existing in COLD WATER CANYON within or outside of the boudaries of the real xxxxx estate owned by ARROWHEAD.

Sixth: Consolidated agrees that ARROWHEAD shall have the right to use for domestic purposes, human consumption, irrigation purposes or such other beneficial use upon its property as it may deem suitable, that portion of the water developed and owned by CONSOLIDATED n WATERMAN CANYON not used, sold, distributed or stored by CONSOLIDATED, and whenever the torage facilities of CONSOLIDATED are full and can receive no more water without overflow, en ARROWHEAD shall be conclusively deemed to be entitled to the use, for the purposes afore id, of that portion of said water which CONSOLIDATED is not using, selling, distributing storing, until the storage facilities of CONSOLDIATED dan receive such water.

Seventh: ARROWHEAD and CONSOLIDATED agree that their respective engineers shall early as practicable determine the exact descriptions for perpetual easements in favor of OLIDATED in respect of additional reservoirs, pipe lines, tunnels, collecting basins and s lar facilities as may be hereafter needed by CONSOLIDATED, IT SUCCESSORS OR ASSIGNS, IN AR AS IT MAY BE FEASIBLE TO DETERMINE SUCH DESCRIPTIONS AT THIS TIME. When such descripti have been determined, ARROWHEAD agrees to grant to CONSOLIDATED perpetual easements in ct thereof, and to grant such additional perpetual easements, not listed by specific ption, as may be reasonable in order to assure to CONSOLIDATED, its successors and assig ght to develop, collect, store and distribute water in accordance wit the warranty deed,

the perpetual easement granted to CONSOLIDATED in said warranty deed in the following words:

"Also a perpetual easement to lay, construct, erect, use, operate, maintain, repair and replace necessary additional reservoirs, pipe lines, tunnels, collecting basins and similar facilities as may be hereafter needed by the grantee, its successors or assigns, in on and across other property of the grantor, hereinafter described." reserving and excepting however the easements to be granted by ARROWHEAD to CONSOLIDATED as provided in this paragraph Seventh.

Eighth: It is understood and agreed that notwithstanding any expression in said contr contracts and/or deed to the contrary, CONSOLDDATED shall not have the right to use any HOT WATER arising on the property owned by ARROWHEAD that would interfere in any manner with the use of said water by ARROWHEAD, whether said water at the time of such use by ARROWHEAD is hot ixxxikixmxabd-GIBSIKUDATED-dies-gerebt-rekease-abd-qyutekaune--- or cold and CONSOLIDATED does hereby release and quitclaim XX unto ARROWHEAD any right to the use of HOT WATER, except as aforesaid, which it may have obtained by virtue of any expression in said contracts and/or arranty deed.

Ninth: Notwithstanding any expression in said warranty deed, CONSOLIDATED shall not ntitled to any water flowing from INDIAN SPRINGS and/or from the tunnels located at and joining said springs, except such surplus of said water as may exist after ARROWHEAD has de use of the same for all drinking and culinary purposes in and about its hotel, bungalows buildings, and CONSOLIDATED does hereby release and quitclaim unto ARROWHEAD any right to use of said water from INDIAN SPRINGS and/or tunnels adjacent thereto, which it may have ained by virtue of said contracts and/or warranty deed, xxpx except the right to the lus above described. CONSOLIDATED hereby quitclaims to ARROWHEAD a perpetual easement to operate, maintain, repair and replace the INDIAN SPRINGS PIPE LINE OF CONSOLIDATED, and HEAD agrees to maintain said pipe line and replace the same in whole or in part when and ten as it or any part thereof becomes word out.

Tenth: In consideration of the foregoing and xii of all the contracts and to warra escribed in the recitals of this agreement, it is hereby expressly covenanted and agree between the parties to this agreement that this final adjustment and modification of t ontracts and warranty deed shall operate as and be the final adjustment of all obligati bilities in respect of water rights in anywise arising out of any or all previous

cause and discharge the other of and from any and all cause of action which have arise

between the parties hereto in respect of water rights, or on account of which either of the

arties hereto may be liable to the other in respect of water rights, and this final agreement

all ab and does entirelynabsolve each of the parties hereto from any suit or claim to be

de or asserted by either of the parties against the other in respect of water rights, except

r matters hereafter arising based on this agreement or on said warranty deed as modified

eby. Except as modified hereby, however, said warranty deed and each and all of the agreemen

ns and provisions thereof, shall be and remain in full force and effect.

*Dec 4 (1934*
*01C ... oK Pg 303*

-----------------------------------------------------------------------

, September 26......... ~~a corporation organised and existing under~~ ARROWHEAD SPRINGS CORPORATION, LTD., (formerly Arrowhead Springs Corp.)

WHEREAS, the parties hereto have determined to enter into a new agreement, whereby of the State of Delaware, duly qualfied to do business in the State of Calif. & CONSOLIDAT CO.

will acquire certain rights and will agree to perform certain obligations distinct and

ent from the Rights and obligations existing under or on account of said agreement of

6, 1930, (which agreement, for convenience, will be hereinafter referred to as the

pal agreement"),

NOW, THEREFORE, for and in consideration of the mutual covenants and agreements

contained, the parties hereto do agree as follows:

First: <u>Consolidated</u> agrees that it will forthwith, upon the execution of this

t, and at its own cost and expense, <u>develop to the fullest reasonable extend all</u>

seepages and other sources of water, <u>if reasonably available, existing in Strawberry</u>

d all lateral canyons opening into Strawberry Canyon, lying <u>north of the northerly</u>

he south half of Section 31 and of Section 32, Township 2 North, Range 3 West,

., and produce and continue to produce from said sources of water SUFFICIENT

ILL THE PIPE LINE built by ~~kara~~ CONSOLIDATED, under and in accordance with the

id principal agreement, IN ORDINARY SEASONS OF DRY WEATHER.

Second: CONSOLIDATED shall hereafter at all times conduct all water developed and

in Strawberry Canyon, and in the lateral canyons <u>northerly</u> of said line established

First hereof, through the said pipe line, and agrees that ALL OF THE WATER SO

AVED AND PRODUCED BY IT FROM SAID SOURCES OF SUPPLY SHALL BE CONDUCTED THROUGH

AND NOT OTHERWISE. TO THE POINT OF DELIVERY hereinafter ~~referred~~ referred to

...ablished line, then ARROWHEAD shall be exclusively entitled, so far as CONSOLIDATED ... additional to the flow of water developed by Consolidated northerly of ...is concerned, to develop and produce such additional flow of water at any and all places sou... southerly of said established line, provided that such ~~xxx xx~~ development and production of ...water shall not affect or impair the right of CONSOLIDATED to develop and produce water ...northerly of said established line. In the event of the development of any water ...southerly of said established line, ~~xx xx~~ by either party hereto, and northerly of the ...south section lines of said Sections 31 and 32, ARROWHEAD AND CONSOLIDATED shall each be ...titled to an equal one-half part thereof. In the event of the development by ARROWHEAD ...ANY WATER SOUTHERLY OF THE SOUTH SECTION lines of Sections 31 and 32, ARROWHEAD shall ...entitled to the whole thereof, so far as CONSOLIDATED is concerned.

Fourth: It is understood and agreed that all of the covenants, terms and conditions ...aragraph Fourth of said principal agreement are hereby agreed to and reaffirmed, except th... ...same shall be deemed to have been amended so as to substitute the words "eighty ...nt (80%) of the water flowing through said pipe line" wherever reference is made to ...ater to which CONSOLIDATED is entitled, in lieu of the words" one-half of the water ...g through said pipe line," and except that the same shall be deemed to have been ...d so as to substitute the words "twenty percent (20%) of the water flowing through ...pe line" wherever reference is made to the water to which ARROWHEAD IS ENTITLED, IN ...the words "one-half of the water flowing through said pipe line."

Fifth: Consolidated agrees that upon the execution of this agreement it will pay to ...D the sum of fifteen thousand dollars ($15,000.00) towards the development by ARROWHEA... ...in COLD WATER CANYON. ARROWHEAD agrees that said payment of $15,000.00 was induced ...omise, which it hereby obligates ~~h~~itself to perform, to actually commence the develop... ...n COLD WATER CANYON. Arrowhead agrees that said payment of $15,000.00 was induced ...mise, which it hereby obligates itself to perform, to actuall commence the developmen... ...n said COLD WATER CANYON within one (1) year from the date hereof, and at its own co... ...ing said sum of $15,000.00) to diligently prosecute such work to completion; such ...done in such manner and to involve the construction of such pipe lines, reservoirs a... ...ties as ARROWHEAD may deem advisable.

17

NOW, THEREFORE, for and in consideration of the promises and the covenants, terms and provisions of this agreement, the parties hereto do hereby fully and completely release and discharge each other ..................................... ................,except ɪx such as are contained in, or arise out of, or on account of the following:

(a) The warranty deed of February 27, 1929, recorded on the 12th day of May 1929, in Book 476, Page 175 of Official Records of San Bernardino County, California, as amended by said principal agreement of August 6, 1930; —

(b) The principal agreement of August 6, 1930, as amended by this agreement;

ɪɪx(c) The agreement dated January 2, 1931, executed by ARROWHEAD Springs Corporation and ~~Xxxxxxxxxxx Xxxxxxxxx~~ California CONSOLIDATED Water Company, entitled Xɪxxxxx "Memorandum of Agreement," as amended by agreement of even date herewith.

(d) The agreement dated August 6, 1930, _648 Pg 122_ executed by ARROWHEAD Springs Corporation and California CONSOLIDATED Water Company, entitled "Special Distributors Agreement," @ as amended by agreement of even date herewith. "

(e) This agreement.:.........-----------------------------

_Bk 1015 OR Pg 311  Dec 4, 1934 - Del Rosa Judgment_

1931, October 19th. JUDGMENT NO. 31798, IN THE SUPERIOR COURT OF THE STATE OF

ALIFORNIA, IN AND FOR THE COUNTY OF SAN BERNARDINO. _____ DEL ROSA MUTUAL WATER COMPANY,

corporation, Plaintiff, Vx. D. J. CARPENTER, ISABEL C. TURNER, J. B. JEFFERS, GEORGE S.

ASON, NATIONAL THRIFT CORPORATION OF AMERICA, a corporation, JOHN DOE MC KASON, MARY GLEASON,

M. CHRIST, GREAT VIEW WATER COMPANY, NETTIE D. PHILLIPS, PACIFIC-SOUTHWEST TRUST AND

VINGS BANK, a corporation, ARTHUR R. PECK, CARRIE A PECK, ELLEN A MC LAUGHLIN, ARROWHEAD

RINGS XXXXXXXXXX COMPANY, a corporation, J. N. BAYLIS, CALIFORNIA CONSOLIDATED WATER

PANY, a corporation, xxxx CALIFORNIA CONSUMERS CORPORATION, a corporation, et. al.,

endants.

..................

NOW, THEREFORE, In accordance with said stipulation and the evidence

IT IS HEREBY ADJUDGED:

1. That plaintiff is, and defendants California CONSOLIDATED Water Company, ARROWHEAD Sprins Corporation, Ltd. (sued herein as "Arrowhead Springs Corporation"), ARROWHEAD Springs Company and California CONSUMERS Corporation (sued herein as "California Consumers C Corporation") are corporations duly organized and existing and duly qualified and authorized to do and transact business within the State of California.

2. That neither the California Consumers Company nor the Arrowhead Springs Company have at this time any right, title or interest in or to any of the water or in or to the right to take, divert, use or transport any of the water referred to in the complaint in said action or in this judgment.

3. That EAST TWIN CREEK is a natural stream of water situated in the County of an Bernardino, State of California, and has its source in the San Bernardino Mountains ing and being to the north of the City of San Bernaredino. That all of the waters of t is known as East Twin Creek watershed, except as diminished by use by defendant ROWHEAD Springs Corporation, Ltd., and its predecessors in interest and by use by endant California Consolidated Water Company and its predecessors in interest, and except he waters thereof are lost·by evaporation, transpiration, seepage and other natural es, drain into and become a part of said East Twin Creek above the point of plaintiff's rsion hereinafter referred to. That the principal tributaries of said East Twin are Strawberry Creek, Coldwater Creek, Hot Springs Creek, and other named and unnamed taries and springs, all of which flow and percolate into and, except as were diminished resaid, become a part of said East Twin Creek; also waters seep and percolate into ast Twin Creek and its tributaries from the adjacent hills and lands draining into said vin Creek and its various tributaries and the canyons draining into said stream. that rry Creek and its gributataries are the easterly branch of East Twin Creek above ction of Strawberry Creek and Coldwater Creek; Coldwater Creek and its tributaries are terly branch of East Twin Creek above the junction of Strawberry Creek and Coldwater Cre ngs Creek and its gributaries are the lowest branch of East Twin Creek. At That at of the appropriation, as hereinafgter set forth, of the waters of said East Twin plaintiff's predecessors in interest all of the waters of said East Twin Creek and of ries, except that part thereof then being used by defendant Arrowhead Springs Corpora

ıd on lands in Sections 11 and 12, Township 1 North, Range 4 West, S.B.B. & M., above the point of plaintiff's intake, and that part lost by evaporation, transpiration, seepage and othr natural causes, flowed in a southerly direction in a natural steam to and into the San Bernardino Valley, and at the time of the appropriation of the right to use such water by plaintiff;s predecessors in interest none of said water had been appropriated, diverted, or used except by said ARROWHEAD Springs Corporation, Ltd. and its said predecessors for use upon said ands above plaintiff's point of appropriation.

That sub/sequent to the time when defendant, ARROWHEAD Springs Corporatin., Ltd., or s predecessors in interest, acquired title to all the lands described in paragraph 4 below, ept the north-half of the northwest quarter (N 1/2 of NW 1/4)of Section 12, Township orth, Range 4 West, S.B.B. & M., _plaintiff_ or its predecessors in interest entered into and n said East Twin Creek at about one mile north of the mouth of said : Twin Creek and appropriated and diverted all of the water of said stream flowing at said t and threafter, except as hereunder provided, diverted all of the ~~esyrt-pg-dsof-~~ ~~s,-g,peomh-sy-dsof-lpomy-omyp-s-foyvj-smf-vpmfiey-smf-fpm-----------~~ water of said m flowing at said point ~~and-thereafter,-except-as-herunder-provided,-diverted-all-of-the-~~ a ditch and conduit and conveyed the same away to nonriparian lands for beneficial uses on.

That the point on said stream where said appropriation and diversion was so y ix plaintiff, or its predecessors, in interest, was below the confluence of all of ranches of said East Twin Creek and below there all of the waters of said East Twin vatershed converge, except as diminished as aforesaid.  That ever since said appropriati ersion of said stream all of the waters of said stream flowing at said point have been now are taken and used for irrigation and other beneficial uses and purposes by plaint predecessors in interest, and by defendants and cross complaints named in paragraph , except as diminished from time to time by the use by defendant Arrowhead Corporation, Ltd. and its predecessors in interest and by natual causes as aforesaid, hat said California Consolidated Water Company and its predecessors in interest have

20

purposes and other commercial uses, water from said watershed adversely to said plaintiff, and to all other defendants, except ARROWHEAD Springs Corporation, Ltd. ..........

------------4. That in the yhe------------vvvvvvvvvvvvvvvvv--------------------.

IT IS FURTHER XH ORDERED, ADJUDGED AND DECREED:

(a) That defendant, ARROWHEAD Springs Corporation, Ltd., is, subject to the provision s of subdivision (1) hereof, the owner of the right to take water from said East Twin Creek and its tributaries and to use said water upon its said ARROWHEAD Springs property riparian to East Twin Creek, to the extent that such water is or may be required for any beneficial or riparian use upon said property, and to use said water to the extendt of five (5) miner's inches measured under a four inch pressure, in its steam cave baths and for domestic purposes in W Waterman Canyon during the period from the first day of November to the first day of May of rsvj-urst-sy-s;;-yo;rd-f1tomh-dsof-lrtepf-ejrm-yjr-yslomh-yjrtrpg-eo;;-mpy-trf1vr------------- ach year at all times during said period when the taking thereof will not reduce the water owing at plaintiff;-s intake below ten (10) inches, and to use said water to the extend one (1) miners inch, measured under a four inch pressure, in its steam cave baths and domestic purposes in Waterman Canyon at all other times, and is also, subject to the provisi of subdivision (1) hereof, the owner of the right to bottle and ship, out of the said Twin Creek watershed, waters of Penyugal Springs, Granite Springs and other hot springs utary to Hot Springs Creek, xxx provided, however, that said defendant, Arrowhead Springs ration, Ltd., shall not so use the waters of Hot Springs Creek, for shipment, irrigation herwise, as to reduce the flow of the waters of Hot Springs Creek at the point of nfluence with East Twin Creek below ten (10) miners's inches, measured under a four ressure, provided further, however, that no part or portio-n of any of the water of East eek, or any of its tributaries, except as otherwise herein provided, shall be taken to o n lands not riparian to said East Twin Creek.

(b) That defendant, California Consolidated Water Company, is , subject to the ns of subjxxtdivision (1) hereof, the owner of the right to take, impound, divert, and carry away water of that certain spring known as "Indian Spring" and any and all ter of all springs situated or obtainable in that part of East Twin Creek known as

confluence of Hot Springs Creek and East Twin Creek, and also at the confluence of said str .treams, and may construct a pipe line or conduit f-rom such point to plaintiff's present diversion box and may take and divert all of the water ordinarily flowing in said East Twin Creek at such diversion point subject only to the rights of defendants Arrowhead Springs Corporation, Ltd. and California Consolidated Water Company, and defendants and cross-complaints designated in paragraph 6, as herein set forth.  The right of ingress and egress for construction and maintenance of said diversion weir and box, dam and pipe line or conduit shall be exercised in such a manner as to do the lease possible damage to land, improvements, plantings and natural treees and shrubbery upon said Arrowhead Sirngs Property, and said pipe line, if constructed, shall be maintained s free from leaks as possible and shall at all times have a depth of cover of at least two fee ver the top of the pipe.

.........

) Each of the parties hereto is perpptually enjoined from taking, using or interfering with e use of the waters of East Twin Creek and its tributaries except as herein decreed.

This judgment shall not in anywise affect, amend, or otherwise impair any contracts in existence, or which may be executed as of the date of this judgment, by and between ndant Arrowhead Springs Corporation, Ltd., and defendant California Consolidated r Company, relating to the water of East Twin Creek or any of its tributaries.

Bk 1016  Pg 303

1934, December 3rd.                    Agreement between

HEAD SPRINGS CORPORATION, LTD., (formerly Arrowhead Springs Corporation) a corporation

lifornia CONSOLIDATED Water Company, a corporation

......Whereas, on August 6, 1930, parties hereto entered into a certain agreement greement thereafter was recorded in book 648, page 122, official records of San ino County as instrument #92 of records on August 21, 1930.

WHEREAS, parties hereto have determined to enter into a new agreement, whereby l acquire certain rights and will agree to perform certain obligations distinct and ct from the rat rights and obligations existing under or on account of said agreement

'937, June 25    Bk. 1232 - Pg 309

Quitclaim Deed from California CONSOLIDATED Water Company to

ARROWHEAD Springs Corporation, Ltd., a corporation

The following easements or rights of way heretofore conveyed by ARROWHEAD Springs Corp.

(Now Arrowhead Springs Corp. Ltd.) to California CONSOLIDATED Water Co. in and by a

certain warranty deed executed recorded in book 476 page 175 of official records, to-wit:

1. The perpetual right and easement to use, operate, maintain, repair, and/or replace

reservoirs, pipe lines, tunnels, and collecting basins over or on that certain reservoir site

shown and designated as "Proposed Reservoir Site" on that certain Licensed Surveyor's Map

showing Certain Pipe Lines and easements Arrowhead Springs Corp.". recorded in book 2,

page 18, Records of Surveys, together with the easement to enter and go across other property of

Arrowhead Springs Corporation, Ltd. in order to use, operate, maintain, repair, and/or

replace such or any other facilities.

2. A perpetual easement and right to use, operate, maintain, and repair a

pipe line over, along, and across a right of way 10 feet wide for a pipe line, the center

line of which is designated as "Iddian Springs Pipe Line" on said Licensed Surveyor's Map,

together with the Easement to enter and go across other property of Arrowhead Springs Corporation

Ltd. in order to use, maintain, repair, and replace such pipe line.

3. A Perpetual easement and right to use, operate, and maintain a pipe line over,

along and across a right of way 40 feet wide for a pipe line, designated as "Proposed

Pipe Line 'B;" on said Licensed Surveyor's Map, the center line of which rightofway is the

center line of the Pacific Electric Railway, as shown on said Licensed Surveyor's Map, together

with the easement to enter and go across other property of Arrowhead Springs Corporation, Ltd.

in order to use, operate, maintain, repair, and replace such pipe line.

4. A perpetual right and easement to use, operate, maintain, repair, and replace

a pipe line over, along, and across, a right of way 10 feet wide for a pipe line, the

center line of which is designated as "Proposed Pipe Line 'A;" on said Licensed Surveyor"s Map

together with the easement to enter and go across other property of Arrowhead Springs

Corporation Ltd. in order to use, operate, maintain, repair, and replace said pipe line.

5. The perpetual easement to lay, construct, erect, use, operate, maintain,

24

repair, and replace necessary additional reservoirs, pipe lines, tunnels, collecting basins, an similar facilities as might, subsequent to February 27, 1929, be needed by California CONSOLIDATED Water Co., it successors or assigns, in,on,and across other property of Arrowhead Springs Corporation Ltd. The easement described in this subsection and intended to be re-lease is the easement described in paragraph one of the warranty deed dated February 27, 1929 and recorded in book 476, page 175, official records, and referred to in paragraph 7th of the agreement between Arrowhead Springs Corporation and California Consolidated Water Co. dated ₜgu August 6, 1930 and recorded in San Bernardino County on August 21, 1930 in book 748, page 122, official records.

The other property of Arrowhead Springs Corporation, Ltd., hereinabove mentioned, is that certain real property situated in the County of San Bernardino, particula described in the indenture dated July 1, 1925 from said Arrowhead Springs Corporation (now Arrowhead Springs Corporation Ltd.) to Pacific-Southwest Trust and Savings Bank, Tr. recorde ₁ book 14, page 1 official records.

ALSO, for and in consideration of the promises, California Water Company, a Dela₩ Corporation., does hereby wholly release, remise and quit claim ‡₼unto Arrowhead Springs Corporation Ltd. a Delaware Corporation, that çertain easement for a pipe line to run from Penyugal Springs, or vicinity, to the reservoir of California Consolidated Water₤₤₳₤₳₤₫ₓ₣ Companyheretofore granted by Arrowhead Springs Corporation Ltd. to California Consolidated Water Co. in and by paragraph No. 7th of that certain agreement dated September 26, 1931 b and between Arrowhead Springs Corporation Ltd. and California Consolidated Water Co. which said agreement was recorded December 3, 1934 as Document No. 70. This Quitclaim deed, howe ‡hall not in anywise affect the title of California Consolidated Water Company to the righ se on miner's inch constant flow of the water arising from said Penyugal Springs, or from her springs in the vicinity thereof, granted to it by Arrowhead Springs Corporation Ltd and by said paragraph 7th of said agreement. .............

7, July 16th

JUDGMENT NO. ₃₇₆₅₁ 37453 IN THE ₛₐₜₑₐₗ

CALIFORNIA, EARL LEE KELLY, DIRECTOR OF PUBLIC WORKS IN AND FOR THE STATE OF CALIFORNIA, E.Q.SULLIVAN, district engineer of the division of Highways in and for the State of California, John Doe Corporation No. One, etc. etc. , Defendants. .....................

.........IT IS HEREBY ORDERED, ADJUDGED AND DECREED:

(1) That attached hereto and made a part hereof is the judgment made and entered in that certain action entitled "West Twin Creek Water Company, a corporation, plaintiff, Vs. .............The Arrowhead Reservoir Company, a corporation, and the Sather Banking Company, a corporation, defendants," No. 4733 in the records of this Court, which judgement is hereby adopted and made final and conclusive upon the parties to this action, who are privies with and successors in interest of the parties to said action, and that the rights of the successors in interest of the parties to said action, hereinafter specifically mentioned, be adjudged and determined to have been the right to take, divert and use water from West Twin Creek and/or its tributaries, for the purposes and in the manner, to the extent and upon the conditions and lands specifically adjudicated in and by said action; that except as hereinafter specifically provided, none of the parties mentioned in said action No. 4733, or their privies or successors in interest, have any right, title or interest in and to the waters f West Twin Creek and/or its tributaries or tributary sources, and have no right to take, dive d/or use water from said West Twin Creek and/or its tributaries or tributary sources, except otherwise herein provided. ..........

(9) That the Arrowhead Springs Corporation, Limited, is in privy with and is the cessor in interest of the Sather Banking Company, one of the defendants mentioned in said ac on No. 4733, and said Arrowhead Springs Corporation, Ltd. and its successors in interest ar owners of all of the rights awarded and adjudged to said Sather Banking Company in and id decree. ...........

1727 Pa. 422 - filed Sept 30, 1937

27

provided, however, that no such additional right or easement hereby granted shall be used by grantee for the erection or installation on the property of the grantor of any structure or facility which may interefere with the operation by the grantor of its hotel, cottages, and buildings, tennis coursts, swimming pools, springs, reservoirs, pipe lines, lawas., gardens, orchards, roads, and bridges.

The other property of the grantor herein mentioned, over and across which the grantee is granted easements in order to use, operate, maintain, reapir, and replace said pipe lines, and over and across which the easements described in the last paragraph above are granted, is that certain real property situated in the Co. of S.B. particularly descri' the indenture dated July 1, 1925 from Arrowhead Springs Corp. to Pacific-Southwest Tr.....

Bk. 1230- Pg 271 Rec Spt 30, 1937

1937, July 21st. Agreement

THIS AGREEMENT made this 21st day of July, 1937, by and between ARROWHEAD SPRI CORPORATION. LTD., a corporation organized and existing under and by virtue of the laws .he State of Delaware (hereinafter called "Arrowhead"), and CALIFORNIA CONSOLIDATED WATER a corporation organized and existing under and by virtue of the laws of the State of Del (heeeinafter called "Consolidated")

WITNESSETH: WHEREAS, ARROWHEAD has this day granted to CONSOLIDATED a certai t over and across its property for a pipe line for water, but has reserved the right to maintain, operate, replace, and repair a pipe line for the passage of water over certai of said easement, with the result that the parties hereto have the joint use of certain of said easement for pipe lines for the flow of water; and

WHEREAS, it is nedessary that said pipe lines be supported by trestles over of the first portion of said easement" that may be used jointly by the parties hereto;

WHEREAS, the parties hereto desire to clarify certain language contained in made by ARROWHEAD TO CONSOLIDATED under date of February 27, 1929,

(176/175)

NOW, THEREFORE, FOR AND IN CONSIDERATION of the promises and of the sum of dollars ($10.00) paid by each of the parties hereto to the other, receipt of which is acknowledged, the parties hereto do agree as follow:

1. XX That the expense of maintenance, repair, and replacement of s

said trestles, there being sixteen (16) thereof at the present time, shall be borne equa

share and share alike by the parties hereto.

2. It is understood and agreed that the language of that certain w

deed executed by ARROWHEAD Springs Corporation (Now Arrowhead Springs Corporation Ltd.)

favor of California CONSOLIDATED Water Company, on the 27th day of February, 1929, reco

Book 476, page 176, Official Records, San Bernardino County, California, reading as fol

"Also all pipe lines, pipe racks and loading facilities for the transportati

f material water from the existing collecting basins and tunnels of the grantor to Pac

ectric Railway, or elsewhere, and also all reservoirs and tanks of the grantor, now b

it in the development and distribution of its water."

ll be deemed by the parties hereto to refere only to pipe lines, pipe racks, loading

ervoirs and tanks being used by Arrowhead at the time of the execution of said deed

elepment, collection, and distribution of water for drinking purposes at places outs

erty of Arrowhead in San

rdino County. The covenants herein contained shall inure to the benefit of, and be

the respective successors and assigns of the parties hereto. . . . . . . . . . . . . . . .

Attachment V

BOOK 5826 PAGE 565

285

RECORDED AT REQUEST OF
FIRST AMERICAN TITLE COMPANY
DEC 31 1962 at 8 A.M.
BOOK 5826 PAGE 565
OFFICIAL RECORDS
San Bernardino County, Calif.

*Ted K Carpenter*
Recorder

RECORDING REQUESTED BY

AND WHEN RECORDED MAIL TO

Campus Crusade for Christ
Arrowhead Springs Hotel
San Bernardino, California

_____ SPACE ABOVE THIS LINE FOR RECORDER'S USE _____

GRANT DEED

FOR VALUABLE CONSIDERATION, receipt of which is hereby acknowledged, ARROWHEAD SPRINGS HOTEL CO., a California corporation, hereby GRANTS to CAMPUS CRUSADE FOR CHRIST, a non-profit California corporation,

the following described real property in the COUNTY OF SAN BERNARDINO, STATE OF CALIFORNIA:

PARCEL NO. 1:

The West half of the Southwest quarter of Section 2; the East half of the Northeast quarter of Section 3; the Northwest quarter of Section 11; the South half of the Northeast quarter of Section 11; the South half of the Section 11, all in Township 1 North, Range 4 West, SAN BERNARDINO BASE AND MERIDIAN, in the County of San Bernardino State of California, according to Government Survey.

EXCEPTING that portion conveyed to Seth Marshall by Deed recorded in Book 813 of Deeds, page 254, described as follows:

BEGINNING at Corner No. 1, the Southwest corner, a

V-1

BOOK 5826 PAGE 567



one-inch pipe, whence the South quarter corner
of said Section 11 bears South 40°01' West
2070.3 feet; thence North 18°39' West 171.9 feet
to Corner No. 2, a one and one-quarter inch iron
pipe; thence North 26°34' East 268.72 feet to
Corner No. 3, a two-inch pipe; thence South 89°05'
East 79.68 feet to Corner No. 4 a two-inch iron
pipe; thence South 4°51' West 405.19 feet to Corner
No. 5, a two inch iron pipe; thence North 89°05'
West 110.67 feet to Corner No. 1, the place of be-
ginning.

EXCEPTING ALSO a right of way over three parcels
of land being portions of Section 11, Township
1 North, Range 4 West, SAN BERNARDINO BASE AND
MERIDIAN, described as follows:

(a)  A strip of land 60 feet in width, being 30
feet on each side of following described center
line of present constructed track of Pacific
Electric Railway:

BEGINNING at a point in the South line of said
Section 11, distant Westerly thereon 271.78 feet
from South quarter Section corner of said Section
11, said point of beginning being in a curve con-
cave to Northwest having a radius of 420 feet and
a tangent at said point of beginning, which bears
North 19°59'20" East; thence Northerly along said
curve a distance of 107.68 feet to a point of com-
pound curve concave to West and having a radius of
570 feet; thence Northerly along last mentioned
curve, a distance of 164.15 feet to a point of
compound curve concave to Southwest and having a
radius of 391.89 feet; thence Northwesterly along
last mentioned curve a distance of 184.67 feet to
end thereof; thence North 38°12' West tangent to
last mentioned curve at end thereof, a distance of
768.36 feet to beginning of a curve concave to
East, tangent at its beginning to last mentioned
course and having a radius of 468.58 feet; thence
Northerly along last mentioned curve a distance of
829.93 feet to end thereof; thence North 63°16'50"
East, tangent to last mentioned curve at end
thereof, 241.32 feet to beginning of a curve con-
cave to South, tangent at its beginning to last
mentioned course and having a radius of 636.78 feet;
thence Easterly along last mentioned curve a dis-
tance of 618.64 feet to end thereof; thence South
61°03'30" East, Tangent to last mentioned curve
at end thereof, a distance of 79.22 feet to be-
ginning of a curve concave to Northeast, tangent
at its beginning to last mentioned course and
having a radius of 382.25 feet; thence Southeast-
erly along last mentioned curve a distance of



зххх5826 мас568

173.17 feet to end thereof, thence South 87°00'55" East tangent to last mentioned curve at end thereof, a distance of 362.77 feet to point of ending which bears North 23°29'40" East 1896.22 feet from South quarter Section corner of said Section 11, the side line of said 60 foot strip of land at Easterly end thereof, terminating in a line which intersects at right angles the above described center line at its point of ending; the Westerly line of said 60 foot strip of land at Southerly end thereof being prolonged Southerly along a line concentric with said curve, having a radius of 420 feet, so as to terminate in South line of said Section 11, and Easterly line of said 60 foot strip of land at Southerly end thereof being shortened so as to terminate in said South line of Section 11.

(b)   BEGINNING at the intersection of the Northerly line of above described strip of land 60 feet in width with a line which intersects at right angles the above described center line at its point of ending; thence Northerly at right angles to said Northerly line a distance of 20 feet; thence Westerly parallel with said Northerly line, a distance of 170 feet; thence Southerly at right angles to said Northerly line a distance of 20 feet to a point in said Northerly line; thence Easterly along said Northerly line a distance of 170 feet to point of beginning.

(c)   BEGINNING at a point in the Southwesterly line of the above described strip of land, 60 feet in width, distant Northwesterly thereon 224.29 feet from Northerly end of the curve in said Southwesterly line which is concentric with the curve in above described center line of a strip of land 60 feet in width, having a radius of 391.89 feet; thence North 38°12' West along Southwesterly line of said strip of land 60 feet in width, a distance of 425.35 feet to a point; thence South 51°48' West a distance of 35.52 feet to a point; thence South 34°53'30" East, a distance of 283.15 feet to a point of beginning of a curve concave to Northeast, tangent at its point of beginning to said line having a bearing of South 34°53'30" East and having a radius of 950 feet; thence Southeasterly along said curve a distance of 144.10 feet, a little more or less, to the point of beginning.

The three parcels of land last above described being shown colored red on plat C.E.K. 1786-9, as

the then existing collecting basins and tunnels
of the Arrowhead Springs Corporation, Ltd., to
Pacific Electric Railway or elsewhere, and also
all reservoirs and tanks of the Arrowhead Springs
Corporation, Ltd., then being used by it in the
development and distribution of its water, as
conveyed by Arrowhead Springs Corporation to
California Consolidated Water Company by Deed re-
corded March 12, 1929 in Book 476 of Official
Records, page 175.

EXCEPTING from Parcel No. 1 and 1A, the perpe-
tual rights and easements to use those certain
pipe lines as described in Grant Deed from Arrow-
head Springs Corporation, to California
Consolidated Water Company, a corporation, dated
July 16, 1937 and recorded September 30, 1937 in
Book 1227 of Official Records, page 422, to which
Deed and the record thereof reference is hereby
made for other and further particulars.

### PARCEL NO. 2:

TOGETHER WITH the following, but without warranty,
express or implied, by Grantor as to Grantor's
right, title and interest in or to the same:

1. Springs percolating and underground waters
arising on or underlying the lands described in
the Deed recorded in Book 1331 at page 160 of
Official Records, in the office of the County
Recorder of the County of San Bernardino, State
of California;

EXCEPT to the extent to which the rights therein
and the use thereof are limited by the instru-
ments specified and designated in that certain
deed recorded in Book 1325 at page 268, of Official
Records, in the office of the County Recorder of
the County of San Bernardino, State of California.

2. All water of West Twin Creek and other water
rights appurtenant to said lands adjudicated to
Sather Banking Company by the decree of the Sup-
erior Court of the State of California, in and
for the County of San Bernardino, dated June 14,
1894 in the case pending in said court under the
number 4733, wherein West Twin Creek Water
Company, a corporation, was plaintiff, and said
Sather Banking Company, and others, were defen-
dants; as confirmed in a judgment and decree of
said Superior Court of the State of California,
in and for the County of San Bernardino, dated
July 16, 1937 in an action pending in said court



BOOK 5826 PAGE 571

under the number 37453, wherein West Twin Creek
Water Company, a corporation, was plaintiff, and
wherein it was determined that Arrowhead Springs
Corporation, Ltd., grantor in the deed aforesaid,
was the successor in interest of said Sather
Banking Company as and to all of the rights adjudi-
cated to said Sather Banking Company in said
decree in said case no. 4733.

SUBJECT, HOWEVER, to the rights and interest of
California Consolidated Water Company and its
successors in interest under the agreements and
deed specified in said deed recorded in Book 1325
at page 268, Official Records, in the office of
the County Recorder of theCounty of San Bernardino,
State of California.

3.  All waters of East Twin Creek and other waters
appurtenant to said lands adjudicated to said
Arrowhead Springs Corporation, Ltd. in a judgment
and decree rendered by the Superior Court of the
State of California, in and for the County of San
Bernardino, dated October 19, 1931 in the case
pending before said court under the number 31796,
in which Del Rosa Mutual Water Company, a corpor-
ation, was plaintiff, and said Arrowhead Springs
Corporation, Ltd., sued under the name of Arrowhead
Springs Corporation, and others, were defendants.

SUBJECT, HOWEVER, to the rights and interest of
California Consolidated Water Company and its
successors in interest under the agreements and
deeds specified in said deed recorded in Book 1325
at page 268, Official Records, in the office of
the County Recorder of the County of San Bernardino,
State of California.

4.  All other water rights, and all easements,
servitudes, and privileges with respect to water
and water rights, all shares of stock, if any
evidencing the same, all wells, pumping stations,
engines, machinery, reservoirs, appliances, pipe,
flumes and ditches, formerly owned by Arrowhead
Springs Corporation, Ltd., or by Arrowhead Springs
Corporation; and any other such property and rights,
if any, as are now owned by Seller and are located
in the County of San Bernardino, State of California
or are appurtenant to land located in said County.

Anything hereinabove in this Deed to the contrary
notwithstanding Grantor makes no warranty, expressed
or implied with regard to or in connection with
Grantor's right, title or interest in or to any





BOOK 5826 PAGE 577

22nd:

Notice of Lis Pendens issued out of the Superior Court of the State of California in and for the County of San Bernardino, The People of the State of California acting by and through the Department of Public Works, Plaintiff, vs. Arrowhead Springs Hotel Co., a corporation, et al, recorded November 2, 1962 in Book 5795 of Official Records, page 829.

Dated this 26th day of _____ December _____, 19 62 .

SEAL

ARROWHEAD SPRINGS HOTEL CO.

By _____
                    President

By _____
                    Secretary

STATE OF CALIFORNIA

CITY AND COUNTY OF SAN FRANCISCO }  SS

On this 26th day of _____ December _____ in the year one thousand nine hundred and sixty- two _____ before me, PATSY R. STAHL , a Notary Public in and for the City and County of San Francisco, State of California, duly commissioned and sworn, personally appeared _____ BENJAMIN H. SWIG and JOHN J. GOLDBERG known to me to be the President and Secretary respectively of the corporation described in and that executed the within instrument, and also known to me to be the persons who executed the within instrument on behalf of the corporation therein named, and acknowledged to me that such corporation executed the same.

IN WITNESS WHEREOF I have hereunto set my hand and affixed my official seal in the City and County of San Francisco the day and year in this certificate first above written.

SEAL

_____
PATSY R. STAHL
Notary Public
In and for the City and County of
San Francisco, State of California
My Commission Expires: 1/16/65

ATTACHMENT "R"
RECORDED WATER PRODUCTION IN STRAWBERRY CREEK BASIN
(Quantities in Acre-Feet)

| Calendar Year | 2N3W30 Arrowhead Puritas | 2N4W26 Lake Gregory Water Company | 2N3W29 So. Cal. Water Company | Total |
|---|---|---|---|---|
| 1947 | 178 | - | | 178 |
| 48 | 123 | - | | 123 |
| 49 | 162 | - | | 162 |
| 50 | 159 | - | 3 | 162 |
| 1951 | 110 | - | 10 | 120 |
| 52 | 289 | - | 4 | 293 |
| 53 | 151 | - | 8 | 159 |
| 54 | 185 | - | 10 | 195 |
| 55 | 164 | - | 11 | 175 |
| 1956 | 135 | 13 | 14 | 162 |
| 57 | 151 | 13 | 14 | 178 |
| 58 | 248 | 14 | 4 | 266 |
| 59 | 163 | 14 | 17 | 194 |
| 60 | 109 | 12 | 12 | 144 |
| 1961 | 86 | 46 | 21 | 153 |
| 62 | 93 | 16 | 12 | 121 |
| 63 | 88 | - | 18 | 106 |
| 64 | 79 | 5 | 17 | 101 |
| 65 | 150 | 5 | 16 | 171 |
| 1966 | 250 | 14 | 13 | 277 |
| 67 | 256 | 21 | 13 | 290 |
| 68 | 215 | 11 | 18 | 244 |
| 69 | 362 | 23 | 20 | 405 |
| 70 | 198 | 12 | 73 | 233 |
| 1971 | 155 | - | 25 | 180 |
| 72 | 123 | - | 24 | 147 |
| 73 | 160 | - | 23 | 183 |
| 74 | 146 | 0 | 27 | 173 |
| 75 | 143 | 0 | 27 | 170 |
| 1976 | 141 | 1 | 35 | 177 |
| 77 | 142 | 1 | 28 | 171 |
| 78 | 171 | 1 | 30 | 202 |
| 79 | 187 | 37 | 30 | 254 |
| 80 | 182 | 41 | 52 | 275 |
| 1981 | 187 | 29 | 1 | 217 |
| 82 | 189 | 39 | 0 | 228 |
| 83 | 265 | 55 | 0 | 320 |
| 84 | 242 | 47 | 11 | 300 |
| 85 | 178 | 38 | 7 | 223 |

ATTACHMENT "P"
EAST TWIN CREEK FLOW AT USGS GAGING STATION ABOVE
INTAKE TO DEL ROSA MUTUAL WATER COMPANY
(Quantities in Acre-Feet)

| Water Year | USGS Flow In Creek | Water Year | USGS Flow In Creek |
|---|---|---|---|
| 1919-20 | i | | |
| 1920-21 | 3170 | 1955-56 | 1670 |
| 1921-22 | 11,000 | 1956-57 | 1680 |
| 1922-23 | 3680 | 1957-58 | 6200 |
| 1923-24 | 1600 | 1958-59 | 1300 |
| 1924-25 | 1430 | 1959-60 | 1040 |
| 1925-26 | 2520 | 1960-61 | 617 |
| 1926-27 | 4070 | 1961-62 | 1790 |
| 1927-28 | 1310 | 1962-63 | 706 |
| 1928-29 | 1950 | 1963-64 | 720 |
| 1929-30 | 1840 | 1964-65 | 1150 |
| 1930-31 | 1100 | 1965-66 | 3760 |
| 1931-32 | 3100 | 1966-67 | 6620 |
| 1932-33 | 1260 | 1967-68 | 1750 |
| 1933-34 | 1360 | 1968-69 | 14,680 |
| 1934-35 | 2530 | 1969-70 | 2000 |
| 1935-36 | 2070 | 1970-71 | 1780 |
| 1936-37 | 7080 | 1971-72 | 1390 |
| 1937-38 | 10,220 | 1972-73 | 3160 |
| 1938-39 | 4070 | 1973-74 | 1610 |
| 1939-40 | 3110 | 1974-75 | 1550 |
| 1940-41 | 10,010 | 1975-76 | 1060 |
| 1941-42 | 2630 | 1976-77 | 989 |
| 1942-43 | 7700 | 1977-78 | 8780 |
| 1943-44 | 4220 | 1978-79 | 4110 |
| 1944-45 | 4310 | 1979-80 | 15,820 |
| 1945-46 | 2480 | 1980-81 | 3500 |
| 1946-47 | 2580 | 1981-82 | 3660 |
| 1947-48 | 1320 | 1982-83 | 12,320 |
| 1948-49 | 1800 | 1983-84 | |
| 1949-50 | 1900 | 1984-85 | 205 |
| 1950-51 | 940 | | |
| 1951-52 | 5520 | | |
| 1952-53 | 1650 | | |
| 1953-54 | 3590 | | |
| 1954-55 | 2020 | | |

i - Incomplete
64 year average 1921-1984 = 3590 ac-ft per year

