SOMACH SIMMONS & DUNN
MICHAEL W. DAUGHERTY, ESQ. (CO Bar No. 49074, admitted *pro hac vice*)
RAMSEY L. KROPF, ESQ. (CO Bar No. 21528, admitted *pro hac vice*)
1155 Canyon Blvd., Suite 110
Boulder, CO 80302
Telephone (916) 446-7979
Facsimile: (916) 446-8199
mdaugherty@somachlaw.com
rkropf@somachlaw.com

LAW OFFICE OF FRANK LAWRENCE
FRANK LAWRENCE, ESQ. (CA. Bar No.147531)
ZEHAVA ZEVIT, ESQ. (CA. Bar No. 230600)
2036 Nevada City Highway No. 516
Grass Valley, CA 95945
Telephone: (530) 362-8434
frank@franklawrence.com
zehava@franklawrence.com

Attorneys for Defendant-Intervenor
YUHAAVIATAM OF SAN MANUEL NATION,
a federally recognized Indian tribe, also federally recognized as
SAN MANUEL BAND OF MISSION INDIANS

# UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

## EASTERN DIVISION – RIVERSIDE

| | |
|---|---|
| SAVE OUR FOREST ASSOCIATION,<br><br>Plaintiff,<br><br>v.<br><br>UNITED STATES FOREST SERVICE, *et al*.,<br><br>Defendants. | Case No.: 5:24-cv-01336-JGB-DTB<br><br>**REPLY BRIEF OF YUHAAVIATAM OF SAN MANUEL NATION TO OPPOSITION OF USFS TO MOTION TO DISMISS**<br><br>Hearing Date: March 9, 2026 |

| | |
|---|---|
| | Hearing Time: 9:00 a.m.<br>Courtroom: 1<br>Judge: Hon. Jesus G. Bernal<br><br>Action Filed:  June 25, 2024 |
| YUHAAVIATAM OF SAN MANUEL NATION, a federally recognized Indian tribe, also federally recognized as SAN MANUEL BAND OF MISSION INDIANS<br><br>           Defendant-Intervenor. | |

1

2

**TABLE OF CONTENTS**

INTRODUCTION ...................................................................................................... 1

ARGUMENT ............................................................................................................. 1

   1. The Nation is a Required Party under Rule 19(a)(1)(A) ................................... 1

   2. The Nation is Also a Required Party under Rule 19(a)(1)(B) ........................... 2

   3. The Public Rights Exception Does Not Apply Here ........................................ 8

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## TABLE OF AUTHORITIES

2

### CASES

3

*Am. Greyhound Racing, Inc v. Hull.*, 305 F.3d 1015 (9th Cir. 2002) ............... 8, 10

4

*Confederated Tribes of Chehalis Indian Reservation v. Lujan,* 928 F.2d

5

    1496 (9th Cir. 1991) ....................................................................................... 2

6

*Conner v. Burford,* 848 F.2d 1441 (9th Cir. 1988) ................................................. 8

7

*Davawendewa v. Salt River Project Agric. Improvement & Power Dist.,*

    276 F.3d. 1150 (9th Cir. 2002) ...................................................................... 3

8

*Deschutes River All. V. Portland General Electric Company*, 1 F.4th

9

    1153 (9th Cir. 2021) ...................................................................................... 8

10

*Dine Citizens Against Ruining our Env't v. Bureau of Indian Affairs,*

    932 F.3d 843 (9th Cir. 2019)..........................................................4, 6, 8, 9, 11

11

*E.E.O.C. v. Peabody W. Coal Co.,* 610 F.3d 1070 (9th Cir. 2010) ..................... 3, 5

12

*E.E.O.C. v. Peabody W. Coal Co.,* 400 F.3d 774 (9th Cir. 2005) .......................... 7

13

*Kescoli v. Babbitt,* 101 F.3d 1304 (9th Cir. 1996) ................................................. 9

14

*Kettle Range Conservation Group v. U.S. Bureau of Land Management,*

15

    150 F.3d 1083 (9th Cir. 1998)................................................................... 9, 11

16

*Kickapoo Tribe of Indians v. Babbit,* 43 F.3d 1491 (D.C. Cir. 1995)..................... 9

*Klamath Irrigation District v. U.S. Bureau of Reclamation,* 48 F.4th

17

    934 (9th Cir. 2022) ..................................................................................... 4, 6

18

*Maverick Gaming LLC v. U.S.,* 123 F. 4th 960 (9th Cir. 2024) .......................... 7, 8

19

*Michigan v. Bay Mills Indian Cmty.*, 572 U.S. 782 (2014)..................................... 8

20

*Northern Arapaho Tribe v. Harnsberger,* 697 F.3d 1272 (10th Cir.

21

    2012) ............................................................................................................ 7

22

*Shermoen v. U.S.*, 982 F.2d 1312 (9th Cir. 1992) ................................................... 9

*Southwest Center for Biological Diversity v. Babbitt,* 150 F.3d 1152

23

    (9th Cir. 1998) ............................................................................................... 6

24

*Taylor v. BIA,* 325 F. Supp. 2d 1117 (S.D. Cal. 2004)............................................ 7

25

*White v. University of California,* 765 F.3d 1010 (9th Cir. 2014) .............. 8, 10, 11

26

27

### STATUTES

28

Fed. R. Civ. P. 19 ..................................................................................*passim*

**INTRODUCTION**

The United States Forest Service ("USFS") opposes the Yuhaaviatam of San Manuel Nation's ("Nation") Motion to Dismiss on three grounds, all of which fail. First, the USFS's insistence that the Nation must be a party to the challenged SUP to qualify as a "required" party under Rule 19(a) is simply wrong under established precedent. Second, the argument that the Nation lacks "legally cognizable interests" in the current action is also wrong. Finally, the "public rights exception" to dismissal under Rule 19, for which the USFS advocates, does not apply here under settled Ninth Circuit authority. Thus, the Complaint should be dismissed under Rule 19(b). Dismissal would serve the interests of justice and would not, contrary to USFS's exaggerated rhetoric, "hamstring judicial review of federal agency actions." Opp'n at 1:14.

**ARGUMENT**

**1. The Nation is a Required Party under Rule 19(a)(1)(A)**

A party is required under Rule 19(a)(1)(A) if complete relief cannot be accorded in its absence. Here, complete relief cannot be accorded in the Nation's absence because this case directly threatens the Nation's water rights, sovereignty rights, and other rights discussed in the Opening Brief. This reality bars according complete relief for two reasons. First, federal law requires that federal agencies, including the USFS, act as a fiduciary to Indian tribes and protect their sovereign tribal interests. *See, e.g.,* https://www.doi.gov/document-library/secretary-order/so-3403-joint-secretarial-order-fulfilling-trust-responsibility. When making its decision regarding Blue Triton's SUP, the USFS was thus required to consider how that decision might affect the Nation's numerous water and sovereignty rights. The undisputable existence of these rights is presumably why SOFA's First Amended Complaint explicitly references the Nation, directly attacking its rights by alleging "[the Nation] has not demonstrated water rights." First Amended Complaint ("FAC" or

1    "Complaint") ¶ 110.  Given the Nation's existing water and sovereignty rights, and

2    the USFS's trust and fiduciary obligations related to those rights, the Court must

3    consider whether and how the USFS's actions might impact the Nation's water and

4    sovereignty, which the Complaint expressly challenges at ¶110.  Adjudicating the

5    action *without* the Nation would fail to resolve issues this Court must resolve.  And

6    as the USFS has shown by objecting to the Nation's current motion, as well as its

7    past conduct related to this matter, the federal agency not only refuses to

8    acknowledge that this action threatens the Nation's rights, including reclaimed

9    ancestral territory that would be directly harmed should SOFA prevail, the agency

10   obviously has no intent to consider, represent, or protect those interests or rights vis-

11   à-vis SOFA's claims.  Thus, in the Nation's absence, complete relief cannot be

12   accorded here, in part because the Court will lack fundamental information required

13   to adjudicate the complaint.

14       Complete relief also cannot be afforded because "[j]udgment against the federal

15   officials would not be binding on the … Nation, which could continue to assert" its

16   right to the water at issue here, as well as its sovereign governmental interests

17   implicated here.  *Confederated Tribes of Chehalis Indian Reservation v. Lujan,* 928

18   F.2d 1496, 1498 (9th Cir. 1991) (Quinault Nation was a necessary party under Rule

19   19).  Accordingly, even if Plaintiff wins here, the Nation can still assert its rights to

20   divert water through the facilities in Strawberry Canyon as well as its sovereign

21   governmental rights, and Plaintiff would not be afforded complete relief.

22   **2. The Nation is Also a Required Party under Rule 19(a)(1)(B)**

23       A party is required under Rule 19(a)(1)(B)(i) when it "claims an interest relating

24   to the subject of the action and is so situated that disposing of the action in the

25   [party's] absence may ... as a practical matter impair or impede the [party's] ability

26   to protect the interest."  Fed. R. Civ. P. 19(a)(1)(B)(i).  The USFS argues the Nation

27   lacks an interest in this action because it is not a party to or a recipient of the

28   challenged SUP.  Opp'n 7:8-20.  This argument completely misses its mark.

1    The Nation is *not required to show* that it has a direct interest in the SUP as a

2  party thereto.  Rather, the Nation must show only that it has an interest "relating to"

3  the SUP's threatened invalidation.  Rule 19(a)(1)(B)(i).  The Nation has

4  demonstrated numerous legally-protected interests and rights "relating to" the

5  threatened invalidation, all of which will be severely and irreparably negatively

6  impacted if this action succeeds.  Some of the Nation's interests at stake here lie at

7  the very core of tribal sovereignty and self-rule, and others pertain to fundamental

8  rights such as land use, water rights, and contractual rights.  The USFS

9  misrepresents Rule 19's settled requirements by arguing the Nation is not a required

10  party in this action simply because it is not a party to the SUP.

11    A "public entity has an interest in a lawsuit that could result in the invalidation

12  or modification of one of its … practices."  *E.E.O.C. v. Peabody W. Coal Co.,* 610

13  F.3d 1070, 1082 (9th Cir. 2010).  Indian tribes are "public entities" under Rule 19.

14  *Id.*  The Ninth Circuit has also held that "a party to a contract is necessary, and if not

15  susceptible to joinder, indispensable to litigation seeking to decimate that contract."

16  *Davawendewa v. Salt River Project Agric. Improvement & Power Dist.,* 276 F.3d.

17  1150, 1157 (9th Cir. 2002).

18    Here, the Nation has demonstrated that this lawsuit "could result in the

19  invalidation or modification ... of its … practices."  *Peabody W. Coal Co.,* 610 F.3d

20  at 1082.  Indeed, the Nation has presented numerous practices that this lawsuit could

21  decimate, including wildfire protection activities, governmental administration, land

22  use, economic development, cultural repatriation, and day-to-day life. *See* Opening

23  Brief at p. 12, lines 2-27.

24    Unable to deny the *existence* of the Nation's rights and interests, as described in

25  its Opening Brief, the USFS instead disputes that these rights and interests are at

26  stake here.  It asserts the Complaint "contains no claims against the Nation and does

27  not seek any declaration that the Nation holds no water rights."  Opp'n 8:5-6.  This

28  simplistic argument fails for two reasons.  First, the Complaint *does* expressly attack

the Nation's water rights. *See* FAC ¶ 110 ("[The Nation] has not demonstrated water

rights").  The Complaint does so because the Nation's water rights are inescapably

bound to the SUP at issue here, which the Complaint acknowledges at FAC ¶ 96

("[T]he USFS has agreed to allow BTB to continue to occupy the SBNF … for the

sole purpose of delivering water to the San Manuel").  The Complaint effectively

seeks to vitiate the Nation's rights without seeking a direct declaration as to their

validity. Second, the argument is misplaced because Rule 19 does not require the

Nation show that its water rights are "the subject" of this case, as the USFS implies.

Rather, under Rule 19, the Nation need only show that its water rights are "related

to" the subject of this litigation. It has done so.

 Second, the USFS asserts the Nation lacks the requisite interest in this action

because the "SUP does not service any of the Nation's water rights, but authorizes

only BlueTriton to exercise BlueTriton's water rights."  Opp'n 8:7-9; *see id. at* 9:10-

12 ("the subject of this action – the 2023 SUP – does not provide the Nation with

any legal rights whatsoever").  This argument again misconstrues Rule 19, by

contending the Nation must demonstrate that the *SUP* at issue here *establishes* the

water rights that this case threatens.  This is incorrect.  Rule 19 only requires that the

Nation demonstrate legally-cognizable rights that, *as a practical matter*, are

threatened here, regardless of the original source of those rights.  *See, e.g., Klamath

Irrigation District v. U.S. Bureau of Reclamation,* 48 F.4th 934, 944 (9th Cir. 2022)

(case implicated "the Tribes' long-established reserved water rights"); *Dine Citizens

Against Ruining our Env't v. Bureau of Indian Affairs,* 932 F.3d 843, 852 (9th Cir.

2019) ("our case law makes clear that an absent party may have a legally protected

interest at stake in procedural claims where the effect of a plaintiff's successful suit

would be to impair a right already granted"). This, the Nation has done.

 Next, the USFS makes the same mistake when arguing the Nation lacks

cognizable contractual rights at issue here.  The USFS erroneously asserts the

Nation's rights under the 1931 Contract (between the Nation's and BlueTriton's

1   predecessors-in-interest) are immaterial for purposes of Rule 19 because any

2   contractual water rights established in that contract are "not provided for in or by the

3   2023 SUP." Opp'n 9:9-10. But the Nation need not show that the contractual rights

4   at stake in this lawsuit were established *by* the SUP. Rather, it is required to show

5   that this case, challenging the SUP, threatens legally-cognizable contractual rights

6   even if those rights were established outside the SUP. This too, the Nation has done.

7       The USFS's erroneous reading of Rule 19 carries over into its argument that the

8   Nation's legally-cognizable governmental, sovereign, and functional interests in

9   maintaining Arrowhead Springs' historic water supply and only source of potable

10  water are insufficient to satisfy Rule 19's requirements. Opp'n 10:4-17. The USFS

11  claims these interests are insufficient because, while they are affected by the SUP,

12  they are not interests "in the 2023 SUP." *Id*., at 10:17. But, as noted above, the fact

13  that the Nation's interests are not established in the 2023 SUP itself is immaterial.

14  Ninth Circuit precedent provides that a "public entity has an interest in a lawsuit that

15  could result in the invalidation or modification of one of its ordinances, rules,

16  regulations, or practices." *Peabody,* 610 F.3d at 1082. That holding means the

17  Nation has a Rule 19 "interest" here because this case could invalidate and/or

18  modify several of the Nation's most fundamental governmental practices,

19  agreements, and regulatory functions. *See* Opening Brief at p. 12, lines 2-27. The

20  Complaint itself acknowledges the existence of at least some of those practices and

21  agreements. *See* FAC ¶ 96. Rule 19's requirement is thus satisfied.

22      The USFS argues the Nation's cited authorities (showing that the Nation

23  possesses cognizable interests here) are inapposite because the "required" tribes in

24  those cases were "actual parties to the actions challenged in the lawsuits." Opp'n

25  11:14. The USFS apparently believes an Indian tribe is only "required" under Rule

26  19 when it is an "actual [named] party to the action[] challenged in the lawsuit[]."

27  *Id.* Again, the USFS errs. The Ninth Circuit has repeatedly held Indian tribes are

28  "required" under Rule 19 even when they are not actual parties to the actions

challenged in the lawsuits.  For example, in *Klamath Irrigation*, water districts and

users filed an APA action against the Bureau of Reclamation's decision regarding

the distribution of waters in the Klamath Water Basin.  They sought a declaration

that the Bureau's operation of the Klamath Project pursuant to a 2019 Amended

Proposed Action based on certain biological assessments violated the APA.  The

court held that the Hoopa and Klamath Tribes were "required" under Rule 19

because, as a practical matter, plaintiffs' claims would result in the tribes not being

able to benefit from water.  The tribes were thus "required" even though they were

not "parties" to the challenged action.  As the court there explained:

> "A suit, like this one, that seeks to amend, clarify, reprioritize, or otherwise
> alter Reclamation's ability or duty to fulfill the requirements of the
> [Endangered Species Act] implicates the Tribes' long-established reserved
> water rights. *The Districts' invocation of the APA does not alone render this
> suit merely procedural.  Put simply, if the Districts are successful in their
> suit, the Tribes' water rights could be impaired, so the Tribes are required
> parties under [Rule 19].*"

*Id.* at 943-44 (emphasis added).

Similarly, *Dine Citizens* held that the Navajo Transitional Energy Company

("NTEC"), a wholly-owned Tribal entity, had a legally-protected interest in the

subject matter of the action even though NTEC was not a party to the challenged

action.  "Although Plaintiff's challenge is to Federal Defendants' NEPA and ESA

processes (rather than to anything that NTEC has done) ... it may have retroactive

effects on approvals already granted [to NTEC]…."  *Id.* at 853.  If Plaintiffs

succeeded in their challenge and the agency actions were vacated, "NTEC's interest

in [its] existing lease, rights of way, and surface mining permits would be impaired."

*Id.*  Accordingly, NTEC was a "required" party.

In a third example, *Southwest Center for Biological Diversity v. Babbitt,* 150

F.3d 1152 (9th Cir. 1998), the plaintiff alleged the Secretary of the Interior's plan to

begin using the newly completed Additional Active Conservation Capacity (AACC)

behind the Roosevelt Dam violated the Endangered Species Act and the National

1    Environmental Policy Act.  The Court held that the Salt River Pima-Maricopa

2    Indian Community had "an interest in the subject matter of Southwest's suit because

3    the [tribe] has an interest in the AACC becoming available for use as soon as

4    possible," and "an injunction would impair the [tribe's] interest." *Id.* at 1153.

5    Although the Court found the tribe was not required under Rule 19 because the

6    United States could represent the tribe's interests in that case – a circumstance that is

7    patently absent here, *see* Opening Brief at pp. 14-17 – *Southwest Center* shows the

8    tribe had a cognizable interest under Rule 19 even though it was not a named party

9    in the challenged federal action.[1]

10       In each of these cases, and many others like them,[2] the intervening tribe or tribal

11    entity was "required" even though it was not a "party" to the challenged action.  The

12    common thread in these cases is that the tribal entities' fundamental interests,

13    sovereignty, financial interests, water rights, contractual rights, and/or sovereign

14    governmental rights would have been impacted had plaintiffs' claims been accepted.

15    In each case the court engages in a "fact specific" inquiry.  *Maverick Gaming LLC v.*

16    *U.S.,* 123 F. 4th 960, 972 (9th Cir. 2024).  The facts here demonstrate beyond any

17    doubt that this case threatens many of the Nation's fundamental rights and interests.

18       The USFS's argument that dismissal under Rule 19 would prevent plaintiffs

19    from seeking review of environmental impact statements relating to matters that

20    implicate significant interests of federally-recognized Indian tribes rehashes

21    arguments the Ninth Circuit long ago resolved.  Opp'n at p. 12.  "We have regularly

22    held that the tribal interest in immunity overcomes the lack of an alternative remedy

23

24      [1] The fact that the USFS fails to even acknowledge the Nation's water rights and
sovereign interests that SOFA challenges is all this Court needs to know to conclude

25    the agency will not protect the Nation's interests.  Of course, the record of the
federal government's failure to protect the Nation's interests, regarding its right to

26    water from BTB's infrastructure, is well documented.  *See* Opening Brief at 14-17.

27    [2] *See, e.g.*, *E.E.O.C. v. Peabody Western Coal Co.,* 400 F.3d 774, 778 (9th Cir.
2005); *Taylor v. BIA,* 325 F. Supp. 2d 1117, 1120 (S.D. Cal. 2004); *Northern*

28    *Arapaho Tribe v. Harnsberger,* 697 F.3d 1272, 1279 (10th Cir. 2012).

1  or forum for the plaintiffs." *Am. Greyhound Racing, Inc v. Hull.*, 305 F.3d 1015,

2  1025 (9th Cir. 2002).  Indeed, the Ninth Circuit has found "a 'wall of circuit

3  authority' in favor of dismissing actions in which a necessary party cannot be joined

4  due to tribal sovereign immunity—'virtually all of the cases to consider the question

5  appear to dismiss under Rule 19, regardless of whether an alternative remedy is

6  available, if the absent tribes are Indian tribes invested with sovereign immunity.'"

7  *Deschutes River All. V. Portland General Electric Company*, 1 F.4th 1153, 1163

8  (9th Cir. 2021) (*quoting Diné Citizens*, 932 F.3d at 857, and *White v. University of*

9  *California,* 765 F.3d 1010, 1028 (9th Cir. 2014)) (internal quotation marks and

10  alterations omitted).[3]  "This result [*i.e.*, that only tribes may seek review of an EIS

11  covering federal action relating to tribal interests], however, is for Congress to

12  address, should it see fit, as only Congress may abrogate tribal sovereign immunity.

13  It is undisputed that Congress has not done so here."  *Diné Citizens*, 932 F.3d at 861

14  (*citing Michigan v. Bay Mills Indian Cmty.*, 572 U.S. 782, 790 (2014)). *See also*

15  *Maverick Gaming,* 123 F.4th at 981-82 (similarly rejecting USFS's argument).

16  **3. The Public Rights Exception Does Not Apply Here**

17  The USFS incorrectly argues the public rights exception applies here, citing

18  *Conner v. Burford,* 848 F.2d 1441 (9th Cir. 1988).  However, *Conner* shows

19  precisely otherwise under the circumstances here.  There, the Ninth Circuit defined

20  the contours of the public rights exception where an environmental group challenged

21  the BLM's issuance of oil and gas leases, alleging an inadequate Environmental

22  Impact Statement under the National Environmental Policy Act.  On appeal, several

23  lessees claimed that they were necessary parties under Rule 19.  The Court held the

24  public rights exception would apply if two conditions were met: (1) "the litigation

25  must transcend the private interests of the litigants and seek to vindicate a public

26

27  [3] Moreover, the USFS's treatment of the SUP *is* subject to judicial review in the related BTB case, in which SOFA has *amicus* standing and thus an opportunity to be

28  heard.  *BTB v. USFS*, 2:24-cv-09720-JGB-DTB (C.D. Cal.).

1   right" and (2) "although the litigation may adversely affect the absent parties'

2   interests, the litigation must not 'destroy the legal entitlements of the absent

3   parties.'"  *Kescoli v. Babbitt,* 101 F.3d 1304, 1311 (9th Cir. 1996) (*quoting Conner,*

4   *and citing Shermoen v. U.S.*, 982 F.2d 1312, 1319 (9th Cir. 1992)*, and Kickapoo*

5   *Tribe of Indians v. Babbit,* 43 F.3d 1491, 1500 (D.C. Cir. 1995)).  In *Conner* the

6   Court found that, as a practical matter, both conditions were met.

7       In subsequent cases, the Ninth Circuit rejected the public rights exception where

8   the lawsuit could potentially destroy the absent parties' legal entitlements.  For

9   example, in *Kettle Range Conservation Group v. U.S. Bureau of Land Management,*

10   150 F.3d 1083, 1087 (9th Cir. 1998), the Court found that granting the plaintiffs'

11   requested relief "would 'destroy the legal entitlements of the absent parties'….  As a

12   result, th[e] appeal [wa]s not amenable to the public rights exception."  (*Internal*

13   *citations omitted*).  In *Kescoli,* the Court declined to apply the public rights

14   exception and affirmed dismissal, reasoning that "if the action proceeded in the

15   absence of the Navajo Nation and the Hopi Tribe, the rights of their members under

16   the lease agreements could be significantly affected."  101 F.3d at 1311-12.  That

17   case "also threatened the Navajo Nation's and the Hopi Tribe's sovereignty by

18   attempting to disrupt their ability to govern themselves…"  *Id.*  The case was "not

19   limited to ensuring an agency's future compliance with statutory procedures," and

20   was "not one in which the risk of prejudice to the Navajo Nation and the Hopi Tribe

21   [was] nonexistent or minimal."  *Id.*  Similarly, in *Dine Citizens,* the Court held that

22   the public rights exception did not apply because vacating the Record of Decision,

23   which plaintiffs sought, would lead to the NTEC's losing legal rights associated

24   with a contract it had entered.  "This litigation therefore threatens to destroy NTEC's

25   existing legal entitlements," such that the public rights exception was inapplicable.

26   *Id.* at 860.  In *Shermoen,* 982 F. 2d 1312, the Court similarly held that "the public

27   rights exception to joinder rules is an acceptable intrusion upon the rights of absent

28   parties only insofar as the 'adjudication[] do[es] not destroy the legal entitlements of

the absent parties.'  [*citing Conner.*]  Because of the threat to the absent tribes' legal entitlements, and indeed to their sovereignty, posed by the present litigation, application of the public rights exception ... would be inappropriate." *Id.* at 1319. Finally, in *White,* the Court held that "the public rights exception cannot apply here because the rights of the Tribes and the Repatriation Committee will be extinguished if the Plaintiffs prevail in their claims."  765 F.3d at 1028.

Here too, the Nation's rights will be extinguished should this Court rule in Plaintiff's favor. The Complaint seeks to set aside the existing SUP and enjoin BTB and the Nation from diverting water from Strawberry Canyon.  *See* FAC p. 35. The Complaint threatens to extinguish the Nation's rights because it essentially seeks *immediate* cessation of BTB's (and, by extension, the Nation's) activities.  Rather than focusing on future USFS actions*,* the Complaint seeks instead to immediately halt existing water use, vacate the existing SUP, and dismantle the infrastructure essential to the Nation's water deliveries (*see* FAC pp. 35-36), thereby imposing immediate, direct, and fatal harm on the Nation.

The USFS alleges that Plaintiff does not seek to destroy the Nation's rights, but merely "to vindicate public rights."  Opp'n at 13:9.  That characterization is disingenuous because "[a]lmost any litigation … can be characterized as an attempt to make one party or another act in accordance with the law." *Am. Greyhound Racing, Inc.,* 305 F.3d at 1026.  The public rights exception does not apply in cases that could potentially annihilate an absent party's rights.  This case targets the Nation's use of Strawberry Canyon water.  Preventing the Nation's water use is not an incidental effect of this litigation.  Rather, it is precisely what Plaintiff seeks to stop, which explains why the Complaint was amended to specifically focus on alleged impacts of the Nation's water use. *See* FAC ¶¶ 5, 15,17, 19, 96 (BTB's sole current activity under its SUP is "delivering water to the San Manuel").

The USFS argues that the Ninth Circuit cases rejecting the public rights exception involved plaintiffs purportedly advocating public rights but actually

1   asserting their own private interests, and that this case only involves public interests.

2   Opp'n 16:2-4.  But again, the USFS conveniently forgets that there are *two* elements

3   required to apply the public rights exception.  One is that the rights a plaintiff seeks

4   to vindicate are public rather than private rights.  The other factor – a critical one –is

5   that the plaintiff's requested relief cannot "destroy the legal entitlements of the

6   absent parties."  *Conner,* 848 F.2d at 1459. *See also Dine Citizens; Kettle Range;*

7   *Shermoen; Maverick; American Greyhound;* and *White*.  Here, as readily shown, the

8   Nation's fundamental rights and interests would be destroyed if Plaintiff's requested

9   relief is granted.  Accordingly, the second condition to application of the public

10   rights exception is not met, and therefore the public rights exception does not apply.

11         Also false and misleading is USFS's assertion that the Ninth Circuit deems the

12   public rights exception inapplicable only when the rights plaintiffs seek to protect

13   are *private* rights. Opp'n at 15:11-16:1.  Many Ninth Circuit opinions hold that the

14   public rights exception is inapplicable *even when plaintiffs seek to protect rights that*

15   *are public*.  As the above cited authorities demonstrate, the exception fails to apply

16   even where a lawsuit seeks to protect public rights, the rights of an unnamed party

17   stand to be destroyed by the lawsuit, and that absent party cannot be joined.  *See,*

18   *e.g., Dine Citizens*, 932 F. 3d 843, 847 and 860 (holding that although "Plaintiffs'

19   claims relate to public rights," the relevant question is "whether the litigation

20   *threatens* to destroy an absent party's legal entitlements" and accordingly, despite

21   the fact that public rights were at stake, the public rights exception did not apply);

22   *Kettle Range,* 150 F. 3d at 1084 (plaintiff environmental groups sued to stop an

23   exchange of public for private lands, based on alleged failure to comply with NEPA;

24   court did not dispute the groups' claim that the rights at issue were public rights);

25   *White,* 765 F.3d at 1028 (even though public rights were at issue, public rights

26   exception did not apply because of potential harm to absent third parties' rights).

27   The Ninth Circuit cases hold that the potential destruction of an absent party's rights

28   precludes the public rights exception.

1    Finally, the USFS' assertion that only public rights are at issue here is also

2    wrong.  The Complaint itself shows that private rights are also in play: "[M]ountain

3    residents, including members of SOFA, have had to ration water in the recent past."

4    FAC ¶ 15.  "Lakes that are affected by removal of spring water are extremely

5    important to the economy … of the mountain community, which includes SOFA

6    members." *Id.* The Complaint also alleges that BTB's and the Nation's water use is

7    a "fire threat to SOFA members … threatening SOFA members who live above and

8    below Strawberry Canyon."  FAC ¶ 16.  The Complaint separately alleges that

9    "[d]ownstream water right holders San Bernardino Valley Municipal Water District

10    ... and San Bernardino Valley Water Conservation District ... report adverse impacts

11    … in a reduction in the quantity of water to which it is entitled…"  FAC ¶ 63.

12    Water rationing and fire risk, which Plaintiff explicitly addresses in its Complaint,

13    negatively impact private rights and private property values of the "SOFA

14    members" mentioned in the Complaint.[4]  In short, SOFA itself acknowledges that at

15    least some of the rights its Complaint seeks to protect are actually its own members'

16    private rights.

17

18        Dated: February 15, 2026

19                                    Respectfully submitted,

20                                     LAW OFFICE OF FRANK LAWRENCE
                                    By: ___/s_____
21                                        Frank R. Lawrence
                                        Law Office of Frank Lawrence
22                                        Counsel for Defendant-Intervenor
                                        Yuhaaviatam of San Manuel Nation
23

24

25

26    ───────────────────
[4] *See, e.g.*, https://www.tandfonline.com/doi/full/10.1080/08965803.2020.1845553
27    (water restrictions negatively impact home prices);
     https://www.researchgate.net/publication/222788889 (wildfire risk decreases
28    property values).