SOMACH SIMMONS & DUNN
MICHAEL W. DAUGHERTY, ESQ. (Co. Bar No. 49074 admitted *pro hac vice*)
RAMSEY L. KROPF, ESQ. (Co. Bar No. 21528 admitted *pro hac vice*)
1155 Canyon Blvd., Suite 110
Boulder, CO 80302
Telephone (916) 446-7979
mdaugherty@somachlaw.com
rkropf@somachlaw.com

LAW OFFICE OF FRANK LAWRENCE
FRANK LAWRENCE, ESQ. (Ca. Bar No.147531)
ZEHAVA ZEVIT, ESQ. (Ca. Bar No. 230600)
2036 Nevada City Highway, No. 516
Grass Valley, CA 95945
Telephone: (530) 362-8434
frank@franklawrence.com
zehava@franklawrence.com

Attorneys for Defendant-Intervenor
YUHAAVIATAM OF SAN MANUEL NATION,
a federally recognized Indian tribe, also federally recognized as
SAN MANUEL BAND OF MISSION INDIANS

# UNITED STATES DISTRICT COURT
# FOR THE CENTRAL DISTRICT OF CALIFORNIA
# EASTERN DIVISION – RIVERSIDE

| | |
|---|---|
| SAVE OUR FOREST ASSOCIATION,<br><br>Plaintiff,<br><br>v.<br><br>UNITED STATES FOREST SERVICE, *et al.*,<br><br>Defendants. | Case No.: 5:24-cv-01336-JGB-DTB<br><br>**REPLY BRIEF OF YUHAAVIATAM OF SAN MANUEL NATION TO PLAINTIFF SOFA'S OPPOSITION TO MOTION TO DISMISS**<br><br>Hearing Date: March 9, 2026<br>Hearing Time: 9:00 a.m.<br>Courtroom: 1 |

|  |  |
|---|---|
| YUHAAVIATAM OF SAN MANUEL NATION, a federally recognized Indian tribe, also federally recognized as SAN MANUEL BAND OF MISSION INDIANS<br><br>Defendant-Intervenor. | Judge: Hon. Jesus G. Bernal<br><br>Action Filed: June 25, 2024 |

# CONTENTS

I.   Introduction ................................................................................................. 1

II.  Discussion .................................................................................................... 1

   A. SOFA's "Factual" Discussion is Unsupported, Wrong, and Irrelevant .......... 1

   B. The Nation is a Required Party Under Rule 19(a)(1) ..................................... 1

      1. The Nation Claims Interests Relating to the Subject Matter of the Case Under Rule 19(a)(1)(B) ............................................................................. 1

      2. The Nation's Sovereignty Interests Require Dismissal ............................... 3

      3. The Nation's Water Rights Require Dismissal ........................................... 3

      4. Complete Relief Cannot Be Accorded in the Nation's Absence ................. 4

   C. The Case Cannot Proceed Without the Nation Under Rule 19(b) ................... 4

      1. The Ninth Circuit Does Not Require the Nation to Waive its Sovereign Immunity in Order to Avoid Prejudice ........................................................ 4

      2. Prejudice Cannot Be Avoided by the Other Means SOFA Suggests ........... 5

      3. Judgment in the Nation's Absence Will Not Be Adequate ......................... 5

      4. Dismissal Will Not Strip Plaintiff of an Adequate Remedy ........................ 6

   D. The Public Rights Exception Does Not Apply Here ....................................... 6

      1. This Litigation Could Destroy the Nation's Rights ..................................... 6

      2. When a Lawsuit Advocating Public Rights Threatens to Destroy a Nonparty's Rights, Courts Decline to Apply the Public Rights Exception ... 10

      3. SOFA's Claims Are Not Merely Procedural ............................................... 10

      4. This Litigation Implicates SOFA Members' Private Rights ....................... 11

      5. The Status of the Tribe's Land is Irrelevant ................................................ 12

      6. The Lack of an Alternative Forum is Irrelevant In Determining Whether to Apply the Public Rights Exception .............................................................. 12

REPLY BRIEF OF YUHAAVIATAM OF SAN MANUEL NATION TO PLAINTIFF SOFA'S OPPOSITION TO MOTION TO DISMISS | 5:24-cv-01336-JGB-DTB

-i-

# TABLE OF AUTHORITIES

## CASES

*American Greyhound Racing v. Hull,* 305 F.3d 1015 (9th Cir. 2002) .............. 6, 10

*Conner v. Burford,* 848 F.2d 1441 (9th Cir. 1988) ................................................ 7

*Dawavendewa v. Salt River Proj. Agric. Improvement and Pwr. Dist.*, 276 F.3d 1150 (9th Cir. 2002) .................................................................................. 6

*Deschutes River Alliance v. Portland Gen. Elec. Co.,* 1 F.4th 1153 (9th Cir. 2021) ................................................................................................................ 12

*Dine Citizens Against Ruining our Env't v. Bureau of Indian Affairs,* 932 F.3d 843 (9th Cir. 2019) ............................................................................. passim

*E.E.O.C. v. Peabody W. Coal Co.*, 610 F.3d 1070 (9th Cir. 2010) ......................... 9

*Federated Indians of Graton Rancheria v. U.S.,* 2025 WL 2096171 (N.D. Cal. 2025) .......................................................................................................... 7

*Kescoli v. Babbitt,* 101 F.3d 1304 (9th Cir. 1996) .............................................. 6, 9

*Kettle Range Conservation Group v. U.S.B.L.M.,* 150 F.3d 1083 (9th Cir. 1998) ................................................................................................................ 10

*Klamath Irrigation District v. U.S. Bureau of Reclamation,* 48 F.4th 934 (9th Cir. 2022) ............................................................................................... 2, 3

*Makah Indian Tribe v. Verity,* 910 F.2d 555 (9th Cir. 2004) ..................... 4, 11, 12

*Manygoats v. Kleppe*, 558 F.2d 556 (10th Cir. 1977) ............................................ 1

*Maverick Gaming LLC v. United States,* 123 F.4th 960 (9th Cir. 2024) ............ 4, 5

*Natural Resources Defense Council v. Kempthorne,* 539 F. Supp. 2d 1155 (E.D. Cal. 2008) ............................................................................................... 8

*Republic of Philippines v. Pimentel*, 553 U.S. 851 (2008) ................................. 4, 5

*Santa Clara Pueblo v. Martinez,* 436 U.S. 49 (1978) ............................................ 4

*Shermoen v. U.S.*, 982 F.2d 1312 (9th Cir. 1992) ............................................... 2, 3

*White v. Univ. of Californi*, 765 F. 3d. 1010 (9th Cir. 2014) ......................... 2, 3, 10

*White v. Univ. of California*, No. C 12-01978 RS, 2012 WL 12335354, at *11 (N.D. Cal. Oct. 9, 2012) ............................................................................ 2

## STATUTES

Fed. R. Civ. P. 19 ........................................................................................... passim

## I. Introduction

Plaintiff Save Our Forest Association, Inc. ("SOFA") fundamentally misconstrues Rule 19 and fails to understand that the Yuhaaviatam of San Manuel Nation ("Nation") is not a private entity, but rather a sovereign government with a unique legal status. Because the Nation claims interests that may be impacted by an adverse judgment here, it is a required party. And because the Nation's immunity has not been waived or abrogated, the case must be dismissed. The public rights exception to dismissal is inapplicable.

## II. Discussion

### A. SOFA's "Factual" Discussion is Unsupported, Wrong, and Irrelevant

Much of SOFA's alleged factual discussion rests on declarations and exhibits that lack the requisite personal knowledge, foundation, authentication, and relevance the Rules of Evidence require. Some of SOFA's assertions are false, as highlighted in the Garton, Ustation, and Hamai declarations accompanying this Reply. Moreover, SOFA's lengthy "factual" discussion, comprising one-third of its Opposition, is simply irrelevant to the issues presented by the Nation's Motion to Dismiss.

### B. The Nation is a Required Party Under Rule 19(a)(1)

#### 1. The Nation Claims Interests Relating to the Subject Matter of the Case Under Rule 19(a)(1)(B)

SOFA fundamentally misconstrues Rule 19, arguing that the Nation is not required "because it has no legally protectable interests *in the challenged SUP*". SOFA Opposition, page 20 lines 1-2 ("Opp'n 20:1-2") (emphasis added). SOFA argues that it "challenged only the lawfulness of the USFS's decision" to grant the Special Use Permit ("SUP"), Opp'n 18:23, and that because "the Nation has no legal interest" *in the SUP*, "[i]f the Court grants Plaintiff's requests for relief, the Nation would not be required to act or refrain from acting." *Id.* 19:1-5. SOFA cites *Manygoats v. Kleppe*, 558 F.2d 556, 558-59 (10th Cir. 1977), in support of this argument. However:

> "*Manygoats* is an out-of-circuit decision which **has not been embraced by the Ninth Circuit** in the many years that have followed. Instead, this Circuit has consistently

>dismissed actions under Rule 19 where it concludes an Indian tribe is "necessary" [now "required"] yet not capable of joinder due to sovereign immunity, and therefore, this Court does not have the discretion to decide otherwise."

*White v. Univ. of California*, No. C 12-01978 RS, 2012 WL 12335354, at *11 (N.D. Cal. Oct. 9, 2012), *aff'd*, 765 F.3d 1010 (9th Cir. 2014) (emphasis added).

An absent party is required if it "*claims* an interest *relating to the subject* of the action …." Rule 19(a)(1)(B) (emphasis added). Here, the Nation unquestionably claims multiple interests related to this case, including sovereign governmental interests discussed at pages 5-6 and 11-13 of the Nation's Opening Brief. These interests need not be expressed in the Complaint or in the SUP. Instead, the Nation's interests must simply "relat[e] to the subject of the action." Rule 19(a)(1)(B); *see, e.g., Klamath Irrigation District v. U.S. Bureau of Reclamation,* 48 F.4th 934, 944 (9th Cir. 2022); *Dine Citizens Against Ruining our Env't v. Bureau of Indian Affairs,* 932 F.3d 843, 852 (9th Cir. 2019).

Furthermore, the absent party *need not actually possess* an interest relating to the subject of the action. It only needs a non-frivolous *claim* of such an interest. The "point of the Rule 19(a) inquiry" is "whether the Tribe[] … [has] a *claim* that is not 'patently frivolous.'" *White*, 765 F. 3d. at 1027 (quoting *Shermoen v. U.S.*, 982 F.2d 1312, 1318 (9th Cir. 1992) (emphasis in original). A "party need only have a 'claim' to an interest. Fed.R.Civ.P. 19(a)(1)(B)." *White*, 765 F.3d at 1026-27 (citation omitted).

The "impair or impede" element is satisfied if the action may detrimentally affect the nonparty's rights. *See* FRCP 19(a)(1)(B)(i); *Shermoen*, 982 F.2d at 1317-1318. Indeed, "[t]he prejudicial effect of nonjoinder need not be absolute to a legal degree (such as *res judicata* or binding precedent). It need only be that the first action may detrimentally affect the nonparty's rights." *Id.* Here, many of the Nation's fundamental rights are in danger of complete destruction because the relief SOFA seeks would eliminate the historic source of potable water for Arrowhead Springs and therefore compel the Nation to immediately cease all operations that rely upon such potable water. *See* Garton Dec.

¶¶ 7, 9-14 17; Hamai Dec. ¶¶ 12, 13.  Rule 19 does *not* require that these interests be expressly attacked in the Complaint or addressed in the SUP.  *See, e.g., Klamath,* 48 F.4th at 944; *Dine,* 932 F.3d at 852.  Rather, the Nation's interests must simply "relat[e] to the subject of the action." R. 19(a)(1)(B).

### 2. The Nation's Sovereignty Interests Require Dismissal

The Nation has claimed sovereign interests discussed at pages 5-6 and 11-13 of the Opening Brief, which SOFA's lawsuit threatens but which SOFA entirely ignores.  The Ninth Circuit and Supreme Court confirm that the Nation's interests in its aboriginal lands encompass sovereign rights.  Tribes' aboriginal interest in land generally "'amounts to a right of occupancy which the sovereign grants and protects against intrusion by third parties.'" *White*, 765 F.3d at 1015 n.2 (*quoting Tee–Hit–Ton Indians v. U.S.,* 348 U.S. 272, 279 (1955)).  The Nation also has "an interest in preserving [its] own sovereign immunity, with its concomitant right not to have [its] legal duties judicially determined without consent." *Shermoen*, 982 F.2d at 1317 (internal quotation omitted). The First Amended Complaint ("FAC") denies the Nation's water rights, *see id.* ¶ 110, seeks removal of the infrastructure delivering potable water to the Nation's sacred Arrowhead Springs property, and seeks to deny any third party, including the Nation, from exercising their rights to obtain water from Strawberry Creek for the foreseeable future.  The Nation's sovereignty interests outlined in the Opening Brief are clearly threatened here.  *See id*. Prayer ¶¶ 5, 7.

### 3. The Nation's Water Rights Require Dismissal

SOFA argues the Complaint "challenges none of the Nation's claimed water rights in this lawsuit …." Opp'n 25:8-9.  That is not true: SOFA expressly alleges the Nation "has not demonstrated water rights." FAC ¶ 110.  Moreover, SOFA's requested relief would eliminate the infrastructure that delivers water to the Nation, *see* Prayer ¶ 7, and preclude "any third party" from diverting water from Strawberry Canyon unless and until the USFS has performed a new or supplemental environmental analysis, which would likely take years. FAC, Prayer ¶5.  *See* Ustation Dec. ¶¶ 5-6.

**4. Complete Relief Cannot Be Accorded in the Nation's Absence**

SOFA incorrectly argues the Court can issue an adequate judgment in the Nation's absence because SOFA "challenges none of the Nation's claimed water rights in this lawsuit …." Opp'n 25:8-9. Rule 19's "adequacy" of the judgment element "refers … to the public stake in settling disputes by wholes, whenever possible." *Republic of Philippines v. Pimentel*, 553 U.S. 851, 870 (2008) (quotations and citations omitted). Here, SOFA seeks to "enjoin defendant from approving or allowing any third party to divert water from Strawberry Canyon" and requests an order requiring removal of all water delivery infrastructure. FAC, Prayer ¶¶ 5, 7. A judgment rendered without the Nation would be inadequate because the Nation retains sovereign, contractual and other rights to water from the Strawberry Canyon watershed. *See* Opening Brief at 5-7; Hamai Dec. ¶ 18.

**C. The Case Cannot Proceed Without the Nation Under Rule 19(b)**

**1. The Ninth Circuit Does Not Require the Nation to Waive its Sovereign Immunity in Order to Avoid Prejudice**

SOFA argues that the Nation can avoid prejudice by waiving its sovereign immunity. Opp'n 22-23. The Ninth Circuit has expressly rejected that argument: the "ability to intervene" does not lessen prejudice "if it requires waiver of immunity." *Makah Indian Tribe v. Verity,* 910 F.2d 555, 560 (9th Cir. 2004). *See Am. Greyhound Racing, Inc. v. Hull*, 305 F.3d 1015, 1025 (9th Cir. 2002) ("the tribal interest in immunity overcomes the lack of an alternative remedy or forum for the plaintiffs"). "[W]here sovereign immunity is asserted, and the claims of the sovereign are not frivolous, dismissal of the action must be ordered where there is a potential for injury to the interests of the absent sovereign." *Republic of Philippines,* 553 U.S. at 867; *see Maverick Gaming LLC v. United States,* 123 F.4th 960, 976-980 (9th Cir. 2024).

The Nation has intervened for the limited purpose of bringing this Rule 19 motion to dismiss. No other party, other than Congress, can abrogate the Nation's sovereign immunity. *See Santa Clara Pueblo v. Martinez*, 436 U.S. 49, 58 (1978). Here, the

Nation "has unequivocally expressed its intent to not waive its immunity." *Maverick*, 123 F.4th at 978.

The Nation's intervention in *BlueTriton Brands v. USFS*, 2:24-cv-09720, ("*BlueTriton*") is immaterial:

> "It is well-established that a tribe's voluntary participation in litigation for a limited purpose does not constitute a blanket waiver of immunity from suit in general. Rather, [t]he scope of the waiver depends on the particular circumstances, including the tribe's actions and statements as well as the nature and bounds of the dispute that the tribe put before the court."

*Maverick Gaming*, 123 F.4th at 978–79 (internal quotation omitted).

## 2. Prejudice Cannot Be Avoided by the Other Means SOFA Suggests

SOFA suggests the Nation can avoid prejudice by using alternative sources of water for Arrowhead Springs. That is patently false as there are no alternative potable water sources available to meet the Nation's needs. *See* Garton Dec. ¶¶ 8-13; Hamai Dec. ¶¶ 12-13. Moreover, the "prejudice" factor focuses on the *court's ability to fashion remedies*. *See* Rule 19(b)(2) ("the extent to which any prejudice could be lessened or avoided by: (A) protective provisions in the judgment; (B) shaping the relief"). The absent entity's potential actions outside the case's scope are irrelevant to the Rule 19 analysis.

## 3. Judgment in the Nation's Absence Will Not Be Adequate

SOFA argues that a judgment in the Nation's absence will be adequate because the Complaint "challenges none of the Nation's claimed water rights in this lawsuit …." Opp'n 25:8-9. Again, that is simply untrue. *See* FAC ¶ 110; *id.* Prayer ¶ 5. Furthermore, the "adequacy" of a judgment rendered without the absent party refers to the "public stake in settling disputes by wholes, whenever possible … the societal interest in the efficient administration of justice and the avoidance of multiple litigation." *Republic of Philippines*, 553 U.S. at 871. A judgment here in the Nation's absence will not settle the dispute over Strawberry Canyon water "by whole[]". *Id*. Indeed, the *BlueTriton v. USFS* and *BlueTriton v. California State Water Resources Control Board* cases are pending.

**4. Dismissal Will Not Strip Plaintiff of an Adequate Remedy**

SOFA argues that dismissal will "strip Plaintiff of any adequate remedy." Opp'n 25:13. The argument is both wrong and irrelevant. SOFA has already provisionally obtained the core relief it seeks: the USFS denied BlueTriton Brand's ("BTB's") request for a new SUP and demanded that BTB cease all water deliveries to the Nation and remove its infrastructure. *See BlueTriton,* ECF Doc. No. 1-1 (USFS denial). The disposition of that case will determine whether the USFS's denial of the SUP, the relief SOFA seeks, is permitted under the law. In addition, SOFA has amicus status in *BlueTriton,* where SOFA can present its arguments.

Moreover, the Ninth Circuit has "'regularly held that the tribal interest in immunity overcomes the lack of an alternative remedy or forum for the plaintiffs.'" *Diné*, 932 F.3d at 858 (quoting *Am. Greyhound Racing, Inc.*, 305 F.3d 1015); *see Dawavendewa v. Salt River Proj. Agric. Improvement and Pwr. Dist.*, 276 F.3d 1150, 1162 (9th Cir. 2002). "Mindful of the 'wall of circuit authority' in favor of dismissing an action where a tribe is a necessary party, we agree with the district court that this litigation cannot, in good conscience, continue …." *Id.* (*quoting White*, 765 F.3d at 1028).

**D. The Public Rights Exception Does Not Apply Here**

The public rights exception to Rule 19 dismissal has two preconditions: (1) "the litigation must transcend the private interests of the litigants and seek to vindicate a public right" *and* (2) "although the litigation may adversely affect the absent parties' interests, the litigation must not 'destroy the legal entitlements of the absent parties.'" *Kescoli v. Babbitt,* 101 F.3d 1304, 1311 (9th Cir. 1996) (citations omitted). If either condition is not satisfied, the public rights exception does not apply and the case must be dismissed.

**1. This Litigation Could Destroy the Nation's Rights**

SOFA asserts that while the Nation may have demonstrated a potential "impairment" of tribal rights, the Nation has not shown that its rights will potentially be "destroyed." SOFA cites *Federated Indians of Graton Rancheria v. U.S.,* 2025 WL

2096171 (N.D. Cal. 2025) in support. Opp'n 32:17, 33:13-34:4. But that decision actually undermines SOFA's arguments.

*Graton* analyzed what it means for a right to be "destroyed" versus "impaired" for purposes of the public rights exception. In *Graton*, a plaintiff challenged the federal government's decision to take land into trust for the Koi Nation, a federally-recognized Indian tribe. Koi sought Rule 19 dismissal and the plaintiff responded that the public rights exception applied. Koi argued that the lawsuit threatened to "destroy" its rights and that the exception was therefore barred. In evaluating the "destroy" versus "impair" question, the court asked whether the suit could potentially affect the tribe's *actions* taken pursuant to its challenged rights. The court found the lawsuit would not "destroy" any rights because the tribe had not yet acted based on the federal trust transfer, so that reversing that decision would not require Koi to alter any practices or suffer any losses. *Graton*, at *9. *Graton* thus distinguishes between "impairment" and "destruction" based on whether a nonparty has commenced significant activity pursuant to the rights the lawsuit challenges. Applying *Graton* here, because this lawsuit threatens to terminate the absent Nation's longstanding activities, water rights, sovereignty, and governmental operations undertaken pursuant to the rights this lawsuit threatens, the lawsuit threatens to "destroy" the Nation's rights.

*Conner v. Burford,* 848 F.2d 1441, 1459 (9th Cir. 1988)*,* which SOFA cites at Opp'n 32:24-33:12, similarly focused its inquiry into the potential "destruction" of a nonparty's rights on the litigation's possible impacts on the non-party's pre-litigation activities grounded on the challenged rights. *Conner* emphasized that, because no surface-disturbing activities had yet begun in that case, the "legally protected interests of the lessees [were] barely affected" by requiring the government to reconsider allowing those activities. *Conner,* 848 F.2d at 1461. *See also Graton,* 2025 WL 2096171 p. 9. *Conner* and *Graton* applied the same test, focusing on the lawsuit's potential effects on the nonparty's pre-litigation activities. *Conner* acknowledged that had the nonparty commenced activities pursuant to its challenged rights, the lawsuit would have

threatened to "destroy" those rights and the public rights exception would have applied. *Connor*, like *Graton*, supports granting the Nation's motion.

*Dine Citizens* further confirms that the "destruction" analysis focuses on the proposed litigation's potential impacts on the nonparty's pre-litigation actions. There, the BIA had authorized the operation of a mine and power plant. The nonparty had subsequently "moved mining operations into the areas designated," implemented "conservation measures," and procured "a new $115 million line of credit" secured by the mine. *Dine Citizens,* 932 F.3d at 849. The Ninth Circuit declined to apply the public rights exception:

> "[U]nlike in *Conner* where surface-disturbing activity had apparently not even been authorized or begun, the activities approved by the Record of Decision here are already taking place. This litigation therefore threatens to destroy [the nonparty's] existing legal entitlements."

*Id.,* 932 F.3d at 860. The case threatened "destruction" of rights because it sought to force the nonparty to cease actions it had commenced pursuant to its challenged rights.

*Natural Resources Defense Council v. Kempthorne,* 539 F. Supp. 2d 1155 (E.D. Cal. 2008) also analyzed when a lawsuit threatens to "destroy" a nonparty's water rights. "[P]ermanently enjoining the Bureau from performing under the water contracts would have the same practical effect of destroying an absent contractor's entitlement to the receipt or use of CVP water." *Id.* at 1191. The court held that "[i]f Plaintiffs seek to enjoin the Bureau from performing under … contracts held by absent water contractors," dismissal was required. *Id.* In other words, litigation that threatened the delivery of water pursuant to a contract could result in depriving nonparties of the benefit of that water and therefore threatened to "destroy" the nonparties' rights.

Under the test articulated in these cases, if SOFA's lawsuit succeeds, the Nation's rights will most certainly be *destroyed*. Many of the Nation's longstanding activities and practices will be annihilated, as will its sovereign interest in its governmental programs and activities at Arrowhead Springs. *See* Garton Dec. ¶ 7; Hamai Dec. ¶ 12-13. Opening Brief 5:6-7:22 and 11:15-14:15.

SOFA downplays the type and extent of the Nation's rights threatened here, suggesting the Nation's interests are merely contractual, and minimizing those rights as insignificant. Opp'n 32:1-5. SOFA's effort to treat the Nation as a private entity borders on the insulting and is, in any event, unavailing. Unquestionably, the Nation is a sovereign government, with responsibilities to its citizens, programs, lands and fisc. If the Nation is deprived of its historic, potable water supply for Arrowhead Springs, where government offices are located, where it operates governmental programs, and where it operates Tribal economic development projects, its sovereignty is effectively vitiated, as are its government's programs and operations at Arrowhead Springs. *See E.E.O.C. v. Peabody W. Coal Co.*, 610 F.3d 1070, 1082 (9th Cir. 2010) (a "public entity has an interest in a lawsuit that could result in the invalidation or modification of one of its ordinances, rules, regulations, or practices"). The Ninth Circuit acknowledges that the potential impairment and destruction of tribal sovereignty requires that a court decline to apply the public rights exception. *See Kescoli,* 101 F.3d at 1312 (declining application of the public rights exception in part because "[t]he litigation also threaten[ed] the Navajo Nation's and the Hopi Tribe's sovereignty by attempting to disrupt their ability to govern themselves.").

SOFA claims the Nation will suffer little to no harm because the Nation can allegedly obtain alternative water supplies even if SOFA's lawsuit proceeds. SOFA's unfounded speculation is both wrong and irrelevant. In fact, the Nation does not currently possess alternatives to provide potable water for Arrowhead Springs; further, even if the Nation were to find a feasible way to do so, it certainly could not do so easily, nor could it do so in time to combat the destruction that SOFA's lawsuit threatens to wreak. *See* Garton Dec. ¶¶ 8-14; Hamai Dec. ¶¶ 12-14; Ustation Dec. ¶ 6. Furthermore, SOFA's speculation about theoretical alternative sources of water is irrelevant because a nonparty's ability to protect its interests through alternative means is not germane to the public rights exception.

### 2. When a Lawsuit Advocating Public Rights Threatens to Destroy a Nonparty's Rights, Courts Decline to Apply the Public Rights Exception

SOFA discusses three cases that declined to apply the public rights exception because the plaintiffs in those cases advocated private rights. It implies that courts should only decline to apply the public rights exception when a plaintiff's intent in filing a lawsuit is to protect its private interests. *See* Opp'n 29:23-31:20. This argument is wrong, first, because the public rights exception only applies if *two* conditions are satisfied: (1) the litigation seeks to protect public interests, *and* (2) the litigation does not threaten to destroy an absent party's legal entitlements. Here, the second condition is clearly not satisfied and the exception therefore does not apply.

Second, the Ninth Circuit routinely declines to apply the public rights exception – even when plaintiffs assert purely public rights – when a nonparty's rights are in danger of destruction. *See, e.g., Dine Citizens*, 932 F.3d at 847 and 860 (the question is "whether the litigation threatens to destroy an absent party's legal entitlements" and accordingly, despite the fact that public rights were at stake, the public rights exception did not apply); *White,* 765 F.3d at 1028 (even though public rights were at issue, public rights exception did not apply because of potential harm to absent third parties' rights); *Kettle Range Conservation Group v. U.S.B.L.M.,* 150 F.3d 1083, 1084 (9th Cir. 1998)(environmental groups sued to stop an exchange of public for private lands, alleging a NEPA violation; court did not dispute public rights were at issue, but nonetheless declined to apply the public rights exception).

### 3. SOFA's Claims Are Not Merely Procedural

SOFA argues that its claims are merely procedural, seeking only to vindicate public rights by ensuring that USFS follows certain procedures. Opp'n 28:20-29:22. However, the nature of SOFA's requested relief belies this assertion. In *American Greyhound Racing v. Hull,* 305 F.3d 1015, 1026 (9th Cir. 2002), the court declined to apply the public rights exception because the claims plaintiffs asserted effectively attacked the nonparty's rights. The court explained that "almost any litigation … can be

characterized as an attempt to make one party or another act in accordance with the law." *Id.* Rather than looking only at the express causes of action, the court also looked to what the lawsuit aimed to achieve: "This litigation does not *incidentally* affect the [] tribes in the course of enforcing some public right. This litigation is *aimed* at the tribes and their" activities. *Id.* (emphasis in original). Here, while the FAC cites the APA and environmental laws, what it really seeks is for the Nation, and only the Nation, to stop receiving water. *See* FAC ¶ 96 (acknowledging that the Nation is the only water user affected by the challenged SUP). SOFA urges this Court to issue an injunction that would immediately halt water delivery to the Nation. FAC Prayer ¶¶ 4-5, 7. This is not a procedural lawsuit seeking only to affect a federal agency's future actions; it substantively seeks to immediately deprive the Nation of potable water, with devastating impacts.[1]

### 4. This Litigation Implicates SOFA Members' Private Rights

SOFA essentially argues that if a lawsuit asserts claims under the APA and environmental laws, then, *ipso facto*, it seeks to protect only public rights. Opp'n 28:9-29:13. This argument conveniently ignores the various private rights that the Complaint itself alleges, and which are also implicated here. *See, e.g.,* FAC ¶ 15 ("members of SOFA have had to ration water in the recent past. Lakes that are affected by removal of spring water are extremely important to the economy and well-being … of SOFA members"); *Id.* ¶ 16 (alleging the Nation's water use is a "fire threat to SOFA members … who live above and below Strawberry Canyon."). Water rationing, fire risk, and "the economy" of SOFA members clearly negatively impact private rights and private property values of the "SOFA members" mentioned in the Complaint.[2]

---

[1] SOFA also argues that this case is like *Makah*. Opp'n 29:14-22. However, the public rights exception was not at issue in *Makah*. The *Makah* court mentioned the public rights exception without discussion or analysis in *dicta* in footnote 6.

[2] *See, e.g.*, https://www.tandfonline.com/doi/full/10.1080/08965803.2020.1845553; https://www.researchgate.net/publication/222788889; https://pmc.ncbi.nlm.nih.gov/articles/PMC9680851/ .

### 5. The Status of the Tribe's Land is Irrelevant

SOFA argues that "it is also significant [to the public rights exception] that the challenged agency action does not involve tribally-owned land or a tribal permit to operate on federal land." Opp'n 31:21-26. The argument is misplaced here, because the challenged agency action does affect, and the lawsuit challenging that action could devastatingly affect, "tribally-owned land." SOFA cites *Deschutes River Alliance v. Portland Gen. Elec. Co.,* 1 F.4th 1153 (9th Cir. 2021) in support, but that case does not involve the public rights exception and is thus irrelevant. Furthermore, *Deschutes* dismissed the case for failure to join the absent tribe in a Clean Water Act challenge, reaching a contrary conclusion to the one SOFA urges. SOFA also cites *Dine Citizens,* which involved a permit to perform activities on land that was tribally-owned, but the fact that the tribe owned the land was not relevant in the court's discussion of the public rights exception. Indeed, the one factor the court deemed relevant in declining to apply the exception was the fact that the absent party had already begun activities that had been approved under the challenged federal action. *Id.,* 932 F.3d at 860. The same occurred here. As in *Deschutes* and *Dine Citizens,* this case should be dismissed.

### 6. The Lack of an Alternative Forum is Irrelevant In Determining Whether to Apply the Public Rights Exception

Acknowledging that declining to apply the public rights exception may occasionally result in a tribe being the only party able to seek review of a federal action impacting that tribe's fundamental interests, both the Supreme Court and Ninth Circuit have noted that "[t]his result, however, is for Congress to address, should it see fit, as only Congress may abrogate tribal sovereign immunity. *Michigan v. Bay Mills Indian Community,* 572 U.S. 782, 790 … (2014). It is undisputed that Congress has not done so here." *Dine Citizens,* 932 F.3d at 860-861. *See Makah,* 910 F.2d at 560 ("lack of an alternative forum does not automatically prevent dismissal of a suit…. Sovereign immunity may leave a party with no forum for its claims").

Dated: February 16, 2026

Respectfully submitted,

          LAW OFFICE OF FRANK LAWRENCE
          By: ___/s_____
          Frank R. Lawrence
          Law Office of Frank Lawrence
          Counsel for Defendant-Intervenor
          Yuhaaviatam of San Manuel Nation